**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Andersen Corporation,

Plaintiff,

v.

Fiber Composites, LLC,

Defendant.

Civil No. 00-2548 RHK/AJB

**ORDER ON MOTION TO DISQUALIFY COUNSEL**

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on plaintiff's motion to disqualify the Fish & Richardson, P.C. law firm from serving as counsel for defendant in this action. Hearing was held on February 27, 2001, at the U.S. Courthouse, 316 No. Robert St., St. Paul MN 55101. Scott R. Strand, Esq., appeared on behalf of the plaintiff. Michael J. Hoover, Esq., appeared on behalf of the defendant.

Based upon the file, memorandums, affidavits and exhibits, **IT IS HEREBY ORDERED** that plaintiff's motion to disqualify the Fish & Richardson law firm from acting as counsel for the defendant in this action is **denied**. **IT IS FURTHER ORDERED** that those Fish & Richardson lawyers who participated in plaintiff's pre–litigation attorney selection process are prohibited from communicating with other members of the firm with respect to this patent litigation at any time prior to resolution of the action, including expiration of applicable appeals periods.

Dated: 3/23/01

Arthur J. Boylan
United States Magistrate Judge

FILED MAR 23 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

**MEMORANDUM**

Plaintiff in this patent action conducted interviews with attorneys from several law firms before selecting counsel to represent the company in the impending litigation. Fish & Richardson, PCC, was one of those law firms which was invited to interview and considered for hiring in reference to the case. Ultimately, of course, plaintiff chose other counsel and suit was commenced. Meanwhile, defendant Fiber Composites, LLC, retained Fish & Richardson as its counsel. Plaintiff now takes offense at Fish & Richardson's representation of Fiber Composites, in light of a possibility or presumption that confidential information may have been imparted to Fish & Richardson in the courtship process. Plaintiff contends that Fish & Richardson is ethically barred from representing the defendant in this matter and seeks to disqualify the firm. Defendant contends that the law firm interview process did not create an attorney client relationship between plaintiff and the Fish & Richardson firm; there was no exchange of confidential information during such interviews; and in any event, the specific Fish & Richardson attorneys involved in the interviewing are not the same individuals as those presently representing the defendant, and information obtained by Fish & Richardson in the course of plaintiff's attorney selection efforts has not been shared by respective counsel.

Plaintiff contends that the circumstances required Fish & Richardson to obtain Andersen's explicit waiver or consent prior to accepting representation of the defendant. Andersen argues that the firm's hiring by defendant has created a conflict of interest in violation of Rules 1.9(a) and 1.10(a) of the Minnesota Rules of Professional Conduct and is contrary to a provision in the plaintiff's representation invitation[1] which mandated confidentiality by the firm

[1] Request for Proposal (RFP).

until either a release was given or information provided became generally known to the public. Plaintiff further insists that Fish & Richardson's conflict of interest is implicit in the firm's failure to anticipate the present predicament by reserving its right to represent other litigation targets, and the conflict of interest is not effectively avoided by in-house screening.

An appropriate analytical model for considering this situation is found in B.F. Goodrich Company v. Formosa Plastics Corporation, 638 F.Supp. 1050 (S.D. Tex. 1986). Disqualification of opposing counsel first requires proof of the existence of a prior attorney-client relationship. Id. at 1051. Thereafter, where it is shown that the pending suit involves matters that are "substantially related" to the previous representation, an irrebuttable presumption that confidential information was revealed is created. Id., citing Duncan v. Merrill Lynch, Pierce, Fenner & Smith, 646 F.2d 1020, 1028 (5th Cir. 1981). Where no attorney-client relationship is shown there may still be disqualification if a fiduciary obligation arose. Such fiduciary obligation could result from the disclosure of confidential information, but the party seeking disqualification in not entitled to any presumption that confidential material was exchanged. B.F. Goodrich at 1051.

The disqualification test may be effectively applied to the facts of the present case in somewhat reverse fashion. Id. In so doing, the Court easily finds that there was a substantial relationship between the matters at issue in the respective the attorney–client contacts now under discussion. However, the Court cannot reasonable conclude that an attorney–client relationship between plaintiff and Fish & Richardson had been established under circumstances in which both parties were unquestionably aware that the primary purpose of their contact was to allow a preliminary co-determination of compatibility. Several attorneys were interviewed with regard to

the prospective litigation and plaintiff subsequently hired a different firm. Plaintiff offers no persuasive facts to suggest that at the time of interviewing plaintiff intended to create an attorney–client relationship with Fish & Richardson and the firm is certainly not making that claim. In the absence of any attorney–client relationship, plaintiff is not benefitted by any presumption that confidential information was disclosed. B.F. Goodrich, 638 F.Supp. at 1051-52. Disqualification of counsel may still be appropriate if a fiduciary obligation on the part of the firm is established, but the burden is now on the plaintiff to present facts proving that the firm received confidential information which could be used to plaintiff's detriment. That burden has not been carried in this instance. Plaintiff generally asserts that the intervene with Fish & Richardson entailed candid and thorough discussion relating to litigation and settlement strategies, potential defendants, strengths and weaknesses of patents, budgets, and personnel. The firm participated in two meetings with Andersen and was thereafter notified that it had not been selected to represent the plaintiff in this matter. Plaintiff directs the Court to no particularized confidential material that was disclosed to Fish & Richardson in the course of those two meetings which did not become public prior to the firm being retained by the defendant in this case. Plaintiff presents no proof, other than mere conclusory assertions, to indicate that Andersen divulged confidential information which could actually be used to plaintiff's detriment. See Bridge Products, Inc. v. Quantum Chemical Corporation, 1990 WL 70857, page 7 n.1 (N.D. Ill. 1990). There is simply no persuasive evidence to suggest the plaintiff in this action will somehow be placed at a disadvantage as a consequence of the Fish & Richardson firm's representation of the defendant in this case. In addition, the Court finds that under the circumstances presented herein there is no real likelihood that public perception of the

legal profession would be blemished as a result of permitting Fish & Richardson to represent the defendant in this case. B.F. Goodrich, 638 F.Supp. at 1054-55. The motion for disqualification is therefore denied.

The Court has determined that it is appropriate to impose an entirely precautionary burden on defendant's counsel by ordering that the individual Fish & Richardson attorneys who are representing defendant Fiber Composites in this action be screened from those attorneys who participated in the interview process with Andersen Corporation. This restriction is not imposed as a substitute for disqualification, but rather, was self-imposed by the firm as an assurance to the plaintiff that even arguably confidential material would not be available to the Fish & Richardson attorneys involved in this litigation. The Court's Order merely implements the firm's own restrictions in a largely symbolic but ethically significant context.