**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**ANDERSEN CORPORATION,**

Plaintiff,

v.

**FIBER COMPOSITES, LLC,**

Defendant.

Civil No. 00-2548 (JEL/JGL)

**O R D E R**

---

APPEARANCES

Rita Coyle DeMeules, Esq., and Nicholas Boebel, Esq., for Plaintiff

J. Richard Soderberg, Esq., for Defendant

---

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on July 16, 2002 on Defendant's Motion to Prevent Andersen Corporation from Presenting New Infringement Contentions (Doc. No. 123) and Defendant's Motion to Compel Production of the Vannelli Sample (Doc. No. 126). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. DEFENDANT'S MOTION TO PREVENT PLAINTIFF FROM PRESENTING NEW INFRINGEMENT CONTENTIONS

This is a patent infringement case in which Plaintiff Anderson Corporation claims that Defendant Fiber Composites infringes six patents

FILED JUL 18 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

relating to a polymer and wood composite material used to make deck and porch railings. Four of the patents-in-suit are classified by the parties as "composite composition claim" patents. These patents cover inventions relating to a polymer and wood fiber composite used as a wood replacement. Following a Markman hearing, Judge Richard H. Kyle issued a claim construction ruling in which he defined the term "composite composition" in relevant part as a material, which is an intermediate solid in the form of either "a solid pellet or a solid linear extrudate, which may subsequently be remelted and extruded to make a structural member." (Soderberg Aff. Ex. A at 13, 20.) The linear extrudate, which apparently resembles spaghetti, can be cut into small pieces to resemble pellets. (Id. at 14.) The process of forming a structural member with pellets or linear extrudate must be contrasted with the process of "direct extrusion." (Id. at 18.) In direct extrusion, the polymer and wood composite is directly extruded into the railing structure without a pelletizing or linear extrusion step. Defendant uses the direct extrusion method in making its railings. Judge Kyle's order did not include direct extrudate in the definition of "composite composition," and the ruling was therefore unfavorable to Plaintiff's proposed definition of the term, which would have included directly extruded material.

According to Defendant, Plaintiff has taken the position throughout this litigation that the patents were not limited to the composite in the form of a pellet, and therefore, it was irrelevant that Defendant did not

pelletize. Defendant contends that subsequent to Judge Kyle's ruling, however, Plaintiff has "informally indicated" its intention to argue that Defendant's composition includes a material referred to as "repro," which is rejected railing ground into pieces and re-extruded, and "regrind," which is solid polymer ground into smaller pieces. By this argument, Defendant avers, Plaintiff will attempt to fit the material resulting from Defendant's extrusion process into the definition of the term "composite composition" as defined by Judge Kyle. Defendant seeks to prevent Plaintiff from arguing this allegedly new theory of its case.

Although Plaintiff acknowledges its position that the patents are not limited to the composite in the form of a pellet, Plaintiff also asserts that its claim charts pointed to an alternative contention: that Defendant's products are a "composite composition" because they may be further extruded into a structural member. Plaintiff contends, therefore, that Defendant's use of its extruded railing components falls within the definition of "composite composition" as defined by Judge Kyle. In addition, Plaintiff characterizes Defendant's motion as an attempt to obtain a ruling that would amount to summary judgment on a disputed issue, and consequently, Defendant's motion is not properly before this Court.

Defendant's motion can be interpreted in one of two ways. It is either, in essence, a motion for clarification of Judge Kyle's order or a motion for partial summary judgment. Neither motion is appropriately brought before

this Court. If Defendant is challenging Plaintiff's interpretation of Judge Kyle's claim construction order to mean that material made from "repro" is included as a composite composition, then the proper course for Defendant would be to seek clarification from the district court or to make this argument in a motion for summary judgment. If Defendant believes that Plaintiff's claim charts did not refer to "composite composition" as defined by Judge Kyle, Defendant should so argue on summary judgment. In either case, this Court will not prevent Plaintiff from arguing a certain theory of its case during summary judgment or at trial. Defendant's motion is denied.

## II. DEFENDANT'S MOTION TO COMPEL PRODUCTION OF THE VANNELLI SAMPLE

Defendant requests the Court to order Plaintiff to produce a sample from a window sash manufactured by Plaintiff in 1973 and sold to a Saint Paul resident, Mr. Vannelli, who used the window in his home until 1992 when it was removed by Plaintiff for testing. The sash is comprised of a wood flour and polyvinyl chloride composite. On May 31, 2001, Defendant served a discovery request for a sample of the window. On July 2, 2001, Andersen agreed to produce a sample for inspection subject to various objections including that the request was "not reasonably calculated to lead to the discovery of admissible evidence," or relevance. (Soderberg Aff. Ex. D at 13.) There was no mention of testing the sample. However, during a court hearing on March 11, 2002, Plaintiff's counsel twice stated that it would make a sample

of the Vannelli window available to Defendant for testing. (Id. Ex. E at 73, 77.) On April 11, 2002, Plaintiff's counsel asked Defendant to identify the intended testing including whether the testing would be destructive. On June 12, 2002, Plaintiff expressed its belief that the testing would be irrelevant if Defendant's Motion to Amend its Answer was denied. The motion was denied, and Plaintiff declined to allow any testing of the Vannelli window although it agreed to allow Defendant to inspect the window.

Federal Rule of Civil Procedure 34 allows a party to "sample" any tangible thing within the scope of Rule 26(b). See Fed. R. Civ. P. 34(a)(1). The rule anticipates testing of tangible things and objects. See id. advisory committee's note (1970). Rule 26(b) permits discovery of information "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The rule as amended in 2000 gives courts "the authority to confine discovery to the claims and defenses asserted in the pleadings," but recognizes a court's discretion to permits broader discovery depending on the particular circumstances of a case. See id. advisory committee's note (2000).

In this case, Defendant asserts the Vannelli window is relevant for the following reasons. First, a document produced by Plaintiff during discovery reveals that the research leading to the invention at issue was made with the benefit of windows such as the Vannelli window. Second, one of the inventors, Michael Deanor, has admitted that the composite windows were helpful to the development of the material that later evolved into Plaintiff's product. Third,

the Vannelli window would be a useful reference for understanding the patents-in-suit, and fourth, it would aid the understanding of other prior art. Defendant also notes that Plaintiff has already subjected the Vannelli window to extensive testing and obtained a detailed report.

Plaintiff acknowledges its agreement to produce a sample of the Vannelli window for examination and inspection. However, Plaintiff was not made aware of the destructive nature of the testing until June 2002. In addition, Plaintiff contends that the window and its properties are only "marginally" relevant to the claims and defenses in this case. Plaintiff further asserts that it would be prejudiced by the testing of the sample because the window has "historical value." Finally, Plaintiff argues that Defendant should be content to rely on the testing performed by Plaintiff, noting that Defendant has never questioned the veracity of the test methods or results.

Defendant's motion is denied for the following reasons. First, Plaintiff never agreed to destructive testing of the sample. Defendant would require a two-foot long piece of the window sash, which is presumably a large portion of the product. Second, Defendant has not demonstrated the relevance of the Vannelli window. Merely because Plaintiff's research leading to the railings at issue began with the Vannelli window does not establish relevance. Similarly, the possibility that the Vannelli window might be a useful reference or aid the understanding of prior art does not mean that results from testing will lead to admissible evidence. Third, Defendant has not shown, or even

argued, that the results from Plaintiff's testing are incomplete or deficient in any way. To the contrary, Defendant concedes that Plaintiff's testing was extensive and the resulting report was detailed. The Court cannot endorse the destruction of a significant part of the Vannelli window when a satisfactory test has already been performed.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion to Prevent Andersen Corporation from Presenting New Infringement Contentions (Doc. No. 123) is **DENIED**; and

(2) Defendant's Motion to Compel Production of the Vannelli Sample (Doc. No. 126) is **DENIED**.

Dated: July 17, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge