# Exhibit 7

Service: **Get by LEXSEE®**
Citation: **2001 U.S. Dist LEXIS 17796**

*2001 U.S. Dist. LEXIS 17796, **

ADC Telecommunications, Inc., Plaintiff, v. Thomas & Betts Corporation and Augat Communications Products, Inc., Defendants.

Civil No. 98-2055 (DWF/SRN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA

2001 U.S. Dist. LEXIS 17796

October 18, 2001, Decided

**DISPOSITION:** **[*1]** Motion for summary judgment was denied. Motion in limine was granted in part and denied in part.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendant competitors for infringement of a patent related to high-density distribution bays used in the telecommunications industry. The patent holder filed a motion in limine to limit certain evidence on the issue of patent invalidity and a motion for summary judgment on the patent's validity. The competitors moved for summary judgment on the patent's invalidity.

**OVERVIEW:** The competitors argued that another patent disclosed a high-density distribution bay with vertical and horizontal troughs that were offset, as defined by the court in a Markman hearing. The court concluded that the other patent did not provide for an unrestricted passage between horizontal troughs and that there were no portions of the horizontal troughs that did not overlap with the vertical troughs. As a result, the other patent did not describe offset horizontal and vertical troughs. Moreover, the competitors had not shown invalidity of the patent on the grounds of obviousness as there were sufficient fact questions regarding the prior art. The court denied the motion in limine to preclude the competitors from challenging the validity of the dependent claims because an export report made clear that the competitors had intended to challenge the validity of the dependent claims and because that report was disclosed in time for the patent holder to respond adequately. However, any prior art reference disclosed for the first time in the competitors' supplemental responses to the patent holder's interrogatories was excluded.

**OUTCOME:** The motions for summary judgment were denied. The motion in limine was granted in part and denied in part.

**CORE TERMS:** patent, trough, horizontal, vertical, interrogatory, summary judgment, wires, invalid, discovery, invalidity, offset, disclose, motion in limine, supplemental, aligned, matter of law, nonobviousness, disclosure, deferred, expert report, overlap, spaced, clear and convincing evidence, frame, supplementation, obviousness, referenced, scheduling, mid-planes, secondary

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption

Patent Law > Nonobviousness > Elements & Tests > Prior Art
Patent Law > Anticipation & Novelty > Elements
HN1 A patent issued by the United States Patent and Trademark Office is presumed to be valid. 35 U.S.C.S. § 282. The presumption of validity can only be overcome by clear and convincing evidence that the claim is invalid because it is not novel, 35 U.S.C.S. § 102, or because it is obvious in light of the prior art. 35 U.S.C.S. § 103. More Like This Headnote

Patent Law > Anticipation & Novelty > Elements
Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview
Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview
HN2 To prove that a patent claim is invalid under 35 U.S.C.S. § 102, a party must prove by clear and convincing evidence that the anticipating patent discloses every element recited in the allegedly invalid claims. In other words, a patent claim is only invalid under § 102 if every element of the claim is disclosed in a single prior art reference. More Like This Headnote

Patent Law > Nonobviousness > Elements & Tests > Ordinary Skill Standard
Patent Law > Nonobviousness > Elements & Tests > Prior Art
Patent Law > Nonobviousness > Elements & Tests > Secondary Considerations
HN3 Even if there is no one patent which discloses every element of a patent claim, a patent claim may nevertheless be invalid pursuant to 35 U.S.C.S. § 103 if, at the time the patent was sought, a person with ordinary skill in the art to which the patent pertains, would have considered the patented subject matter obvious in light of the prior art. According to the United States Court of Appeals for the Eighth Circuit, it is well settled that the question of obviousness is a question of law. However, as has been often observed, the test for nonobviousness requires several underlying factual inquiries regarding (1) scope and content of the prior art, (2) differences between the subject patent and the prior art, (3) the level of ordinary skill in the pertinent art at the time involved, and (4) certain secondary indicia of nonobviousness such as commercial success, long felt but unsolved needs, and failure of others. More Like This Headnote

Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview
HN4 35 U.S.C.S. § 282 disclosures are not due until 30 days before trial. More Like This Headnote

Patent Law > Anticipation & Novelty > Elements
Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview
HN5 According to the United States Court of Appeals for the Federal Circuit, although 35 U.S.C.S. § 282 sets a minimum period for the identification of prior art to be introduced as evidence of anticipation, a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound. More Like This Headnote

**COUNSEL:** Timothy Lindquist, Esq., Philip Caspers, Esq., Alan Carlson, Esq., Merchant & Gould, Minneapolis, MN, appeared on behalf of Plaintiff.

Paul J. Hayes, Esq., Eugene Feher, Esq., Mintz Levin Cohn Ferris Glovsky & Popeo, Boston, MA, for Defendants.

**JUDGES:** DONOVAN W. FRANK, Judge of United States District Court.

**OPINIONBY:** DONOVAN W. FRANK

**OPINION: MEMORANDUM OPINION AND ORDER**

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on October 12, 2001, pursuant to Plaintiff's motion *in limine* to limit certain evidence on the issue of patent invalidity, Plaintiff's motion for summary judgment of validity with respect to the '600 patent, and Defendant's motion for summary judgment of invalidity with respect to the '600 patent. For the reasons stated, Plaintiff's motion for summary judgment is denied; Defendants' motion for summary judgment is denied; and Plaintiff's motion *in limine* is granted in part and denied in part. **[*2]**

**Background**

The '600 patent at issue in this litigation relates to high-density distribution bays used in the telecommunications industry. These bays, and the individual panels which comprise them, are made up of many segments of "pins" from which individual wires extend; horizontal troughs which run beneath the segments of pins and which serve as conduits for the wires in a horizontal direction; and vertical troughs which divide banks of pin-segments and which serve as conduits for the wires in a vertical direction. According to Plaintiff, the prior art generally provided no clear and accessible way for wires to travel horizontally from panel to panel because wires passing between horizontal troughs would have to pass through vertical troughs filled with wires and would thus become entangled; the prior art did have "express horizontal troughs" at the top and bottom of each panel, but there were only two such troughs and wires had to travel extensive and unnecessary vertical distances to use these express troughs.

The '600 patent allows technicians to utilize the horizontal trays as intermediate express troughs. It does this by moving the vertical troughs out of the way, setting **[*3]** them off from the midplane of the bay. As a result, jumper wires can run horizontally from one bay to the next without interference. The vertical wires run in a space behind the horizontal trays. The '600 patent describes this invention.

In an earlier Markman hearing, this Court was asked to interpret the word "offset" as it is used in the '600 patent. Claims 1 and 9 of the '600 patent describes a "second trough defining means for defining a substantially vertical trough extending the height of said panel . . . said vertical trough disposed offset from said horizontal trough defining means and located proximate said horizontal trough rear portion." Similarly, Claim 11 describes a "means for defining a vertical trough . . . said vertical trough-defining means lying in a plane parallel to and spaced apart from said horizontal trough-defining means . . . ." The Court concluded that the terms "offset" and "spaced apart" did not require that there be no overlap between the intermediate horizontal and vertical troughs, but only that the troughs be positioned so that their center planes were not aligned and "so that there is some measure of unrestricted passage between horizontal troughs **[*4]** of different bays."

The matter is now before the Court on the issue of the validity of the '600 patent. Defendants assert that claims 1 and 11 of the '600 patent are invalid under 35 U.S.C. § 102 because they are anticipated by U.S. Patent No. 4,630,886 ("the 886 patent"). Defendants further assert that claims 1, 9, and 11 of the '600 patent are invalid under 35 U.S.C. § 103 because they are obvious in light of the 886 patent, U.S. Patent No. 4,737,985 ("the 985 patent"), and U.S. Patent No. 4,002,856 ("the 856 patent").

The matter is also before the Court on Plaintiff's motion *in limine* to limit Defendants' arguments on invalidity to those arguments and prior art disclosed in "timely" responses to

Plaintiff's contention interrogatories. Plaintiff contends that the last timely supplementation to Defendants' responses to Plaintiff's contention interrogatories took place on May 14, 1999. In that supplementation, Defendants challenged the validity of claims 1, 9, and 11 of the '600 patent, and made reference to the following prior art: the Freedom Frame Model 700, the '273 patent, the 856 patent, the '039 patent, and the '057 patent. **[*5]** n1 Defendants further challenged the validity of claims 1, 7, 8-12, and 15 of the '968 patent, and made reference to a single prior art reference, the '997 patent.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In the interests of clarity and brevity, the Court references the prior art patents only by the last three digits of the actual patent numbers. The full references can be found in the documentation submitted by the parties.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In his supplemental report dated April 24, 2000, Defendants' expert Walter Roehr further challenged the validity of the '600 and '968 patents. Specifically, Mr. Roehr challenged claims 1-6 and 9-11 of the '600 patent, and made reference to the following *additional* prior art: a variety of AT&T frames, a Porta Systems frame, the '546 patent, the '236 patent, the '427 patent, the '321 patent, and the '910 patent. Similarly, Mr. Roehr challenged the validity of the '968 patent on the basis of one additional prior art reference, the '747 patent.

On April 23, 2001, Mr. Roehr again supplemented his expert testimony, in light of **[*6]** the Court's ruling on claim interpretation. With respect to the '600 patent, Mr. Roehr cited the following additional prior art references: several training manuals (two editions of *American Telephone Practice* and *ABC of the Telephone*), the '424 patent, the 985 patent, and the '107 patent. Mr. Roehr cited no additional prior art references with respect to the '968 patent.

On August 9, 2001, Defendants served yet further supplemental answers to Plaintiff's contention interrogatories. In the August 9, 2001, supplement, Defendants cite additional prior art references with respect to the '600 patent: the '590 patent; the '411 patent; the 886 patent; the '488 patent; U.S. Patent No. 4,260,856 n2; Japan No. 63-114397; and a wide variety of manual diagrams, reference books, and sales brochures.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Not to be confused with the previously referenced 856 patent which is actually U.S. Patent No. 4,002,856.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**Discussion**

**1. The Validity of the '600 Patent** n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The Court considers the motions for summary judgment and the motion *in limine* independently; thus, for purposes of the motions for summary judgment, the Court will consider all those prior art references raised in the Defendants' briefs on the summary

judgment issue regardless of whether those prior art references are subject to the Court's ruling on the motion *in limine*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*7]** *HN1*

A patent issued by the Patent and Trademark Office is presumed to be valid. 35 U.S.C. § 282. The presumption of validity can only be overcome by clear and convincing evidence that the claim is invalid because it is not novel, 35 U.S.C. § 102, or because it is obvious in light of the prior art. 35 U.S.C. § 103.

*HN2*To prove that a patent claim is invalid under 35 U.S.C. § 102, a party must prove by clear and convincing evidence that the anticipating patent (here, the 886 patent) discloses every element recited in the allegedly invalid claims. In other words, a patent claim is only invalid under 35 U.S.C. § 102 if every element of the claim is disclosed in a single prior art reference. *See* *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). The Defendants have not met that burden here.

Defendants rely heavily on the fact that the 886 patent discloses a high-density distribution bay with vertical troughs deeper than the horizontal troughs; as a result, although the forward surfaces of the horizontal and vertical troughs are **[*8]** aligned, the center planes of the troughs are not aligned and the vertical trough extends farther back than do the horizontal troughs. Defendants assert that this means the troughs are "offset" as that term was defined by the Court in the Markman hearing. The Court found, however, that "offset," as used in the '600 patent, requires that the mid-planes of the troughs not be aligned *so that some portion of the horizontal troughs do not overlap with the vertical troughs*. The 886 patent discloses horizontal and vertical troughs, the mid-planes of which are not aligned, but it does not provide for any unrestricted passage between horizontal troughs; there are no portions of the horizontal troughs that do not overlap with the vertical troughs. As a result, the 886 patent does not describe offset horizontal and vertical troughs as that phrase is used in the '600 patent.

*HN3*Even if there is no one patent which discloses every element of a patent claim, the patent claim may nevertheless be invalid pursuant to 35 U.S.C. § 103 if, at the time the patent was sought, a person with ordinary skill in the art to which the patent pertains, would have considered the patented **[*9]** subject matter obvious in light of the prior art. As the Eighth Circuit stated in *Span-Deck, Inc. v. Fab-Con, Inc.*:

> It is well settled that the question of obviousness is a question of law. However, as has been often observed, the test for nonobviousness requires several underlying factual inquiries regarding: (1) scope and content of the prior art; (2) differences between the subject patent and the prior art; (3) the level of ordinary skill in the pertinent art at the time involved; and (4) certain secondary indicia of nonobviousness such as commercial success, long felt but unsolved needs, and failure of others.

677 F.2d 1237, 1241 (8th Cir. 1982).

Defendants allege that, as a matter of law, the '600 patent is obvious in light of the 886 patent, the 985 patent, and the 856 patent. The Court does not agree. While the Defendants have presented argument which might persuade a jury, the Court does not find that the '600 patent is invalid as obvious as a matter of law. Similarly, however, the Court declines to grant Plaintiff's motion for summary judgment of validity. Although the Defendants have not

demonstrated invalidity on the grounds of obviousness **[*10]** as a matter of law, the Court finds that sufficient questions of fact exist, particularly with respect to the "secondary indicia of nonobviousness," that a jury should determine the issue of validity.

**2. Plaintiff's Motion *in Limine***

Defendants offer a number of reasons why the Court should not limit them to invalidity arguments and prior art proffered in timely responses to Plaintiff's contention interrogatories. Some of these arguments are more persuasive than others.

First, Defendants contend that Defendants' sole obligation to disclose the prior art on which they intend to rely is embodied in 35 U.S.C. § 282. *HN4*Section 282 disclosures are not due until 30 days before trial; thus, according to Defendants, any time beyond that 30 days is a gift to the Plaintiff. The Court does not agree. *HN5*As the Federal Circuit determined in *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 551 (Fed. Cir. 1998), "although § 282 sets a minimum period for the identification of prior art to be introduced as evidence of anticipation, a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound." Despite **[*11]** Defendants' claims to the contrary, patent law litigation is not so very different from other types of complex civil litigation, and scheduling orders must mean something if the parties and the court are ever to achieve some sort of finality.

Second, Defendants assert repeatedly that it is the "preferred practice" to "supplement answers to contention interrogatories at the end of discovery and after completion of discovery of the other party's position." Defendants' Memorandum of Law in Opposition to ADC's Motion *in Limine* to Limit Evidence at Trial on Invalidity, at 8. For that proposition, Defendants cite, repeatedly, to a case out of the Eastern District of Pennsylvania, *Braun Medical, Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 527 (E.D. Pa. 1994). However, a close reading of *Braun Medical* reveals that this case does not support Defendants' position at all.

In *Braun Medical*, the plaintiff sought to compel the defendant to answer a variety of interrogatories early in the discovery process. The court held that certain contention interrogatories were properly deferred until the end of discovery. The court did not hold that such interrogatories should **[*12]** be deferred until long after the close of discovery. n4 Moreover, the Braun Medical court went on to note that some of the plaintiff's interrogatories related to prior art, and, because the "prior art interrogatories [would] serve to clarify the issues and narrow the scope of the dispute . . . . they should not be deferred." *Id.* 155 F.R.D. at 527.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The Defendants suggest that discovery did not actually close until the Court issued its order on claim interpretation (in April of 2001) and Defendants deposed Plaintiff's experts (in July of 2001). Without addressing the issue of whether Plaintiff was dilatory in producing its experts for deposition, the Court notes that Defendants have not offered any evidence or argument at all to suggest that the *Markman* ruling or the deposition testimony of Plaintiff's experts had some effect on the scope of applicable prior art. Indeed, in Defendants' most recent supplemental answers to the contention interrogatories. Defendants note that "the only aspect of the asserted claims of the '600 patent which is alleged to have been invented in the '600 patent is the particular manner in which the structure provides separate troughs for the horizontal and vertical runs of the cross-connect jumper wires, *i.e.*, the "offset" or "spaced apart" relationship recited in claims 1 and 9 or claim 11, respectively." This has always been the case, and it is difficult to conceive how anything in the *Markman* ruling or the deposition testimony of the experts could have changed what prior art is relevant and what is not.

Moreover, with respect to Defendants' assertion that Plaintiff was dilatory in producing its experts for deposition, assuming that to be the case, Defendants cannot simply rely on Plaintiff's bad conduct to justify their own without some demonstration--apart from bald assertions--that they were prejudiced in their ability to comply with court orders by virtue of Plaintiff's delay.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*13]**

Defendants further argue that Defendants were not obligated to supplement their interrogatory responses where the information had been otherwise disclosed to the Plaintiff; Defendants then go on to suggest that all of the information in the contention interrogatories had been provided to the Plaintiff in other ways. Indeed, the supplemental reports of Mr. Roehr do disclose Defendants' intent to challenge the validity of various dependent claims in the '600 patent and a number of additional prior art references related to both the '600 patent and the '968 patent. However, there are six patents and a variety of other materials referenced in the final supplemental responses which are not mentioned in Mr. Roehr's April 2001 report; with respect to these prior art references, the Court cannot find any mention in the record of these references ever being disclosed at all, much less being disclosed as relevant to the issue of validity. Finally, Defendants suggest that Plaintiff has not been prejudiced by Defendants' late disclosure of prior art and invalidity theories. The Court cannot entirely agree. With respect to Mr. Roehr's April 2001 expert report, the Plaintiff has had adequate time **[*14]** to incorporate that information into their trial preparation and strategy and to request any additional discovery that might be necessary to formulate a response. However, with respect to the disclosures made in August of 2001, that information comes far too late in the game for Plaintiff to formulate an adequate response. The Court finds that, if scheduling orders are to serve any meaningful purpose, it is a proper exercise of its discretion to prevent trial by ambush and to ensure that all parties have an ample opportunity to prepare their case for the scheduled trial date. Responsible case management by a Court requires no less. The Court, therefore, exercises its discretion to exclude references raised for the first time in August of 2001.

The Court would therefore grant in part and deny in part Plaintiff's motion *in limine*. To the extent that Plaintiff asserts that Defendants should be precluded from challenging the validity of the dependent claims of the two patents-in-suit, the Court will deny the motion, because the April 2001 expert report of Mr. Roehr makes clear that Defendants intended to challenge the validity of the dependent claims and because that report was disclosed **[*15]** in time for Plaintiff to respond adequately. Similarly, the Court will allow all prior art references disclosed prior to or in Mr. Roehr's April 2001 expert report. However, any prior art reference disclosed for the first time in the August 2001 supplemental responses to Plaintiff's interrogatories will be excluded.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 259) is **DENIED**;

2. Defendants' Motion for Summary Judgment (Doc. No. 247) is **DENIED**;

3. Plaintiff's Motion *in Limine* (Doc. No. 260) is **GRANTED IN PART** and **DENIED IN PART** as described above.

Dated: October 18, 2001

/s/

DONOVAN W. FRANK

Judge of United States District Court

Service: **Get by LEXSEE®**
Citation: **2001 U.S. Dist LEXIS 17796**
View: Full
Date/Time: Monday, March 14, 2005 - 10:35 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Exhibit 8

Service: **Get by LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 639**

*1996 U.S. Dist. LEXIS 639, **

R.C.M. EXECUTIVE GALLERY CORP., CARMEN MARTINEZ, and ROGER MOJER, Plaintiffs, - against - ROLS CAPITAL CO., MARVIN GOLDMAN, PAUL GOLDMAN, JEROME GOLDMAN, and ALEX REIZNER, Defendants.

93 Civ. 8571 (JGK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1996 U.S. Dist. LEXIS 639

January 24, 1996, Dated
January 25, 1996, FILED

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiffs, corporation and individuals (corporation), filed a motion for an order permitting them to designate expert witnesses beyond the discovery deadline pursuant to Fed. R. Civ. P. 26(a)(2)(C).

**OVERVIEW:** After allowing numerous extensions of the discovery deadline, the court set a final deadline of December 15, 1995. The court then permitted the corporation to take specifically designated depositions beyond the discovery deadline. Several months later, the corporation filed a motion for an order permitting it to designate certain expert witnesses beyond the discovery deadline. On ruling, the court denied the motion. The court ruled that the time for the corporation to supplement its interrogatory answers and identify expert witnesses had passed. The court stated that when it permitted the corporation to schedule specific depositions after the final deadline, the court made clear that it was not extending that deadline for other types of discovery. Furthermore, the court rejected the corporation's contention that the discovery deadline did not explicitly include identification of experts, so that such a designation could be made at any time up to 90 days prior to trial pursuant to Fed. R. Civ. P. 26(a)(2)(C), in that the comprehensive discovery deadline necessarily encompassed designation and discovery of experts.

**OUTCOME:** The court denied the corporation's motion for an order to permit the designation of certain expert witnesses beyond the discovery deadline.

**CORE TERMS:** discovery, deadline, interrogatory, depositions, expert testimony, designation, order permitting, designated, prejudiced, designate

**COUNSEL:** **[*1]** For R.C.M. EXECUTIVE GAL, R.C.M. Executive Gallery Corp., CARMEN MARTINEZ, ROGER MOJER, plaintiffs: Carmen A. Pacheco, PACHECO & LUGO, NEW YORK, NY.

For ROLS CAPITAL CO., J.K. FUNDING, INC. dba Rols Capital Co., defendants: Jordan De Flora, Pearl River, NY.

For MARVIN GOLDMAN, PAUL GOLDMAN, ALEX REIZZNER, RUTH GOLDMAN, defendants: Paul Kaufman, Kaufman Gelbert & Bern, Fort Lee, NJ.

JEROME GOLDMAN, defendant, Pro Se, Hollywood, FL.

JEROME GOLDMAN, cross-claimant, Pro Se, Hollywood, FL.

For MARVIN GOLDMAN, PAUL GOLDMAN, cross-defendants: Paul Kaufman, Kaufman, Gelbert, Bern, Fort Lee, NJ.

For MARVIN GOLDMAN, PAUL GOLDMAN, ALEX REIZZNER, RUTH GOLDMAN, cross-claimants: Paul Kaufman, Kaufman Gelbert & Bern, Fort Lee, NJ.

JEROME GOLDMAN, cross-defendant, Pro Se, Hollywood, FL.

**JUDGES:** JAMES C. FRANCIS, IV, UNITED STATES MAGISTRATE JUDGE. Judge John G. Koeltl

**OPINIONBY:** JAMES C. FRANCIS, IV

**OPINION:** MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiffs in this action, R.C.M. Executive Gallery Corp., Carmen Martinez, and Roger Mojer, have moved for an order permitting them to designate expert witnesses beyond the discovery deadline. **[*2]** For the reasons that follow, the motion is denied.

Background

The plaintiffs filed this action in 1993. By order dated June 1, 1994, I directed that discovery be completed by October 3, 1994. In an order dated November 16, 1994, I extended the discovery deadline to January 31, 1995. On January 4, 1995, the deadline was extended again to March 31, 1995. On May 12, 1995, I noted that the discovery deadline had passed and ordered the pretrial order to be submitted by June 30, 1995. Plaintiffs' counsel thereafter prevailed upon me to permit further discovery, and by order dated October 16, 1995, I set a final deadline of December 15, 1995.

Because of scheduling difficulties, I have permitted counsel to take specifically designated depositions beyond the discovery deadline. However, I did not authorize discovery in general to extend beyond December 15, 1995.

Meanwhile, on February 28, 1995, the defendants propounded interrogatories, one of which asked the plaintiffs to identify any proposed expert witnesses and supply expert reports. The plaintiffs responded as follows:

> Plaintiffs have not yet determined whom they may call as an expert witness at trial. When such a witness **[*3]** has been identified, this answer will be supplemented accordingly, at the appropriate time.

The plaintiffs provided no such supplemental interrogatory answers prior to the discovery deadline.

Nevertheless, the plaintiffs now move for an order permitting them to designate expert witnesses beyond the discovery deadline. Now, for the first time, they identify two experts

that they intend to call as witnesses, and three more that they "may call." According to plaintiffs' counsel, these experts were not retained until January 1996. Letter of Betty Lugo dated January 15, 1996.

Discussion

The plaintiffs advance two arguments in support of their motion. First, they contend that discovery is still open because depositions are continuing. That argument is frivolous. As noted above, the parties received numerous extensions of the discovery deadline. When I permitted them to schedule specific depositions after the final deadline, I made clear that I was not extending that deadline for other types of discovery. Therefore, the time for the plaintiffs to supplement their interrogatory answers and identify expert witnesses has passed.

Second, the plaintiffs contend that the discovery **[*4]** deadline did not explicitly include identification of experts, so that such a designation may be made at any time up to ninety days prior to trial pursuant to Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure. This argument fails because the premise is wrong: the comprehensive discovery deadline necessarily encompassed designation and discovery of experts. In response to a similar contention, one court of appeals has said, "we find [plaintiff's] argument that the discovery deadline did not include expert testimony because it was not specifically mentioned in the order to be wholly without merit." Derby v. Godfather's Pizza, Inc., 45 F.3d 1212, 1215 (8th Cir. 1995) (footnote omitted). Moreover, in a telephone conference with counsel prior to December 15, 1995, I indicated that experts would have to be identified by that date.

The plaintiffs' case will undoubtedly be prejudiced to some extent by the inability to present expert testimony. But the defendants are prejudiced if they are unable to rely on court-imposed deadlines, and judicial efficiency is impaired if such deadlines are ignored with impunity. Here, any prejudice that the plaintiffs may suffer is attributable **[*5]** to counsel's inability to adhere to a reasonable schedule.

Conclusion

For the reasons set forth above, the plaintiffs' motion is denied, and no expert witnesses may be designated beyond the discovery deadline.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
January 24, 1996

Service: **Get by LEXSEE®**
Citation: **1996 U.S. Dist. LEXIS 639**
View: Full
Date/Time: Monday, March 14, 2005 - 10:42 AM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available

- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.