UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSEN CORPORATION,

Plaintiff,

v.

FIBER COMPOSITES, LLC.,

Defendant.

CIV NO. 00-CV-2548 (JNE/JGL)

**FIBER COMPOSITES' AMENDED MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO PRECLUDE ANDERSEN FROM ASSERTING AT TRIAL THAT THERE IS A RANGE OF EQUIVALENCE FOR THE 30% - 50% WOOD FIBER LIMITATION IN THE CLAIMS OF THE '027 PATENT**

The defendant, Fiber Composites, hereby moves in limine to preclude the plaintiff, Andersen, from asserting at trial that there is any range of equivalence for "30% - 50%" wood fiber limitation in the asserted claims of the '027 patent. The prosecution history of the '027 patent demonstrates that Andersen narrowed this key claim limitation to overcome a rejection based on the prior art, and, as a matter of law, that precludes assertion of the doctrine of equivalents for that limitation pursuant to *Warner-Jenkinson Co. v. Hilton-Davis Chemical Co.*, 117 S. Ct. 1040 (1997), *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002), and *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) (*en banc*).

## I. A Narrowing Amendment of Claims to Overcome a Rejection Under § 103 Creates an Estoppel Which Prevents Later Assertion of the Doctrine of Equivalents as to the Amended Limitation

In *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 117 S. Ct. 1040 (1997), the Supreme Court addressed the issue of the doctrine of equivalents being limited by prosecution estoppel. The issue was whether any amendment creates such an estoppel, and while the Supreme Court did not go that far, it certainly made clear that such an estoppel exists if the amendment is made to overcome an obvious rejection. There, the Court said (at 1049-50):

> "We can readily agree with petitioner that *Graver Tank* did not dispose of prosecution history estoppel as a legal limitation on the doctrine of equivalents. But petitioner reaches too far in arguing that the reason for an amendment during patent prosecution is irrelevant to any subsequent estoppel. In each of our cases cited by petitioner and by the dissent below, prosecution history estoppel was tied to amendments made to avoid the prior art, or otherwise to address a specific concern—such as obviousness—that arguably would have rendered the claimed subject matter unpatentable."

In the case before the Court in *Warner-Jenkinson*, the reason for the particular amendment in question was not clear. As to that, the Court concluded (at 1051):

> "Mindful that claims do indeed serve both a definitional and a notice function, *we think the better rule is to place the burden on the patent-holder to establish the reason for an amendment required during patent prosecution. The court then would decide whether that reason is sufficient to overcome prosecution history estoppel as a bar to application of the doctrine of equivalents to the element added by that amendment.* Where no explanation is established, however, the court should presume that the PTO had a substantial reason related to patentability for including the limiting element added by amendment. In those circumstances, prosecution history estoppel would bar the application of the doctrine equivalents as to that element. The presumption we have described, one subject to rebuttal if an appropriate reason for a required amendment is established, gives proper deference to the role of claims in defining an invention and providing public notice, and to the primacy of the PTO in ensuring that the claims allowed cover only subject matter that is properly patentable in a proffered patent application. Applied in this fashion, prosecution history estoppel places reasonable limits on the doctrine of equivalents, and further insulates the doctrine from any feared conflict with the Patent Act."
>
> (Emphasis added)

Several years later, in *Festo Corp.*, the Supreme Court again dealt with this question. There, the Supreme Court discussed the *Warner-Jenkinson* case as follows (at 735):

> "In *Warner-Jenkinson* we recognized that prosecution history estoppel does not arise in every instance when a patent application is amended. *Our 'prior cases have consistently applied prosecution history estoppel only where claims have been amended for a limited set of reasons,' such as 'to avoid the prior art, or otherwise to address a specific concern – such as obviousness – that arguably would have rendered the claimed subject matter unpatentable.' 520 U.S., at 30-32.*"

And there is no question that when the prosecution history estoppel applies, the presumption is that it is a complete bar to any range of equivalents. The Supreme Court said (at 740-1):

> "When the patentee is unable to explain the reason for amendment, estoppel not only applies but also 'bars the application of the doctrine of equivalents as to that element.' *Ibid.* These words do not mandate a complete bar; they are limited to the circumstance where 'no explanation is established.' They do provide, however, that when the court is unable to determine the purpose underlying a narrowing amendment – and hence a rationale for limiting the estoppel to the surrender of particular equivalents – *the court should presume that the patentee surrendered all subject matter between the broader and the narrower language*."
>
> * * *
>
> "Just as *Warner-Jenkinson* held that the patentee bears the burden of proving that an amendment was not made for a reason that would give rise to estoppel, we hold here that the patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question. This is the approach advocated by the United States, see Brief for United States as *Amicus Curiae* 22-28, and we regard it to be sound. The patentee, as the author of the claim language, may be expected to draft claims encompassing readily known equivalents. *A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim. Exhibit Supply, 315 U.S., at 136-37* ('By the amendment [the patentee] recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference'). There are some cases, however, where the amendment cannot reasonably be viewed as surrendering a particular equivalent. The equivalent may have been unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question. In those cases the patentee can overcome the presumption that prosecution history estoppel bars a finding of equivalence."

The Supreme Court in *Festo* remanded the case to the Federal Circuit, and in 2003, the Federal Circuit again considered the issue. There, the Federal Circuit explained the effect of a narrowing amendment as follows,. (*Festo*, 344 F.3d at 1366-76):

> "The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ('PTO') has narrowed the literal scope of a claim. *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003). If the amendment was not narrowing, then

prosecution history estoppel does not apply. But if the accused infringer establishes that the amendment was a narrowing one, then the second question is whether the reason for that amendment was a substantial one relating to patentability. *See id.*

* * *

If, however, the court determines that a narrowing amendment has been made for a substantial reason relating to patentability – whether based on a reason reflected in the prosecution history record or on the patentee's failure to overcome the *Warner-Jenkinson* presumption – then the third question in a prosecution history estoppel analysis addresses the scope of the subject matter surrendered by the narrowing amendment. *See Pioneer Magnetics,* 330 F.3d at 1357. At that point *Festo VIII* imposes the presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation. *See Festo VIII,* 535 U.S. at 740, 122 S.Ct. 1831. The patentee may rebut that presumption of total surrender by demonstrating that it did not surrender the particular equivalent in question according to the criteria discussed below. Finally, if the patentee fails to rebut the *Festo* presumption, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element. If the patentee successfully rebuts the presumption, then prosecution history estoppel does not apply and the question whether the accused element is in fact equivalent to the limitation at issue is reached on the merits."

The Federal Circuit also made it clear that this was a question of law for the Court and not for the jury to decide (at 1368).

## II. Prosecution Estoppel Prevents the Assertion of the Doctrine of Equivalents as to the "30%-50% Wood Fiber Range in the '027 Patent

The application that became the '027 patent was filed on October 20, 1994. It was a continuation of two earlier applications, both of which had been abandoned. The first thing that Andersen did when it filed the October 20, 1994 application was to file a preliminary amendment canceling claim 1 and substituting for it additional new claims, including the following independent claim (Exhibit A):

"-- 27. A wood-thermoplastic polymer composite structural member, suitable for use as a replacement for a wood structural member, which thermoplastic composite structural member comprises an extrudate having a Youngs modulus of greater than 500,000, and a coefficient of thermal expansion less than $3x10^{-5}$ in/in-°F and which composite member comprises a continuous organic phase comprising polymer comprising vinyl chloride and, dispersed in the continuous

> phase, ***an effective amount of a wood fiber*** having an aspect ratio of at least about 2 to provide structural properties to the composite."
>
> (Emphasis added)

The only limitation in that claim relating to the amount of wood fiber was "an effective amount of wood fiber", highlighted in the claim above. After some prosecution that did not result in any amendments to the claims, the Examiner, on August 8, 1995, rejected independent claim 27 (and others) (Exhibit B):

> "***Claims 27 and 29-43 are rejected under 35 U.S.C. § 103 as being unpatentable over Goettler, US Patent 4,376,144 or Hamed, US Patent 3,943,079 in view of Brooks et al., US Patent 5,082,605.***
>
> *Goettler teaches a structural composite of a polyvinyl chloride continuous matrix* (column 4, lines 37-39) *dispersed with wood fibers* (column 2, lines 15-24). The fibers have an aspect ratio of at least 2 (column 2, lines 25-28).
>
> Hamed teaches a structural composite of a plastic matrix, i.e., polyvinyl chloride, polyethylene, etc., (column 5, lines 17-22) and *wood fiber* having an aspect ratio of at least 2 (column 4, lines 43-49). Neither Goettler or Hamed teach the Young modulus or coefficient of thermal expansion as the instant invention.
>
> Brooks teaches a structural composite comprised of *wood fibers* (column 3, lines 4-20) in a continuous matrix of polymeric material (column 4, lines 10-15). Brooks disclosed that the composite material was useful for making synthetic building materials such as paneling, moldings, steps, door window sill and sashes, etc. (column 2, lines 18-27). It would have been obvious to one of ordinary skill in the art to utilize the structural composite of Goettler or Hamed for making the synthetic building materials of Brooks, since each of the references disclose the same components as the instant invention. It would also have been obvious to one in the art to discovery the optimum ranges for the coefficient of thermal expansion and Young's modulus by routine experimentation, since the general conditions of the claimed invention are taught by the prior art."
>
> (Emphasis added)

This was clearly an obviousness rejection based on the prior art. All three cited prior art patents included wood fiber in their composites.

To overcome this prior art rejection, Andersen amended its independent claim 27 to read (Exhibit C, pp. 1-2):

> "27. (Once amended) A wood-thermoplastic polymer composite structural member, suitable for use as a replacement for a wood structural member, which thermoplastic composite structural member comprises an extrudate having a

> Youngs modulus of greater than 500,000, and a coefficient of thermal expansion less than $3x10^{-5}$ in/in-ºF and which composite member comprises a continuous organic phase comprising [polymer comprising vinyl] <u>polyvinyl</u> chloride and, dispersed in the continuous phase, [an effective amount] <u>30-50 wt-%</u> of a wood fiber having an aspect ratio of at least about 2 to provide structural properties to the composite."
>
> (Emphasis in original)

Thus, in response to this 103 rejection based on the prior art, Andersen narrowed its independent claim from "an effective amount of a wood fiber" to "30-50 wt-% of a wood fiber". At the same time, Andersen argued that this change distinguished the claimed invention from the prior art and in particular that there were unexpected and improved properties in strength and stiffness due to this narrower range of 30% - 50% wood fiber (Exhibit C, pp. 3-5):

> "The composites prepared by [prior art reference] Goettler for testing in the Examples each contained about 20 wt-% cellulosic fiber. In contrast, the claimed composites contain about 30 to 50 wt-% wood (cellulosic) fiber.
>
> * * *
>
> The claimed structural composites, having a Youngs modulus of at least 500,000 psi, are more than 27 times stronger than the strongest Goettler composites. This strength allows the composites of the invention to be used as structural members. ***While one might expect that an increase in wood fiber content will cause the strength of the material to increase, this extraordinary difference in properties is completely unexpected.***
>
> * * *
>
> This is again an unexpected difference in properties that could not be predicted from the reference teachings. Although one might expect that compositions containing large amounts of fibers may be stronger (for example the fiber concentrates at Col. 13 lines 20 and following) than compositions having less fiber, the ***outstanding properties of the claimed compositions that contain only 30 to 50 wt-% fiber are truly unexpected.***
>
> * * *
>
> The current claims are directed to structural composites containing ***30 to 50 wt-% fiber*** in a continuous organic phase, having a Youngs modulus of at least 500,000 and a coefficient of thermal expansion less than $3x10^{-5}$ in/in-ºF. ***As seen above, the strength of these composites in view of their fiber content is surprising and unobvious over the Goettler and Hamed teachings.***"

The Examiner then allowed the claims based on his amendment (Exhibit D), and claim 27 became claim 1 in the issued '027 patent. This is clearly a situation where the narrowing amendment was made for the purpose of patentability. There is also no evidence in the record of any attempt by Andersen to encompass anything below 30% wood fiber. Thus, prosecution estoppel completely bars a claim of equivalence as to this narrowed limitation.

Accordingly, Andersen should be precluded from asserting at trial, as a matter of law, that there is any range of equivalence is available for the 30% - 50% wood fiber limitation of the asserted claims of the '027 patent.

Dated: March 21, 2005

FISH & RICHARDSON P.C., P.A.

By: s/ Katherine A. Moerke

Jonathan E. Singer (#283459)
Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC.

21048439.doc