# EXHIBIT 3

LEXSEE 2003 U.S. DIST. LEXIS 15039

**ITRON, INC., Plaintiff, v. RALPH BENGHIAT, Defendant.**

**Civil No. 99-501 (JRT/FLN)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

***2003 U.S. Dist. LEXIS 15039***

**August 29, 2003, Decided**

**PRIOR HISTORY:** *Itron, Inc. v. Benghiat, 2003 U.S. Dist. LEXIS 10391 (D. Minn., June 16, 2003)*

**DISPOSITION:** [*1] Plaintiff's Motions for Judgment as a Matter of Law and for new trial were denied. Plaintiff's Motion to Deny Permanent Injunction or, in the Alternative, Stay Entry of Judgment was denied. Defendant's Motion/Memorandum for Accounting for Previously Unaccounted-For Infringing Sales was granted. Order for accounting was stayed pending resolution of appeals of this [*2] case to the United States Court of Appeals. Defendant's Motion/Memorandum for Prejudgment Interest was granted. Defendant's Motion for Permanent Injunction was granted. Judgment was entered.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff manufacturer sought a declaratory action that a device used by the manufacturer did not violate defendant inventor's patent. The inventor filed a patent infringement counterclaim against the manufacturer. A jury found in favor of the inventor. Both parties, in turn, filed numerous post-trial motions including the manufacturer's motion for judgment as a matter of law, and defendant moved for a permanent injunction.

**OVERVIEW:** Specifically, the manufacturer argued that the inventor did not present evidence showing that the manufacturer's devices contained identical or equivalent structures to those disclosed in the inventor's patent for various means-plus-function claims. The district court found that the inventor did provide sufficient evidence for the jury to find infringement. Further, the manufacturer's motion for judgment as a matter of law on the ground was therefore denied. The district court additionally determined that it was correct to exclude the manufacturer's evidence. Because the manufacturer failed to produce evidence to support its claim during discovery, the court properly excluded such evidence when raised as a surprise at trial. Based on the evidence presented at trial, the district court could not find that the jury's verdict on direct infringement had no foundation in fact. Lastly, the attorney for the inventor committed no misconduct, and the statements brought to issue by the manufacturer were truthful and non-misleading when viewed in context. Therefore, manufacturer could not rely on the attorney's statements to explain any incongruity between its expert and the jury's verdict.

**OUTCOME:** The manufacturer's motions were denied, and the inventor's motions for a permanent injunction and for an accounting of sales were granted.

**LexisNexis(R) Headnotes**

***Civil Procedure > Trials > Judgment as Matter of Law***
[HN1] In considering a motion for judgment as a matter of law, the court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. The court should refrain from weighing the evidence's credibility or substituting its view for that of the jury. A motion for judgment as a matter of law should generally be denied unless the court, keeping all these principles in mind, concludes that judgment cannot be entered on the jury verdict.

***Patent Law > Claims & Specifications > Definiteness > General Overview***

***Patent Law > Claims & Specifications > Alternative Limitations***
[HN2] A means-plus-function limitation is literally met by structure, materials, or acts in the accused device that perform the claimed function in substantially the same way to achieve substantially the same result. The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be equivalent under *35 U.S.C.S. § 112,* thereby meeting the claim limitation. The appropriate degree of specificity is provided by the statute itself; the relevant structure is that which corresponds to the claimed function. Further deconstruction or parsing is incorrect.

***Patent Law > Infringement Actions > Infringing Acts > General Overview***
[HN3] An infringement comparison need not encompass structure unrelated to the recited function.

***Civil Procedure > Trials > Judgment as Matter of Law***
[HN4] A motion for judgment as a matter of law under Fed. R. Civ. P. 50 requires that the moving party make the motion prior to the time the case goes to the jury.

***Civil Procedure > Relief From Judgment > Motions for New Trial***
[HN5] District courts enjoy broad discretion in choosing whether to grant a new trial. Where a party seeks a new trial based on an evidentiary ruling, a new trial is warranted only if the evidence was so prejudicial that a new trial would likely produce a different result.

***Patent Law > Claims & Specifications > Description Requirement > Proof***
***Patent Law > Claims & Specifications > Description Requirement > Elements***
***Patent Law > Date of Invention & Priority > General Overview***
[HN6] Although in determining ownership of a patent, the priority date is a question of law, compliance with the written description aspect of that requirement is a question of fact. Therefore, the court may not determine the proper priority date without regard to the jury's factual findings.

***Patent Law > Inequitable Conduct > General Overview***
***Patent Law > Infringement Actions > Defenses > Patent Invalidity > Validity Presumption***
***Patent Law > Ownership > Patents as Property***
[HN7] A patent is presumed valid, and the burden of persuasion to the contrary is and remains on the party asserting invalidity.

***Patent Law > Inequitable Conduct > General Overview***
***Patent Law > Claims & Specifications > Description Requirement > General Overview***
[HN8] It is well established that an invention may be described in different ways and still be the same invention.

***Patent Law > Inequitable Conduct > General Overview***
***Civil Procedure > Trials > Judgment as Matter of Law***
***Patent Law > Infringement Actions > General Overview***
[HN9] It is well established a motion for judgment as a matter of law under Fed. R. Civ. P. 50 requires that the moving party make the motion prior to the time the case goes to the jury. This rule is rigorously applied, because the non-moving party must be permitted an opportunity to repair gaps in its proof before the case is submitted to the jury.

***Patent Law > Statutory Bars > On Sale Bar > General Overview***
[HN10] The on-sale bar is triggered when the patented invention is the subject of a commercial offer for sale; and the invention is ready for patenting. To satisfy the Pfaff test, the invention that is the subject matter of the offer for sale must satisfy each claim limitation of the patent.

***Civil Procedure > Trials > Closing Arguments***
***Civil Procedure > Appeals > Standards of Review > Harmless & Invited Errors***
[HN11] Statements made in counsel's argument warrant reversal only if they are plainly unwarranted and clearly injurious. Reversal is inappropriate when the error is harmless, and did not affect the substantial rights of the parties.

***Evidence > Relevance > Compromise & Settlement Negotiations***
[HN12] Fed. R. Evid. 408 bars evidence of conduct or statements made in compromise negotiations. Fed. R. Evid. 408. However, the rule does not exclude such evidence when offered for another purpose.

***Patent Law > Infringement Actions > Exclusive Rights > Manufacture, Sale & Use***
***Civil Procedure > Injunctions > Permanent Injunctions***
***Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview***
[HN13] The decision whether to grant an injunction under *35 U.S.C.S. § 283* is discretionary, but courts generally grant injunctions when infringement has been found unless there is a sound reason not to do so. This is because it would be contrary to the laws of property to

deny the patentee's right to exclude others from the use of his property.

***Patent Law > Remedies > Damages > General Overview***
***Patent Law > Infringement Actions > Infringing Acts > General Overview***
[HN14] In a patent infringement case, where the infringing device will continue to infringe, and thus damage the patentee in the future, monetary damages are generally considered to be inadequate.

***Patent Law > Remedies > Equitable Relief > Injunctions***
[HN15] A court must consider four factors in exercising its discretion whether to stay the injunction: (1) whether a movant has made a strong showing that it will likely succeed on the merits; (2) whether a movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

***Patent Law > Remedies > Equitable Relief > Injunctions***
***Patent Law > Remedies > Damages > Patentholder Losses***
***Patent Law > Infringement Actions > General Overview***
[HN16] Where a party has chosen to infringe upon a patented product, the party cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.

***Patent Law > Remedies > Equitable Relief > Injunctions***
***Patent Law > Ownership > Patents as Property***
[HN17] The principal value of a patent is its statutory right to exclude.

***Patent Law > Remedies > Equitable Relief > Injunctions***
***Patent Law > Ownership > Patents as Property***
***Patent Law > Infringement Actions > Infringing Acts > General Overview***
[HN18] Protecting patents from would-be infringers is always acting in the public interest.

***Patent Law > Remedies > Equitable Relief > Injunctions***
***Patent Law > Ownership > Patents as Property***
[HN19] The focus of a district court's public interest analysis should be whether there exists some critical public interest that would be injured by an injunction. However, only in rare instances do courts deny injunctive relief to protect the public interest. Courts have found that patent rights trump the public interest even where the patented products are beneficial medical devices.

***Patent Law > Ownership > Conveyances > Licenses***
***Patent Law > Infringement Actions > Infringing Acts > General Overview***
***Patent Law > Infringement Actions > Defenses > General Overview***
[HN20] An implied license extends throughout the useful life of those machines, and permits the licensee to provide its customers with spare parts needed for repairs.

***Patent Law > Remedies > Collateral Assessments > General Overview***
***Patent Law > Infringement Actions > Infringing Acts > General Overview***
[HN21] Courts routinely grant motions for further accounting where the jury did not consider certain periods of infringing activity.

***Patent Law > Remedies > Collateral Assessments > Prejudgment Interest***
***Patent Law > Infringement Actions > Infringing Acts > General Overview***
***Patent Law > Remedies > Damages > General Overview***
[HN22] It is well established that prejudgment interest should be awarded under *35 U.S.C.S. § 284* absent some justification for withholding such an award. This is to comply with Congress's overriding purpose of affording patent owners complete compensation for infringement. The only recognized reason to withhold prejudgment interest is where the patent owner has been responsible for undue delay in enforcing its patent rights. However, withholding prejudgment interest based on delay is the exception, not the rule.

***Patent Law > Remedies > Damages > Reasonable Royalties***
***Patent Law > Remedies > Collateral Assessments > Prejudgment Interest***
***Patent Law > Infringement Actions > Infringing Acts > General Overview***
[HN23] In determining the amount of pre-judgment interest, the general rule provides that a plaintiff should be placed in as good a position as he would have been had a defendant entered into a reasonable royalty agreement. The normal procedure is to award prejudgment interest from the date of infringement to the date of payment. Only such a calculation can comply with Congress's mandate that patent owners receive complete compensation. Accordingly, a court will award prejudgment interest as of the first date of infringement.

**COUNSEL:** Randall T. Skaar, James H. Patterson, and Eric H. Chadwick, PATTERSON, THUENTE, SKAAR & CHRISTENSEN, P.A., Minneapolis, MN, for plaintiff.

Cyrus A. Morton and Katherine M. Wilhoit, OPPENHEIMER WOLFF & DONNELLY, LLP., Minneapolis, MN, Russell E. Hattis, LAW OFFICE, Highland Park, IL, for defendant.

**JUDGES:** JOHN R. TUNHEIM, United States District Judge.

**OPINIONBY:** JOHN R. TUNHEIM

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

**BACKGROUND**

Plaintiff Itron, Inc. ("Itron") brought this action against defendant Ralph Benghiat ("Benghiat") seeking a declaration that Itron's hand-held meter reading devices do not infringe Benghiat's patent. Benghiat, the owner of *United States Patent No. 4,757,456* ("the '456 Patent") asserted a compulsory counterclaim for infringement against Itron. This case was tried before a jury and this Court in December 2002.

On December 20, 2002, the jury returned a special verdict, finding against Itron on its claims that the '456 Patent was unenforceable and invalid. The jury [*3] found in favor of Benghiat on his counterclaims that Itron directly infringed the '456 Patent, induced others to infringe the patent, and contributed to the infringement of the '456 Patent. The jury concluded that Itron was liable to Benghiat for $ 7,407,050 in damages. Finally, the jury found that Itron willfully infringed the '456 Patent.

On June 16, 2003, the Court rendered its conclusions of law on the equitable issues in the trial, denying Itron's laches claim, and denying Benghiat's claim for enhanced damages. This matter is now before the Court on the parties' post-trial motions.

**ANALYSIS**

**I. Itron's Motion for Judgment as a Matter of Law of Non-Infringement**

[HN1] In considering a motion for judgment as a matter of law ("JMOL"), the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F.2d 1546, 1551 (Fed. Cir. 1989)* (applying Eighth Circuit law). The Court should refrain from weighing the evidence's credibility or substituting its view for that of the jury. *Id.* A motion for judgment as a matter of law should generally [*4] be denied unless the Court, keeping all these principles in mind, concludes that judgment cannot be entered on the jury verdict. *Id.*

Itron seeks judgment as a matter of law on the issue of infringement, claiming that Benghiat did not offer sufficient evidence at trial to justify the jury's verdict. Specifically, Itron argues that Benghiat did not present evidence showing that Itron's devices contained identical or equivalent structures to those disclosed in the '456 Patent for various means-plus-function claims. Itron points to the testimony of Benghiat's expert, Richard Bloomstein ("Bloomstein"), noting that he did not provide evidence that Itron's accused device contained the same or equivalent hardware or software. According to Itron, the evidence was therefore insufficient as a matter of law to prove infringement. The Court disagrees.

Itron's arguments here are essentially the same as those it made on summary judgment stage, on pre-trial motions, and on its motion for judgment as a matter of law during trial. Itron again contends that Bloomstein's opinion was incomplete because he did not conduct a component-by-component comparison between the relevant structure identified [*5] in the '456 Patent and the portions of the accused device alleged to be structurally equivalent.

Itron's argument fails, because it incorrectly presumes that Benghiat must show that the accused devices contained the specific structural details as the hardware and software as the '456 Patent. As this Court has previously noted, the law contains no such requirement. The Federal Circuit summed up the applicable doctrine in *Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259 (Fed. Cir. 1999)*, stating:

> [HN2] [A means-plus-function] limitation is literally met by structure, materials, or acts in the accused device that perform the claimed function in substantially the same way to achieve substantially the same result. **The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function.** This is why structures with different numbers of parts may still be equivalent under *§ 112*, P 6, thereby meeting the claim limitation ... The appropriate degree

> of specificity is provided by the statute itself; **the relevant** [*6] **structure is that which "corresponds" to the claimed function ... Further deconstruction or parsing is incorrect.**

*Id. at 1268* (emphasis added) (citations omitted).

Itron thus wrongly focuses on Bloomstein's failure to find particular structures within the accused devices. Bloomstein's infringement analysis did not rest on mere equivalence of function. Rather, he explained equivalence of structure by demonstrating how the relevant structure corresponded to the claimed functions. (*See, e.g.*, Trial Tr. at 642, 655, 787-88.) As the Federal Circuit has held, no further parsing of the structure is necessary or appropriate. *See Odetics, 185 F.3d at 1268.* This is proper even if Bloomstein did not include every particular aspect of the Itron devices in his analysis, because [HN3] an infringement comparison need not encompass structure "unrelated to the recited function." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1308 (Fed. Cir. 1998).* Therefore, even though Bloomstein's final conclusion may not have included every aspect of the accused devices, it is clear that his analysis considered all the [*7] relevant structures before reaching a conclusion of infringement. (*See* Trial Tr. at 742, 787-90.)

The Court finds that Benghiat did provide sufficient evidence for the jury to find infringement. Itron's motion for judgment as a matter of law on this ground is therefore denied.

**II. Itron's Motion for Judgment as a Matter of Law or New Trial that Claims 1, 20, and 22 of the '456 Patent are Invalid.**

Itron also seeks JMOL or a new trial on the issue of invalidity. These motions are premised upon Itron's contention that the '456 Patent should have a priority date of April 25, 1984, instead of the date that the jury was instructed to use, May 19, 1981. Itron argues that the patent is invalid because it was anticipated by third parties, and because Benghiat sold the disclosed device more than one year before the 1984 date. Alternatively, Itron seeks a new trial in which a jury could consider its invalidity arguments using the 1984 date.

As an initial matter, the Court notes that Itron is barred from moving for JMOL on this question because it did not make such a motion before the jury received the case. *See Douglas Cty. Bank & Trust Co. v. United Fin. Inc., 207 F.3d 473, 477 (8th Cir. 2000)* [*8] [HN4] ("A motion for judgment as a matter of law under *Fed. R. Civ. Pro. 50 requires* that the moving party make the motion prior to the time the case goes to the jury.") Therefore, the Court will consider only Itron's alternative motion for a new trial.

[HN5] District courts enjoy "broad discretion" in choosing whether to grant a new trial. *207 F.3d at 478*; *Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995).* Where, as here, a party seeks a new trial based on an evidentiary ruling, a new trial is warranted only if "the evidence was so prejudicial that a new trial would likely produce a different result." *Bevan v. Honeywell, Inc., 118 F.3d 603, 612 (8th Cir. 1997).*

**A. Background**

Benghiat filed his original patent application on May 19, 1981. That application was amended in 1983, and was later denied. On April 23, 1984, Benghiat filed a continuation-in-part ("CIP") application for his device, which was eventually approved as the '456 Patent.

Patent law provides that a CIP application may receive the filing date of the previous application if it contains "a specific reference to the earlier filed application." *35 U.S.C. § 120.* [*9] Thus, if Benghiat's original 1981 application did not sufficiently disclose the invention described in the 1984 CIP application, Benghiat is not entitled to a priority date of May 19, 1981.

During trial, Benghiat moved to prevent Itron from arguing that the correct priority date was 1984. The Court granted the motion because Itron did not disclose this theory during discovery, stating:

> The basis for my ruling is surprise. The Court finds that [Itron's] theory was not clearly pled. There was no discovery taken concerning the issue[,] which may ultimately be a legal determination, but it surely has factual underpinnings. And I find no expert disclosure that supports this claim concerning the written description. And without that kind of expert testimony, that confirms, in the Court's view, that this was not raised until the last minute.

(Trial Tr. at 1375-76.)

**B. Discussion**

Itron claims it deserves a new trial on the question of invalidity because the jury was not allowed to consider what Itron contends is the proper priority date for the '456 Patent - April 25, 1984. Itron argues that the issue of "surprise" is irrelevant because the priority date for the [*10] application is a matter of law, and therefore it does not matter whether any discovery was submitted on the

subject. Itron further argues that the Court should rule as a matter of law that 1984 is the correct priority date, because the 1984 CIP application contains new matter that was not disclosed in the 1981 filing.

The Court determines that it was correct to exclude Itron's evidence. As the Court noted at trial, Itron never disclosed this theory during discovery, giving Benghiat no notice of the theory until trial had begun. [HN6] Although Itron is correct that the priority date is a question of law, "compliance with the written description aspect of that requirement is a question of fact." *Waldemar Link v. Osteonics Corp., 32 F.3d 556, 558 (Fed. Cir. 1994)*. Therefore, the Court may not determine the proper priority date without regard to the jury's factual findings.

Itron's failure to comply with the discovery rules and this Court's pretrial orders is also highly relevant, because as the party challenging the earlier filing date, Itron has the burden of proving that the newly added material in the CIP application was **not** adequately disclosed in the 1981 application. [*11] *State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1233 (8th Cir. 1985)*. Itron claims that Benghiat has the burden of proving its entitlement to the 1981 date, but this is a misstatement of law. *See Ralston Purina Co. v Far-Mar-Co., Inc., 772 F.2d 1570, 1573 (Fed. Cir. 1985)* [HN7] ("A patent is presumed valid, and the burden of persuasion to the contrary is and remains on the party asserting invalidity."). Because Itron failed to produce evidence to support its claim during discovery, the Court properly excluded such evidence when raised as a surprise at trial. *See Boardman v. National Medical Enterprises, 106 F.3d 840, 843 (8th Cir. 1997)* (holding that a district court has discretion to exclude evidence not disclosed in compliance with its pretrial orders). Itron therefore cannot show that the evidence was wrongly excluded.

Even if the evidence was wrongly excluded, Itron cannot demonstrate prejudice because it has not shown that the result would have been any different. Itron tries to show that the 1981 description does not adequately disclose information added to the 1984 CIP application. Specifically, Itron notes that the 1981 application [*12] discusses "buffers" when referring to memory, while the 1984 application and the '456 patent refer to "registers." Itron claims that this difference in terminology demonstrates that the 1981 application does not disclose all claims in the CIP and the patent. Itron might be correct in making such a presumption "in the absence of any evidence to the contrary," but in this case, Itron must do more to meet its burden than note a mere difference in language. *See CAE Screenplates Inc. v. Heinrich Fiedler GMBH & Co. KG, 224 F.3d 1308, 1317 (Fed. Cir. 2000)*. [HN8] It is well established that "an invention may be described in different ways and still be the same invention." *Kennecott Corp. v. Kyocera Int'l, Inc., 835 F.2d 1419, 1422 (Fed. Cir. 1987)*. Benghiat has testified and presented evidence that the terms "buffer" and "register" are synonymous, and that in his later application he changed the terminology to maintain consistency throughout his application materials. (*See* Trial Tr. at 199-204; Morton Aff. Ex. F (stating that the 1984 application "does not add any new matter, but merely more fully explains and clarifies the subject matter of the parent application"). [*13] ) Itron does not rebut this evidence with facts of its own, but relies on a non-existent presumption that incorrectly allocates the burden of proof.

The Court finds that Itron has failed to meet its burden of showing that the information in the 1984 CIP application was not adequately disclosed in 1981. Therefore, the Court concludes that even in a new trial in which Itron could make this priority argument, the results would not likely be any different. *See Bevan, 118 F.3d at 612*. Accordingly, Itron's motion will be denied.

**III. Itron's Motion for Judgment as a Matter of Law or New Trial Regarding Direct Infringement**

Itron next seeks judgment as a matter of law reversing the jury's verdict of direct infringement. Itron claims that Benghiat did not present sufficient evidence for the jury to determine that every claim limitation of the '456 Patent was present in Itron's accused devices. Specifically, Itron argues that Benghiat presented virtually no evidence that the accused devices had a "data memory means containing account files." Itron claims that Benghiat's evidence did not show that the accused devices contained any account files, and therefore cannot [*14] be found to have directly infringed.

Itron made this same argument upon motions for summary judgment. In its March 2001 Order, the Court first noted that Itron's construction of the word "containing" might be too confined. Itron reiterates its strict interpretation of that word on this motion, arguing that the Court must construe the term to exclude any meaning that might encompass the "capacity" or "ability" to contain. At this stage, however, it would be error for the Court to impose its own interpretation of the term. In its jury instructions, the phrase "containing account files" was among those that the Court instructed the jury to give its plain and ordinary meaning. Therefore, it would be improper for the Court to now divine how the jury might have interpreted the term, much less to import the strict definition that Itron advocates.

Furthermore, in its March 2001 summary judgment order, the Court found that regardless of how one defines the word "containing," Benghiat demonstrated sufficient

evidence for a jury to conclude that Itron satisfied this element. *Itron v. Benghiat, 169 F. Supp. 2d 1073, 1097-99 (D. Minn. 2001)*. The Court also ruled that Benghiat [*15] provided enough evidence on this claim when it denied Itron's motion for judgment as a matter of law at the close of evidence. The Court now finds once again that Benghiat has presented sufficient evidence for the jury to find that the claim regarding "containing account files" was satisfied. For example, Benghiat presented the testimony of an Itron engineer who stated that Itron sells its devices as part of a package with software products, which Itron loads onto handheld devices before they are ever used for meter reading. This software is related to specific account data, and enables the devices to properly receive the meter-reading information. Benghiat also presented the testimony of an Itron executive who stated that the company installs and reformats customer data, without which the Itron devices could not perform their functions.

Therefore, based on the evidence presented at trial, the Court cannot find that the jury's verdict on direct infringement has no foundation in fact. *See W.A. Compton v. United States, 377 F.2d 408, 411 (8th Cir. 1967)*. The Court also cannot find that the verdict was against the great weight of the evidence. Even if the Court would [*16] reach a different conclusion if it were the finder of fact, the Court must defer to the jury's verdict if sufficient evidence was presented to sustain that verdict. Because the Court founds that sufficient evidence does exist, the Court must also deny Itron's alternative motion for a new trial.

**IV. Itron's Motion for Judgment as a Matter of Law on Willful Infringement**

Itron next seeks to reverse the jury's judgment that it willfully infringed the '456 Patent. n1 As Benghiat notes, however, Itron never moved for judgment as a matter of law on this question at the close of evidence. This directly contradicts *Rule 50* and the law of this circuit. [HN9] It is well established "a motion for judgment as a matter of law under *Fed. R. Civ. P. 50* **requires** that the moving party make the motion prior to the time the case goes to the jury." *Douglas Cty. Bank & Trust, 207 F.3d at 477. See Browning v. President Riverboat Casino-Mo., Inc., 139 F.3d 631, 635-36 (8th Cir. 1998)*; *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp., 83 F.3d 253, 258 (8th Cir. 1996)*. This rule is "rigorously applied," because the non-moving party must [*17] be permitted an opportunity to repair gaps in its proof before the case is submitted to the jury. *Hoechst Celanese Corp. v. BP Chemicals Ltd., 78 F.3d 1575, 1582 (Fed. Cir. 1996). See Douglas Cty. Bank & Trust, 207 F.3d at 478. See also Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1107 (Fed. Cir. 2003)* ("In view of a litigant's *Seventh Amendment* rights [to a jury trial], it would be constitutionally impermissible for the district court to re-examine the jury's verdict and to enter JMOL on grounds not raised in [a] pre-verdict JMOL.")

n1 The jury's verdict on this question permitted the Court to award Benghiat enhanced damages, but the Court declined to do so. See*Itron v. Benghiat, 2003 U.S. Dist. LEXIS 10391, Civ. No. 99-501, 2003 WL 21402608 at 12* (D. Minn. Jun. 16, 2003) ("June 2003 Order"),

Here, it is undisputed that Itron never raised a JMOL motion on the subject of willful infringement before the case was submitted to the jury. Itron's present motion does [*18] not even address this fact. Not only has Itron failed to meet the technical requirements of *Rule 50*, the JMOL motions that it did offer related to proof that was wholly unrelated to the proof required to show willful infringement. For these reasons, the Court finds that Itron has not complied with the requirements of *Rule 50* governing motions for judgment as a matter of law, and the Court therefore cannot consider this motion. The motion will be denied as being improperly brought.

**V. Itron's Motion for Judgment as a Matter of Law or New Trial Regarding Accrual Date for Inducement to Infringe Damages**

Itron next argues that the Court incorrectly instructed the jury on the date to use for calculating damages for Benghiat's claim of inducing patent infringement. The Court instructed the jury to use a date of April 23, 1993. n2 Itron disputes this date, arguing that it could not have known about the '456 Patent until November 6, 1998, when Benghiat sent a letter to Itron about possible licensing of the patent. Itron did not move for judgment as a matter of law on this issue before the case was submitted to the jury. Therefore, its JMOL motion is improper, and the Court may consider [*19] only its alternative motion for a new trial.

n2 Benghiat alleged that Itron began infringing the '456 Patent at least as early as 1992. His damages expert testified that the 1993 date was selected because of the six-year statute of limitations. (*See* Trial Tr. at 856.)

Itron argues that the jury instruction giving April 23, 1998 as the accrual date for damages was incorrect because Benghiat presented no evidence that Itron had notice of the '456 Patent before November 6, 1998. The bulk of Itron's argument is that it had no actual notice of

the '456 Patent before this date, and it cites testimony to this effect. (*See* Itron Br. at 3.) Only in passing, however, does Itron claim that it also did not have constructive notice. This is in recognition of the requirement that a party may be a direct inducer if, among other things, it knew **or should have known** that its actions would induce actual infringement. *See Manville Sales Corp. v. Paramount Sys., Inc., 917 F.2d 544 at 553 (Fed. Cir. 1990).* [*20] The Court finds that Benghiat has presented sufficient evidence to satisfy this standard.

For example, Benghiat presented the deposition testimony of former Itron employee Rick Geiger. Geiger began working at Itron in 1989, within a year of when the '456 Patent was issued. Among Geiger's duties was "intellectual property management," which included "implementing practices to insure that Itron would not infringe the patents of others." (*See* Morton Aff. Ex. B. at 63-64.) Among these practices was a "patent scrub," which was designed to examine whether Itron could locate patents that were covered by any features of Itron's products. (*Id.* at 64.) Another of Geiger's duties was to keep an up-to-date file of patents in the meter-reading field to ensure that Itron did not infringe any patents. Geiger testified that Itron performed database searches to locate pertinent patents, and that he reviewed patents located in the search, keeping those that he deemed "pertinent." (*Id.* at 89.) The Court concludes that this information, relating to Itron's efforts to search for patents that were possibly infringed, is sufficient for the jury to have determined that Itron knew or should have [*21] known of the Benghiat patent as of April 23, 1993. Therefore, the Court's jury instruction was correct and Itron's motion for a new trial on this ground is denied.

**VI. Itron's Motion for a New Trial Because Itron Was Precluded From Making a *Pfaff*-Based Invalidity Argument to the Jury**

In this motion, Itron argues that the Court wrongly prevented it from arguing to the jury that Benghiat offered his patented device for sale more than one year before May 19, 1981 (the "critical date"). The title of this motion implies that Itron misunderstands some of the Court's rulings at trial, because the Court never prevented Itron from making such an argument.

As discussed above, the Court ruled at trial that May 19, 1981 is the correct priority date for the '456 Patent. In so ruling, the Court barred Itron from arguing that the '456 Patent's priority date was in 1984. The Court explicitly stated, however, that it was excluding only "this particular part of Itron's invalidity theory. The theory that it's based upon a loss of priority because of the allegedly new matter raised in the 1984 date of the filing of the ... continuation-in-part application." (Trial Tr. at 1375.) At trial, [*22] after issuing its priority date ruling, the Court considered the parties' arguments on the jury instructions. n3 Itron sought language that would allow the jury to consider whether Benghiat's prior, unpatented devices should be considered as prior art invalidating the patent. The Court ruled that the jury could not consider this question because Itron had not presented sufficient evidence to raise a jury question. Thus, the Court never ruled that Itron was barred from making a Pfaff-based argument n4 to the jury regarding the 1981 date. Therefore, to the extent that Itron's present motion rests upon its claim that it was barred from presenting such evidence, it is completely refuted by the record and without merit.

n3 That the Court considered this matter separately as part of the jury instruction conference demonstrates that the present motion involves different issues and was not encompassed by the ruling on priority dates.

n4 In *Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 142 L. Ed. 2d 261, 119 S. Ct. 304 (1998)*, the U.S. Supreme Court prescribed a test for determining when the "on-sale" bar renders patents invalid. This will be discussed in greater detail below.

[*23]

The true substance of this motion involves application of the "on-sale bar" to the critical date of May 19, 1981. In October 1979, Benghiat sold an unpatented Meterlog device to the City of Moorhead, Minnesota. Itron claims that because this sale occurred more than one year before the critical date, the "on-sale bar" applies and the '456 Patent is therefore invalid. Benghiat argues that the on-sale bar does not apply. He notes that after agreeing to sell his unpatented Meterlog to Moorhead, he developed the device further, and the device that was ultimately delivered to Moorhead was the patented Meterlog described in the '456 Patent. This delivery was less than one year before the critical date of May 19, 1981.

In rejecting Itron's proposed jury instruction at trial, the Court found insufficient evidence that the device offered to Moorhead in 1979 contained the patented features of the '456 Patent. Itron now argues that this was incorrect. However, Itron provides little evidence to support its contention. Itron essentially argues that because Benghiat offered a device in 1979 and delivered a device in 1981, the on-sale bar applies. However, Itron does not rebut Benghiat's showing [*24] that the device offered in 1979 was not the same one that was delivered in 1981.

This motion is governed by the U.S. Supreme Court's ruling in *Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 142 L. Ed. 2d 261, 119 S. Ct. 304 (1998)*. In that case, the Court held that [HN10] the on-sale bar is triggered when: (1) the patented invention is the subject of a "commercial offer for sale;" and (2) the invention is ready for patenting. *525 U.S. at 67*. The parties agree that Benghiat made a commercial offer for sale in 1979. They disagree, however, over whether the device offered for sale was the invention disclosed in the '456 Patent. To satisfy the *Pfaff* test, "the invention that is the subject matter of the offer for sale must satisfy each claim limitation of the patent." *Scaltech, Inc. v. Retec/Tetra, LLC., 269 F.3d 1321, 1329 (Fed. Cir. 2001)*. The Court now reaffirms its previous conclusion that Itron has presented virtually no evidence that the device offered to Moorhead in 1979 contained all the claim limitations of the '456 Patent.

At trial, Benghiat testified that after he sold his unpatented Meterlog device to Moorhead, he began building [*25] a production unit for his customer. (*See* Trial Tr. at 165.) In doing so, Benghiat developed what he felt was a better device. Benghiat testified that this device was "totally different" than that which was offered for sale to Moorhead. Benghiat ultimately delivered this device - which became the subject of the '456 Patent-to Moorhead. (*Id.* at 186.) Itron offered no evidence to rebut this testimony at trial. It merely rested, as it does here, on the fact that the invoice number for Benghiat's 1979 sale is the same as for the 1981 delivery. The Court finds this insufficient for a reasonable jury to conclude that the device sold in 1979 was the same one delivered in 1981. Even more harmful to Itron's argument, Itron does not contest that Benghiat made changes to the device between 1979 and 1981. The law is clear that where there are "additional developments" in the invention after the offer for sale, the on-sale bar does not apply. *Pfaff, 525 U.S. at 68 n.14*; *Space Sys./Loral, Inc. v. Lockheed Martin Corp., 271 F.3d 1076, 1081 (Fed. Cir. 2001)*. Because Itron cannot satisfy the first *Pfaff* prong, there is no need to consider the second. The [*26] Court therefore concludes that it properly excluded Benghiat's prior devices from the jury's consideration. Itron's motion for a new trial is without merit and therefore will be denied.

## VII. Itron's Motion for New Trial In Light of Legal Errors Committed in Opening Statement and Closing Argument

In this motion, Itron argues that it deserves a new trial because of prejudicial statements made in opening and closing statements by Benghiat's trial counsel, David Bohrer ("Bohrer"). Specifically, Itron contends that Bohrer improperly referred to settlement negotiations, misstated aspects of patent law, and generally confused the jury so much that it improperly found infringement on two patent claims. Itron claims that these statements caused sufficient prejudice to warrant a new trial.

[HN11] Statements made in counsel's argument warrant reversal only if they are "plainly unwarranted and clearly injurious." *Stemmons v. Missouri Dept. of Corr., 82 F.3d 817 at 821 (8th Cir. 1996)* (citation omitted). Reversal is inappropriate "when the error is harmless and did not affect the substantial rights of the parties." *Id.* (quoting *Williams v. Fermenta Animal Health Co., 984 F.2d 261, 266 (8th Cir. 1993))*. [*27] To demonstrate that reversal is warranted here, Itron must "make a concrete showing of prejudice" resulting from Bohrer's argument. *Vanskike v. Union Pac. RR Co., 725 F.2d 1146, 1149 (8th Cir. 1984)*.

### A. References to "Settlement Negotiations"

During his opening and closing statements, Bohrer referred to a meeting that took place between Benghiat and counsel for Itron before this lawsuit was filed ("the meeting"). According to Benghiat, the meeting was ostensibly set up at Itron's behest, to gather information about infringement and validity of the '456 Patent. In his opening statement, Bohrer stated that at the meeting, Itron's counsel showed Benghiat a lawsuit that was ready to file, and threatened to sue unless Benghiat sold his patent to Itron for a sum of money. (*See* Trial Tr. at 69.) According to Bohrer, Itron further threatened that the offered price would be reduced for each dollar in legal fees Itron spent on the lawsuit. (*Id.* at 70.)

Itron's counsel objected more than once during Bohrer's opening statements, arguing that this information was inadmissible evidence of settlement negotiations under *Rule 408 of the Federal Rules of Evidence.* [*28] n5 The Court overruled these objections, noting that Itron's counsel could explain his version in his opening statement. (*See id.* at 69.) Itron later moved to exclude this evidence, and also for a mistrial on the basis that Bohrer's statements unduly prejudiced the jury. The Court denied these motions, finding that Bohrer's statements were admissible as evidence of willful infringement, and that the jury could properly consider such evidence as part of its willfulness determination. (*Id.* at 290-92.) *See In re Hayes MicroComputer Prod. Patent Lit., 982 F.2d 1527, 1543 (Fed. Cir. 1992)* (holding that jury is free to consider alleged infringer's behavior as party to the litigation as part of the totality of the circumstances when determining willful infringement). In his closing argument to the jury, Bohrer again referenced Itron's threat to sue during the meeting, but Itron's counsel made no objections.

n5 [HN12] *Rule 408* bars evidence of "conduct or statements made in compromise negotiations." *Fed. R. Evid. 408*. However, the rule does not exclude such evidence when offered for another purpose. *Id.*

[*29]

Itron now claims that all of Bohrer's remarks about the meeting were improper under *Rule 408*. Itron makes the same arguments it did at trial, but does not rebut the Court's previous conclusion that these statements are admissible to prove Benghiat's claim of willful infringement. The Court reaffirms its earlier ruling, and finds that Bohrer's statements about the meeting do not merit a new trial because they were neither unwarranted nor clearly injurious to Itron's case. *See Morrissey v. Welsh Co., 821 F.2d 1294 at 1303 (8th Cir. 1987).*

**B. Misrepresentations of Law**

Itron next alleges that during his closing argument, Bohrer twice misrepresented critical legal elements of the case. First, Itron claims that Bohrer told jurors that they "did not need to concern themselves with the claim limitations that were not expressly construed by the Court." (Itron Br. at 4.) Itron specifically refers to the claim limitation "data memory means containing account files." n6 This is the statement at issue:

> You heard [Itron's counsel] Mr. Skaar talk about containing, the infamous milk jug discussion with [Benghiat's expert] Mr. Bloomstein. You will search in vain [*30] for the word "containing" in this claims chart. It's not there in the words that have been construed by the Court for you to apply.

(Trial Tr. at 1559.) This statement is true. The claim that Bohrer discussed, which had the word "containing," did not appear in the Court's claim construction chart, because the Court never gave that claim special meaning. It was among the claim limitations that the Court told the jury to give a plain and ordinary meaning. (*See* Jury Instr. No. 15.) As the transcript reveals, Bohrer never told the jury that it did not need to apply this claim; he merely stated that the Court did not construe the word "containing." The Court thus finds that Bohrer's closing argument did not misrepresent the law in this respect.

n6 As discussed above, the Court has rejected Itron's contention that the jury had no basis to find direct infringement of this claim.

Second, Itron argues that Bohrer told the jury that they could determine infringement solely on the basis of functional equivalence, [*31] without considering structural equivalence. This would clearly be a misstatement of law, but the record again demonstrates that Bohrer made no such assertion. Itron points to this statement, which Bohrer made while explaining means-plus-function claims:

> You could have a patent on how to attach a table leg to a table top and you could describe a table top, a table leg and some glue, and those would be three elements: the glue, the table leg and the table. The law also allows people to claim a means for attaching the table leg to the table, which would mean that instead of glue, **anything that would perform that function of attaching the leg of the table to the table to would satisfy that means-plus-function claim.**

(Trial Tr. at 1557) (emphasis added). This statement, standing completely on its own, could be misleading to a jury. However, Itron ignores the very next statements that Bohrer made to the jury, in which he explained that both structural equivalence and functional equivalence are needed to find infringement. n7 Therefore, the Court finds that Bohrer did not misstate the law on this subject.

n7 Bohrer stated:

> The law says you can have literal infringement where there's identical or equivalent structure, where the means by which those keys are put on the keyboard is identical to what's described in the patent or equivalent.
>
> So, a column for literal infringement, which would get **identical function and identical structure or identical function and equivalent structure.**

(Trial Tr. at 1558.)

[*32]

Even if Bohrer did misstate the law on these or other matters, Itron's motion would still fail because the Court's instructions properly stated all applicable law. The Court explicitly instructed the jury that if "any difference appears to you between the law as stated by the lawyers and the law as stated by the Court in these

instructions, you must follow the Court's instructions." (Jury Instr. No. 1.) This instruction would cure any misstatements of law by Bohrer, so Itron's motion fails on this ground.

**C. Misconduct**

Finally, Itron notes that portions of the jury's verdict are contrary to the testimony of Benghiat's expert Bloomstein, and therefore Bohrer must have misled the jury. Even if Itron's other allegations in this motion were well-founded, Itron would have difficulty showing a connection between any "misconduct" and the jury's verdict. However, the Court has determined that Bohrer committed no misconduct, and that the statements at issue were truthful and non-misleading when viewed in context. Therefore, Itron cannot rely on Bohrer's statements to explain any incongruity between Bloomstein's testimony and the jury's verdict.

Even if Itron could establish some misconduct [*33] by Bohrer, it has not demonstrated any prejudice. Itron complains that the jury found that Itron's Premierplus4 software infringed Claim 1 of the '456 Patent, and that the Enterprise software infringed Claim 22. However, the jury also determined that both the Premeirplus4 and Enterprise software products infringed other claims of the '456 Patent. Therefore, even if Itron's arguments on this motion are true, Itron cannot escape a verdict of patent infringement for those products, and accordingly would suffer no prejudice.

For these reasons, the Court denies Itron's motion for a new trial based on Bohrer's statements.

**VIII. Itron's Motion to Deny Permanent Injunction or Stay Entry of Judgment and Benghiat's Motion for Permanent Injunction**

Because the jury found that Itron infringed his valid patent, Benghiat seeks a permanent injunction barring infringement pursuant to *35 U.S.C. § 283*. Itron has also filed a motion requesting that Benghiat not be granted an injunction. The Court considers these two motions together.

**A. Whether Injunction is Warranted**

[HN13] The decision whether to grant an injunction under this statute is discretionary, but courts [*34] generally grant injunctions when infringement has been found unless there is a "sound reason" not to do so. *Richardson v. Suzuki Motor Co., Ltd., 868 F.2d 1226, 1247 (Fed. Cir. 1989)*. This is because it would be "contrary to the laws of property ... to deny the patentee's right to exclude others from the use of his property." *Id. at 1246-47*.

Itron argues that despite the jury's verdict, it should be permitted to continue making and selling its infringing products. Itron states that it is willing to financially compensate Benghiat for this continuing infringement, and that such payments will sufficiently compensate Benghiat for the loss of his exclusive patent rights. Itron's arguments rest on its proposition that Benghiat will not be harmed if he receives sufficient monetary compensation, but this argument contradicts established law. [HN14] "In a patent infringement case, where the infringing device will continue to infringe and thus damage [the patentee] in the future, monetary damages are generally considered to be inadequate." *Schneider (Europe) AG v. Scimed Life Sys., Inc., 852 F. Supp. 813, 861 (D. Minn. 1994). See Richardson, 868 F.2d at 1247* [*35] ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement."); *Atlas Powder Co. v. Ireco Chemicals, 773 F.2d 1230, 1233 (Fed. Cir. 1985)* (holding that monetary relief does not necessarily compensate patentees for future infringement). Because the jury has found infringement in this case, the Court finds that an injunction is needed, not to punish Itron, but to protect Benghiat's exclusive rights to the '456 Patent.

**B. Stay of Injunction**

Itron's motion asks the Court to stay the injunction pending appeal, pursuant to *Rule 62(c) of the Federal Rules of Civil Procedure.* [HN15] The Court must consider four factors in exercising its discretion whether to stay the injunction: (1) whether Itron has made a "strong showing" that it will likely succeed on the merits; (2) whether Itron will be irreparably injured absent a stay; (3) whether a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Standard Havens Prod., Inc. v. Gencore Indus., Inc., 897 F.2d 511 at 512 (Fed. Cir. 1990)*; *Maxwell v. J. Baker, Inc., 879 F. Supp. 1012, 1013 (D. Minn. 1995)*, [*36] *rev'd on other grounds, 86 F.3d 1098 (Fed. Cir. 1996)*; *MMM v. Johnson & Johnson Orthopaedic Inc., 1991 U.S. Dist. LEXIS 20320, 22 U.S.P.Q.2d 1401, 1415 (D. Minn. 1991). See E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987)* (holding that in considering whether to grant a stay pending appeal, a court assesses the movant's chances for success on appeal and weighs the equities as they affect the parties and the public).

Upon considering the four factors and balancing the equities of this case, the Court determines that no stay should issue. First, Itron has not demonstrated a strong showing that it will likely succeed on the merits of its appeal. The Court has denied all of Itron's post-trial motions, many of which are the bases for Itron's appeal.

(*See* Itron Br. Supporting Motion to Deny Injunction at 1-2, 4-7.) Most of these arguments have already been rejected several times in this case, and the Court sees no compelling reason why they will likely succeed on appeal.

Second, the Court finds that Itron will not be irreparably harmed by a stay. Itron argues that it will [*37] be harmed because a stay will prevent it from "any further sales of the infringing devices for the pendency of the appellate process." (*Id.* at 7-8.) In other words, Itron will be harmed because it can no longer infringe upon Benghiat's exclusive patent rights. The Court finds Itron's allegations of harm incongruous with its assertions that, as of February 2003, it had redesigned all of its current products so as to avoid risking "any disruption to the flow of products to [its] customers." (Morton 7/28/03 Aff. Ex. A.) Even if Itron were to suffer some harm due to the injunction, however, this would not be reason to grant a stay. The Federal Circuit has held that [HN16] where a party has chosen to infringe upon a patented product, the party "cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). See Howes v. Med. Components, Inc., 741 F. Supp. 528, 534* & n.6 (E.D. Pa. 1990) (holding that infringer would not be irreparably harmed by stay even though it would lose its market share for relevant product). Here, Itron [*38] has not suggested that an injunction would destroy its business, but merely that it would lose some market share and suffer other harm. Given the jury's verdict of willful infringement and the Court's finding that Itron is not likely to succeed on appeal, the Court finds Itron's potential harm insufficient to justify staying the injunction.

Third, the Court finds that Benghiat will be substantially injured in the absence of a stay. Itron claims that a stay will not harm Benghiat, but its argument rests on the flawed assumption that Benghiat's "primary interest lies in receiving fair compensation for Itron's infringing sales rather than preventing Itron from practicing the patent." (Itron Br. Supporting Motion to Deny Injunction at 9.) This argument ignores the effect of the jury's verdict, which recognized Benghiat's exclusive right to do with the '456 Patent as he pleases. *See H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 390 (Fed. Cir. 1987)*, *rev'd on other grounds, Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995)* ("The principal value of a patent is its statutory right to exclude.") It is therefore Benghiat's [*39] prerogative - not Itron's - to decide where his "primary interest" lies.

Itron also mistakenly argues that the '456 Patent's short remaining duration somehow supports granting a stay. n8 On the contrary, the Court must presume that Benghiat suffers irreparable harm in part **because** his patent has a finite term. "The opportunity to practice an invention during the notoriously lengthy course of patent litigation may itself tempt infringers." n9 *Id.* Although it is unlikely that Benghiat will commercialize his invention during the duration of his patent, he certainly has the right to do so. More important, Benghiat has the exclusive right to license his patent. Permitting Itron to continue infringing at a non-negotiable royalty rate throughout the appeals process harms Benghiat in the first instance, and it causes further harm by likely impinging Benghiat's negotiating position with other infringers or potential licensees. This type of damage cannot be adequately measured in dollars, and is precisely the type of harm that the patent laws seek to prevent.

n8 Itron provides no support for this assertion, relying upon cases that are inapposite here. *See Joy Tech., Inc. v. Flakt, Inc., 6 F.3d 770, 773, 777 (Fed. Cir. 1993)* (vacating injunction that enjoined actions that did not violate rights secured by the patent); *Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 1549 (Fed. Cir. 1987)* (denying injunction and finding that monetary relief was sufficient where patent-holder did "not contend that it sought any damages other than lost profits," or that such an award would not fully compensate it). [*40]

n9 The Court notes that this litigation has been in progress for nearly four and one-half years, since March 1999.

It bears repeating that [HN17] "the principal value of a patent is its statutory right to exclude." *Id.* Staying an injunction and allowing Itron to continue infringing through a lengthy appeals process would destroy the value of Benghiat's patent rights. The Court therefore finds that a stay would substantially harm Benghiat.

Finally, the Court finds that in this case, the public interest lies in protecting Benghiat's exclusive patent rights. [HN18] "Protecting patents from would-be infringers is always acting in the public interest." *Schneider, 852 F. Supp. at 861* (citation omitted). Itron contends that in this case, an injunction could possibly disrupt the business of public utilities that use Itron's infringing devices. Itron also argues that an injunction is against the public interest because Benghiat is not

commercializing his invention. These arguments are without merit.

Itron is correct that [HN19] "the focus of the district court's public interest analysis should be whether [*41] there exists some critical public interest that would be injured" by an injunction. *Hybritech Inc. v. Abbott Labs., 849 F.2d 1446, 1458 (Fed. Cir. 1988)*. However, only in "rare instances" do courts deny injunctive relief to protect the public interest. *Rite-Hite Corp. v. Kelley Co, Inc., 56 F.3d 1538, 1547 (Fed. Cir. 1995)* (holding that courts need not enjoin infringement where a patentee's failure to practice a patented invention frustrates an "important public need" for the invention). Courts have found that patent rights trump the public interest even where the patented products are beneficial medical devices. *See Schneider, 852 F. Supp. at 861*; *Hybritech, 849 F.2d at 1458* (affirming district court's decision that patent rights outweighed public benefit of some medical test kits). Itron's claim that some public utilities may suffer disruptions or higher costs is far from enough to show that the public interest favors Itron's infringement over Benghiat's patent rights. The Court therefore finds that the public interest favors granting an injunction.

The Court finds that all the factors clearly weigh against [*42] staying an injunction. Itron's motion for a stay will therefore be denied.

**C. Scope of Injunction**

Benghiat seeks an extremely broad injunction. The Court believes that Benghiat is entitled to an injunction that protects his exclusive patent rights, but some of Benghiat's requests are not necessary.

At a minimum, the injunction must prohibit infringement, induced infringement, and contributory infringement of Claims 1, 20, and 22 of the '456 Patent, and the Court will enter an order to this effect. The Court will also enjoin Itron from manufacturing, using, selling, or licensing any of the products-in-suit. n10 The Court will not order, however, that Itron be permanently barred from "repairing or servicing" any of its infringing products, as Benghiat requests. By paying the damages that it owes in full, Itron will receive an implied license on its past infringing sales. *King Instrument Corp. v. Otari Corp., 814 F.2d 1560, 1564 (8th Cir. 1987)*. [HN20] This license "extends throughout the useful life of those machines and permits the licensee to provide its customers with spare parts needed for repairs." *Id. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 345-46, 5 L. Ed. 2d 592, 81 S. Ct. 599, 1961 Dec. Comm'r Pat. 635 (1961)* [*43] (holding that a licensee may replace individual unpatented parts to preserve its fitness for use so long as such replacement does not constitute wholesale reconstruction that makes "a new article"). Thus, because Itron will pay the award of damages, it may repair and service its previously-sold infringing devices. n11 The Court's injunction will also ensure that Benghiat will not receive "double recovery," by providing that the injunction applies only to those sales not already calculated as part of the damage award or the forthcoming accounting discussed in Part IX of this Memorandum.

n10 Benghiat requests language that Itron also be enjoined from selling, using, manufacturing, or licensing devices that are "no more than merely colorably different" from the patented devices. (Proposed Order for Permanent Injunction P 2.) This language correctly states the standard, derived from case law, for evaluating whether a device violates an injunction. The Court feels, however, that such language is not necessary in the order itself. The Court will explicitly order that Itron must not infringe upon the '456 Patent, and the Court expects that Itron will comply in good faith with the injunction. The Court therefore finds it unnecessary to include Benghiat's requested language. [*44]

n11 Itron argues that it should not be subject to any restrictions on use of its already-sold devices, citing the "patent exhaustion" doctrine discussed in *Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700 (Fed. Cir. 1992)*. However, that case and the doctrine it discusses are inapposite here. In *Mallinckrodt,* the Federal Circuit considered a patentee that had sold its patented devices to hospitals, accompanied with a notice that the devices were for a "single use only." *Id. at 701*. The hospitals later delivered the devices to a third party for servicing that enabled the hospitals to use the devices again. *Id.* The court held that the patent exhaustion doctrine did not apply, and that it did not bar patentees from placing restrictions on the sale of their patented articles. *Id. at 706-08*. The court discussed a line of cases in which patentees sold their patented articles, sometimes with conditions and sometimes without. *Id.* Only where the patentees sold their articles completely without conditions did the patentee "part with all his exclusive right." *Id. at 707* (quoting *Keeler v. Standard Folding Bed Co., 157 U.S. 659, 663, 39 L. Ed. 848, 15 S. Ct. 738, 1895 Dec. Comm'r Pat. 294 (1895))*.

*Mallinckrodt* does not apply here because Benghiat made no unconditional sale to Itron. At

most, Itron gains a limited license to its infringing products by paying the jury's damage award. *See King Instrument Corp. v. Otari Corp., 814 F.2d 1560, 1564 (8th Cir. 1987)*. A patent licensee, unlike an unrestricted purchaser, may be held to restrictions or sued for patent infringement if he violates the express conditions of the license. *Mallinckrodt, 976 F.2d at 707-08* (citing *Providence Rubber Co. v. Goodyear, 76 U.S. (9 Wall.) 788, 19 L. Ed. 566 (1870)* and *American Cotton-Tie Co. v. Simmons, 106 U.S. 89, 27 L. Ed. 79, 1 S. Ct. 52, 1882 Dec. Comm'r Pat. 507 (1882))*. Therefore, the relevant authorities, including those Itron cites, supports the Court's power to impose restrictions upon Itron's use of patented devices.

[*45]

Benghiat also asks that Itron be required to provide extensive information and documentation regarding its "designed-around" products, which are purportedly designed not to infringe upon the '456 Patent. The Court finds such restrictions inappropriate. In both cases upon which Benghiat relies to support his proposal, the infringers had already flagrantly violated injunctions. *See Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft, 903 F.2d 1568, 1577 (Fed. Cir. 1990)* (justifying broad and restrictive injunction based on defendant's "repeated and flagrant violations" of the district court's injunction); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 1994 U.S. Dist. LEXIS 19750, Civ. A. No. H-90-1554, 1994 WL 749595* at ** 11-13 (S.D. Tex. Jul. 12, 1994) (applying restrictions to infringer in civil contempt action after party violated court's injunction from patent action). Here, Itron is clearly aware of the '456 Patent and has attempted to design around it. (*See* Morton 7/28/03 Aff. Ex. A.) There is absolutely no evidence that Itron's newly designed devices infringe. The Court therefore declines to impose Benghiat's proposed [*46] reporting requirements.

Finally, Benghiat seeks to have all existing infringing devices that are not considered in the damage calculation collected and destroyed, or else stored pending appeal. The Court sees no need for such a punitive measure, and declines to adopt it.

**IX. Benghiat's Motion for Accounting of Previously Unaccounted For Infringing Sales**

Benghiat has moved for an accounting of certain Itron sales that were not specifically described at trial. Itron concedes that Benghiat is entitled to an accounting for sales that occurred beginning January 1, 2003, but does not agree that Benghiat is entitled to an accounting for Itron's infringing sales that took place between July 1, 2002 and December 31, 2002 (the "six-month period"). Itron did not submit a detailed accounting of sales during the six-month period at trial. The parties do not dispute that Benghiat is entitled to damages for the six-month period, but they disagree over whether the jury's award took this period into consideration.

At trial, Benghiat's damages expert, Peter Medchill ("Medchill"), testified that Itron's total infringing sales between April 23, 1993 and June 30, 2002 amounted to $ 148,141,000. [*47] Medchill then stated that this calculation did not encompass sales for the six-month period. (*See* Trial Tr. at 886.) Medchill explained his calculations based on the sales information provided, and opined that Benghiat was entitled to $ 11,325,195 in damages, n12 plus an amount for the final six-month period. (*Id.* at 887.) Exact numbers for these damages were not available, but Medchill estimated them at "somewhere in the range of $ 500,000 for the second half of 2002." (*Id.* at 886.)

n12 This number was based on a royalty rate of 5.25%. (Trial Tr. at 878.)

Itron argues that evidence of damages for the six-month period was thus clearly presented to the jury, and that the jury's award should be construed as including that period. Benghiat claims that he is entitled to an accounting because specific damage amounts were not submitted to the jury. In support, Benghiat notes that the ultimate amount of damages awarded ($ 7,407,050) represents five percent n13 of Itron's sales from April 1993 through June [*48] 2002 ($ 148,141,000), an amount that excludes the last six months of 2002. Benghiat thus concludes that the jury must not have calculated damages for the six-month period.

n13 The parties agree that the jury appears to have applied a five percent royalty rate in determining damages.

[HN21] Courts "routinely grant motions for further accounting" where the jury did not consider certain periods of infringing activity. *See, e.g., Stryker v. Davol, Inc., 75 F. Supp. 2d 746, 747 (W.D. Mich. 1999)* (granting motion for accounting of infringing activities during period after the jury's verdict); *Maxwell v. J. Baker, Inc., 879 F. Supp. 1007, 1011 (D. Minn. 1995), rev'd on other grounds, 86 F.3d 1098 (Fed. Cir. 1996)* (finding that plaintiff was entitled to accounting for sales during period not considered by the jury); *Mikohn Gaming Corp. v. Acres Gamin, Inc., 2001 U.S. Dist.*

*LEXIS 23416 at ** 52-54, Nos. CV-S-97-1383, CV-S-98-1462 (D. Nev. Aug. 1, 2001)* (noting [*49] that "accountings appear to be standard practice," based on authorities in which accountings were granted for periods not considered by juries). The Court finds that this is such a case.

Itron disagrees, arguing that Medchill's speculation on the amount of damages for the six-month period means that the jury included his $ 500,000 estimate in its damage calculation. The Court finds this an unreasonable interpretation of the jury's verdict. At trial, Medchill plainly stated that sales for the six-month period should be included in the jury's damage calculation, but he noted that unlike the period between April 23, 1993 and June 30, 2001, there was no specific data about the sales. Medchill's testimony thus focused on the details of infringing sales that were provided. (*See* Trial Tr. at 878-886.) The jury's verdict mirrored Medchill's calculation, albeit with an evidently different royalty rate. Given Medchill's detailed testimony on damages for 1993 through June 2001, and his bare treatment of the six-month period, n14 the Court concludes that the jury was not presented with sufficient evidence from which to determine damages for infringement between July 1, 2002 and December 31, 2002. Accordingly, [*50] the Court will grant Benghiat's motion for an accounting for the period beginning July 1, 2002, running through the duration of infringement. To avoid potentially unnecessary expenditures of time and money in preparing such an accounting, however, the Court will stay this order pending resolution of all appeals in this case.

n14 Medchill stated that damages for the six-month period would be "additional damages," but noted that "without having exact numbers, you'd have to assume" what the specific amount would be. (*Id.* at 886.)

**X. Benghiat's Motion for Prejudgment Interest**

Benghiat seeks an award of prejudgment interest pursuant to *35 U.S.C. § 284*. [HN22] It is well established that "prejudgment interest should be awarded under *§ 284* absent some justification for withholding such an award." *GMC v. Devex Corp., 461 U.S. 648, 657, 76 L. Ed. 2d 211, 103 S. Ct. 2058 (1983)*. This is to comply with Congress's "overriding purpose of affording patent owners [*51] complete compensation" for infringement. *461 U.S. at 656*. The only recognized reason to withhold prejudgment interest is where "the patent owner has been responsible for undue delay" in enforcing its patent rights. *Id. at 657*; *Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 791 (Fed. Cir. 1990)*. However, withholding prejudgment interest based on delay "is the exception, not the rule." *Lummus Indus., Inc. v. D.M.&E. Corp., 862 F.2d 267, 275 (Fed. Cir. 1988)*; *Maxwell, 879 F. Supp. at 1009*.

Itron argues that the Court should not award prejudgment interest because Benghiat unduly delayed in bringing suit and thus caused Itron prejudice. This Court recently denied Itron's claim for laches, explicitly finding that Benghiat's delay in asserting his patent rights was reasonable, and that Itron suffered no material prejudice. See*Itron v. Benghiat, 2003 U.S. Dist. LEXIS 10391*, Civ. No. 99-501, [WL] at ** 5, 7 (D. Minn. June 16, 2003). Itron claims to recognize this holding, but maintains that interest should be withheld. The Court's laches determination completely refutes Itron's argument. *See Lummus Indus., 862 F.2d at 275* [*52] (holding that district court's finding of no laches undermined argument that prejudgment interest should be denied); *Maxwell, 879 F. Supp. at 1009* (holding that rejection of laches defense requires rejection of defendant's attempt to deny prejudgment interest). Therefore, the Court will award prejudgment interest.

[HN23] In determining the amount of interest, the general rule provides that Benghiat should be placed in "as good a position as he would have been had [Itron] entered into a reasonable royalty agreement." *GM, 461 U.S. at 655*; *Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 556 (Fed. Cir. 1984)*; *Schneider, 852 F. Supp. at 860*. The "normal procedure" is to award prejudgment interest from the date of infringement to the date of payment. *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 967 (Fed. Cir. 1986)*. The Federal Circuit has held that only such a calculation can comply with Congress's mandate that patent owners receive complete compensation. n15 *Id.* Accordingly, the Court will award prejudgment interest as of the first date of infringement, April 23, 1993. [*53]

n15 Itron cites one case in support of awarding damages as of a later date. *See Kansas v. Colorado, 533 U.S. 1, 150 L. Ed. 2d 72, 121 S. Ct. 2023 (2001)*. This case is inapposite because it is not a patent case and therefore does not implicate the purposes of *35 U.S.C. § 284*. Moreover, the Supreme Court awarded interest in *Kansas v. Colorado* only because of an exceptional delay in determining damages. *See 533 U.S. at 15-16*.

This leaves the appropriate method of calculating interest. These matters, including the rate and whether to compound interest, are left largely to the Court's

discretion. *Id. at 969*. Benghiat argues that the Court should apply the short-term prime rate, while Itron contends that a more appropriate measure is the U.S. Treasury Bill rate. Each rate has its merits, and there is ample case law supporting the Court's discretion to choose either one. *Compare, e.g., H.B. Fuller Co. v. Nat'l Starch & Chem. Corp., 689 F. Supp. 923, 953-54 (D. Minn. 1988)* [*54] ("The Court is free to fix the appropriate interest rate and may select an award at the prime rate"), *with Laitram Corp. v. NEC Corp., 115 F.3d 947, 955 (Fed. Cir. 1997)* (holding that district court did not abuse its discretion in finding that Treasury Bill rate would adequately compensate plaintiff). The Court finds that in this case, the Treasury Bill rate will sufficiently compensate Benghiat for the royalties he lost over the period of infringement. See *Ecolab, Inc. v. Gardner Mfg. Co., Inc., 2003 U.S. Dist. LEXIS 821, Civ. No. 98-2294, 2003 WL 1856434* at *1 (D. Minn. Apr. 9, 2003) (applying the average Treasury Bill rate over the period of infringement). Although Benghiat's proposal for using the short-term prime rate would certainly give him a greater return, Benghiat has presented no evidence that the Treasury Bill rate will not sufficiently compensate him. *See Laitram, 115 F.3d at 955*; *Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 829 (Fed. Cir. 1989)* (finding that Treasury Bill rate would adequately compensate patentee).

The Court finds that calculation method recently employed by a Court in this District is also reasonable and fair [*55] in this case. *See Ecolab, 2003 U.S. Dist. LEXIS 821,* [WL] at *1. In that case, the court applied the Treasury Bill rate, taking into account the number of infringing sales per year. *Id.* As in *Ecolab,* this Court finds that compounding interest annually based upon each year's infringing sales provides Benghiat with fair and sufficient compensation for Itron's infringement.

Accordingly, after studying the parties' proposed methods and arguments, the Court finds that prejudgment interest should be awarded to Benghiat according to the following method. Interest shall be awarded for infringement during the period beginning April 23, 1993, and running through the date of this Order. Interest shall be calculated using the average U.S. Treasury Bill rate during that same period and, as in *Ecolab,* shall be compounded annually based upon the actual number of infringing sales in each year. *See id.* The number of sales shall be based upon the sales figures submitted by Itron at trial, plus the figures to be determined in the accounting that the Court will order for the period since July 1, 2002. *See supra* Part IX.

Itron has submitted proposed interest calculations, but Benghiat [*56] has not done so, focusing his argument exclusively on the appropriate methodology. The Court has now arrived at a methodology, and interest will stop accruing as of the date of this Order and its accompanying injunction. The Court will order the parties to meet and confer to jointly arrive at a calculation of prejudgment interest according to the formula prescribed above. The Court will then amend its judgment to encompass the proper amount of interest.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

**1.** Plaintiff's Motion for Judgment as a Matter of Law of Non-Infringement [Docket No. 550] is **DENIED.**

**2.** Plaintiff's Motion for Judgment as a Matter of Law/New Trial that Claims 1, 20, and 22 of the '456 Patent are Invalid [Docket No. 556] is **DENIED.**

**3.** Plaintiff's Motion for Judgment as a Matter of Law or New Trial Regarding Direct Infringement [Docket No. 565] is **DENIED.**

**4.** Plaintiff's Motion for Judgment as a Matter of Law on Willful Infringement [Docket No. 559] is **DENIED.**

**5.** Plaintiff's Motion for Judgment as a Matter of Law or New Trial Regarding Accrual Date for Inducement [*57] to Infringe Damages [Docket No. 553] is **DENIED.**

**6.** Plaintiff's Motion for a New Trial Because Itron Was Precluded From Making a *Pfaff*-Based Invalidity Argument to the Jury [Docket No. 568] is **DENIED.**

**7.** Plaintiff's Motion for New Trial In Light of Legal Errors Committed in Opening Statement and Closing Argument [Docket No. 562] is **DENIED.**

**8.** Plaintiff's Motion to Deny Permanent Injunction or, in the Alternative, Stay Entry of Judgment [Docket No. 571] is **DENIED.**

**9.** Defendant's Motion/Memorandum for Accounting for Previously Unaccounted-For Infringing Sales [Docket No. 575] is **GRANTED.** Itron shall provide a full accounting of all infringing sales from the period beginning July 1, 2002 running through the date of this Order. This order for accounting is **STAYED** pending resolution of appeals of this case to the United States Court of Appeals.

**10.** Defendant's Motion/Memorandum for Prejudgment Interest [Docket No. 574] is **GRANTED.** Prejudgment interest shall be calculated according to the formula prescribed in Part X of the Memorandum accompanying this Order. The parties shall meet and confer to arrive at a joint calculation [*58] according to this formula. Within 10 days of the date of this Order, the parties shall provide to the Court a joint letter setting

forth the correct calculation and amount of prejudgment interest to the date of this Order.

**IT IS FURTHER ORDERED THAT:**

**11.** Defendant's Motion for Permanent Injunction [Docket No. 577] is **GRANTED as follows:**

> a. As of the date of this Order, plaintiff Itron, Inc. ("Itron") and any related entities or persons, including its officers, agents and employees, and all those in privity with them, are prohibited from infringing, inducing others to infringe, or contributing to the infringement of *United States Patent No. 4,757,456* (the "'456 Patent") Claims 1, 20, and 22 under *35 U.S.C. § 271(a), (b), (c), or (f)*.
>
> b. As of the date of this Order, Itron and any related entities or persons, including its officers, agents and employees, and all those in privity with them, are prohibited from manufacturing, using, selling, or licensing any of the products-in-suit. The products-in-suit are: (1) Itron's PremierPlus4 family of software run on the T-Rex (G5), FS/3, FS/2, GPC, DCHI, and DCHII hardware; (2) Itron's MVRS family [*59] of software run on the T-Rex (G5), FS/3, FS/2, and DAP hardware; (3) Itron's Integrator family of software run on the FS/3 and FS/2 hardware; and (4) Itron's Enterprise family of software run on the FS/3 and FS/2 hardware.
>
> c. As of the date of this Order, Itron and any related entities or persons, including its officers, agents and employees, and all those in privity with them, are prohibited from receiving any additional compensation through the sale or licensing of any of the products-in-suit that were originally sold or licensed prior to the date of this Order.

**12.** The Clerk of Court is **DIRECTED** to enter judgment in favor of defendant Ralph Benghiat and against plaintiff Itron, Inc. pursuant to the jury's special verdict form [Docket No. 473].

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 29, 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM

United States District Judge