**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 74**

**WRITTEN DESCRIPTION**

**[Andersen Objects to the Following Instruction]**

A patent must contain a written description of the product claimed in the patent. In order to satisfy the written description requirement the patent must describe each and every limitation of a patent claim, although the exact words found in the claims need not be used.

If you find that Fiber Composites has proved by clear and convincing evidence that the patents-in-suit do not contain a written description of the invention covered by its claims, then you must find those claims invalid.

AUTHORITIES: *Purdue Pharma L.P v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000); *Lampi Corp. v. Am.Power Prods., Inc.*, 228 F.3d 1365, 1377-78 (Fed. Cir. 2000); *Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345-46 (Fed. Cir. 2000); *Union Oil, Co. of Ca. v. Atl. Richfield Co.*, 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Sun Tiger Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1344 (Fed. Cir. 1999); *Tronzo v. Bioment Inc.*, 156 F.3d 1154, 1158-60 (Fed. Cir. 1998); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-80 (Fed. Cir. 1998); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

SOURCE: The Federal Circuit Bar Association Draft Model Patent Jury Instructions §10.2.

## [ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 75

**[Andersen objects to an enablement instruction. To the extent that an enablement instruction is given, Andersen proposes the following text:]**

## ENABLEMENT

Fiber Composites contends that the Deaner patents are invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or specification portion of a patent be detailed enough to enable those skilled in the art to make and use the claimed invention. The inventors need not provide information that is commonly understood or is within the knowledge of one of ordinary skill in the art.

As with the other assertions of patent invalidity, Fiber Composites must prove by clear and convincing evidence that the Deaner patents are not enabled.

SOURCE: *Draft Uniform Jury Instructions for Patent Cases, District Court of Delaware, No. 4.3* (modified); *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996); *In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988).

## [FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 76

## ENABLEMENT

**[Andersen Objects to the Following Instruction]**

A patent specification is required to be written in such a way that one skilled in the art could read it, and without undue experimentation, make the claimed invention. If the specification is not written in a way that would allow someone skilled in the art to do that, the patent is not valid.

AUTHORITY: 35 USC § 112, 1; *Lindemann Machinenfabrik GMBH v. American Hoist & Derrick Co.*, 730 F.2d 1452, 1463 (Fed. Cir. 1984).

**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 77**

**INOPERATIVE EMBODIMENTS**

**[Andersen Objects to the Following Instruction]**

One aspect of the enablement requirement is whether or not the claims cover a significant number of inoperative embodiments. If they do, undue experimentation may be involved to make the operative ones, and that would render the claims invalid, unless the specification clearly identified the inoperative embodiments.

AUTHORITIES: *Atlas Power Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1587 (Fed. Cir. 1984); *In re Cook*, 439 F.2d 730, 735 (CCPA 1971).

**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 78**

**CLAIM SCOPE UNDER 35 U.S.C. § 112(2)**

**[Andersen Objects to the Following Instruction Because This Is an Issue of Law. If the Court seeks an advisory ruling from the jury, Andersen reserves the right to offer an instruction.]**

The claims of a patent must particularly point out and distinctly claim the invention. This allows others to determine what is infringing and what is not. This also means that the claim must have a clear and definite meaning and not be overly broad. A claim may be no broader than the supporting specification. If a claim is not clear and definite, or if it is overly broad, it is invalid.

AUTHORITIES: 35 USC § 112, 1, 2; *Gertz Gallery Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998); *Standard Oil Co. v. American Cyamid Company*, 774 F.2d 448, 452 (Fed. Cir. 1985); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978-9 (Fed. Cir. 1995) (en banc).

## [ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 79

## DAMAGES

**[Fiber Composites Objects to the Following Instruction]**

As I have already informed you, I have already ruled that Fiber Composites' products with 30% or more of wood-fiber weight literally infringe all of the asserted claims of the Deaner patents. You must consider the question of the amount of damages to which Andersen is entitled for infringement of the Deaner patents.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement. In this case, Andersen is seeking damages based on a reasonable royalty. Andersen must prove the amount of damages by a preponderance of the evidence.

SOURCE: 35 U.S.C. § 284 (2003); *Dow Chem. Co. v. Mee Indus.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003).

## [FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 80

## DAMAGES—GENERALLY

**[Andersen Objects to the Following Instruction]**

I have now instructed you as to the law governing Andersen's claims of patent infringement and Fiber Composites' claims of invalidity. I must now instruct you as to damages. The fact that I am instructing you about damages does not mean that Andersen is entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that you must decide the damages issue.

If you find that the patents are valid and Fiber Composites has infringed a valid claim of the patents-in-suit, then you must determine what damages Fiber Composites must pay to Andersen for that infringement. If, on the other hand, you find that Fiber Composites has not infringed a valid claim of the patents-in-suit, then Andersen is not entitled to any damages for any railing parts made using the post-January 1, 2001 formulas.

If you find the patents are invalid, you need not consider a second aspect of the damages question. But, if you do not find the patents invalid, you must compute the amount of damages Fiber Composites owes Andersen for the period starting from November 16, 2001 until Fiber Composites stopped selling its railing products made by its pre-January 1, 2001 formulas.

SOURCE: The Federal Circuit Bar Association Draft Model Patent Jury Instructions §12.

## [ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 81

## RESOLUTION OF DOUBTS

**[Fiber Composites Objects to the Following Instruction]**

If you find that infringement occurred, you must award all damages that can be proven with "reasonable certainty." Reasonable certainty does not require proof of damages with mathematical certainty. When the damages amount cannot be ascertained with precision, reasonable estimates based on inferences are permissible. While your determination of a reasonable royalty must not be based upon speculation or conjecture, doubts regarding the precise amount are to be resolved in favor of Andersen and against Fiber Composites.

Where it is impossible to make a mathematical or approximate apportionment between infringing and noninfringing items, the infringer, Fiber Composites, must bear the burden and the entire risk. Any adverse consequences must rest on Fiber Composites when the inability to ascertain damages is due to Fiber Composites' own failure to keep accurate or complete records. An adverse inference from any incomplete record keeping may be drawn against Fiber Composites.

SOURCE: Federal Jury Instructions 86-33 (modified); Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 33-34 (modified); *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *Coastal Fuels of Puerto Rico, Inc. v. Carribean Petroleum Corp.*, 175 F.3d 18, 47 (1st Cir. 1999); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996); *Lam Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988); *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 82**

**COMPENSATORY PATENT DAMAGES**

**[Andersen Objects to the Following Instruction]**

Patent damages may not be less than what a reasonable royalty would be for the use made of the invention by the infringer. These damages are only to compensate Andersen, to put it into the position it would have been in if Fiber Composites had not infringed. You may not add anything to the amount of damages to punish Fiber Composites, or to set an example.

AUTHORITIES: 35 U.S.C. § 284 (2001); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc).

SOURCE: The Federal Circuit Bar Association Draft Model Patent Jury Instructions §12.1.

## [ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 83

## REASONABLE ROYALTY AS A MEASURE OF DAMAGES

**[Fiber Composites Objects to the Following Instruction]**

Section 284 of Title 35, United States Code, provides that, in the case of infringement, the owner of the patent is entitled to an award of damages "adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer." A reasonable royalty as a measure of recovery is intended to provide a just recovery to the owner of an infringed patent. Since I have already found that Fiber Composites infringed every asserted claim of the Deaner patents, the minimum amount of monetary damages that you may award is a reasonable royalty. A reasonable royalty can include both a lump sum payment and a running royalty rate. In addition, you may find damages in excess of a reasonable royalty if you find that the facts so warrant to adequately compensate Andersen for Fiber Composites' infringement.

A reasonable royalty is the amount of money which the owner of a patent would accept, who is desirous of licensing another to use her patent in return for a royalty, but who is not forced by financial need or other compulsion to do so; and the amount which a person would be willing to pay as royalty, who is desirous of obtaining a license to use the invention, but who is not compelled to do so. In other words, a reasonable royalty is the amount which you find that two free and uncompelled and uncoerced bargainers would agree upon.

In determining a reasonable royalty, you are to imagine that a hypothetical negotiation took place between Andersen and Fiber Composites at or about the time Fiber Composites first infringed the patent. You must assume that Andersen was willing to grant a license and that Fiber Composites was willing to accept one. You must also assume that at the time of

negotiations, both parties believed the patent to be valid. You must then determine what royalty Andersen and Fiber Composites would have agreed upon after engaging in hypothetical negotiations.

In determining the result of such hypothetical negotiation, you may consider any relevant facts and events that occurred after the alleged infringement began, including the opinion testimony of experts, even though they would not have been known to the parties at the time of the hypothetical negotiation. Next, I will explain to you the factors you may consider in making your reasonable royalty determination.

SOURCE: Court's Summ. J. Order dated June 22, 2003 at 12. Jury instruction given in *Maxwell v. J. Baker, Inc.*, Civ. No. 4-90-941 (D. Minn. Oct. 13, 1993) (Doty, J.) Inst. No. 47 (modified); 35 U.S.C. § 284; *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1110 (Fed. Cir. 1996); *King Instruments Corp. v. Perego*, 65 F.3d 941, 951 n.2 (Fed. Cir. 1995); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983).

**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 84**

**REASONABLE ROYALTY**

**[Andersen Objects to the Following Instruction]**

Andersen is also asking for damages in the amount of a reasonable royalty for Fiber Composites' accused infringement of its patents.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make use of the patent invention.

AUTHORITIES: *State Industries, Inc. v. Mor-Flor Industries, Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989), *cert. denied*, 110 S. Ct. 725 (1990); *Georgia-Pacific Corp. v. United States Plywood Corp.*,318 F. Supp. 1116 (S.D.N.Y. 1970), *modified and aff'd sub nom., Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971); *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 533 F.2d 126, 129 (3d Cir. 1976); *Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 869-70 (Fed. Cir. 1993).

## [ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 85

## TIME OF HYPOTHETICAL NEGOTIATION, DAMAGES PERIOD, AND ROYALTY RATE

**[Fiber Composites Objects to the Following Instruction]**

The parties have stipulated that the hypothetical, arms-length negotiation in this case would have taken place in about August of 1998. The parties have further stipulated that for purposes of arriving at your damages verdict, you should consider Fiber Composites' sales and inventory from November 16, 2000 through December 31, 2000.

In reaching your verdict, you will decide upon a royalty rate percentage. This will be laid out for you in the special verdict form, which you will see in a few minutes. I will apply the royalty rate percentage you decide upon to any additional sales of infringing products that have occurred in a process called an "accounting."

SOURCE: *Calhoun v. United States*, 354 F.2d 337, 340 (Ct. Cl. 1965); *Itron, Inc. v. Benghiat*, Civ. No. 99-501, 2003 U.S. Dist. LEXIS 15039 (D. Minn. Aug. 29, 2003).

**[ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 86**

**FACTORS FOR DETERMINING A REASONABLE ROYALTY**

**[Fiber Composites Objects to the Following Instruction]**

In determining such a reasonable royalty, some of the factors that may be considered are:

1. the royalties received by Andersen for the licensing of the Deaner patents, proving or tending to prove an established royalty;

2. the rates paid by Fiber Composites for the use of other patents comparable to the Deaner patents;

3. the nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4. whether Andersen has an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5. the commercial relationship between Andersen and Fiber Composites, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

6. the effect of selling the patented specialty in promoting sales of other Fiber Composites products, the existing value of the invention to Andersen as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7. the duration of the Deaner patents and the term of the licenses;

8. the established profitability of the product made under the Deaner patents, its commercial success, and its current popularity;

9. the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10. the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Andersen, and the benefits to those who have used the invention;

11. the extent to which Fiber Composites has made use of the invention, and any evidence probative of the value of that use;

12. the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Fiber Composites;

14. the opinion testimony of qualified experts; and

15. the amount that a licensor, such as Andersen, and a licensee, such as Fiber Composites, would have agreed upon at the time infringement began if both had been reasonably and voluntarily trying to reach an agreement.

In applying these factors, remember that the reasonable royalty after infringement is not the equivalent of ordinary royalty negotiations among truly "willing" patent owners and licensees. That view would be falsely based on the pretense that the infringement never happened. If the only consequence of infringing another's patent was that the infringer would eventually have to pay the reasonable royalty, then infringers would have no incentive to negotiate ahead of time. Therefore, when determining the reasonable royalty rate that Andersen deserves, you may take Fiber Composites' infringement of the Deaner patents into consideration.

SOURCE: Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 34-36 (modified); American Intellectual Property Law Association Model Instructions Patent Damages Nos. 20, 21 (modified); 35 U.S.C. § 284; *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120-21 (S.D.N.Y. 1970), *modified in part on other grounds*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971); *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1158-60 (6th Cir. 1978); Robert L. Harmon, *Patents and the Federal Circuit* § 15.1(c) (6th ed. 2003).

**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 87**

**REASONABLE ROYALTY FACTORS**

**[Andersen Objects to the Following Instruction]**

A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the royalty that it would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use. For purposes of determining what would be a reasonable royalty you should assume in a hypothetical negotiation that Andersen was willing to license its patent to Fiber Composites, and that Fiber Composites was willing to pay a reasonable royalty for use of the patented invention. The determination of a reasonable royalty using a hypothetical negotiation necessarily involves an element of approximation or uncertainty. However, the royalty may not be mere conjecture.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before Fiber Composites began using the patented invention.

In deciding what is a reasonable royalty, you may consider the facts that Andersen and Fiber Composites would consider in setting the amount Fiber Composites should pay.

There is no one correct methodology for determining what would be a reasonable royalty. I will list for you a number of facts you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

1. The royalties received by the patent owners for the licensing of the patent in suit, proving or tending to prove an established royalty.

2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed the preserve that monopoly.

5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor or promoters.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7. The duration of the patent and the term of the licenses.

8. The established profitability of the produce made under the patent, its commercial success, and its current popularity.

9. The utility and advantage of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

11. The extent to which the alleged infringer has made use of the invention; and any evidence probative of the value of that use.

12. The portion of that profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14. The opinion testimony of qualified experts.

15. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

AUTHORITIES: *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, No. 99-1158, 2001 WL 220241 *11 (Fed. Cir. 2001); *Mahurkar v. C. R. Bard, Inc.*, 79 F.3d 1572, 1579 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119-20 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120, (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1970).

SOURCE: The Federal Circuit Bar Association Draft Model Patent Jury Instructions §12.3.7; Delaware Uniform Instructions § 6.11.

## [ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 88

## ADDITIONAL DAMAGES

**[Fiber Composites Objects to the Following Instruction]**

You may, in addition, determine whether Andersen was damaged in excess of the amount of a reasonable royalty as a result of the infringement and you may award an additional amount in excess of a reasonable royalty.

SOURCE: *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1109 (Fed. Cir. 1996) (affirming trial court's decision to ask "the jury to determine both a 'reasonable royalty' and additional damages necessary to compensate for the infringement"); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1563 (Fed. Cir. 1983) ("Trial court may award an amount of damages greater than a reasonable royalty so that the award is 'adequate to compensate for the infringement.' . . . Such an increase . . . may be stated . . . as a reasonable royalty for an infringer . . . or as an increase in the reasonable royalty determined by the court . . ..").

**[ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 89**

**NONINFRINGING ALTERNATIVE**

**[Fiber Composites Objects to the Following Instruction]**

In order to consider a non-infringing alternative in the reasonable royalty analysis, Fiber Composites must prove two things. First, the non-infringing alternative must have been commercially available to Fiber Composites (such as by license or from independent development) at the time of the hypothetical negotiation. That means that Fiber Composites has the burden to show that the alternative product would have been available and acceptable to consumers during the period of alleged infringement.

Second, the non-infringing alternative must be shown to offer the same competitive advantages of the products covered by the Deaner patents. In other words, the alternative must have attributes of the product actually sold that were important to customers. Important factors in deciding whether a product is an acceptable alternative are consumers' intended use for the product, similarity of the functional attributes of the product to alleged competing products, economic market data, and price.

If Fiber Composites cannot prove these two elements, you should not consider the alternative in your determination of the reasonable royalty.

In addition, the fact that the infringer elected to infringe, rather than pursue an alternative to infringement, is evidence that there was no viable substitution for infringement at the time of the hypothetical negotiation.

SOURCE: *Grain Processing Corp. v. Am. Maize-Prods.*, 185 F.3d 1341, 1347, 1351, 1353-55 (Fed. Cir. 1999); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1162 n.9 (Fed Cir. 1978); *Ziggity Sys., Inc. v. Val Watering Sys.*, 769 F. Supp. 752,

822-23 (E.D. Pa. 1990); *Smith Int'l, Inc. v. Hughes Tool Co.*, 229 U.S.P.Q. (BNA) 81 (C.D. Cal. 1986), *vacated as moot*, 839 F.2d 663 (Fed. Cir. 1988).

**[ANDERSEN'S PROPOSED] FINAL JURY INSTRUCTION NO. 90**

**ENTIRE MARKET VALUE RULE**

**[Fiber Composites Objects to the Following Instruction]**

Andersen contends that Fiber Composites' entire railing system is the appropriate royalty base for calculating total damages. When infringing components of a system are sold with noninfringing components, the infringing components are the basis for customer demand for the entire system, the components are physically separate but are sold together so that they constitute a functional unit or single assembly of parts, and the components are analogous to a single functioning unit, it is appropriate to include sales of the system as a whole to calculate the reasonable royalty base.

SOURCE: *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371-72 (Fed. Cir. 2004); *King Instruments Corp. v. Perego*, 65 F.3d 941, 950-51 (Fed. Cir. 1995); *Rite-Hite Corp v. Kelley Co.*, 56 F.3d 1538, 1549-50 n.4 (Fed. Cir. 1995); *Leesona Corp. v. United States*, 599 F.2d 958, 974 (Ct. Cl. 1979).

**[FIBER COMPOSITES' PROPOSED] FINAL JURY INSTRUCTION NO. 91**

**DAMAGES INSTRUCTIONS**

**[Andersen Objects to the Following Instruction]**

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case.

AUTHORITY: *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## AGREED FINAL JURY INSTRUCTION NO. 92

## DELIBERATIONS

It is my feeling that the attitude and conduct of jurors at the outset of their deliberations is a matter of extreme importance. It does not appear to me to be prudent for a juror upon entering the jury room to make an emphatic expression as to his or her opinion on the case or to announce a determination in advance to stand for a particular verdict. When one does this in the beginning, one's sense of pride becomes involved and one might later hesitate to recede from an announced position even it is later proven to be in error. Remember, you are not partisans and you are not advocates in this case, but rather you are the judges.

You have been allowed to take notes during the course of the trial and you may take those notes with you to the jury room. You should not consider these notes binding or conclusive, whether they are your notes or those of another juror. The notes should be used as an aid to your memory and not as a substitute for it. You should not give greater weight to a particular bit of evidence solely because it has been reduced to writing. I want to make clear to you that it is your recollection of the evidence which should control and you should disregard anything contrary to your recollection which may appear from your own notes or those of another juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so consistent with your individual judgment. Each of you must decide the case for yourself, but do so only after a full consideration of the evidence with your fellow jurors. In the course of your deliberations, reexamine your own views and do not hesitate to change your mind if you find that you are mistaken. However, do not surrender your

honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The final test of the quality of your service will be in the verdict which you as a jury return to this court. You will make a definite contribution to the efficient administration of justice if you arrive at a just and proper verdict.

If it becomes necessary during your deliberations to communicate with the court, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with the court by any means other than a signed writing, and the court will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

You will note from the oath about to be taken by the bailiff that he too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to the court—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

Now, ladies and gentlemen of the jury, this case is in your hands. I am sure that you recognize and realize that it deserves your most serious and careful consideration. Just look at the evidence that you heard, consider all of the facts and circumstances shown by this evidence,

give it your best judgment and consideration and conscientiously determine what you think the truth of the matter is and act accordingly.

SOURCE: Jury instruction given in *Honeywell v. Victor Co.*, Civ. No. 99-1607 (D. Minn. 2003) (Frank, J.) at 37-38.

**AGREED FINAL JURY INSTRUCTION NO. 93**

**UNANIMOUS VERDICT**

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your own deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room, you will select one of your numbers to act as your foreperson. The foreperson will preside over your deliberations, and will be your spokesperson here in court. A form of special verdict has been prepared for your convenience. You will take this form to the jury room.

[Form of special verdict read.]

You will note that many of the questions call for a "Yes" or "No" answer. The answer to each question, whether it calls for a "Yes" or "No" answer, must be the unanimous answer of the jury. Your foreperson will write the unanimous answer of the jury in the space provided under each question. You will note from the wording of the questions that you will not need to answer some

questions unless you answer certain other questions affirmatively. Finally, you will note that certain questions do not require a "yes" or "no" answer, but requires you to fill in a date or a dollar amount. As with all other questions, your answer to these questions must be the unanimous answer of the jury. After you have completed answering the questions, the foreperson will then date and sign the special verdict as so completed; and you will then return with it to the courtroom.

It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

SOURCE: Jury instruction given in *Maxwell v. Baker*, Civ. No. 4-90-941 (D. Minn. 1993) (Doty, J.) Nos. 50-52.

Dated: April 4, 2005.

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: s/ Misti Nelc
Ronald J. Schutz (#130849)
Becky R. Thorson (#254861)
Misti Nelc (#296090)
Nicholas S. Boebel (#030217X)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

**ATTORNEYS FOR PLAINTIFF ANDERSEN CORPORATION**

and

Dated: April 4, 2005.

**FISH & RICHARDSON P.C.**

By: s/ Katherine A. Moerke
Jonathan E. Singer (#283459)
Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richarson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

**ATTORNEYS FOR DEFENDANT FIBER COMPOSITES, LLC**