# EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---------------------------------------------------

Andersen Corporation, Civil No. 00-2548 (JNE/JGL)

Plaintiff,

vs.

Fiber Composites LLC,

Defendant.

---------------------------------------------------

PRETRIAL CONFERENCE

The above entitled matter came duly on for hearing before The Honorable Joan N. Ericksen, United States District Court Judge, on March 29, 2005, at the Warren Burger Federal Building, 316 North Robert Street, St. Paul, Minnesota, 55101.

Maria Weinbeck
Official Court Reporter
United States District Court
316 North Robert Street, Suite 646
St. Paul, MN 55101
(651) 848-1224

* * * * *

2

APPEARANCES:

For the Plaintiff:

RONALD J. SCHUTZ
BECKY R. THORSON
NICHOLAS S. BOEBEL
BUSOLA AKINWALE
MISTI NELC
Robins, Kaplan, Miller & Ciresi
800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota, 55402-2015

For the Defendant :

JOHN M. SKENYON
MICHAEL E. ZELIGER
KATHERINE A. MOERKE
Fish & Richardson
3300 Dain Rauscher Plaza
60 South 6th Street
Minneapolis, MN 55402

3

THE COURT: All right. Who is planning to speak mostly, or are you all going to speak?

Ron, are you going to talk mostly for your side?

MR. SCHUTZ: Your Honor, there will be -- I

him in now as their validity expert as a substitute for Sain.

THE COURT: But they said in their papers they



didn't.

MR. SCHUTZ: Well, then we need some clarification as to what they intend to do with Gardner, because he never -- if what they want to do with Gardner is have him come in and testify that "I mixed 67 percent PVC and 33 percent wood, and I got this product with these characteristics," that's expert testimony. It's not fact testimony; it's expert testimony. He never submitted a report on that; he never opined on that. It's an end run around the supplemental expert report, which this Court has already denied their ability to put in.

MR. ZELIGER: Let's recall the sequence here. We had exchanges of prior art statements -- or, excuse me, of contentions between the parties. We submitted a statement that outlined the references that we said invalidated the -- certain patents.

Their opposition to the Modern Plastic article was limited to some of them saying, "It's hearsay; it wouldn't have worked." And so we immediately retained Professor Gardner specifically for the purpose of rebutting that, and we asked him to create the material according to the formula shown in the Modern Plastics article. He did that, and then he submitted that, and it's captioned as a research paper, but it's not some

sort of independent research that he was doing at the University of Maine.

He was retained specifically for that purpose. He was deposed on that report by Andersen's counsel, and as well as Professor Sain was, to the extent that Professor Sain's report referred to that research.

He later then submitted another report in opposition to Andersen's infringement contentions, which fully laid out his resume and his list of publications and everything else.

So the idea that they're surprised that he's an expert in this case is not supported by their own record of deposing him and challenging him on his opinions.

THE COURT: I thought you weren't going to call him as an expert. I thought he was just going to testify about the tests he did.

MR. ZELIGER: That is his report.

MR. SCHUTZ: Well, Your Honor, if I may, here's the problem.

THE COURT: Right. No, the motion is denied.

Fiber Composites' motions in limine. Motion to change order of proof. We're done on that?

MR. SKENYON: Yes.

THE COURT: "Motion to exclude Liukkonen's



testimony as to the process of extrusion or percentages of composites for extrusions." That motion is denied.

And "Fiber Composites' motion in limine to

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. 00-2548 (JNE/JGL)

Andersen Corporation,

Plaintiff,

St. Paul, MN
April 5, 2005
9:30 a.m.

vs.

Fiber Composites, LLC

Defendant.

VOLUME I
TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE JOAN N. ERICKSEN
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs: RONALD J. SCHUTZ
BECKY R. THORSON
NICHOLAS S. BOEBEL
BUSOLA AKINWALE
MISTI NELC
Robins, Kaplan, Miller & Ciresi
800 LaSalle Avenue
Suite 2800
Minneapolis MN 55402

For the Defendant: JOHN M. SKENYON
MICHAEL E. ZELIGER
KATHERINE A. MOERKE
Fish & Richardson
3300 Dain Rauscher Plaza
60 South 6th Street
Minneapolis, MN 55402

Court Reporters: Maria V. Weinbeck, RMR





INDEX


| | Page |
|---|---|
| JURY VOIR DIRE | 5 |
| OPENING STATEMENTS | |
| Mr. Schutz....................... | 97 |
| Mr. Skenyon...................... | 155 |
| WITNESS | |
| Michael Deaner | |
| Direct by Mr. Schutz............ | 189 |






THE COURT: All right. Is there anything that you want to accomplish before I bring the jury in? You wanted to put something on the record, didn't you?

MR. SKENYON: Yes, it was just a question of procedural and the witnesses and sequestration and that type of thing.

THE COURT: Sure. Is there an agreement about that?

MR. SKENYON: Yes, I think we are.

THE COURT: Okay. Let's put it on the record then.

MR. SKENYON: The agreement is, and I want to be sure we weren't violating any local rules or customs of the court is that the fact witnesses would be sequestered until after they testify. That excludes the cooperative designees to --

COURT REPORTER: Speak up, please.

MR. SKENYON: I'm sorry. The cooperative designees will be here the entire time, but the other fact witnesses cannot be in the courtroom until after they testify. And the experts can be here at any time. The fact witnesses, they're excluded until they testify.

The other thing is witnesses on cross-examination --

THE COURT: Actually, I'm afraid I'm going to





have to ask you to use that microphone.

MR. SKENYON: I'm sorry. The other thing is witnesses on cross-examination, and my understanding of the general rule is that once a witness is on cross-examination, if there's a break, his party cannot talk to him about his testimony.

THE COURT: Yeah, you can't fix him up during the break while he's being cross-examined.

MR. SKENYON: And the parties agree on that. But, of course, that doesn't apply to witnesses who are on direct or rebuttal examinations. You can talk to them if you wish on that. And the parties are in agreement with that, so those are the only things that I wish to make sure on the record were all right with the court.

THE COURT: Ms. Thorson.

MR. SCHUTZ: Your Honor, just a clarification on that. For the record, Andersen's corporate representative who will be here throughout the trial is Mike Deaner who is sitting right here. And I assume there are no objections to fact witnesses watching opening statements.

MR. SKENYON: No, the corporate representative can be here, and our corporate representative is Mr. Mancosh.

Blow that up. It specifically refers to by name Sonwood in this. This is what they were trying to

180

test. And Mr. Schutz reported that they did test it and tested it a number of ways. They tested in more ways than could be noted. That is noted in the claims. And, in fact, did a number of tests on it that were pretty extreme. But throughout this and throughout the other documents on it, there's one thing you won't see. You won't see any statement by Andersen that there was any problem whatsoever in making this product.

Mr. Schutz talked about, well, you know, the reference has to be enabling. What that means is that if somebody skilled in the art has to be able to take the reference and make it. Here we have something two months after that article was printed and Andersen's testing it and there's not one reference in any of the materials that there was -- that there would be any problem whatsoever having somebody skilled in the art as they certainly were, make this stuff. They ultimately turned it down for economic reasons. And that's at another level, but they never said, "Hey, we got a problem with making this." Never.

In fact, on that what we'll show you is that we gave our -- one of our experts simply the instructions to extrude a product that is 33 percent

181

wood and 67 percent polyvinyl chloride and measure what it comes out. We gave them no other information. We gave them less information than in the Modern Plastics article and he was able to do it without any problem. And he came up with the numbers that matched, closely matched what we did here.

The other thing here is as to whether someone is able to make this here is this: If you can turn -- if we can turn back to the Modern Plastics article itself, go to the portion on the left-hand side, the text, if you go to page -- on the left-hand side if you could blow that up for me, please and highlight the portion.

I don't know if you can see that all that well, but it says it talks about Sonesson Plast adds an undisclosed compounding step and then processes the material and vented extrusion equipment used for PVC processing. Patents have been applied for in the process of making Sonwood, the trade name for the product.

Patents here, and we'll show you what issue, it's a patent that gives you all the details of making that product and if you want to have -- if you want to decide whether a reference is enabling,

182

you are allowed as a matter of law to go to other things like that.

So the fact that the details of the extrusion process aren't in this reference makes no