**COURT'S INSTRUCTIONS TO THE JURY 00CV2548**

**JURY INSTRUCTION NO. 1**

Members of the Jury:

Now that you have heard all of the evidence that is to be received in this trial and each of the arguments of counsel it becomes my duty to give you the final instructions of the Court as to the law that is applicable to this case. You should use these instructions to guide you in your decisions.

All of the instructions of law given to you by the Court—those given to you at the beginning of the trial, those given to you during the trial, and these final instructions—must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all of the instructions of the Court and to apply these rules of law to the facts as you find them to be from the evidence received during the trial.

Counsel have quite properly referred to some of the applicable rules of law in their closing arguments to you. If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole in reaching your decision.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or

opinion of the law than that given in these instructions of the Court just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

In resolving the issues presented to you for decision in this trial you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

Justice—through trial by jury—depends upon the willingness of each individual juror to seek the truth from the same evidence presented to all the jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as now being given to each of you in these instructions of the Court.

**JURY INSTRUCTION NO. 2**

The term "burden of proof" refers to the obligation of a party that claims certain facts exist to prove those facts by a required weight of evidence. In this case you are faced with two types of burdens of proof, each of which requires a different weight of evidence: (1) proof of a fact by preponderance of evidence, and (2) proof of a fact by clear and convincing evidence. You will be told which burden of proof applies to which facts. You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard that applies in criminal cases. It does not apply in civil cases such as this. You should therefore, put it out of your minds.

The first standard of proof is proof by preponderance of the evidence. To "establish by the preponderance of the evidence" means to prove that something is more likely so than it is not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared to that opposed to it, has more convincing force, and produces in your mind a belief that what is sought to be proved is more likely true than not true. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof—that what the party claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If a preponderance of the evidence does not support each essential element of a claim or defense which must be proven by that burden of proof, then you should find against the party having the burden of proof on that issue.

As I will explain in greater detail later, Andersen has the burden of establishing by a preponderance of the evidence the facts necessary to prove the following allegation:

1. The amount of damages to which Andersen is entitled as a result of Fiber Composites' infringement of the '027 and '553 patents.

The second standard of proof is clear and convincing evidence. Clear and convincing evidence involves a greater degree of persuasion than that which will satisfy a preponderance of the evidence standard. When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded that the claim or defense is true. The evidence must be free from serious doubt. Clear and convincing evidence must produce in your mind a firm belief or conviction as to the matter sought to be established. You must be convinced that the fact is indeed true in order to meet the clear and convincing burden.

In determining whether any fact in issue has been proved by clear and convincing evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If clear and convincing evidence does not support each essential element of a claim or defense which must be proven by that burden of proof, then you should find against the party having that burden of proof on that issue.

As I will explain in greater detail later, Fiber Composites has the burden of establishing by clear and convincing evidence the facts necessary to prove the following allegation:

1. That any claims of the ’027 or ’553 patents are invalid.

A patent is presumed valid. This presumption of validity continues in effect in favor of the plaintiff unless there is clear and convincing evidence which leads the jury to a different or contrary conclusion.

As I will explain in greater detail later, Andersen has the burden of establishing by clear and convincing evidence the facts necessary to prove the following allegation:

1. That Fiber Composites’ admitted infringement of the ’027 and ’553 patents was willful.

**JURY INSTRUCTION NO. 3**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, deposition transcript testimony that was read to you, the exhibits that I allowed into evidence, and the stipulations that the lawyers agreed to. Certain charts, summaries, and graphics have been used to illustrate testimony from witnesses. In general, these charts, summaries, and graphics are not themselves evidence, and are only as good as the underlying evidence supporting them. You should, therefore, give them only as much weight as you think the underlying evidence deserves.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said if he or she had been allowed to answer, or what an exhibit might have shown had I admitted it. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

## JURY INSTRUCTION NO. 4

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness, which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**JURY INSTRUCTION NO. 5**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## JURY INSTRUCTION NO. 6

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

**JURY INSTRUCTION NO. 7**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters, in which they profess to be expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. In determining the weight to be given any opinion, you should consider the qualifications and credibility of the expert and the reasons given for his or her opinion. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.

**JURY INSTRUCTION NO. 8**

The parties in this case are the plaintiff, Andersen Corporation, and the defendant, Fiber Composites, LLC.

This is a civil action for patent infringement arising under the patent laws of the United States. Andersen owns U.S. Patent No. 5,539,027 and U.S. Patent No. 5,486,553. Patents are often referred to by their last three digits, or by the named inventor of the patents. The patents in this case have been referred to as the ’027 and ’553 patents, or sometimes called the patents-in-suit or the “Deaner patents.” Michael Deaner, Giuseppe Puppin, and Kurt Heikkila are the inventors of the ’027 and ’553 patents. While employed by Andersen, the inventors assigned, that is transferred, their patents to Andersen. Andersen now owns the ’027 and ’553 patents and that is why the plaintiff is Andersen instead of the inventors.

The ’027 and ’553 patents concern composite structural members made from polymer and wood fiber, which are suitable alternatives to wood. Products made from these composite structural members include building materials.

The dispute between the parties relates to Fiber Composites’ Fiberon railing systems made from a wood fiber and polyvinyl chloride composition.

**JURY INSTRUCTION NO. 9**

Andersen, the owner of the ’027 and ’553 patents, filed a lawsuit against Fiber Composites, contending that Fiber Composites infringes the asserted claims of the ’027 and ’553 patents by manufacturing, using, offering to sell and selling the Fiberon railing system.

Andersen specifically asserts that Fiber Composites’ products infringed claims 1, 2, 3, 4, 5, 6, and 9 of the ’027 patent, and claims 1, 2, 3, 4, 5, 6, and 22 of the ’553 patent. The Court has previously ruled that Fiber Composites did not infringe four of the six patents asserted by Andersen in this case. The Court also ruled that Fiber Composites’ railing parts with less than 30% wood fiber content do not infringe the ’027 or ’553 patents. In addition, the Court has ruled, and Fiber Composites has admitted, that its railing parts with 30% or more wood fiber content infringe the ’027 and ’553 patents, if the patents are valid. Andersen contends that it has suffered damages as a result of Fiber Composites’ infringement, and therefore, it is entitled to damages in an amount not less than a reasonable royalty. Andersen also contends that Fiber Composites’ infringement of the ’027 and ’553 patents was willful and that Fiber Composites has failed to rebut the presumption that the ’027 and ’553 patents are valid.

**JURY INSTRUCTION NO. 10**

Fiber Composites contends that the claims of the ’027 and ’553 patents are invalid because, based on the prior art, they were anticipated or obvious to one of ordinary skill at the time of the alleged invention.

Fiber Composites also contends that the claims of the ’027 and ’553 patents are invalid because they do not teach one of ordinary skill how to make the invention without undue experimentation and because the patents do not contain a complete written description of the invention.

In addition, Fiber Composites contends that Andersen has failed to prove its alleged damages and that Andersen has failed to prove that Fiber Composites’ admitted infringement of the ’027 and ’553 patents, if the patents are valid, is willful.

**JURY INSTRUCTION NO. 11**

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

**JURY INSTRUCTION NO. 12**

The basis for the grant of patents is found in the United States Constitution, which provides:

> The Congress shall have the power . . . to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.

In accordance with the Constitution, the United States Congress passed the Patent Statute, which provides that:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title.

## JURY INSTRUCTION NO. 13

Under the patent laws, the United States Patent and Trademark Office examines patent applications and issues patents. For an invention to be patentable, it must be new, useful, and, at the time the invention was made, must not have been obvious to a person having ordinary skill in the art to which the subject matter pertains. I will instruct you later concerning the legal standards which you must employ in making such determinations.

A person applying for a patent must include a number of items in his or her application. The application must include a written description of the invention called a "specification" and may include drawings that illustrate the invention. The specification must conclude with one or more claims that particularly point out and distinctly claim the subject matter that the inventor regards as his or her particular invention.

When a patent application is received at the Patent and Trademark Office, it is assigned to a government official called an Examiner. The Examiner reviews the application, including the claims, to determine whether the application complies with the requirements of the U.S. patent laws. As part of the examination process, the Examiner reviews the prior work of others in the form of voluminous files and electronic databases of patents and publications. This type of material is called "prior art." Documents found in the search of prior art are typically called "references." In conducting the search of prior art, the Examiner notes in writing on the patent application file the classes or subclasses of the prior art which was searched and considered by the Examiner.

The compilation of the papers concerning the proceedings before the Patent Office is commonly referred to as the "prosecution history," "file wrapper," or "file history."

If, after reviewing the prior art, the Examiner concludes that the claims presented by the applicant define the applicant's claimed invention over the most relevant known prior art, the application is granted as a U.S. patent.

**JURY INSTRUCTION NO. 14**

In this case, you must decide several things according to the instructions that I shall give you. They include:

1. Whether Andersen has proven by clear and convincing evidence that Fiber Composites' infringement was willful.
2. Whether Fiber Composites has proven by clear and convincing evidence that certain asserted claims of Andersen's '027 and '553 patents are invalid.
3. The amount of damages Andersen has proven by a preponderance of the evidence.

**JURY INSTRUCTION NO. 15**

The claims of a patent are the main focus of a patent case because it is the claims that define the patent owner's rights under the law. That is, the claims define what the patent owner may exclude others from doing during the term of the patent. The claims of a patent are the numbered sentences at the end of the patent.

Claims are usually divided into parts or steps, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

The claims of a patent serve two purposes. First, they set out the boundaries of the invention covered by the patent. Second, they provide notice to the public of those boundaries. Thus, when the validity of a patent is challenged, it is the patent claims that are at issue. In reaching your determination with respect to invalidity, you must consider each claim separately.

**JURY INSTRUCTION NO. 16**

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the asserted claims of the ’027 and ’553 patents are invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

**JURY INSTRUCTION NO. 17**

There are two different types of claims in the ’027 and ’553 patents. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent, and it is read separately to determine its scope. Claims 1 and 22 are the independent claims of the ’553 patent; claim 1 is the only independent claim of the ’027 patent. You know this because these claims mention no other claim. Accordingly, the words of these claims are read by themselves in order to determine what the claims cover.

A dependent claim, on the other hand, refers to at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers. Claims 2, 3, 4, 5, and 6 of the ’553 patent, and claims 2, 3, 4, 5, 6, and 9 of the ’027 patent, are dependent claims. For example, the words of claims 1 and 2 must be read together in order to determine what the dependent claim, claim 2, covers.

Each claim of a patent represents a legally separate invention. Claim “elements” or “limitations” are words and phrases in a claim that describe the claimed invention.

## JURY INSTRUCTION NO. 18

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of some of the words used in the patent claims at issue. You must use the definitions I provide to you in your consideration of the invalidity issues.

I instruct you that "composite structural member," as found in claims 1, 2 and 3 of the '553 patent and claims 1, 2 and 3 of the '027 patent means "a polymer and wood article having load bearing capability, which can be obtained through a direct extrusion process or made from a composite material without a particular form."

In addition, I instruct you that "about 35 to 55 wt-% of wood fiber" means that it cannot literally have less than 30% wood fiber by weight. I also instruct you that "about 35 to 65 wt-% of a polymer comprising vinyl chloride" means that it cannot literally have more than 70% vinyl chloride by weight.

You might notice that claim 22 of the '553 patent uses the term "polymer wood composite rail" and claim 9 of the '027 patent uses the term "rail." You should not be confused and think that the term "rail" in claim 22 of the '553 patent and in claim 9 of the '027 patent refers specifically to a deck rail. The term could, of course, be much broader.

## JURY INSTRUCTION NO. 19

A patent owner may enforce its right to exclude others from making, using or selling the patented invention by filing a lawsuit for patent infringement.

Patent laws provide that any person or business entity which makes, uses, offers to sell, or sells, without the patent owner's permission, any product, apparatus, or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

**JURY INSTRUCTION NO. 20**

You must decide whether or not Andersen has proven by clear and convincing evidence that Fiber Composites' infringement was willful. Willful infringement is established where a plaintiff has proven two things: first, that defendant was aware of plaintiff's patent; and second, that defendant had no reasonable good faith basis for concluding that he did not infringe plaintiff's patent.

For example, if you find Andersen has proven that Fiber Composites knew about the '027 and '553 patents and did not exercise due care to determine whether or not it was infringing the '027 and '553 patents, you may find that Fiber Composites' infringement was willful.

One factor to consider with respect to Fiber Composites' good faith and due care in determining the willfulness issue is whether Fiber Composites obtained legal advice from an attorney after becoming aware of Andersen's patents.

Another factor in determining whether Andersen has proven Fiber Composites willfully infringed Andersen's '027 and '553 patents is your assessment of whether or not Fiber Composites copied the product covered by Andersen's '027 and '553 patent claims or whether Fiber Composites, as a competitor of Andersen, tried to match Andersen's product with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found.

**JURY INSTRUCTION NO. 21**

I will now instruct you on the rules you must follow in deciding whether Fiber Composites has proven that certain claims of the ’027 and ’553 patents are invalid. To prove invalidity of any patent claim, Fiber Composites must persuade you by clear and convincing evidence that the claim is invalid. Instructions regarding each of Fiber Composites’ invalidity defenses follow.

**JURY INSTRUCTION NO. 22**

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Fiber Composites has challenged the validity of the asserted claims of the '027 and '553 patents on a number of grounds. I remind you that the law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing a patent and that each claim of the patent is valid. However, once the validity of a patent has been put in issue, it becomes the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law. Fiber Composites—the party challenging the validity of the '027 and '553 patents—bears the burden of providing clear and convincing evidence that each of the asserted claims in the '027 and '553 patents is invalid.

I will now explain each of Fiber Composites' grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

**JURY INSTRUCTION NO. 23**

Prior art is prior work of others that is patented or described in a printed publication before the invention of the applicant. In this case Fiber Composites relies on the Modern Plastics article, the Hopperdietzel patent, and the Baumann patent as prior art.

**JURY INSTRUCTION NO. 24**

To be patentable, an invention must be new. If it is not new—i.e., if someone else has already made the same invention—we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field. Additional references may be relied upon to show that one skilled in the art could make and use what is disclosed in the prior art reference relied upon for anticipation.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is

always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

**JURY INSTRUCTION NO. 25**

Claim limitations are interpreted the same way for the infringement question and for determining invalidity. If the prior art would have literally infringed a claim (had the prior art been later in time than the ’027 and ’553 patents), then the prior art anticipates that claim, and the claim is invalid.

**JURY INSTRUCTION NO. 26**

Some of the claims of the '027 and '553 patents contain ranges of values, such as a range in terms of percentage of wood fiber. For the purposes of invalidity, a prior art reference which discloses a value within the range is considered to anticipate that claimed range.

**JURY INSTRUCTION NO. 27**

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the art at the time the invention was made. Fiber Composites contends that certain claims of the ’027 and ’553 patents are invalid because the invention was “obvious.”

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Fiber Composites has the burden of proving by clear and convincing evidence that the claims of the ’027 and ’553 patents are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field to which the patent relates. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the art. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor’s field at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the ’027 and ’553 patents and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the claims of the ’027 and ’553 patents would have been obvious.

I will now describe these specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**JURY INSTRUCTION NO. 28**

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Fiber Composites. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem. The prior art that may be considered include prior patents that issued before August 31, 1992 and prior publications having a publication date before August 31, 1992.

**JURY INSTRUCTION NO. 29**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestion for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art teaches away from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

**JURY INSTRUCTION NO. 30**

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

**JURY INSTRUCTION NO. 31**

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. Both the suggestion or motivation to combine and the expectation of success must be found in the prior art.

## JURY INSTRUCTION NO. 32

Before reaching your decision on the obviousness question, you also must consider what are referred to as objective indications of non-obviousness. Some of these indications are:

1. Commercial success of products covered by the patent claims or made by a process covered by the patent claims;

2. A long-felt need for the invention;

3. Failed attempts by others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by the infringer or others in the field;

7. The taking of licenses under the patent by others;

8. Expressions of surprise by experts and those skilled in the art at the making of the invention; and

9. The patent owner proceeded contrary to accepted wisdom of prior art.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

## JURY INSTRUCTION NO. 33

In your deliberation on the issue of obviousness, you must not equate simplicity with obviousness. The patent statute does not require that an invention be complex in order to be patentable.

In determining non-obviousness, you may not consider the manner in which the invention was made. Technological advance is often the fruit of methodical, persistent investigation, not a flash of genius.

In deciding the obviousness/non-obviousness question, you should not base your decision on what you think "ought" to be or "ought not" to be patentable.

**JURY INSTRUCTION NO. 34**

Fiber Composites contends that the claims of the ’027 and ’553 patents are invalid because they lack an adequate written description. The patent laws require that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to persons of ordinary skill in the art that the inventor had invented the subject matter that is spelled out in the claims that ultimately issued as a patent. The description must be sufficiently clear that persons of ordinary skill in the art will recognize that the applicant made the invention having each of the elements described in the claims.

That is, to prove a claim invalid for lack of an adequate written description, Fiber Composites must prove by clear and convincing evidence that the patent application does not reasonably convey to a person of ordinary skill in the art that the inventors had possession of the invention (at the time of the application) as that invention was finally claimed in the issued patent. No particular form of written description is required.

**JURY INSTRUCTION NO. 35**

The patent laws require that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

If the inventors failed to provide an enabling disclosure, the patent is invalid. However, because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly set forth in his specification subject matter which is commonly understood by persons skilled in the art.

The enablement defense does not require an intent to withhold; all that is required is a failure to teach how to practice the process. In other words, if a person of ordinary skill in the art could not carry out the process without undue experimentation, the patent is invalid.

A specification need not contain a working example if the invention is otherwise disclosed in such a manner that one skilled in the art to which the invention pertains will be able to practice it without an undue amount of experimentation.

**JURY INSTRUCTION NO. 36**

One aspect of the enablement requirement is whether or not the claims cover a significant number of inoperative embodiments. If they do, undue experimentation may be involved to make the operative ones, and that would render the claims invalid, unless the specification clearly identified the inoperative embodiments.

**JURY INSTRUCTION NO. 37**

I have now instructed you as to the law governing Andersen’s claims of willful patent infringement and Fiber Composites’ claims of invalidity. I must now instruct you as to damages. The fact that I am asking you to calculate damages does not mean that Andersen is entitled to recover damages. I am expressing no opinion one way or the other.

When calculating damages, you should assume that the ’027 and ’553 patents are valid and infringed. Andersen must prove the amount of damages by a preponderance of the evidence.

**JURY INSTRUCTION NO. 38**

Andersen is asking for damages in the amount of a reasonable royalty for Fiber Composites' infringement of its '027 and '553 patents. A reasonable royalty is the minimum permissible measure of damages set by the patent laws and is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arms length negotiation between Andersen and Fiber Composites, with both operating under the assumption that the negotiated patent is valid and is being infringed, i.e., that absent the "reasonable royalty" payment, Fiber Composites would respect the patent.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms length negotiation that I just referred to would have been likely to have occurred. You should assume that Fiber Composites and Andersen knew at that time such things as the level of sales and profits that Fiber Composites would make using the invention. You should also assume that Andersen was willing to grant Fiber Composites a license to use the patented invention and that Fiber Composites was willing to pay for that license.

In deciding what is a reasonable royalty, you may consider the factors that Andersen and Fiber Composites would consider in setting the amount Fiber Composites should pay. You will recall that both experts who testified relied on fifteen factors when determining a reasonable royalty.

**JURY INSTRUCTION NO. 39**

The parties have stipulated that the hypothetical, arms-length negotiation in this case would have taken place in about August of 1998. The parties have further stipulated that for purposes of arriving at your verdict on Andersen's claim for damages, you should consider Fiber Composites' sales and inventory from November 16, 2000 through December 31, 2000.

**JURY INSTRUCTION NO. 40**

In determining a reasonable royalty, you may consider whether Fiber Composites had any non-infringing commercially acceptable alternatives to taking a license from Andersen and whether that would have affected the reasonable royalty the parties would have agreed upon. In order for you to consider a non-infringing alternative in the reasonable royalty analysis, Fiber Composites bears the burden of proving that there was such a non-infringing commercially acceptable alternative.

**JURY INSTRUCTION NO. 41**

You must award all damages that can be proven with "reasonable certainty." Reasonable certainty does not require proof of damages with mathematical certainty. However, you may not award damages based on conjecture. If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against the infringer.

**JURY INSTRUCTION NO. 42**

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case on the other two issues.

## JURY INSTRUCTION NO. 43

Upon retiring to your jury room to begin your deliberations, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way, to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in

the form of verdict, which has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what I think your verdict should be. What the verdict shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts.

A form of verdict has been prepared for your convenience.

[The form of verdict should be read to the jury]

You will note that many of the questions in the special verdict form call for a "Yes" or "No" answer. You will also note from the wording of the questions that you will not need to answer some questions unless you answer other questions a particular way. Finally, you will note that certain questions do not require a "Yes" or "No" answer, but require you to fill in a dollar amount or other information. Your answers to all of these questions must be the unanimous answer of the jury. After you have completed answering the questions, the foreperson will then date and sign the special verdict as so completed; and you will then return with it to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the bailiff. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

You will note from the oath about to be taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict.