**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Andersen Corporation,

Plaintiff,

Case No. 00-CV-2548 JNE/JGL

v.

Fiber Composites, LLC,

Defendant.

---

**PLAINTIFF ANDERSEN CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PERMANENT INJUNCTION PROHIBITING INFRINGEMENT OF US. PATENT NO. 5,539,027 AND U.S. PATENT NO. 5,486,553**

This matter was tried before a jury beginning on April 5, 2005. On April 12, 2005, the jury returned a verdict in favor of Andersen Corporation ("Andersen") and against Fiber Composites, LLC ("Fiber Composites"). Based on Fiber Composites' admission, the Court ruled on summary judgment that Fiber Composites' products literally infringe the asserted claims of U.S. Patent No. 5,539,027 ("the '027 patent") and U.S. Patent No. 5,486,553 ("the '553 patent") (July 22, 2003 Order). The jury returned a verdict finding that the asserted claims of the '027 and '553 patents are not invalid. (April 12, 2005 Special Verdict Form). The Court adopted and entered judgment on the jury verdict on May 12, 2005. (May. 11, 2005 Order; May 12, 2005 Judgment in a Civil Case.)

Accordingly, Andersen requests that Fiber Composites be permanently enjoined from further literal infringement of the '027 and '553 patents.

Under the circumstances, Andersen Corporation is entitled to a permanent injunction. Exclusivity is the very nature of the right granted to a patent owner. Indeed, the Constitution provides that:

> The Congress shall have the power . . . [t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries.

U.S. Const. Art. I, § 8, cl. 8. Exclusivity stems from the grounding of patent laws in the concept of property: "[I]t is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property. The right to exclude recognized in a patent is but the essence of the concept of property." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1246-47 (Fed. Cir. 1989); *see also Smith Int'l v. Hughes Tool Co*., 718 F.2d 1573, 1577 (Fed. Cir. 1983) ("The grant of a patent is the grant of the right to invoke the state's power in order to exclude others from utilizing the patentee's discovery without his consent.").

Congress expressly provided the authority for the Court to issue an injunction in a patent case "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (2003); *High Tech Med. Instrumentation v. New Image Ind.*, 49 F.3d 1551, 1554-55 (Fed. Cir. 1995) (noting court's authority under

§ 283 to grant permanent injunctions). Indeed, "[a]lthough the district court's grant or denial of an injunction is discretionary depending on the facts of the case, injunctive relief against an adjudged infringer is usually granted." *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988); *see also Richardson*, 868 F.2d at 1247; *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1524 (Fed. Cir. 1985) (noting that "injunctive relief against an infringer is the norm"). The fact that the defendant has, or claims to have, stopped infringing is generally not a reason for denying an injunction against future infringement. *W.L. Gore,* 842 F.2d at 1281.

The issuance of a permanent injunction is governed by traditional equitable principles, and consideration of the following factors: (1) whether the patentee would be irreparably harmed without the injunction; (2) whether the patentee has an adequate remedy at law; (3) whether granting the injunction is in the public interest; and (4) whether the balance of hardships favors an injunction. *See Roche Prods. Inc. v. Bolar Pharm. Co.*, 733 F.2d 858, 866 (Fed. Cir. 1984); *see also Odetics, Inc. v. Storage Tech. Corp.*, 14 F. Supp. 2d 785, 794 (E.D. Va. 1998) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982)). In weighing the equities, the court need not give equal weight to each factor. *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 106 F. Supp. 2d 696, 700-01 (D.N.J. 2000). A court, however, "should not be reluctant to use its equity powers once a party has so clearly established his patent rights." *Smith Int'l v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). In the present

case, all four factors — separately and in combination — support the issuance of a permanent injunction.

First, without a permanent injunction, Andersen will be irreparably harmed. Irreparable harm to the patentee is presumed when — as in this case — a clear showing has been made of patent infringement and validity. *Richardson*, 868 F.2d at 1247 (citing *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983)); *see also Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 259 F. Supp. 2d 192, 194-95 (D. Conn. 2003). "This presumption derives in part from the finite term of the patent grant, for patent expiration is not suspended during litigation, and the passage of time can work irremediable harm." *Richardson*, 868 F.2d at 1247 (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987)).

Andersen is entitled to a presumption of irreparable harm based on the Court's decision that Fiber Composites literally infringes the '027 and '553 patents, the jury's verdict that those patents are not invalid, and the Court's judgment on that verdict. (July 22, 2003 Order; Apr. 12, 2005 Special Verdict Form; May 12, 2005 Judgment in a Civil Case); *see, e.g.*, *Jeneric/Pentron*, 259 F. Supp. 2d at 194-95 (finding a "clear showing" of irreparable harm based on jury's verdict of infringement and jury's rejection of defendant's anticipation claims); *Boehringer*, 106 F. Supp. 2d at 701 ("Without a doubt, a 'clear showing' of validity and infringement is satisfied where those issues have been tried and the

fact-finder has determined that the patent in question was infringed and is not invalid.”).

Andersen would suffer irreparable harm if a permanent injunction does not issue. “A patentee that does not practice, and may never have practiced, his invention may establish irreparable harm, *e.g.*, by showing that an existing infringement precludes his ability to license his patent or to enter the market.” *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1273 (Fed. Cir. 1985). At trial, the undisputed testimony showed that Andersen has had several successful commercial implementations of its patented PVC and wood-fiber composite technology under the brand name Fibrex®. (Apr. 6, 2005 Trial Tr. 403:23-404:2.)

Since 1993 Andersen has used its Fibrex technology in door subsills, and in 1995 Andersen started using the Fibrex technology in its popular Renewal by Andersen® brand replacement windows. (Apr. 6, 2005 Trial Tr. 404:3-14; 408:15-409:13.) Andersen continues to use the Fibrex technology in its products to this day. (*Id.*) From 2000 through 2002, Andersen created decking products with Fibrex material. (Apr. 6, 2005 Trial Tr. 411:5-10.) Though Andersen does not currently use its Fibrex technology to manufacture decking products itself, it has chosen to license other companies—companies that compete with Fiber Composites in the composite decking market—to do so. (Apr. 6, 2005 Trial Tr. 420:22-421:1). Denying Andersen a permanent injunction will diminish its reputation and ability to exclude others from the market. This harm is sufficient to justify injunctive relief.

Next, Andersen does not have an adequate remedy at law —where, as here, literal "infringement and validity have already been determined, monetary damages are generally considered inadequate in patent cases." *Boehringer*, 106 F. Supp. 2d at 703 (citations omitted). Indeed, future infringement "may have market effects never fully compensable in money." *Jeneric/Pentron*, 259 F. Supp. 2d at 195 (citing *Reebok Int'l Ltd. v. J. Baker, Inc*., 32 F.3d 1552, 1557 (Fed. Cir. 1994)). "While monetary relief is often the sole remedy for past infringement, it does not follow that a money award is also the sole remedy against future infringement." *Odetics*, 14 F. Supp. 2d at 795 (quoting *Atlas Powder Co. v. Ireco Chem*., 773 F.2d 1230, 1233 (Fed. Cir. 1985)).

The essence of patent law is the exclusive right of the patentee to do what it pleases with its invention and protect against infringement. *Special Equip. Co. v. Coe*, 324 U.S. 370, 378-79 (1945). For this reason, injunctive relief should not be thwarted by forcing the patentee to accept a compulsory license:

> Without the injunctive power of the courts, the right to exclude granted by the patent would be diminished, and the express purpose of the Constitution and Congress, to promote the progress of the useful arts, would be seriously undermined. The patent owner would lack much of the "leverage," afforded by the right to exclude, to enjoy the full value of his invention in the market place. Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.

*Smith Int'l*, 718 F.2d at 1577-78. "If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could



Word 20131460.1

become compulsory licensees for as long as the litigation lasts." *Atlas Powder Co. v. Ireco Chems*., 773 F.2d 1230, 1233 (Fed. Cir. 1985); *see also Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988) ("[I]nfringers could perceive nothing to fear but the possibility of a compulsory license at a reasonable royalty, resulting in some quarters in a lowered respect for the rights of such patentees and a failure to recognize the innovation-encouraging social purpose of the patent system.").

Here, without the entry of a permanent injunction, Andersen will be unable to fully enforce its patent rights or to realistically pursue its own plans regarding potential licensing of the '027 and '553 patents to others. Moreover, monetary damages alone would reward Fiber Composites for its infringement by forcing Andersen to accept a continuing, compulsory license.

Third, in this case a permanent injunction is in the public interest. The public interest factor favors entry of a permanent injunction, "given the public's interest in maintaining the integrity of the patent system," *Odetics*, 14 F. Supp. 2d at 795, and the exclusive rights it promises to patentees. U.S. Const. art. I, § 8, cl. 8; 35 U.S.C. § 154 (2003). While it is true that courts have "in rare instances exercised their discretion to deny injunctive relief in order to protect the public interest," *Rite-Hite Corp*., 56 F.3d at 1547,[1] no such public interest against an

[1] *See also, Datascope Corp. v. Kontron, Inc*., 786 F.2d 398, 401 (Fed. Cir. 1986) (catheter used for treatment of heart patients); *but see Boehringer*, 106 F. Supp. 2d at 705-07 (granting permanent injunction over infringer's vehement arguments that the infringing vaccine was critical to the public interest).

injunction exists here. This is not a case where the infringing product is important to the health or safety of the public.

Finally, the balance of hardships and equities favor injunctive relief in this case. The Court has found that Fiber Composites literally infringed the asserted claims of the '027 and '553 patents, the jury found that the asserted claims of those patents are not invalid, and the Court entered judgment accordingly. In addition, the public interest favors granting an injunction in order to respect the rights of the patent holder and to preserve the integrity of the patent system.

Balanced against this is—by Fiber Composites' own admission—the minimal hardship that would arise from an injunction. Fiber Composites claims, without offering any proof, that they no longer make products that literally infringe the '027 and '553 patents. Though Andersen intends to explore the veracity of Fiber Composites' claim that its products are made with a percentage of wood-fiber as low as 17%, (Apr. 6, 2005 Trial Tr. 624:18-24), through the accounting process, Fiber Composites' assertion indicates that a permanent injunction would cause it little or no hardship.

For all these reasons, and because there is no sufficient reason for denying it, a permanent injunction is necessary and appropriate. Accordingly, this Court should grant Andersen's Motion for a Permanent Injunction and enter the Proposed Order submitted by Andersen.

Dated: May 16, 2005 ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: /s/ Misti Nelc

Ronald J. Schutz (#130849)
Becky R. Thorson (#254861)
Misti Nelc (#0296090)
Nicholas S. Boebel (#030217X)
Busola A. Akinwale (#0338217)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFF
ANDERSEN CORPORATION



Word 20131460.1