# EXHIBIT 1

LEXSEE 2001 US DIST LEXIS 24383

**Transclean Corporation, James P. Viken, Jon A. Lang, and Donald E. Johnson, Plaintiffs, vs. Bridgewood Services, Inc., Defendant.**

**Civ. No. 97-2298 (RLE)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

***2001 U.S. Dist. LEXIS 24383***

**January 8, 2001, Decided**
**January 8, 2001, Filed, Judgment Entered**

**SUBSEQUENT HISTORY:** Later proceeding at *Transclean Corp. v. Bridgewood Servs., 134 F. Supp. 2d 1049; 2001 U.S. Dist. LEXIS 4674.*

**PRIOR HISTORY:** *Transclean Corp. v. Bridgewood Servs., 2000 U.S. Dist. LEXIS 19870.*

**DISPOSITION:** [*1] Judgment entered;motion for enhanced damages denied; motion for attorney's fees granted; motion for new trial granted; motion for entry of judgment granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Following a jury verdict for plaintiff patent holder in its patent infringement action against defendant infringer, the patent holder moved for enhanced damages under *35 U.S.C.S. § 284*, attorney's fees under *35 U.S.C.S. § 285*, and prejudgment interest under *35 U.S.C.S. § 284.*

**OVERVIEW:** The patent holder brought an infringement action against the infringer alleging that the infringer's automatic fluid exchanging system infringed on its patent. The jury returned a verdict for the patent holder, and it moved for enhanced damages, attorney's fees, and prejudgment interest. The court denied the patent holder enhanced damages holding that the infringer's conduct did not surmount the egregiousness hurdle, even though the jury found that it had willfully infringed on the patent. The infringer was unaware that it was infringing on the patent until after it was contacted by the patent holder. After receiving the notice, it forwarded a copy of its own patent to the patent holder as requested, which it believed was valid over the patent holder's patent. The infringer's financial condition did not support enhanced damages because it had acted as a fierce competitor of the patent holder. The court did not criticize the infringer for challenging the validity of the patent holder's patent because it was anticipated by prior art. The court awarded the patent holder attorney's fees for addressing the infringer's unsupported inequitable conduct defense and prejudgment interest.

**OUTCOME:** The patent holder was awarded attorney's fees on the infringer's inequitable conduct defense and prejudgment interest in its infringement action against the infringer but denied the patent holder enhanced damages.

**LexisNexis(R) Headnotes**

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Patent Law > Remedies > Damages > Reasonable Royalties***
***Patent Law > Jurisdiction & Review > Standards of Review > General Overview***
[HN1] Enhanced damages are allowed, in a patent infringement case, by *35 U.S.C.S. § 284,* which provides, in pertinent part, as follows: Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three

times the amount found or assessed. The statute prescribes no standards for such increase, but precedent establishes that a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent.The statute thus recognizes the tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive.

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Copyright Law > Civil Infringement Actions > Remedies > Damages > Actual Damages***
***Patent Law > Remedies > Damages > General Overview***
[HN2] Whether enhanced damages are appropriate is determined through a two-step process. First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based and, if so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances. Stated otherwise, enhanced damages may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith, and damages cannot be enhanced to award the patentee additional compensation to rectify what the district court views as an inadequacy in the actual damages awarded.

***Patent Law > Remedies > Damages > General Overview***
[HN3] An act of willful infringement satisfies the culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award. However, a finding of willful infringement does not mandate that the district court enhance damages; it merely authorizes the court to do so at its discretion. Increased damages also may be awarded to a party because of the bad faith of the other side.

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Patent Law > Remedies > Damages > General Overview***
[HN4] Bad faith is used, for example, in referring to misconduct in the prosecution of or litigation over a patent. Such conduct includes inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation. These acts by themselves, however, are not sufficient for an increased damages award under *35 U.S.C.S. § 284* because they are not related to the underlying act of infringement and say nothing about the culpability of the infringer. Only a culpable infringer can be held liable for increased damages, not an innocent one. The listed acts might be evaluated to determine if the infringer acted willfully in light of the totality of the circumstances. The ultimate fact to be proven, that is, the basis for increased damages, however, would be that the infringement was willful, not that litigation activities were improper.

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview***
***Patent Law > Remedies > Damages > General Overview***
[HN5] Even if a party is subsequently found to be infringing another's patent despite its investigations, it will be liable only for compensatory damages, not increased damages, if it performed its affirmative duty in good faith.

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Patent Law > Remedies > Damages > General Overview***
[HN6] In determining the propriety of enhanced damages, the court exercises its discretion upon a consideration of the factors: (1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6) the duration of the infringer's misconduct, (7) any remedial action by the infringer, (8) the infringer's motivation for harm, and (9) whether the infringer attempted to conceal its misconduct. In exercising its discretion to enhance damages, however, it is limited to a trebling of the basic damage award.

***Patent Law > Remedies > Damages > General Overview***
[HN7] Where the trial judge has concluded that there was substantial evidence to support the jury's determination that defendant acted with the requisite culpability to justify an award of increased damages, the first step in the willful infringement process is complete.

***Patent Law > Remedies > Damages > General Overview***
[HN8] While a finding of willfulness does not require an award of enhanced damages, the court would abuse its discretion were it to grant, or deny, plaintiff's request without a demonstration as to why the finding of

willfulness was an insufficient showing of culpability for increased damages.

***Patent Law > Remedies > Damages > General Overview***
[HN9] The principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement. Thus egregiousness of the infringer's conduct may receive greater emphasis, as may any mitigating factors. All aspects relevant to a particular case should be given the weight appropriate to their substance. A broad range of discretion is reposed in the trial court, founded on this need to weigh and balance multiple factors in determining a just remedy.

***Patent Law > Remedies > Damages > General Overview***
[HN10] Experienced litigators properly recognize that even competent evidence can be unpersuasive if it depends upon the testimony of a witness who is unable to deport himself well. The answer is not to withhold that evidence, out of hand, but to balance whether, in the context of other evidence of record, the witness' testimony can earn the jury's belief. Such strategic considerations, well-vested in the discretion of a trial attorney, do not easily rise to a level of culpability that is commensurate with a finding of bad faith.

***Patent Law > Remedies > Damages > General Overview***
[HN11] The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances.

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Patent Law > Remedies > Damages > General Overview***
[HN12] Increased damages may be awarded to a party because of the bad faith of the other side. Bad faith is used, for example, in referring to misconduct in the prosecution of or litigation over a patent. Such conduct includes inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation. These acts by themselves, however, are not sufficient for an increased damages award under *35 U.S.C.S. § 284* because they are not related to the underlying act of infringement and say nothing about the culpability of the infringer. The listed acts might be evaluated to determine if the infringer acted willfully in light of the totality of the surrounding circumstances. The ultimate fact to be proven, that is, the basis for increased damages, however, would be that the infringement was willful, not that litigation activities were improper. Thus, although an infringer's inequitable conduct in prosecuting his own patents, or his egregious conduct in infringement litigation may be sufficient for other sanctions or fee awards, or may be used as a factor in determining whether or how much to increase a damages award once sufficient culpability is found, these actions are not sufficient independent bases to justify increased damages under § 284.

***Patent Law > Remedies > Collateral Assessments > Attorney Fees***
[HN13] Courts have tools to punish egregious misconduct. The listed actions are typical of "exceptional case" conduct upon which an award of attorneys fees may be based under *35 U.S.C.S. § 285*. Other sanctions include attorneys fees pursuant to *Fed. R. Civ. P. 11*, *Fed. R. App. P. 38*, or *28 U.S.C.S. § 1927*. *Fed. R. Civ. P. 37*.

***Patent Law > Inequitable Conduct > Burdens of Proof***
***Patent Law > Remedies > Collateral Assessments > Attorney Fees***
***Patent Law > Infringement Actions > Burdens of Proof***
[HN14] *35 U.S.C.S. § 285* provides for the award of reasonable attorney fees to the prevailing party in exceptional patent infringement cases. The prevailing party must prove the exceptional nature of the case by clear and convincing evidence. The court has recognized many varieties of misconduct that make a case exceptional for a fee award. These forms of misconduct include willful infringement, inequitable conduct before the United States Patent and Trade Office, offensive litigation tactics, vexatious or unjustified litigation, or frivolous filings.

***Patent Law > Remedies > Collateral Assessments > Attorney Fees***
[HN15] A finding of willful infringement is sufficient to make a case exceptional. An express finding of willful infringement is a sufficient basis for classifying a case as "exceptional," and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is not "exceptional" within the meaning of the statute. Nevertheless, the decision whether or not to award fees is still committed to the discretion of the trial judge, and even an exceptional case does not require in all circumstances the award of attorney fees.

***Patent Law > Remedies > Collateral Assessments > Attorney Fees***
[HN16] When attorney fees under *35 U.S.C.S. § 285* are awarded solely on the basis of litigation misconduct, the

amount of the award must bear some relation to the extent of the misconduct.

***Patent Law > Remedies > Collateral Assessments > Attorney Fees***
***Patent Law > Inequitable Conduct > General Overview***
[HN17] Unjustified accusations of inequitable conduct are offensive and unprofessional, and they have become a plague on the patent system.

***Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals***
***Patent Law > Inequitable Conduct > Burdens of Proof***
[HN18] Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required.

***Patent Law > Remedies > Damages > General Overview***
[HN19] The court has conditioned a patent owner's entitlement to a portion of the infringer's sale of its business upon proof that the purchaser of the business did not purchase the patent owner's business but, instead, elected to purchase the infringer's business.

***Patent Law > Remedies > Damages > General Overview***
[HN20] Because fashioning an adequate damages award depends on the unique economic circumstances of each case, the trial court has discretion to make important subsidiary determinations in the damages trial, such as choosing a methodology to calculate damages.

***Patent Law > Remedies > Damages > Reasonable Royalties***
***Patent Law > Remedies > Damages > Patentholder Losses***
***Patent Law > Remedies > Damages > Infringer Profits***
[HN21] In theory, a proper royalty rate should afford the patent holder the profits, by way of a license or royalty, which would be attributable to the infringement. On occasion, the reasonable royalty rate would not produce adequate damages, where, for example, the infringer parlayed a sale, because of the infringement, that otherwise would have been made by the patent holder. In such a case, awarding the royalty rate, only, would not compensate the patent holder for the loss of the value of that specific sale, over and above the royalty rate. The United States District Court for the District of Minnesota understands the Georgia-Pacific analysis to envision a royalty rate that would make the patent holder whole. To suggest that the reasonable royalty rate merely establishes a floor, upon which the patent holder may claim additional, subjective enhancements, does not square with the purposes served by a reasonable royalty rate, if that rate is properly established. Where a showing has been made, which supports income that was foregone -- over and above the royalty rate -- such as lost profits from specific sales, or price erosion in the marketplace, which owes to the challenged infringement, then an additive would seem both appropriate, and warranted, if the patent holder is to obtain adequate damages.

***Patent Law > Remedies > Collateral Assessments > Prejudgment Interest***
***Patent Law > Remedies > Collateral Assessments > Costs***
***Patent Law > Remedies > Damages > General Overview***
[HN22] A patent owner, who is successful in proving infringement, is ordinarily entitled to an award of prejudgment interest. *35 U.S.C.S. § 284.* Prejudgment interest has no punitive, but only compensatory purposes. Interest compensates the patent owner for the use of its money between the date of injury and the date of judgment.

***Patent Law > Remedies > Damages > General Overview***
[HN23] The United States Supreme Court has suggested a court may deny prejudgment interest in certain limited circumstances, for example, where the owner has been responsible for undue delay in prosecuting the lawsuit.

***Patent Law > Remedies > Collateral Assessments > Prejudgment Interest***
***Patent Law > Infringement Actions > Defenses > Estoppel & Laches > General Overview***
***Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals***
[HN24] District courts have discretion to limit prejudgment interest where, for example, the patent owner has caused undue delay in the lawsuit, but there must be a justification bearing a relationship to the award. The Court of Appeals for the Federal Circuit has determined that a delay, between the notice of infringement and the commencement in the infringement action, is not "undue" delay such as would justify limiting the term of prejudgment interest. The same result has been reached where the hiatus between the notice of suspected infringement and the commencement of a lawsuit, was approximately 17 months. In denying the infringer's request to exclude that period of delay from the term of prejudgment interest, the court has noted that the fact that 17 months passed between the notice letter and the lawsuit does not, without more, mean that the delay was "undue." Specifically the

infringer there failed to offer some evidence that the delay was based on an improper reason.

***Patent Law > Remedies > Collateral Assessments > Prejudgment Interest***
***Patent Law > Remedies > Damages > General Overview***
[HN25] A trial court is afforded wide latitude in the selection of interest rates, and may award interest at or above the prime rate. Further, it has been recognized that an award of compound rather than simple interest assures the patent owner is fully compensated, and the determination whether to award simple or compound interest is a matter largely within the discretion of the district court.

***Patent Law > Remedies > Damages > General Overview***
[HN26] A trial court's authority to award prejudgment interest is governed by statute. See *Minn. Stat. § 549.09*. Prejudgment interest is an element of damages awarded to provide full compensation by converting time-of-demand damages into time-of-verdict damages. It is designed to compensate the plaintiff for the loss of the use of the money owed. Section 549.09 has been amended to provide that the prevailing party shall receive interest on any judgment or award. The amended statute allows prejudgment interest irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable.Section 549.09 has been to allow an award of prejudgment interest even in those cases involving unliquidated damages.

***Civil Procedure > Appeals > Reviewability > Preservation for Review***
***Civil Procedure > Jury Trials > Jury Instructions***
[HN27] A party waives objection by acquiescing and proposing the verdict form. To preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection.

***Civil Procedure > Trials > Closing Arguments***
***Civil Procedure > Relief From Judgment > Motions for New Trial***
[HN28] Even when the subject of a timely objection, a new trial should be granted where the improper conduct of counsel in closing argument causes prejudice to the opposing party and unfairly influences a jury's verdict.

***Patent Law > Remedies > Damages > Reasonable Royalties***
***Patent Law > Ownership > Conveyances > Licenses***
[HN29] *35 U.S.C.S. § 284* mandates that a claimant receive damages "adequate" to compensate for infringement. Section 284 further instructs that a damage award shall be in no event less than a reasonable royalty; the purpose of this alternative is not to direct the form of compensation, but to set a floor below which damage awards may not fall. Thus, the language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation. The question to be asked in determining damages is how much had the patent holder and licensee suffered by the infringement, and that question is primarily: had the infringer not infringed, what would the patent holder-licensee have made.

***Patent Law > Remedies > Damages > Patentholder Losses***
***Copyright Law > Civil Infringement Actions > Remedies > Damages > Actual Damages***
[HN30] The general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement.

***Patent Law > Remedies > Damages > Patentholder Losses***
***Patent Law > Inequitable Conduct > General Overview***
***Patent Law > Infringement Actions > General Overview***
[HN31] Proving lost profits is not a facile process, as the proof employs a "but for" test -- the claimant must demonstrate a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer.

***Patent Law > Remedies > Damages > Patentholder Losses***
***Patent Law > Remedies > Damages > Measures***
***Patent Law > Remedies > Damages > Infringer Profits***
[HN32] The court has articulated a four-factor test to prove, as but one nonexclusive method, an entitlement to lost profits damages. The Panduit test requires that a patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. A showing under Panduit permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's prima facie case with respect to "but for" causation. A patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent the infringement. The patentee need only show that there was a reasonable probability that the sales would have been made "but for" the infringement.

***Patent Law > Remedies > Damages > Patentholder Losses***
***Patent Law > Remedies > Damages > Reasonable Royalties***
***Copyright Law > Civil Infringement Actions > Remedies > Damages > Infringer Profits***
[HN33] The Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit analysis.

***Patent Law > Remedies > Damages > General Overview***
***Copyright Law > Civil Infringement Actions > Remedies > Damages > Infringer Profits***
[HN34] *35 U.S.C.S. § 284* contemplates that when a patentee is unable to prove entitlement to lost profits or an established royalty rate, it is entitled to "reasonable royalty" damages based upon a hypothetical negotiation between the patentee and the infringer when the infringement began.

***Patent Law > Remedies > Damages > Reasonable Royalties***
***Patent Law > Ownership > Conveyances > General Overview***
***Patent Law > Remedies > Collateral Assessments > General Overview***
[HN35] The "hypothetical negotiation" under *35 U.S.C.S. § 284* is often referred to as a willing licensor and licensee negotiation. However, this is an "absurd" characterization of the determination when the parties were previously unable to come to an agreement, i.e., were not "willing." Therefore the use of a willing licensee-willing licensor model for determining damages risks creation of the perception that blatant, blind appropriation of inventions patented by individual, non-manufacturing inventors is the profitable, cannot-lose course. To avoid such a result, the fact finder may consider additional factors to assist in the determination of adequate compensation for the infringement. These factors include royalties received by the patentee for the licensing of the patent in suit, opinion testimony from qualified experts, the patentee's relationship with the infringer, and other factors that might warrant higher damages. The fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty, is also relevant. Under such an analysis, the district court would normally instruct the jury to return a damage award, based on a willing licensee-willing licensor negotiation and these other factors, in an amount sufficient to adequately compensate the patentee for the infringement.

***Patent Law > Remedies > Damages > General Overview***
[HN36] A trial court may award an amount of damages greater than a reasonable royalty so that the award is adequate to compensate for the infringement, and such an increase may be stated as a reasonable royalty for an infringer. Courts have on occasion recognized the need to distinguish between royalties payable by infringers and non-infringers.

***Patent Law > Remedies > Collateral Assessments > Increased Damages***
***Patent Law > Remedies > Damages > Reasonable Royalties***
***Patent Law > Inequitable Conduct > General Overview***
[HN37] While, upon a proper showing, "additional damages" may be awarded by the fact finder, over and above a reasonable royalty, such additional damages must be proven, by a preponderance of the evidence, to have been caused by the infringement, and to have been reasonably foreseeable. Moreover, a reasonable royalty may not be increased by a "kicker" based on litigation or other expenses.

***Patent Law > Remedies > Damages > General Overview***
[HN38] When a claimant elects to forego lost profits as a measure of damages in favor of a reasonable royalty, the claimant may not shift certain "consequential business damages" into the reasonable royalty rate.

***Patent Law > Remedies > Damages > General Overview***
[HN39] The patent owner bears the burden of proof on damages.

***Patent Law > Remedies > Damages > General Overview***
[HN40] The fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty, is also relevant [to the determination of a reasonable royalty.

***Civil Procedure > Appeals > Standards of Review > Abuse of Discretion***
***Patent Law > Remedies > Damages > General Overview***
[HN41] The determination of the amount of damages based on a reasonable royalty is an issue of fact. When a party files a motion to amend the judgment or in the alternative to grant a new trial on the amount of damages awarded by a jury, the trial court determines whether the jury's verdict is against the clear or great weight of the evidence. The district court has wide discretion in determining whether to grant a new trial under this

standard and, therefore, its decision on that issue is governed by an abuse of discretion standard of review.

***Patent Law > Inequitable Conduct > General Overview***
***Patent Law > Remedies > Damages > General Overview***
[HN42] The patent owner may satisfy his initial burden of proving causation in fact by inference in a two-supplier market.

***Patent Law > Infringement Actions > Burdens of Proof***
***Patent Law > Remedies > Damages > Patentholder Losses***
***Patent Law > Remedies > Damages > Infringer Profits***
[HN43] To recover lost profits, the patent owner must show "causation in fact," establishing that "but for" the infringement, he would have made additional profits. When basing the alleged lost profits on lost sales, the patent owner has an initial burden to show a reasonable probability that he would have made the asserted sales "but for" the infringement. Once the patent owner establishes a reasonable probability of "but for" causation, the burden then shifts to the accused infringer to show that the patent owner's "but for" causation claim is unreasonable for some or all of the lost sales.

***Civil Procedure > Relief From Judgment > Additurs & Remittiturs***
[HN44] The use of remittitur enables parties to avoid the delay and expense of a new trial when a jury's verdict is excessive in relation to the evidence of record.

***Civil Procedure > Relief From Judgment > Additurs & Remittiturs***
[HN45] The "maximum recovery rule" requires that the determination on whether to accept a remittitur be based on the highest amount of damages that the jury could properly have awarded based on the relevant evidence.

**COUNSEL:** For Transclean Corporation, James P Viken, Jon A Lang, Donald Johnson, PLAINTIFFS: Jon S Swierzewski, Alan Marshall Anderson, Renee L Jackson, Christopher K Larus, Larkin Hoffman Daly & Lindgren, Bloomington, MN USA.

For T-Tech Industries, Inc, Bridgewood [*2] Services, Inc, DEFENDANTS: Karl L Cambronne, Chestnut & Cambronne, Minneapolis, MN USA.

For T-Tech Industries, Inc, DEFENDANT: Becky L Erickson, Chestnut & Cambronne, Minneapolis, MN USA.

For T-Tech Industries, Inc, Bridgewood Services, Inc, DEFENDANTS: Warren E Olsen, Fitzpatrick Cella Harper & Scinto, Washington, DC USA.

For Bridgewood Services, Inc, DEFENDANT: Brian K Lock, Fitzpatrick Cella Harper & Scinto, Washington, DC USA.

For T-Tech Industries, Inc, Bridgewood Services, Inc, COUNTER-CLAIMANTS: Karl L Cambronne, Chestnut & Cambronne, Minneapolis, MN USA.

For T-Tech Industries, Inc, COUNTER-CLAIMANT: Becky L Erickson, Chestnut & Cambronne, Minneapolis, MN USA.

For T-Tech Industries, Inc, Bridgewood Services, Inc, COUNTER-CLAIMANTS: Warren E Olsen, Fitzpatrick Cella Harper & Scinto, Washington, DC USA.

For Transclean Corporation, COUNTER-DEFENDANT: Jon S Swierzewski, Alan Marshall Anderson, Renee L Jackson, Christopher K Larus, Larkin Hoffman Daly & Lindgren, Bloomington, MN USA.

**JUDGES:** Raymond L. Erickson, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** Raymond L. Erickson

**OPINION:**

ORDER

At Duluth, in the District of Minnesota, this 8th day of January, [*3] 2001.

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties, as authorized by Title *28 U.S.C. § 636*(c), upon the parties' post-Trial Motions. Specifically, the Plaintiffs Transclean Corporation, James P. Viken, Jon A. Lang, and Donald E. Johnson ("Transclean") have moved for enhanced damages, for attorneys' fees, for prejudgment interest, and for a reversal of the Court's entry of Judgment as a matter of law, on that portion of the Plaintiff's damage claim which sought a recovery from the "good will" of the Defendant Bridgewood Services, Inc. ("Bridgewood"), n1 when Bridgewood's assets were sold to a third party, Century Manufacturing ("Century"). In turn, Bridgewood seeks an amendment of the Judgment or, in the alternative, a new Trial, on the issue of compensatory damages, and also requests the entry of Judgment, as a matter of law, on Transclean's False Advertising claim.

n1 The name of the Defendant has changed several times in the past and, for convenience, we uniformly address the Defendant, irrespective of its prior names, as "Bridgewood."

[*4]

A Hearing on the Motions was conducted on December 14, 2000, at which time, Transclean appeared by Alan M. Anderson and Christopher K. Larus, Esqs., and Bridgewood appeared by Warren E. Olsen and Karl L. Cambronne, Esqs.

For reasons which follow, we deny Transclean's Motion for enhanced damages, and for a reversal of our prior grant of Judgment as a matter of law, and we grant Transclean's Motion for attorneys' fees, but only in certain limited respects, and we grant its Motion for an award of prejudgment interest. In addition, we grant Bridgewood's Motion for a New Trial on the issue of infringement damages, but subject to Transclean's opportunity to accept a remittitur as an alternative to a new Trial. n2

n2 The parties jointly request that we enter Judgment, as a ministerial act, on each of the claims that were previously the subject of a successful dispositive Motion, and we grant that request.

II. Factual and Procedural Background

On May 4, 2000, a Jury returned a Verdict for Transclean in this patent [*5] infringement, and false advertising case, and, as here pertinent, provided the following Answers to the Interrogatories that were submitted in the Special Verdict form:

1. Do you find, by a preponderance of the evidence, that Bridgewood infringed Claim 13 of the Viken Patent?

Yes X No

2. Do you find, by clear and convincing evidence, that Bridgewood's infringement of any claim of the '080 Patent was willful?

Yes X No

* * *

4. What amount of damages do you find, based upon a preponderance of the evidence, constitute a reasonable royalty for Bridgewood's sales of its infringing device?

$ 934,618.75

5, What amount of additional damages, if any, do you find, based upon a preponderance of the evidence, is necessary to adequately compensate for Bridgewood's infringement?

$ 1,874,500.00

6. What additional amount, if any, do you find, based upon a preponderance of the evidence, the Plaintiffs are entitled to recover as a reasonable royalty on Bridgewood's sale of its business assets, including good will?

$ 2,708,225.00

Following our denial of Bridgewood's inequitable conduct claim, in an Order dated November 1, 2000, we [*6] entered Judgment on the Jury's Verdict, except as to Interrogatory No. 6, as we had earlier entered Judgment as a matter of law, on that aspect of Transclean's damage claim, in favor of Bridgewood. Transclean seeks a reversal of that determination, arguing that, as a measure of its damages which were attributable to Bridgewood's infringement, it should be allowed a reasonable royalty on the sale of Bridgewood's business interests, in the form of good will, which arose from the purchase of Bridgewood's assets, by Century, on or about April 30, 1998.

Although we granted Judgment on that issue to Bridgewood, prior to the submission of the case to the Jury, in the interests of judicial efficiency, we allowed the Jury to answer Interrogatory No. 6 as a part of its Special Verdict. See, *Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 859 n. 3 (8th Cir. 1994)*, citing *Harvey v. Wal-Mart, Stores, Inc., 33 F.3d 969, 970 (8th Cir. 1994)*, and *Dace v. ACF Industries, Inc., 722 F.2d 374, 379 n. 9 (8th Cir. 1983);* see also, *U.S. Phillips v. Windmere Corp., 861 F.2d 695, 705 (Fed. Cir. 1988)*, cert. denied, *490 U.S. 1068, 104 L. Ed. 2d 635, 109 S. Ct. 2070 (1989)*, [*7] quoting *Dace v. ACF Industries, Inc., supra at 379; Allied Colloids Inc. v. American Cyanamid Co., 64 F.3d 1570, 1573 (Fed. Cir. 1995)*("This case illustrates again that it is usually better practice for the district court, faced with a motion for directed verdict, to allow the case to go to the jury, and address the issue by way of a judgment n.o.v. if necessary.").

With respect to Interrogatory Nos. 4 and 5, Bridgewood asks that we construe the Jury's Answers to

these Interrogatories as setting a maximum award of compensatory damages, on the Jury's infringement finding, in the amount of $ 1,874,500, as opposed to allowing the combined sum of the Answers to those Interrogatories to constitute Transclean's compensatory damages. In support of this Motion, Bridgewood argues that the Court's Instructions to the Jury, on this aspect of the Special Verdict form, contained latent errors of law, that the Special Verdict form was faulty, and that counsel for Transclean, in his closing argument, misled the Jury's responses to these Interrogatories. Notably, Bridgewood took no exception to the Court's Jury Instructions, or Special Verdict form on this point, [*8] nor did Bridgewood object to Transclean's closing argument at a time when corrective action could be taken by the Court.

As a final basis for altering the Jury's compensatory damages computation, Bridgewood asserts that the evidence was insufficient, as a matter of law, to allow the damage award the Jury reached. In response, Transclean contends that the Jury was presented with abundant evidence that a determination of a reasonable royalty would not fully compensate Transclean for Bridgewood's willful infringement. Further, Transclean emphasizes that the Jury did no more than follow the Court's instructions, on the assessment of damages, which were not opposed by Bridgewood, and faithfully consider the evidence, that was admitted at Trial, on the adequacy of a reasonable royalty. While denying any improper conduct in the closing argument of Transclean's counsel, Transclean underscores that, if any error occurred in the course of that argument, Bridgewood waived the same by failing to raise a timely objection.

Lastly, Bridgewood argues that the Court should enter Judgment, as a matter of law, on Transclean's false advertising claim, while Transclean seeks enhanced damages, pursuant [*9] to Title *35 U.S.C. § 284*, and an award of attorneys' fees, under Title *35 U.S.C. § 285*, together with prejudgment interest. In opposition to that relief, Bridgewood acknowledges that the Jury found Bridgewood's infringement to be willful, by clear and convincing evidence, but denies that it committed the type of culpable conduct that would properly allow enhanced damages, or would qualify this case as being "exceptional," so as to warrant an award of attorneys' fees.

III. Discussion

A. Transclean's Post-Trial Motions.

Since they involve distinctly different considerations, we separately address the parties' respective post-Trial Motions, and commence with those filed by Transclean, as they were the first filed.

1. Transclean's Motion for Enhanced Damages.

a. Standard of Review. [HN1] Enhanced damages are allowed, in a patent infringement case, by Title *35 U.S.C. § 284*, which provides, in pertinent part, as follows:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use [*10] made of the invention by the infringer, together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed.

"The statute prescribes no standards for such increase, but precedent establishes that a person having knowledge of an adverse patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent." *SRI International, Inc. v. Advanced Technology Laboratories, Inc., 127 F.3d 1462, 1464 (Fed. Cir. 1997); Johns Hopkins Univ. v. CellPro, Inc., 152 F.3d 1342, 1364 (Fed. Cir. 1998)*("Although Section 284 does not state a basis upon which a district court may increase damages, it is well established that enhancement of damages may be premised upon a finding of willful infringement."). "The statute thus recognizes the tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive." Id.

[HN2] Whether enhanced damages are appropriate is determined through a two-step [*11] process. "First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based" and, "if so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." *Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996)*. Stated otherwise, "enhanced damages may be awarded only as a penalty for an infringer's increased culpability, namely willful infringement or bad faith," and "damages cannot be enhanced to award the patentee additional compensation to rectify what the district court views as an inadequacy in the actual damages awarded." *Beatrice Food Co. v. New England Printing & Lithographing Co., 923 F.2d 1576, 1579 (Fed. Cir. 1991)*.

[HN3] "An act of willful infringement satisfies this culpability requirement and is, without doubt, sufficient

to meet the first requirement to increase a compensatory damages award." *Jurgens v. CBK, Inc., supra at 1570.* However, a finding of willful infringement does not mandate that the district court enhance damages; it merely authorizes the court to do so at [*12] its discretion." *Johns Hopkins Univ. v. CellPro, Inc., supra at 1365.* "Increased damages also may be awarded to a party because of the bad faith of the other side." *Jurgens v. CBK, Inc., supra at 1570.* As the Court explained, in Jurgens:

> [HN4] Bad faith is used, for example, in referring to misconduct in the prosecution of or litigation over a patent. Such conduct includes inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation. These acts by themselves, however, are not sufficient for an increased damages award under section 284 because they are not related to the underlying act of infringement and say nothing about the culpability of the infringer. Only a culpable infringer can be held liable for increased damages, not an innocent one. * * * The listed acts might be evaluated to determine if the infringer acted willfully in light of the totality of the circumstances. The ultimate fact to be proven, that is, the basis for increased damages, however, would be that the infringement was willful, not that litigation activities [*13] were improper.

*Jurgens v. CBK, Inc., supra at 1570-71.*

[HN5] "Even if a party is subsequently found to be infringing another's patent despite its investigations, it will be liable only for compensatory damages, not increased damages, if it performed its affirmative duty in good faith." Id., citing *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 413 (Fed. Cir. 1993),* and *Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992).*

[HN6] In determining the propriety of enhanced damages, the Court exercises its discretion upon a consideration of the factors: "(1) whether the infringer deliberately copied the ideas or design of another, (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed, (3) the infringer's behavior as a party to the litigation, (4) the infringer's size and financial condition, (5) the closeness of the case, (6) the duration of the infringer's misconduct, (7) any remedial action by the infringer, (8) the infringer's motivation for harm, and (9) whether the infringer [*14] attempted to conceal its misconduct." Johns Hopkins Univ. v. Cell-Pro, Inc., supra at 1352 n. 16, citing *Read Corp. v. Portec, Inc., 970 F.2d 816, 827 (Fed. Cir. 1992),* abrogated, in part, on other grounds, *Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 (Fed. Cir. 1995)*(en banc). In exercising our discretion to enhance damages, however, we are limited "to a trebling of the basic damage award." *Signtech USA, Ltd. v. Vutek, Inc., 174 F.3d 1352, 1358-59 (Fed. Cir. 1999).*

b. Legal Analysis. Since the Jury found that Bridgewood willfully infringed Transclean's patent -- a finding that is supported in the Record -- Transclean has satisfied the initial showing prerequisite to enhanced damages. See, *Jurgens v. CBK, Ltd., supra at 1571* ("The jury thus determined as a factual matter that CBK acted with the requisite culpability to justify an award of increased damages," [HN7] "the trial judge concluded that there was substantial evidence to support the jury's determination" and, thus, "the first step in the willful infringement process was complete; predicate liability was found."). n3

n3 As the Court explained, in *Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1190 (Fed. Cir. 1998):*

> In determining whether willfulness has been shown, we look to the totality of the circumstances, understanding that willfulness, "as in life, is not an all-or-nothing trait, but one of degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of the patentee's rights." *Rite-Hite Corp. v. Kelley Co., Inc., 819 F.2d 1120, 1125-26, 2 USPQ2d 1915, 1919 (Fed. Cir. 1987).* We must look at exculpatory evidence as well as evidence tending to show deliberate disregard of Comark's rights in determining whether substantial evidence supports the jury's verdict. The correct legal standard, therefore, is whether, in light of all the evidence, there is

> substantial evidence to support the jury's finding of willfulness by clear and convincing evidence.

Here, Bridgewood has not challenged the Jury's finding of willful infringement, but concentrates on the impropriety of enhanced damages notwithstanding that finding.

As we detail, in the text of this opinion, we have considered the totality of the Record before us, and have expressly refrained from reweighing that evidence. "It is well settled that an important factor in determining whether willful infringment has been shown is whether or not the infringer obtained the opinion of counsel." *Id. at 1191*, citing *Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992).* The Record is clear that, by all appearances, Bridgewood did not obtain legal counsel notwithstanding the letter, that Bridgewood received from Transclean, and that notified Bridgewood of Transclean's concern that Bridgewood was infringing Transclean's patent. "Where the infringer fails to introduce an exculpatory opinion of counsel at trial, a court must be free to infer that either no opinion was obtained or, if an opinion were obtained, it was contrary to the infringer's desire to initiate or continue its use of the patentee's invention." *Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1573 (Fed. Cir. 1988).* While Bridgewood characterizes Transclean's letter as somewhat equivocal, "it is not controlling whether the patentee threatens suit, demands cessation of infringement, or offers a license under the patent." *SRI Int'l, Inc. v. Advanced Technology Laboratories, Inc., 127 F.3d 1462, 1470 (Fed. Cir. 1997).* Notwithstanding the receipt of that letter, Bridgewood continued to market its infringing product, apparently without the advice, or in spite of the advice of counsel, and, in light of these circumstances, as well as the totality of the Record before the Jury, we cannot say that the Jury's finding of willfulness is not supported by substantial, clear and convincing, evidence.

[*15]

[HN8] While a finding of willfulness does not, as we have noted, require an award of enhanced damages, n4 we would abuse our discretion were we to grant, or deny, Transclean's request without a demonstration as to why the finding of willfulness was an insufficient showing of culpability for increased damages. See, *Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d 958, 972 (Fed. Cir. 2000)*("We conclude that, in light of the jury's finding of willful infringement, the district court abused its discretion in refusing to increase damages or award attorneys fees because it failed to articulate any reasons for refusing to make such an award."); *Jurgens v. CBK, Ltd., supra at 1572* (After an express finding of willful infringement, "a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees."). The framework for our continued analysis has been formulated, as follows:

> [HN9] The principal considerations in enhancement of damages are the same as those of the willfulness determination, but in greater nuance as may affect the degree of enhancement. Thus egregiousness [*16] of the infringer's conduct may receive greater emphasis, as may any mitigating factors. See *Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27, 23 USPQ2d 1426, 1435-36 (Fed. Cir. 1992)*(collecting factors). All aspects relevant to a particular case should be given the weight appropriate to their substance. A broad range of discretion is reposed in the trial court, founded on this need to weigh and balance multiple factors in determining a just remedy.

*SRI Int'l, Inc. v. Advanced Technology Laboratories, Inc., supra at 1469.*

Accordingly, we turn to a consideration of the factors which inform the enhanced damages analysis.

> n4 Citing *Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d 958, 972 (Fed. Cir. 2000)*, and *Jurgens v, CBK, Ltd., 80 F.3d 1566, 1573 (Fed. Cir. 1996)*, Transclean argues that "the jury's finding of willfulness alone supports an award of treble damages." See, Plaintiffs' Memorandum of Law in Support of their Post-Trial Motions, at p. 3. Neither of the referenced cases support any such contention, and we reject the argument outright. See, *Tate Access Floors, Inc. v. Maxcess Technologies, Inc., 222 F.3d at 972* ("[A] finding of willful infringement does not mandate that damages be increased or that attorneys fees be awarded * * *."); *Jurgens v. CBK, Ltd., supra at 1573* ("[A] finding of willful

infringement does not mandate that damages be increased or that attorneys fees be awarded.").

[*17]

Emphasizing the phraseology of Bridgewood's counsel, as well as the testimony of certain of Bridgewood's principals -- to the effect that patents are a "curse" to "terrorize" competitive business ventures -- Transclean contends that Bridgewood's conduct effectuated Bridgewood's stated disdain for patents generally, and for Transclean's patent in particular. Although the comments of Bridgewood's counsel, in the course of his opening statement, were improvident, in their best light, we view Transclean's argument, which is predicated on that improvidence, to be equally short-sighted. Although not always the case, on occasion -- and we think this to be one of them -- words can truly just be words, and conduct, separate and apart from those words, must be evaluated on the strength of the acts involved. Here, the evidence shows that Bridgewood was unaware of any assertion, that it could be infringing upon Transclean's patent, until well after Bridgewood began to manufacture, and market, its own competing product. n5 There is no evidence that Bridgewood was attempting to copy the essence of Transclean's patent, or that Bridgewood failed in an unsuccessful attempt to design around, or otherwise [*18] pirate, Transclean's patent.

n5 According to the Record presented, "since March of 1995, Bridgewood has manufactured, and sold, and offered for sale in the United States, its own automatic fluid exchanging system." *Transclean Corp. v. Bridgewood Services, 77 F. Supp.2d 1045, 1056 (D. Minn. 1999).* It was not until August 8, 1996, that Transclean sent a letter to Bridgewood, "which notified it of a possible patent infringement claim." *Id. at 1058.*

According to the Record before us, in a letter dated August 8, 1996, Bridgewood was notified of Transclean's concern, that Bridgewood was infringing Transclean's patent. The letter requested additional information, including a copy of Bridgewood's patent. Shortly thereafter, Bridgewood forwarded a copy of its patent to Transclean, along with certain sales brochures. Bridgewood did not hear further from Transclean until it was served with the Complaint that Transclean filed with this Court on October 14, 1997 -- some fourteen months after [*19] Transclean's letter request for further information. Although Transclean urges that these facts demonstrate Bridgewood's willful disrespect for Transclean's patent, Bridgewood was not without a bona fide basis to believe that the patent, upon which it was marketing its competing product, was valid, over the patent of Transclean.

As we have previously detailed, see *Transclean Corp. v. Bridgewood Services, Inc., supra at 1056-57,* Bridgewood applied for its patent on October 7, 1994, but that application was rejected on June 12, 1995, because the Patent Examiner determined that Bridgewood's invention was unpatentable, under Title *35 U.S.C. § 103,* over Transclean's patent, among others. Bridgewood submitted additional materials, in response to that rejection, but the Examiner was undeterred and, on September 20, 1995, the application was, again, rejected. Bridgewood amended its application, once again, and submitted additional arguments, so as to distinguish its patent from that of Transclean and, on June 4, 1996, Bridgewood's patent issued without further comment from the Examiner. While the fact that Bridgewood's patent issued over the prior patent [*20] of Transclean does not insulate Bridgewood from a finding of infringement, either literally or by equivalency, see, *National Presto Industries, Inc. v. West Bend Co., 76 F.3d 1185, 1192 (Fed. Cir. 1996),* we think that such a circumstance militates against a finding of "bad faith" on Bridgewood's part.

Plainly, Bridgewood did not attempt to conceal its activities from Transclean for, pursuant to Transclean's request, Bridgewood forwarded a copy of its patent for Transclean's review. Rather than to then engage Bridgewood in a dialogue toward resolving any claim of infringement, that Transclean might have legitimately entertained, Transclean disengaged for a period of fourteen months, and then responded, to Bridgewood's proffer of its patent, with an infringement lawsuit. As Transclean concedes, "the proper time to assess willfulness is at the time the infringer received notice," *Odetics, Inc. v. Storage Technology Corp., 185 F.3d 1259, 1276 (Fed. Cir. 1999),* and, at that time, Bridgewood had ample reason to believe that it held a valid patent over that of Transclean. While that reason has now been determined to have been erroneous, that error was not [*21] reasonably apparent in August of 1996. n6

n6 We recognize, as we did before, see footnote 2, supra, that Bridgewood failed to present an opinion of legal counsel as to the validity of Bridgewood's patent, as of August of 1996, or at any other time. We have accepted that such a failure could properly lead a Jury to conclude that Bridgewood's conduct was willful, but we here properly deal in "nuances," and we do not find the failure to obtain a legal opinion, over and above that implicitly presented by patent

counsel, at the time that Bridgewood's patent application was under review by the Patent Examiner, to prompt an appreciable inference of culpability. See, *SRI Int'l, Inc. v. Advanced Technology Laboratories, Inc., supra at 1469.*

Moreover, we are not persuaded by Transclean's argument that Bridgewood's "financial condition supports an award of treble damages." Plaintiffs' Reply Memorandum of Law in Support of their Post Trial Motions, at p. 5. Bridgewood entered the market for automatic [*22] transmission fluid exchangers well after Transclean obtained its patent on June 7, 1994. Bridgewood's success in that market was substantially influenced by their significant contributions in design, marketing, and entrepreneurial effort. In contrast, Transclean's product appears to have stagnated, in the marketplace, notwithstanding Transclean's considerable interest in seeing its product succeed. This is not a case in which, from the outset, a diminutive Transclean was thrashed by the malevolence of a megalithic, corporate marauder. Two competitors, each believing that their product was patent-protected, vied for a common market, and Bridgewood proved to be the more successful. n7 Stated succinctly, while Bridgewood acted as a fierce competitor, we find nothing pernicious in their marketing approach, vis-a-vis Transclean. n8

n7 Nor are we persuaded by Bridgewood's contention "that very few resources remain after paying legal fees over the course of this litigation." Bridgewood's Opposition to Transclean's Post-Trial Motions, at p. 12. If ability to pay were the sole criterion, we are satisfied that Bridgewood, and its principals, could honor a Judgment in excess of the compensatory damages, that were found by the Jury, and determined to be lawful by this Court. [*23]

n8 We are mindful of the Jury's determination, that Bridgewood had engaged in false advertising which, to some extent, could reflect a malevolent market approach. What the Jury was not asked to determine, however, because the claim had not been effectively made by Bridgewood, was the extent to which Transclean's advertisements, to the effect that its product resulted in a "total exchange," produced equivalent falsity.

While the factors involving the duration of the infringement, and any remediation by the infringer, tend to be somewhat equivocal, the extent of any infringement was concluded on April 30, 1998, when Bridgewood sold its assets to Century, and Century purchased a license from Transclean, in order to sell the exchangers that had previously been manufactured by Bridgewood. Although this transaction delimited the duration of any infringement, there is no showing, in this Record, that the purpose of the sale, from Bridgewood's perspective, was either to conclude acts of infringement, or to remedy a past infringing practice. Indeed, it does not appear that Bridgewood knew that Century [*24] would be securing a license from Transclean, should Century be successful in completing the purchase of Bridgewood's assets. Nonetheless, the transaction had both salient effects.

Lastly, we jointly consider the "closeness of the case," and Bridgewood's asserted "shotgun defense strategy," for they are, under the circumstances here, intricately interwoven. Whether we characterize Bridgewood's defense as "shotgun," Plaintiffs' Memorandum of Law in Support of their Post-Trial Motions, at p. 6, or as "zealous," Bridgewood's Opposition to Transclean's Post-Trial Motions, at p. 10, there can be no mistaking that the case was hard-fought on both sides. Transclean portends that Bridgewood had a committed resolve to unflinchingly litigate each issue to submission but, so long as the defenses have a principled basis, the closeness of the case will promote a staunch contest. Our summary dispositions did not reveal a clear winner; each party could claim some success. Although, we had found that, as a matter of law, Bridgewood had infringed five of the claims in Transclean's patent, as was its right, Transclean sought to prove the infringement of an additional claim at the time of Trial. [*25] Whether five or six claims were infringed, Bridgewood was committed to avoiding liability on the basis of the purported invalidity of Transclean's patent, as well as the derivative invalidity of that patent arising from allegedly inequitable conduct on Transclean's part.

We are hard-pressed to criticize Bridgewood for attempting to prove, on a considered basis, that Transclean's patent was invalid because it was anticipated by prior art -- particularly, the devices of Neil Becnel ("Becnel") -- when Transclean expended significant Trial time in proving that Bridgewood infringed Claim 13 of Transclean's patent, despite our pretrial ruling, as a matter of law, that Bridgewood had infringed Claims 1, 2, 3, 4, and 12. We could not say, at the time of Summary Judgment, who would be successful on the invalidity by anticipation defense, nor could we at the time the case was submitted to the Jury. While we characterized Becnel -- we think rightly -- as

demonstrating "a persistent inability to accurately chronicle events, or to adequately explain significant contradictions in his prior statements and testimony," see Findings of Fact, Conclusions of Law, and Order for Judgment of November 1, 2000, at [*26] p. 13 n. 4, whether a Jury would accept, or renounce his credibility, was conjectural, despite our capacity to fully appraise his demeanor as a witness.

Ultimately, the Jury appears to have spurned Becnel's believability but, in doing so, the Jury had to consider and reject an appreciable amount of corroborative evidence, including the testimony of other witnesses. We do not believe that the proffer of Becnel's testimony was an act of bad faith. [HN10] Experienced litigators properly recognize that even competent evidence can be unpersuasive if it depends upon the testimony of a witness who is unable to deport himself well. The answer is not to withhold that evidence, out of hand, but to balance whether, in the context of other evidence of Record, the witness' testimony can earn the Jury's belief. Such strategic considerations, well-vested in the discretion of a Trial attorney, do not easily rise -- and, here, do not rise -- to a level of culpability that is commensurate with a finding of bad faith. Cf., *Read Corp. v. Portec, Inc., supra at 831* ("Such a 'litigation strategy' should be encouraged, not viewed as misconduct."), citing *State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1235-36 (Fed. Cir. 1985).* [*27] The same, however, may not be said of Bridgewood's reliance on an inequitable conduct defense, but we find that issue better addressed in the context of Transclean's request for attorneys' fees.

In sum, having carefully reviewed the factors enunciated in Read, as well as the evidence in its totality, we conclude that it would be an abuse of our discretion if we were to award en-hanced damages to Transclean. [HN11] "The paramount determination in deciding to grant enhancement and the amount thereof is the egregi-ousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc., supra at 826*. Bridgewood's conduct, here, does not, on any principled basis, surmount that hurdle of egregiousness. n9

n9 In *Jurgens v. CBK, Ltd., 80 F.3d 1566, 1570 (Fed. Cir. 1996),* the Court expressed the following distinction, between willful infringing conduct, and conduct subsequent to that infringement:

> [HN12] Increased damages also may be awarded to a party because of the bad faith of the other side.
>
> * * *
>
> Bad faith is used, for example, in referring to misconduct in the prosecution of or litigation over a patent. Such conduct includes inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation. These acts by themselves, however, are not sufficient for an increased damages award under section 284 because they are not related to the underlying act of infringement and say nothing about the culpability of the infringer. * * * The listed acts might be evaluated to determine if the infringer acted willfully in light of the totality of the surrounding circumstances. The ultimate fact to be proven, that is, the basis for increased damages, however, would be that the infringement was willful, not that litigation activities were improper. Thus, although an infringer's inequitable conduct in prosecuting his own patents, or his egregious conduct in infringement litigation may be sufficient for other sanctions or fee awards, or may be used as a factor in determining whether or how much to increase a damages award once sufficient culpability is found, *Read Corp., 970 F.2d at 826, 23 USPQ2d at 1435,* these actions are not sufficient independent bases to justify increased damages under section 284.

In underscoring the same point, the Court observed, in an appended footnote:

> [HN13] Courts have tools to punish egregious misconduct. The listed actions are typical of "exceptional case" conduct upon which an award of attorneys fees

> may be based under *35 U.S.C. § 285* (1988). Other sanctions include attorneys fees pursuant to *Fed.R.Civ.P. 11*, *Fed.R. App.P. 38*, or *28 U.S.C. § 1927* (1994). See also, *Fed.R.Civ.P. 37*.

Accordingly, we follow this suggested approach, and we address what we regard as Bridgewood's unnecessary prolongation of this litigation, through the advancement of a contrived inequitable conduct defense, in the milieu of a Section 285 award of attorneys' fees.

[*28]

2. Transclean's Motion for an Award of Attorneys' Fees.

a. Standard of Review. [HN14] "[Title] *35 U.S.C. § 285* provides for the 'award [of] reasonable attorney fees to the prevailing party' in 'exceptional' patent infringement cases." Ruiz v. A.B. Chance Co., *234 F.3d 654* , *2000 WL 1783236* at *12 (Fed. Cir., December 6, 2000). "The prevailing party must prove the exceptional nature of the case by clear and convincing evidence." Id., citing *Carroll Touch Inc. v. Electro Mach. Sys., Inc., 15 F.3d 1573, 1584 (Fed. Cir. 1993).* As the Court observed, in *Yamanouchi Pharmaceutical Co., Ltd. v. Danbury Pharmacal, Inc., 231 F.3d 1339, 1346-47 (Fed. Cir. 2000):*

> This court * * * has recognized many varieties of misconduct that make a case exceptional for a fee award. These forms of misconduct include willful infringement * * *, inequitable conduct before the PTO, offensive litigation tactics, vexatious or unjustified litigation, or frivolous filings * * *.

[Citations omitted].

[HN15] A finding of willful infringement is sufficient to make a case exceptional. See, *Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed. Cir. 1990),* [*29] cert. denied, *500 U.S. 918, 114 L. Ed. 2d 103, 111 S. Ct. 2017 (1991); Amsted Indus. v. Buckeye Steel Casings Co., 24 F.3d 178, 184 (Fed. Cir. 1994).* As the Court explained, in Modine:

> An express finding of willful infringement is a sufficient basis for classifying a case as "exceptional," and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is not "exceptional" within the meaning of the statute. *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986).* Nevertheless, the decision whether or not to award fees is still committed to the discretion of the trial judge, and "even an exceptional case does not require in all circumstances the award of attorney fees." *Id. at 201.*

*Modine Mfg. Co. v. Allen Group, Inc., supra at 543;* see also, *Rite-Hite Corp. v. Kelley Co., 819 F.2d 1120, 1126 (Fed. Cir. 1987).*

[HN16] "When attorney fees under *35 U.S.C. § 285* are awarded solely on the basis of litigation misconduct, the amount of the award must bear some relation [*30] to the extent of the misconduct." *Read Corp. v. Portec, Inc., supra at 831*, citing *Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553-54 (Fed. Cir. 1989).*

b. Legal Analysis. In support of an award of reasonable attorneys' fees, arising from Bridgewood's embracement of an inequitable conduct defense, we seriously doubt that we need add more than we have already expressed, in our rejection of that defense. In our prior determination, we forthrightly made the following findings, and conclusions:

> At best, [Bridgewood's] accusations [of inequitable conduct] are an unsupported hodgepodge of conjecture and surmise, interlaced with nothing more than [Bridgewood's] suspicions, economic self-interest, and adversarial mistrust.

Findings of Fact, Conclusions of Law, and Order for Judgment of November 1, 2000, at p. 4.

* * *

> This Record is bereft of any clear and convincing evidence of material misrepresentation on the part of [Transclean], or [its] legal representatives, whether the evidence is compartmentalized, or considered collectively.

Id. at 14.

* * *

> At Trial, no evidence was presented [*31] to establish an intent, on the part of [Transclean], either directly, or through

> [its attorney,] to deceive the Patent Examiner.

Id.

* * *

> Not surprisingly, "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988);* Molins PLC v. Textron, Inc., supra at 1182 [HN17] ("Unjustified accusations of inequitable conduct are offensive and unprofessional," and "they have become a 'plague' on the patent system."). In our considered judgment, that "plague" has improperly been visited upon this case.

Id. at 23.

* * *

> We find the notion, as espoused by [Bridgewood], that [Transclean] only referenced the Becnel Patent in [its] Patent Application, as pertinent prior art, because they wanted to shield the substantive pertinence of that Patent from the Examiner's attention to be implausible, if not perverse.

Id. at 23-24.

* * *

> We understand [Bridgewood's] contention, that [Transclean's] description of Becnel's Patent was inaccurate, or purposefully deceitful. Apart from [Bridgewood's] conclusory characterization [*32] of the Becnel reference, we find no credible evidence to support that claim, much less clear and convincing evidence.

Id. at 26.

* * *

> Simply put, we have been directed to no evidence, much less clear and convincing evidence, of any withholding of prior art with an intent to deceive, or any material misrepresentations, in [Transclean's] Patent Application, which would properly invoke the inequitable conduct defense.

Id. at 27.

* * *

> Moreover, apart from [Bridgewood's] sinister suspicions, we have been pointed to no evidence that either [Transclean], or [its attorney] intended to deceive the PTO with respect to [Transclean's] Patent Application.

Id.

* * *

> As the Court of Appeals for the Federal Circuit has repeatedly recognized, [HN18] "given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required." Moulins PLC v. Textron, Inc., supra at 1181, quoting *Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 939 (Fed. Cir. 1990),* cert. denied, *498 U.S. 920, 112 L. Ed. 2d 250, 111 S. Ct. 296 (1990).* [*33] This is such a case, where inventiveness has woven a cloak of deception which bears no likeness to the reality of the Record before us.

Id. at 27-28.

Given these findings, which we here reaffirm, an award of Section 285 fees is fully warranted with respect to the time and effort that Transclean expended, in reasonable attorneys' fees, in addressing Bridgewood's inequitable conduct defense. n10

> n10 In addition, Transclean is entitled to reasonable attorneys' fees arising out of its status, as the prevailing party, on its false advertising claim under *Minnesota Statutes Sections 325F.67* and 8.31, Subdivision 3(a). As we later detail, in the text of this Order, we deny Bridgewood's Motion for the Entry of Judgment on Transclean's false advertising claim. Therefore, we employ the following mechanism, in order to be informed of the parties' respective positions as to the proper amount of any fee award.
>
> **By no later than January 26, 2001,** Transclean shall submit, for the Court's in camera review, an Affidavit of counsel averring to the accuracy of the appended time sheets, which

document the time counsel expended solely on these two issues. In Transclean's transmittal letter to the Court, Transclean shall categorize the time entries into discrete tasks, and tabulate the time expended on each such categorization, and the fees being requested for each categorization, in order that Bridgewood will be informed as to the reasonable attorneys' fees that Transclean is requesting. **By no later than February 2, 2001,** Bridgewood shall file and serve any objection to Transclean's fee requests.

[*34]

3. Transclean's Motion for a Reversal of Entry of Judgment as to a Reasonable Royalty on Bridgewood's Sale of its Business Assets, Including Good Will, to Century.

At the close of Transclean's case-in-chief, we granted Bridgewood's Motion that Judgment be entered against Transclean, as a matter of law, see *Rule 50(a), Federal Rules of Civil Procedure*, on Transclean's assertion, that it was entitled to a reasonable royalty on the "good will" value, which Bridgewood received, when the assets of Bridgewood were sold to Century. Transclean asks that we reconsider, and reverse, our earlier resolution of that issue. Finding no responsible basis to do so, we deny Transclean's request.

Although inferentially relying upon the analysis of *Minco Inc. v. Combustion Engineering Inc., 95 F.3d 1109 (Fed. Cir. 1996)*, Transclean made plain, when we considered Bridgewood's Motion for the entry of Judgment as a matter of law, that it was not relying upon the strict holding in that case. In Minco, [HN19] the Court conditioned a patent owner's entitlement, to a portion of the infringer's sale of its business, upon proof that the purchaser of the business did not purchase the patent [*35] owner's business but, instead, elected to purchase the infringer's business. There is no evidence that such an occurrence was at play in Century's purchase of the assets of Bridgewood. Indeed, the testimony of Robert Gey ("Gey"), the officer of Century who was instrumental in negotiating the purchase of Bridgewood's assets, as well as the separate License Agreement from Transclean, which allowed Century to sell Bridgewood's products without concern for infringing Transclean's patent, was that Century did not seriously consider purchasing Transclean's business. Gey's testimony, in this important respect, was unrebutted.

Moreover, Transclean did little more than isolate the value of the "goodwill," that Century purchased, when the sale of Bridgewood's business was consummated. The isolation of that valuation was uncomplicated -- the book value of Bridgewood's assets only needed to be deducted from the price paid by Century for the business, and the remainder would constitute Bridgewood's goodwill. Ascertaining that arithmetic figure might be helpful to Transclean's argument, but Transclean's financial expert, Carol A. Ludington ("Ludington"), did not attempt to further analyze that [*36] figure, so as to isolate what portion of the goodwill could properly be attributable to infringement, as opposed to the Defendant's aggressive marketing, the quality of Bridgewood's product, Bridgewood's customer support and pricing promotion, and the like. Transclean has merely argued that, but for Bridgewood's infringement, there would be no product to sell, and no goodwill; ergo, all of the goodwill is attributable to infringement. Of course, the argument, if valid, would govern the computation of any royalty for, as the argument goes, the royalty should represent the total profits obtained in the sale of the infringing device since, but for the infringement, there would be no resultant profit. Plainly, such is not the law. As a result, what Ludington isolated was a pool of money, and Transclean's entitlement to that pool, or any specific portion of it, was not substantiated in this Record.

Nor did any substantiation, for an entitlement to the goodwill that Transclean now seeks, emanate from the testimony of Nickolas E. Westman ("Westman"), who was Transclean's royalty rate expert. Westman generally testified that a one-third to one-half royalty should apply to the profits of the [*37] Defendant, but he expressly noted that the funds -- the profits -- to which such a figure should apply, would have to be determined by the Court. More importantly, he expressly testified that he knew nothing about Bridgewood's good will, at the time of the purchase of Bridgewood's business by Century, and that he did not know the components of that goodwill. Accordingly, Transclean's entitlement to a portion of Bridgewood's goodwill, as a reasonable royalty, was not established in the Record before us. To allow the Jury to divine the percentage of goodwill, that would be properly attributable to infringement, if any, would be a resort to pure speculation and conjecture.

In addressing this issue, we bear in mind that the governing law recognizes that, [HN20] "because fashioning an adequate damages award depends on the unique economic circumstances of each case, the trial court has discretion to make important subsidiary determinations in the damages trial, such as choosing a methodology to calculate damages." Minco Inc. v. Combustion Engineering Inc., supra at 1007, citing *Smith Kline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991)*, and *King Instruments Corp. v. Otari Corp., 767 F.2d 853, 863 (Fed. Cir. 1985)*. [*38] Repeatedly, we inquired of Transclean's counsel as to why this case was different from the legions of cases

which have preceded, and which have not considered an infringer's goodwill as a separate pool of monetary resources from which a royalty could be drawn. Apart from the fact that, here, the sale of Bridgewood's business, to Century, simplified the computation of the goodwill value of Bridgewood, counsel was unable to distinguish this case from its forerunners.

The distinction, that Transclean has identified, is not a meaningful one, however. The ascertainment of good will is not a particularly exacting computation; accountants and financial advisers, such as Ludington, isolate the goodwill value of a going concern on a routine basis, irrespective of whether the business was recently sold. If, as Transclean contends, goodwill should be treated as a separate pool of wealth, from which a royalty should be exacted, then we would have thought that, in every case in which the infringing product was the sole, or principal, commercial commodity of the infringer, a royalty would be extracted from the infringer's goodwill. We are aware of no such rule of law, and Transclean draws none [*39] to our attention. Thus, even if we construed Minco as broadly holding, that goodwill was a properly available source of royalty payments over and above the profits of an infringing company, then, as we have noted, the Record is devoid of any showing as to the proper royalty rate, vis-a-vis goodwill, that the Jury should properly find.

Lastly, [HN21] in theory, a proper royalty rate should afford the patent holder the profits, by way of a license or royalty, which would be attributable to the infringement. As we explained, in our Charge to the Jury, on occasion, the reasonable royalty rate would not produce adequate damages, where, for example, the infringer parlayed a sale, because of the infringement, that otherwise would have been made by the patent holder. In such a case, awarding the royalty rate, only, would not compensate the patent holder for the loss of the value of that specific sale, over and above the royalty rate. We understand the Georgia-Pacific n11 analysis to envision a royalty rate that would make the patent holder whole. To suggest, as does Transclean, that the reasonable royalty rate merely establishes a floor, upon which the patent holder may claim additional, [*40] subjective enhancements, does not square with the purposes served by a reasonable royalty rate, if that rate is properly established. Where a showing has been made, which supports income that was foregone -- over and above the royalty rate -- such as lost profits from specific sales, or price erosion in the marketplace, which owes to the challenged infringement, then an additive would seem both appropriate, and warranted, if the patent holder is to obtain adequate damages.

n11 See *Georgia-Pacific Corp. v. United States Plywood Corp., 318 F Supp. 1116, 1120 (S.D.N.Y. 1970)*, modified and aff'd, *446 F.2d 295 (2nd Cir. 1971)*, cert. denied, *404 U.S. 870, 30 L. Ed. 2d 114, 92 S. Ct. 105 (1971)*(reciting a comprehensive list of fifteen facts in calculating a reasonable royalty rate).

In sum, we have reconsidered the damages issue, as it relates to Transclean's claim to a royalty on Bridgewood's goodwill, and we continue in the belief that Bridgewood is entitled to Judgment as [*41] a matter of law on that score.

4. Transclean's Motion for Prejudgment Interest.

[HN22] A patent owner, who is successful in proving infringement, is ordinarily entitled to an award of prejudgment interest. See, Title *35 U.S.C. § 284* ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, * * * together with interest and costs as fixed by the court."); *General Motors Corp. v. Devex Corp., 461 U.S. 648, 654-55, 76 L. Ed. 2d 211, 103 S. Ct. 2058 (1983)*("[A] court should normally award prejudgment interest to afford the plaintiff full compensation for infringement."). "Prejudgment interest has no punitive, but only compensatory purposes." *Oiners v. Walgreen Co., 88 F.3d 1025, 1033 (Fed. Cir. 1996)*, cert. denied, *519 U.S. 1112, 136 L. Ed. 2d 838, 117 S. Ct. 951 (1997)*. "Interest compensates the patent owner for the use of its money between the date of injury and the date of judgment." Id., citing *Bio-Rad Lab., Inc. v. Nicolet Instrument Corp., 807 F.2d 964, 969 (Fed. Cir. 1986)*, cert. denied, *482 U.S. 915, 96 L. Ed. 2d 675, 107 S. Ct. 3187 (1987);* [*42] see also, *Nickson Indus., Inc. v. Rol Mfg. Co., 847 F.2d 795, 800 (Fed. Cir. 1988)*("Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment.").

"In Devex, [HN23] the Supreme Court suggested a court may deny prejudgment interest in certain limited circumstances, for example, where the owner has been responsible for undue delay in prosecuting the lawsuit." *Mahurkan v. C.R. Bard, Inc., 79 F.3d 1572, 1579-80 (Fed. Cir. 1996)*, citing *General Motors Corp. v. Devex Corp., supra at 657*. Here, Bridgewood does not dispute that an award of prejudgment interest is within the Court's discretion, but contends that, in considering any such award, the Court should account for the delays in this litigation which were caused by Transclean. We find no appreciable delay in the manner in which Transclean prosecuted its claims against Bridgewood and, therefore, no diminution in the award of prejudgment interest should be imposed on that score. While, as we have

already noted, Transclean awaited some fourteen months, after providing Bridgewood with notice of Bridgewood's suspected infringement, to institute this [*43] action, that is not the sort of delay that is "undue."

[HN24] "District courts have discretion to limit prejudgment interest where, for example, the patent owner has caused undue delay in the lawsuit," "but there must be a justification bearing a relationship to the award." *Nickson Indus., Inc. v. Rol Mfg. Co., supra at 800.* In an unpublished decision, the Court of Appeals for the Federal Circuit determined that a delay, between the notice of infringement and the commencement in the infringement action, is not "undue" delay such as would "justify limiting the term of prejudgment interest." *Wallace Computer Services, Inc. v. Uarco Inc., 887 F.2d 1095, 1989 WL 106583* **2 (Fed. Cir. 1989) (Table decision). The same result was reached in *Comark v. Harris Corp., 1997 U.S. Dist. LEXIS 10876, 1997 WL 431000* **16 (E.D.Pa., July 17, 1997), aff'd, *156 F.3d 1182 (Fed. Cir. 1998),* where the hiatus, between the notice of suspected infringement and the commencement of a lawsuit, was approximately seventeen months. In denying the infringer's request to exclude that period of delay from the term of prejudgment interest, the Court noted that, "the fact that seventeen months [*44] passed between the [notice] letter and the lawsuit does not, without more, mean that the delay was 'undue.'" Id. Specifically the infringer there, as here, failed to offer some evidence that the "delay was based on an improper reason." Id.

Transclean has requested "prejudgment interest at the prime rate plus one percent, compounded annually, and assuming that Bridgewood would make royalty payments semi-annually." In support of its request, Transclean has proffered the Declaration of Ludington which has gone unrebutted. Of course, [HN25] "[a] trial court is afforded wide latitude in the selection of interest rates, * * * and may award interest at or above the prime rate." *Uniroyal, Inc. v. Rudkin-Wiley Corp., 939 F.2d 1540, 1545 (Fed. Cir. 1991),* citing *Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 556-57 (Fed. Cir. 1984), Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1066 (Fed. Cir. 1983),* and *Studiengesellschaft Kohle v. Dart Indus., Inc., 862 F.2d 1564, 1579-80 (Fed. Cir. 1988).* Further, "it has been recognized that 'an award of compound rather than simple interest assures the patent owner is fully [*45] compensated," and "the determination whether to award simple or compound interest is a matter largely within the discretion of the district court." *Rite-Hite Corp. v. Kelly Co., Inc., 56 F.3d 1548, 1555 (Fed. Cir. 1995),* citing *Fromson v. Western Litho Plate & Supply Co., 13 U.S.P.Q.2d 1856, 1862, 1989 WL 149268 (E.D.Mo. 1989),* aff'd mem., *909 F.2d 1495 (Fed. Cir. 1990),* and *Gyromat v. Champion Spark Plug Co., supra at 557.*

We find an interest rate of prime plus one percent to be appropriate since that was the interest on Bridgewood's line of credit as of April 30, 1998, while Transclean was paying interest, on its own loans, at 15 percent per annum. Additionally, we have allocated the infringement damages, upon which prejudgment interest would be appropriate, from April of 1995 -- when Bridgewood's infringement commenced -- until April of 1998 -- when Bridgewood sold its business to Century. Consistent with Ludington's analysis, which we find to be appropriate, we have compounded the interest annually, and have assumed that Bridgewood would remit royalty payments semi-annually. See, e.g., *Studiengesellschaft Kohle v. Dart Indus., Inc., supra at 1580* [*46] (affirming prejudgment interest at prime rate compounded quarterly). We also compute the prejudgment interest through the date on which Judgment was entered -- November 1, 2000. Using these parameters, prejudgment interest, in the amount of $ 682,122, is awarded to Transclean on its infringement damages, which we find to be $ 1,874,500, as we later detail, for a total infringement damages award of $ 2,556,622.

In addition, and in accordance with the provisions of *Minnesota Statutes Section 549.09,* n12 Transclean is also entitled to interest on the damages awarded for Bridgewood's false advertising. We have computed that interest from the date Transclean filed its Amended Complaint, which first alleged a claim of false advertising, until the date on which Judgment was entered, with the award being computed as simple interest at the Minnesota statutory rate. Accordingly, prejudgment interest, in the amount of $ 5,761, is awarded to Transclean on its fraudulent advertising damages of $ 50,000, for a total award on that claim of $ 55,761.

n12 While there is some conflict in the Minnesota cases, we conclude that Transclean is correct in requesting interest under Section 549.09, even though the false advertising damages were unliquidated until resolved by the Jury's Verdict. See, *Lienhard v. State, 431 N.W.2d 861, 865 (Minn. 1988); Cox v. Crown CoCo, Inc., 544 N.W.2d 490, 500 (Minn.App. 1996);* but see, *Wenzel v. Mathies, 542 N.W.2d 634, 644 (Minn.App. 1996),* rev. denied (Minn., March 28, 1996)(concluding that the Minnesota Supreme Court, in Lienhard "did not change the rule that prejudgment interest on unliquidated damages is available only when damages are

readily ascertainable by computation and not dependent on contingencies or jury discretion."), citing *ZumBerge v. Northern States Power Co., 481 N.W.2d 103, 109 (Minn.App. 1992),* rev. denied (Minn., April 29, 1992), *Int'l Fin. Servs., Inc. v. Franz, 515 N.W.2d 379, 389 (Minn.App. 1994),* aff'd in part and rev'd in part on other grounds, *534 N.W.2d 261 (Minn. 1995),* and *Dear v. Minneapolis Fire Dep't Relief Ass'n, 481 N.W.2d 69, 73 (Minn.App. 1997),* aff'd as modified, *485 N.W.2d 145 (Minn. 1992).*

Were there doubt as to the Minnesota Supreme Court's holding, in Lienhard, the doubt was erased, for our purposes, by the Court of Appeals for the Eighth Circuit, in *Simeone v. First Bank Nat'l Ass'n, 73 F.3d 184, 191 (8th Cir. 1996),* where the Court addressed the issue of prejudgment interest, under Minnesota law, as follows:

> [HN26] A trial court's authority to award prejudgment interest is governed by statute. See *Minn. Stat. § 549.09.* Prejudgment interest is an element of damages awarded to provide full compensation by converting time-of-demand damages into time-of-verdict damages. It is designed to compensate the plaintiff for the loss of the use of the money owed. *Johnson v. Kromhout, 444 N.W.2d 569, 571 (Minn.Ct.App. 1989).* Prior to 1984, prejudgment interest was allowed on an unliquidated claim only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value. *Solid Gold Realty, Inc. v. J.B. Mondry, 399 N.W.2d 681, 684 (Minn.Ct.App. 1987).* In 1984, however, § 549.09 was amended to provide that "the prevailing party shall receive interest on any judgment or award." *Minn.Stat. § 549.09.* The amended statute allows prejudgment interest "irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable." *Lienhard v. State, 431 N.W.2d 861, 865 (Minn. 1988).*

We are satisfied that Lienhard interpreted Section 549.09 to allow an award of prejudgment interest even in those cases involving unliquidated damages, such as the damages arising from Transclean's false advertising claim.

[*47]

B. Bridgewood's Post-Trial Motions.

1. Bridgewood's Motion for an Amended Judgment or, in the Alternative, a New Trial on the Damages Issue.

We begin with a recitation of what Bridgewood's Motion is not. Since Bridgewood did not object to our Jury Instructions, or to the Special Verdict form we employed, as they related to the issue of damages, Bridgewood has no standing upon which to assert that the Jury was misled by either our Charge to the Jury, or by the form upon which the Jury returned its Verdict. See, *Mitsubishi Electric Corp. v. Ampex Corp., 190 F.3d 1300, 1304 (Fed. Cir. 1999)* [HN27] (party waives objection by acquiescing and proposing the verdict form), citing *Hoechst Celanese Corp. v. BP Chemicals, Ltd., 78 F.3d 1575, 1581 (Fed. Cir. 1996); Reorganized Church of Jesus Christ of Latter Day Saints v. U.S. Gypsum Co., 882 F.2d 335, 338 (8th Cir. 1989)*(same); *Dupre v. Fru-Con Engineering Inc., 112 F.3d 329, 334 (8th Cir. 1997)*("To preserve an argument concerning a jury instruction for appellate review, a party must state distinctly the matter objected to and the grounds for the objection."). n13

n13 Of course, even in the absence of an objection, we could undertake a "plain error" analysis if an objection would have had substance. See, e.g., *Cross v. Cleaver, 142 F.3d 1059, 1067 (8th Cir. 1998)*("When a party fails to make a timely and adequate objection before the trial court to a matter subsequently raised on appeal, this court will review the matter only for plain error."). Notably, Bridgewood does not challenge the language employed in any of the operative Instructions, nor does it cite any "patent" error in the Verdict form. Rather, Bridgewood complains of some amorphous "latent" error as having affected the Jury's damages analysis. "Under plain error review, an error not identified by a contemporaneous objection is grounds for reversal only if the error prejudices the substantial rights of a party and would result in a miscarriage of justice if left

uncorrected." Id., quoting *Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995)*(en banc). Here, Bridgewood points to no such error, and our independent review reveals none.

To the extent that Bridgewood has urged, that the Jury was misled, by the form of the Special Verdict, to treat Interrogatory No. 4 as a minimum damage figure, and Interrogatory No. 5 as the maximum amount of damages that Transclean could recover, the urging finds no support in the language of the Verdict form, or in the Jury Instruction that related to those two Interrogatories. We find it implausible that the Jury could have misread those Interrogatories in the way that Bridgewood advocates.

[*48]

Nor does Bridgewood have standing to now complain of the closing argument of Transclean's counsel, or of its own counsel's argument. See, *Alholm v. American Steamship Co., 144 F.3d 1172, 1181 (8th Cir. 1998)*(even [HN28] when the subject of a timely objection, "[a] new trial should be granted where the improper conduct of counsel in closing argument 'causes prejudice to the opposing party and unfairly influences a jury's verdict.'"), quoting *Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 540 (2nd Cir. 1992).* Bridgewood made no timely objection to what it now perceives as misstatements in Transclean's summation to the Jury, and our review of the summation discloses no error, let alone prejudicial error. Id. ("Other statements which are cited as grounds for a new trial were not objected to at trial."). As for any objectionable content in the closing argument of Bridgewood's own counsel, we are unable to perceive how Bridgewood could now responsibly seek rectification for the statements of its counsel, freely made in open Court, which did not constitute "plain error." n14

n14 Counsel for Bridgewood expresses concern that his suggestion to the Jury, during closing argument, that the Court did not wish to try this action on a second occasion, might have intimated that certain of the Jury's responses, on the Special Verdict form, would be considered by the Jury as "advisory." First, we did not inform the Jury that any aspect of the Special Verdict form was advisory, and we find nothing prejudicial, to any party, in counsel's explanation to the Jury, that it would be asked to answer certain damages questions, even though, in Bridgewood's view, the Jury should find that Bridgewood had not infringed upon Transclean's patent. See, Partial Transcript Vol VI, May 2, 2000, at p. 49-50. As unremarkable, cryptic, and oblique, as counsel's comment was, we have no reason to believe that it had any potential to unfairly influence the Jury's Verdict.

[*49]

Shorn of its distractions, Bridgewood's Motion is simply an effort to secure a new Trial, on the ground that the Jury's damages award, when the Jury's Answers to Interrogatories 4 and 5 are combined, finds no substantial support in the evidentiary Record. Since the Motion is heavily fact-driven, we first trace the contours of the law of infringement damages, and then apply that law to the facts before us.

a. Standard of Review. As we have previously related, [HN29] Title *35 U.S.C. § 284* "mandates that a claimant receive damages 'adequate' to compensate for infringement." Rite-Hite Corp. v. Kelley Co., Inc., supra at 1544.

> Section 284 further instructs that a damage award shall be "in no event less than a reasonable royalty"; the purpose of this alternative is not to direct the form of compensation, but to set a floor below which damage awards may not fall. *Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1326, 5 USPQ2d 1255, 1260 (Fed. Cir. 1987).* Thus, the language of the statute is expansive rather than limiting. It affirmatively states that damages must be adequate, while providing only a lower limit and no other limitation. [*50]

Id.

"The question to be asked in determining damages is 'how much had the Patent Holder and Licensee suffered by the infringement," and "that question [is] primarily: had the Infringer not infringed, what would the Patent Holder-Licensee have made?" *Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 507, 12 L. Ed. 2d 457, 84 S. Ct. 1526, 1964 Dec. Comm'r Pat. 760 (1964).*

As the Court of Appeals for the Federal Circuit has explained, in Rite-Hite:

> In accordance with the Court's guidance, we have held that [HN30] the general rule

> for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement. *Del Mar, 836 F.2d at 1326, 5 USPQ2d at 1260;* see *State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577, 12 USPQ2d 1026, 1028 (Fed. Cir. 1989)*, cert. denied, *493 U.S. 1022, 110 S. Ct. 725, 107 L. Ed. 2d 744 (1990)*(award of damages may be split between lost profits as actual damages to the extent they are proven and a reasonable royalty for the remainder).

Rite-Hite Corp. v. Kelley Co., Inc., supra at 1545.

[HN31] Proving [*51] lost profits, however, is not a facile process, as the proof employs a "but for" test -- the claimant must demonstrate a reasonable probability that, but for the infringement, it would have made the sales that were made by the infringer. See, e.g., *Minco Inc. v. Combustion Engineering Inc., supra at 1119* ("A segment of the infringer's sales may not warrant a lost profits award because the patentee cannot establish causation for that segment" as, "for instance a patent owner may not operate in the specific geographical area covered by the infringer or may not have had the manufacturing or marketing capacity to make the infringer's sales," but "the patentee would still be entitled to a reasonable royalty on each of those sales.").

In *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1156 (Fed. Cir. 1978)*, [HN32] the Court articulated a four-factor test to prove, as but one nonexclusive method, an entitlement to lost profits damages.

> The Panduit test requires that a patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; [*52] and (4) the amount of the profit it would have made. *Panduit, 575 F.2d at 1156, 197 USPQ at 730.* A showing under Panduit permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's prima facie case with respect to "but for" causation. *Kaufman Co. v. Lantech, Inc., 926 F.2d 1136, 1141, 17 USPQ2d 1828, 1831 (Fed. Cir. 1991).* A patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent the infringement. Id. The patentee need only show that there was a reasonable probability that the sales would have been made "but for" the infringement. Id.

Rite-Hite Corp. v. Kelley Co., Inc., supra at 1545.

In addition, [HN33] "the Patent Act permits damages awards to encompass both lost profits and a reasonable royalty on that portion of an infringer's sales not included in the lost profit analysis." *Minco Inc. v. Combustion Engineering Inc., supra at 1119*, citing *State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577 (Fed. Cir. 1989)*, cert. denied, *493 U.S. 1022, 110 S. Ct. 725, 107 L. Ed. 2d 744 (1990).* [*53]

[HN34] "[Section 284] contemplates that when a patentee is unable to prove entitlement to lost profits or an established royalty rate, it is entitled to "reasonable royalty" damages based upon a hypothetical negotiation between the patentee and the infringer when the infringement began." *Unisplay, S.A. v. American Electronic Sign Co., Inc., 69 F.3d 512, 517 (Fed. Cir. 1995)*, citing *Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078 (Fed. Cir. 1983).* As the Court went on to explain, in *Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1109 (Fed. Cir. 1996)*, cert. denied, *520 U.S. 1115, 137 L. Ed. 2d 327, 117 S. Ct. 1244 (1997):*

> [HN35] This "hypothetical negotiation" is often referred to as a willing licensor and licensee negotiation. However, as we previously stated in Rite-Hite, this is an "absurd" characterization of the determination when the parties were previously unable to come to an agreement, i.e., were not "willing," as in this case. * * * Therefore the use of a willing licensee-willing licensor model for determining damages "risks creation of the perception that blatant, blind appropriation of inventions patented [*54] by individual, nonmanufacturing inventors is the profitable, can't-lose course. * * * To avoid such a result, the fact finder may consider additional factors to assist in the determination of adequate compensation for the infringement. These factors include royalties received by the patentee for the licensing of the patent in

> suit, opinion testimony from qualified experts, the patentee's relationship with the infringer, and other factors that might warrant higher damages. * * * The fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty, is also relevant. Under such an analysis, the district court would normally instruct the jury to return a damage award, based on a willing licensee-willing licensor negotiation and these other factors, in an amount sufficient to adequately compensate the patentee for the infringement.

See also, *Stickle v. Heublein, Inc., 716 F.2d 1550, 1563 (Fed. Cir. 1983)*("Trial [HN36] court may award an amount of damages greater than a reasonable royalty so that the award is 'adequate to compensate for the infringement,'" and "such an increase * * * may be stated * * * as a reasonable royalty [*55] for an infringer * * *."); *Fromson v. Western Litho Plate and Supply Co., 853 F.2d 1568, 1575 n. 11 (Fed. Cir. 1988)*("Courts have on occasion recognized the need to distinguish between royalties payable by infringers and non-infringers.").

[HN37] While, upon a proper showing, "additional damages" may be awarded by the fact finder, over and above a reasonable royalty, such additional damages must be proven, by a preponderance of the evidence, to have been caused by the infringement, and to have been reasonably foreseeable. See, e.g., Rite-Hite Corp. v. Kelley Co., Inc., supra at 1546 ("For example, remote consequences such as a heart attack of the inventor or loss in value of shares of common stock of a patentee corporation caused indirectly by infringement are not compensable" and, therefore, "along with establishing that a particular injury suffered by a patentee is a "but for" consequence of infringement, there may also be a background question whether the asserted injury is of the type for which the patentee may be compensated."). Moreover, a reasonable royalty may not be increased by a "kicker" based on litigation or other expenses. See, *Mahurkar v. C.R. Bard, Inc., supra at 1580-81.* [*56]

As the Court of Appeals for the Federal Circuit has made plain, in *Rodime PLC v. Seagate Technology, Inc., 174 F.3d 1294, 1307-08 (Fed. Cir. 1999),* [HN38] when a claimant elects to forego lost profits as a measure of damages in favor of a reasonable royalty, the claimant may not shift certain "consequential business damages" into the reasonable royalty rate. In the words of the Court:

> * * * Rodime seeks to recover additional damages -- those flowing from Seagate's refusal to take a license -- above and beyond a reasonable royalty. This court discerns no abuse of discretion by the district court in excluding the evidence for that purpose. The "consequential damages" Rodime seeks are merely a species of lost profits. Having elected to pursue only a reasonable royalty, Rodime cannot, in the district court's words, "bootstrap evidence of its lost profits back into the case by reference to 'reasonable royalties.'" Accordingly, this court affirms the district court's grant of Seagate's motion in limine to exclude evidence of Rodime's consequential business damages.

*Id. at 1308.*

Lastly, [HN39] "the patent owner bears the burden of proof on damages." [*57] *Fromson v. Western Litho Plate and Supply Co., supra at 1574.*

b. Legal Analysis. Of the issues before us, the most troubling, by far, are those which surround the Jury's award of additional damages, over and above a reasonable royalty. From nearly the nascency of this action, Transclean elected to pursue a reasonable royalty as its measure of damages, as those damages might be augmented by any actual losses in sales/profits, or by such related damages, as could be competently shown. As a consequence, we formulated a Special Verdict form which was closely patterned after that approved by the Federal Circuit, in the Maxwell case. See, *Maxwell v. J. Baker, Inc., supra at 1110* ("The special verdicts asked the jury to answer two separate inquiries, the amount of a 'reasonable royalty' and the additional damages required to compensate for infringement" and, as such, "we do not find this to be an abuse of discretion."). "The first inquiry required the jury to determine the royalty that two willing parties would negotiate; the second inquiry required the jury to determine the increase in the damages required to adequately compensate the patentee based [*58] on other relevant factors." Id.

Here, the Jury determined reasonable royalty damages in the amount of $ 934,618.75. In reaching this result, the Jury was presented with unchallenged evidence that, during the years of infringement, Bridgewood had net sales of $ 11,503,000, and profits of $ 3,749,000, all derived from a single product -- the device that the Jury determined was infringing upon Transclean's patent. As for a reasonable royalty rate, the Jury was afforded several different valu-ations. Gey, who

secured the only license to market on Transclean's patent, testified that he researched the issue and determined that a reasonable royalty rate should be 5% but, on behalf of Century, he agreed to pay Transclean a royalty of 9% of sales. The owners of Transclean were each paid an 8% royalty on Transclean's sales. In contrast, Westman testified to his opinion that a reasonable royalty, under a Georgia Pacific analysis would be 11% of sales, or one-third to one-half of Bridgewood's profits. As a result, the Jury's award of reasonable royalty damages was on the low side of the scale, as it constituted approximately 8% of Bridgewood's sales revenues, or 25% of Bridgewood's profits. [*59] Notably, in reaching his opinion on a range of reasonable royalties, Westman testified that he considered those factors which would properly reflect a reasonable royalty for an infringer. See, e.g., *Fromson v. Western Litho Plate and Supply Co., supra at 1575 n. 11* ("Courts have on occasion recognized the need to distinguish between royalties paid by infringers and non-infringers."); *Maxwell v. J. Baker, Inc., supra at 1109-10* [HN40] ("The fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty, is also relevant [to the determination of a reasonable royalty].").

Plainly, the Jury did not consider its finding of reasonable royalty damages to adequately compensate Transclean for Bridgewood's infringement, as it also awarded additional damages of $ 1,874,500 -- an amount that equates with 50% of Bridgewood's profits during the period of infringement. During the course of its closing argument, Transclean urged the Jury to return 50% of Bridgewood's profits as a reasonable royalty, and the other 50% as additional damages. Although Bridgewood contends that this argument was objectionable, because Transclean [*60] sought only reasonable royalty damages, but had now shifted, without forewarning, to lost profits damages, no objection was then voiced. Transclean rightly complains that, having not objected to its argument at a time when the error could be corrected, Bridgewood waived any objection to Transclean's shift to a different measure of damages. Irrespective of Bridgewood's failure to object, our obligation is to ensure that the Jury's Verdict was supported by substantial evidence, and we find that the portion of the Jury's Verdict, which awards Transclean additional damages, in the amount of $ 1,874,500, is not supported by substantial evidence.

We do not lightly set aside any portion of a Jury's Verdict. [HN41] "The determination of the amount of damages based on a reasonable royalty is an issue of fact." *Unisplay, S.A. v. American Electronic Sign Co., Inc., supra at 517*, citing *SmithKline Diagnostics, Inc. v. Helena Lab. Corp., 926 F.2d 1161, 1164 (Fed. Cir. 1991).* "When a party files a motion to amend the judgment or in the alternative to grant a new trial on the amount of damages awarded by a jury, 'the trial court determines whether the jury's verdict is [*61] against the clear or great weight of the evidence.'" Id., quoting *Standard Havens Prods. v. Gencor Indus., 953 F.2d 1360, 1367 (Fed. Cir. 1991),* cert. denied, *506 U.S. 817, 121 L. Ed. 2d 28, 113 S. Ct. 60 (1992).* "The district court has wide discretion in determining whether to grant a new trial under this standard" and, therefore, our decision on that issue is governed by an abuse of discretion standard of review. Id.

As pertinent to the issue of additional damages, we instructed the Jury as follows:

> When infringement of a valid claim has been shown, a patent owner is entitled to damages adequate to compensate for the infringement. Damages awarded for the infringer's use of the invention may be no less than a reasonable royalty. The amount of money awarded to compensate for damages sustained as a result of the infringement may, however, be more than a reasonable royalty. Damages must be proven by a preponderance of the evidence.
>
> * * *
>
> The minimum amount of monetary damages that you may award is a reasonable royalty. A "reasonable royalty" is the amount of money which the owner of a patent, who is desirous of licensing another to [*62] use the patent in return for a royalty, but who is not forced by financial need or other compulsion to do so, would accept, and the amount which a person who is desirous of obtaining a license to use the invention would be willing to pay as a royalty.
>
> In determining a reasonable royalty, you are to imagine Transclean and Bridgewood in a hypothetical arms-length negotiation. An arms-length negotiation is one which both Transclean and Bridgewood would enter into freely and voluntarily, and not because of financial need or compulsion. The reasonable royalty should be an amount which a prudent licensee would have been willing to pay as a royalty and which a prudent patent owner would have been willing to accept in order to grant a license. A

reasonable royalty does not include a royalty which a patent owner would find unreasonable. Similarly, what an infringer would prefer to pay is not the test for a reasonable royalty. The determination of a reasonable royalty is based on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement started.

In determining a reasonable royalty, you are entitled to consider any evidence bearing [*63] upon any profits that the infringer may have obtained from the infringement, as well as any evidence bearing upon the amount of money the patent holder may have lost because of the infringement. You may also consider the value that the infringer may have obtained in promoting its other products. The royalty can be measured as a flat dollar amount per product, or as a percentage of the infringer's revenues or profits from sales of infringing products, or as a fixed dollar amount, or any combination of these.

* * *

The law recognizes that the parties in this case did not engage in any negotiation to arrive at an appropriate royalty rate. In some cases, the use of a willing licensee-willing licensor model for determining damages may place an infringer in a no-lose position which actually rewards the infringer for not negotiating a royalty prior to its infringement. To avoid such a result, if you find that the Plaintiffs were damaged by the infringement in an amount greater than a reasonable royalty on each device actually sold by the Defendant you may award an additional amount of money necessary to adequately compensate the Plaintiffs.

By way of example, if you find that the [*64] Plaintiffs lost specific sales of their product because of the Defendant's infringement, and if you further find that a reasonable royalty will not adequately compensate the Plaintiffs for that loss, then you may award damages for the amount of that loss which the Plaintiffs have proven. Or, if you find that the price of the Defendant's product caused price decreases in the market for the same or similar goods, so as to erode the price of the Plaintiffs' product, and if you further find that a reasonable royalty will not adequately compensate the Plaintiffs for that loss, if any, then you may award damages for the amount of that loss which the Plaintiffs have proven. As to this element of damages, you may not consider the value of the good will, if any, that the Defendant received at the time that it sold its business to Century Manufacturing on April 30, 1998.

If you find, by a preponderance of the evidence, that the Plaintiffs are entitled to a portion of the good will value of the Defendant, if any, at the time that the Defendant sold its business to Century Manufacturing, then you may award that measure of damages in response to the Special Verdict Question that addresses [*65] that specific item of damages.

* * *

If, under the Court's Instructions, you should find the Plaintiffs are entitled to a Verdict, in fixing the amount of your Verdict you may not include in or add to an otherwise just award any sum for the purpose of punishing the Defendant, or to set an example.

We then instructed the Jury on the Georgia Pacific factors which could inform its determination of a reasonable royalty, including "the fact that Bridgewood had to be ordered by the Court to pay damages rather than agreeing to a reasonable royalty; [and] any other economic factor that normally prudent businesses would, under similar circumstances, take into consideration in negotiating the hypothetical license." As is our practice, copies of the Jury Instructions accompanied the Jury during its deliberations. Neither party -- and most notably Bridgewood -- has suggested any error in either the Instructions, or the Special Verdict form, that were given to the Jury. Bridgewood's Reply Memorandum, at p. 1 ("Bridgewood's arguments are not based on any patent ambiguity in the instructions or the form, which on its face appeared proper.").

As noted, the Jury determined [*66] that approximately 25% of Bridgewood's profits was a reasonable royalty -- an amount that appreciably fell short of the range of reasonable royalties identified by Westman. We do not quarrel with that finding, nor does

Bridgewood or Transclean, except that Bridgewood contends that the Jury employed this finding as setting the minimum amount that it owed to Transclean. See, Bridgewood's Memorandum in Support of its Post-Trial Motions, at 2 ("Bridgewood submits that the $ 934,618.75 should be interpreted as an advisory response as to the **minimum** damages that the court could award, which was determined as a matter of judicial economy, and that such amount should not be "added" to the $ 1,874,500 given as adequate to compensate for infringement.") [emphasis in original]; Transclean's Memorandum in Opposition to Bridgewood's Post-Trial Motions, at 10 ("The jury, clearly after much deliberation, awarded $ 934,618.75 in reasonable royalty damages," and "an award of a reasonable royalty in that amount is easily supported by Transclean's experts' testimony.").

As instructed, the Jury could award damages, over and above reasonable royalty damages, if it was shown, by a preponderance [*67] of the evidence, that Transclean had suffered actual losses, not compensated by a reasonable royalty, such as a loss of specific sales to Bridgewood, or an erosion in the price of Transclean's product, that was induced by Bridgewood. Transclean offered no competent proof of actual losses, either through price erosion or through the loss of specific sales. While Transclean argued, in its summation to the Jury, that all of Bridgewood's profits were losses to Transclean, Transclean failed to establish the requisite causation element, between Bridgewood's profits, and Transclean's losses.

Of course, if there were only Transclean and Bridgewood in the competitive market of transmission fluid exchangers, then a presumption of causation would have been available to Transclean. See, *Grain Processing Corp. v. American Maize-Products Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999),* citing *Lam, Inc. v. Johns-Mansville Corp., 718 F.2d 1056, 1065 (Fed. Cir. 1983),* for the proposition "that [HN42] the patent owner may satisfy his initial burden [of proving causation in fact] by inference in a two-supplier market." Since the Record reveals the presence of competitors, in the [*68] relevant marketplace of both Transclean, and Bridgewood, proof of causation, between Bridgewood's profits, and Transclean's asserted losses, was required. As the Court of Appeals for the Federal Circuit has recently explained:

> [HN43] To recover lost profits, the patent owner must show "causation in fact," establishing that "but for" the infringement, he would have made additional profits. See *King Instruments Corp. v. Perego, 65 F.3d 841, 952, 36 USPQ2d 1129, 1137 (Fed. Cir. 1995).* When basing the alleged lost profits on lost sales, the patent owner has an initial burden to show a reasonable probability that he would have made the asserted sales "but for" the infringement. See id.; *Rite-Hite, 56 F.3d at 1545.* Once the patent owner establishes a reasonable probabilility of "but for" causation, "the burden then shifts to the accused infringer to show that [the patent owner's "but for" causation claim] is unreasonable for some or all of the lost sales." *56 F.3d at 1544.*

*Grain Processing Corp. v. American Maize-Products Co., supra at 1349.*

The Record before us does not allow any showing of reasonable probability that Transclean would have [*69] secured a sale "but for" the infringement of Bridgewood.

Indeed, of all of Bridgewood's sales, only two were isolated, in Transclean's argument to the Jury, as sales that Transclean lost "head-to-head" with Bridgewood. These were early sales to Valvoline, and to Q-Lube. Unfortunately for Transclean's argument, the factors that were identified in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., supra at 1156,* as essential to a finding of "but for" causation, were not established here. The testimony of Viken was predicated on his "understandings" of how many devices were purchased by Q-Lube, and Valvoline, and the Record is not clear whether either of those purchasers were limited, in their selection of transmission fluid exchangers, to only the products of Bridgewood and Transclean. Certainly no one from either of the asserted purchasers testified to the purchases, or how they were consummated. More importantly, there was no testimony that Transclean was capable of furnishing the equipment in question, since its sales, to the date of the Trial, were vastly overshadowed by the number of machines that Viken stated were the subject of the Q-Lube, and Valvoline, purchases. [*70]

In fact, Transclean expressly argued to the Jury, in the context of its requested damages on the false advertising claim, that these sales to Valvoline, and Q-Lube, were unlawfully commandeered by Bridgewood's misleading advertisements, and the Jury returned only $ 50,000 in damages on that claim. While we cannot be certain that some portion of the additional damages, which the Jury awarded to Transclean, had been prompted by these sales, nonetheless, by our computation, if the Jury found a reasonable probability, that these sales would have gone to Transclean, absent Bridgewood's infringement, then the additional damages

award would have been approximately $ 523,800 -- arising from the sale of approximately 873 units at Transclean's $ 600 profit margin. Cf., Transclean's Memorandum in Opposition to Bridgewood's Post-Trial Motions, at p. 17 ("The jury heard evidence that Transclean's per unit profit on its machine was $ 600, indicating lost profits on the sales to Valvoline and Q-Lube alone of at least $ 523,000 * * *.") We are aware of no other evidence upon which the Jury could have responsibly relied in finding additional damages in the amount of $ 1,874,500.

We are mindful [*71] that Transclean believes that the evidence supports an additional damages award of $ 939,881.25, because Westman testified that Transclean was entitled to as much as 50% of the profits of Bridgewood -- that is, $ 1,874,500 -- and since the Jury only found reasonable royalty damages of $ 934,618.75, the reasoning in *Maxwell v. J. Baker, Inc., supra at 1110-11*, requires the award of the rest of that "reasonable royalty." Transclean's Memorandum in Opposition to Bridgewood's Post-Trial Motions, at 10 ("The jury also found that an additional $ 1,874,500 was necessary to adequately compensate Transclean for Bridgewood's infringement" and, "based solely on Mr. Westman's testimony, $ 939,881.25 of this additional amount is supported by the evidence."). While we have no quarrel with the Court's holding, in Maxwell, we do not believe that anything resolved in that case would allow the interpretation that Transclean would have us draw from that decision. There, the Jury determined that a $ 0.05 royalty per unit was reasonable, but also allowed an additional $ 0.05 per unit award of additional damages because, the Court found, the evidence demonstrated that Maxwell had [*72] obtained a $ 0.10 royalty per unit, before the infringers of her patent forced a reduction to $ 0.05 per unit because of their pervasive infringement. Transclean has identified no similar evidence in this case, nor can it. n15

n15 Transclean has argued, in part, as follows:

> The jury was properly instructed that in determining the amount, if any, of additional damages adequate to compensate, it could take into account Bridgewood's profits from that infringement. Jury Instructions at 60-63. The total patent infringement damages awarded by the jury is $ 2,809,118.75, which is $ 934,881.25 less than the undisputed total profits earned by Bridgewood due to its infringement of Transclean's patent. Thus, the jury's damages award still leaves Bridgewood nearly $ 1 million in profits from its infringing activities, besides more than $ 6 million it received when it sold its assets in April 1998. This surely makes Bridgewood's infringement a profitable venture for its principals.

Transclean's Memorandum in Opposition to Bridgewood's Post-Trial Motions, at 11.

In support of the argument, Transclean cites to our Jury Instructions which relate to the ascertainment of a reasonable royalty. Here, the Jury determined that a reasonable royalty would amount in $ 934,618.75 in damages to Transclean. For Transclean to argue that it is allowed an additional reasonable royalty -- in the amount of $ 1,874,500 -- is not only unsupported in the Record before us, but also in the applicable law. Not surprisingly, Transclean offers no decisional support for that contention.

[*73]

Accordingly, we find that the Jury's determination of additional damages, in the amount of $ 1,874,500 is not supported by substantial evidence, and cannot be sustained. Had we found that the evidence of Bridgewood's specific sales to Valvoline, and Q-Lube, was sufficient to satisfy the "but for" standard, we could adjust the Jury's finding of additional damages accordingly. Having concluded that the evidence was insufficient to sustain a "but for" finding of causation, we are compelled to order a new Trial on the issue of infringement damages, unless Transclean agrees to a remittitur of the excessive portion of the damage award. See, *Unisplay, S.A. v. American Electronic Sign Co., Inc., supra at 519* [HN44] ("The use of remittitur enables parties to avoid the delay and expense of a new trial when a jury's verdict is excessive in relation to the evidence of record."); *American Road Equip. Co. v. Extrusions, Inc., 29 F.3d 341 (8th Cir. 1994)*(directing remittitur because Jury awarded damages in excess of the amount proved).

We are satisfied that, in granting additional damages, the Jury determined that the reasonable royalty damages were inadequate and, therefore, [*74] we look to the Record, under [HN45] the "maximum recovery rule," which requires that the determination [on whether to accept a remittitur] be based on the highest amount of

damages that the jury could properly have awarded based on the relevant evidence." *Unisplay, S.A. v. American Electronic Sign Co., Inc., supra at 519,* citing *Earl v. Bouchard Transp. Co., 917 F.2d 1320, 1328-30 (2nd Cir. 1990),* and *Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir. 1998).* Bridgewood concedes that, under the Record presented to the Jury, a total infringement damages award of $ 1,874,500 would be justified. n16 Based upon our close review of the Record, as a whole, we find and conclude that, under the maximum recovery rule, Transclean can either elect a new Trial on the issue of damages, or accept a total damages award, arising from Bridgewood's infringement, in the amount of $ 1,874,500. Simply stated, there is ample evidence of Record which would sustain infringement damages equaling 50% of Bridgewood's profits, but there is no evidence that would support a recovery of 75% of Bridewood's profits as infringement damages. Transclean must [*75] make its election **by no later than January 26, 2001.**

n16 As urged by Bridgewood:

> [Westman] testified that, considering all of the circumstances, "one-third to one half of Bridgewood's profits (with profits deliberately undefined) would compensate Transclean for the infringement. Mr. Westman's opinion took into account all of the factors that might warrant damages higher than a hypothetical reasonable royalty negotiated at arm's length. It is clear from his own testimony that his figure of one third to one half of Bridgewood's profits was meant to be a reasonable royalty **for an infringer,** as a better way of compensating the patentee, in a situation distinguished from a hypothetical arm's length negotiation. Hence, the $ 1,874,500 amount given in the jury's response to Special Verdict No. 5 (which mathematically equates to one half of Bridgewood's pre-tax profits) is the maximum amount that Mr. Westman said was needed to compensate Transclean for the infringement, and that amount includes both a minimum reasonable royalty and any additional amount necessary to adequately compensate for the infringement. Accordingly, that amount is the maximum amount of damages supported by the evidence and the court should limit the judgment for patent damages to that amount.

Bridgewood's Memorandum in Support of Post-Trial Motions, at p. 3-4 [emphasis in original].

We do not accede to Bridgewood's argument, that Westman's opinion testimony necessarily excluded the potential for additional damages, if properly supported by evidence, but we have concluded that Transclean's evidence of additional damages was insufficient, as a matter of law, to authorize such an award.

[*76]

2. Bridgewood's Motion for the Entry of Judgment, as a Matter of Law, on Transclean's False Advertising Claim.

Arguing that Transclean failed to prove any damages arising from its false advertising, Bridgewood seeks an entry of Judgment, as a matter of law in its favor, on that issue. At the close of all of the evidence, we expressed some concern that, under an action for false advertising, Bridgewood would be found liable for using the same, or similar representations, as Transclean has employed in the past. Ultimately, we considered this as a natural result of the parties' pleadings. Transclean asserted a false advertising claim, while Bridgewood did not. While we remain unpersuaded that there is a distinction between Bridgewood's 100% replacement representations, and Transclean's advertisements which claim "all" or a "total" replacement of transmission fluid, the distinction goes nowhere, as Bridgewood did not prosecute a false advertising claim against Transclean. While the Jury could regard the parties' representations as indistinguishable and, therefore, conclude that Transclean could not have sustained any damage from Bridgewood's advertising, which was not appreciably [*77] different from Transclean's, the Jury could also find that Bridgewood's advertising was false. Indisputably, the Jury could not find that Transclean also falsely advertised to Bridgewood's detriment. The issue presented to the Jury was not one of comparable fault.

We instructed the Jury, without objection from Bridgewood, that damages would be appropriate if the proof preponderated in Transclean's favor, and the evidence allowed an award of damages. Evidence substantiated Transclean's claim that potential customers

of transmission fluid exchangers were persuaded to purchase Bridgewood's exchanger because of its 100% exchange representation. Similarly, we instructed the Jury, without objection from Bridgewood, as to the measure of damages that would be afforded to Transclean upon a finding of liability under the Lanham Act, and the Minnesota Consumer Fraud Act. In part, we instructed as follows:

> Transclean's damages may also include the amount Transclean would expend to counteract the public confusion resulting from any false or misleading advertising by Bridgewood. Transclean is entitled to recover the cost of such corrective advertising even if it did not conduct corrective [*78] advertising prior to trial. In determining the cost of such corrective advertising, you may consider the amount Bridgewood has expended on its false or misleading advertisements.

As Transclean argues, without contest from Bridgewood, "in light of Bridgewood's expenditure of more than $ 1.4 million in advertising, the jury's award of only $ 50,000 represents a very nominal sum to engage in corrective advertising." Transclean's Memorandum in Opposition to Bridgewood's Post-Trial Motions, at p. 17. n17

> n17 Any concern that the Jury's award of false advertising damages overlaps its award of infringement damages is resolved by reference to our Instruction to the Jury that, "if you find that the Defendant is liable for infringement damages, as well as for damages under the Lanham Act and/or under a State Statute, you may not compensate the Plaintiffs more than once for the same dollar loss."

Finding no basis upon which to grant Bridgewood Judgment as a matter of law, we deny that Motion.

NOW, THEREFORE, [*79] It is --

ORDERED:

1. That Judgment be entered, in Bridgewood's favor, on Counts II and III of Transclean's Amended Complaint, with each party bearing its own costs and expenses.

2. That Judgment be entered, in Transclean's favor, on Counts I, II, III, IV, and V, of Bridgewood's Counterclaim.

3. That Judgment be entered, as a matter of law, on Bridgewood's claim for a portion of the good will value of Bridgewood, at the time that Bridgewood's assets were sold to Century Manufacturing Company.

4. That Transclean's Motion for Enhanced Damages [Docket No. 182] is DENIED.

5. That Transclean's Motion for Attorney's Fees [Docket No. 182] is GRANTED, in part, consistent with the text of this Order.

6. That Transclean's Motion for Prejudgment interest [Docket No. 182] is GRANTED, and that Transclean is entitled to prejudgment interest in the amount of $ 687,883.

7. That Bridgewood's Motion for a New Trial [Docket No. 188] is GRANTED, unless Transclean accepts a remittitur of $ 1,874,500, plus prejudgment interest of $ 682,122 on its infringement claim, together with fraudulent advertising damages of $ 50,000, plus prejudgment interest of $ 5,761, for a total award of $ 2,612,383. [*80]

8. That Bridgewood's Motion for the Entry of Judgment, as a matter of law, on Transclean's False Advertising Claims [Docket No. 188], is DENIED.

9. That Transclean shall file its request for attorneys' fees, and its election as to a new Trial, or a Remittitur, **by no later than January 26, 2001,** and that Bridgewood shall file its response, if any, to Transclean's request for attorney's fees, **by no later than February 2, 2001.**

10. That the Clerk of Court should enter Judgment consistent with this Order.

BY THE COURT:

Raymond L. Erickson

UNITED STATES MAGISTRATE JUDGE