UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANDERSEN CORPORATION,<br>Plaintiff,<br><br>v.<br><br>FIBER COMPOSITES, LLC.,<br>Defendant. | CIV NO. 00-CV-2548 (JNE/JGL) |

**FIBER COMPOSITES' REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT OF NON-INFRINGEMENT**

In its opposition to Fiber Composites' Motion for Judgment of Non-Infringement, Andersen seriously mischaracterizes the background of this case and argues, in effect, that it can drop a key contested issue, on which it bears the burden, on the eve of trial with virtually no procedural consequence. Indeed, Andersen even suggests it could re-litigate its abandoned DOE case with Fiber Composites in a future litigation involving railing products, the formulas for which were in this very case. Andersen, however, is wrong on both counts. Andersen had a full opportunity to prove infringement under the doctrine of equivalents here, and having unilaterally abandoned the issue, it should not get another. A court order to that effect is entirely appropriate.

## I. BACKGROUND

Throughout its brief in opposition to Fiber Composites' motion, Andersen mischaracterizes its eleventh hour decision to drop its claim of infringement under DOE as merely a decision to drop its claim to *damages* and, consequently, according to Andersen, only a "narrow waiver" applies. (*See* Andersen Mem. at 2, 5, 6 n. 2). Specifically, Andersen now claims that it "waived only its claim for damages under the doctrine of equivalents for product sales from January 2001 through the date of final judgment" (Andersen Mem. at 5).

This is nonsense. It is not what Andersen did and a brief review of the history of Andersen's DOE contention is in order.

In November of 2000, Andersen brought suit alleging infringement of six patents (Docket Entry No. 1). Fiber Composites' accused products at that time included railing parts that had more than 30% wood fiber and railing parts that had less than 30% wood fiber. In the latter category, at the time the complaint was filed, Fiber Composites was making and selling railing parts with a wood fiber percentage of 29.4% (Defendant's Trial Exhibit 12). As the Court is aware, on January 1, 2001, Fiber Composites reduced the wood fiber content in its railing posts below 30%, and as a result, all of Fiber Composites' railing parts made after January 1, 2001 had less than 30% wood fiber. This was established at trial and was uncontested by Andersen.[1] Nevertheless, after the close of discovery, Andersen asserted that all these post-January 1, 2001 products still infringed, both literally and under the doctrine of equivalents. Indeed, Andersen submitted the expert report of Robert Liukkonen to that effect. Thus, infringement under DOE was certainly a contested issue at that time.

Fiber Composites moved for summary judgment of non-infringement as to both literal infringement and infringement under DOE (Docket Entry Nos. 162, 163, 187, 188). Andersen opposed Fiber Composites' motion in its entirety (Docket Entry No. 190). The infringement question as to Fiber Composites' railing parts with more than 30% wood fiber was undisputed (Docket Entry No. 215 at 12). As to Fiber Composites' railing parts made with less than 30% wood fiber, the Court ruled there was no literal infringement. But because of Andersen's submissions in opposition to Fiber Composites' motion, the Court held that there was a question of fact as to whether these parts with less than 30% wood fiber infringed under the doctrine of equivalents (Docket Entry No. 215 at 11). Consequently, at the time of the Court's decision on Fiber Composites' motion

[1] Andersen took several depositions on this subject and Fiber Composites' many formula sheets were produced. Andersen often refers to the fact that Fiber Composites did not produce its later formulas, but Andersen never requested them.

for summary judgment of non-infringement, Andersen's DOE case remained intact because of Andersen's representation as to what its evidence would be at trial on the subject.

Specifically, in view of the Court's denial of Fiber Composites' motion for summary judgment of non-infringement as to infringement under the doctrine of equivalents, it would be Andersen's burden, at trial, to prove that there was infringement under DOE for those railing parts with less than 30% wood fiber content, and Andersen was to do so based on the evidence Andersen promised this Court existed when it opposed Fiber Composites' Motion for Summary Judgment.

That "evidence," however, was either non-existent or fatally flawed. Immediately prior to the trial, Fiber Composites filed a number of motions in limine. Three related directly to Andersen's DOE case and challenged Andersen's ability to present a DOE *infringement* case at trial (Docket Entry Nos. 296, 309, 314).[2] Andersen's response to each was to drop its DOE *infringement* case, and it was explicit in so doing. For example, Fiber Composites moved in limine to prevent Andersen from asserting the doctrine of equivalents at all at trial (Docket Entry No. 314). In the first line of its responsive memorandum, Andersen said (Docket Entry No. 340 at 1):

> "***At this trial Plaintiff Andersen Corporation ('Andersen') will not assert infringement under the doctrine of equivalents against Defendant Fiber Composites, LLC ('Fiber Composites')***. Accordingly, Plaintiff does not oppose Fiber Composites' motion in limine to preclude Andersen from asserting infringement under the doctrine of equivalents in this case because the issue is moot."

There was no ambiguity to what Andersen was abandoning. After several years of asserting the doctrine of equivalents and successfully opposing Fiber Composites'

[2] Fiber Composites' motions had nothing to do with any damages claim made by Andersen. Instead, they all dealt with whether Andersen could bring an *infringement* claim under DOE.

Motion for Summary Judgment on the subject, Andersen dropped this *infringement* claim on the eve of trial.[3]

In short, Andersen chose not to try to prove *infringement* under DOE. Nothing about this choice, in the face of Fiber Composites' attack, was the "narrow waiver" Andersen now alleges.

## II. ARGUMENT

### A. Dismissal of Andersen's DOE Claims with Prejudice Is Both Proper and Warranted Pursuant to Rule 41.

Andersen essentially concedes, as it must, that dismissal of its DOE infringement claim with prejudice is now appropriate pursuant to Rule 41 of the Federal Rules of Civil Procedure. (*See* Andersen Mem. at 5-7.) But while Andersen concedes that dismissal with prejudice is proper, Andersen attempts to have such a dismissal improperly limited in scope based on its erroneous contention that it only dropped its damages claim relating to infringement under DOE.[4] First, Andersen's unilateral dropping of its DOE *infringement* contention had nothing to do with damages. It had to do with Andersen's basic inability to prove *infringement* under DOE in the first place. Indeed, nowhere in its responses to Fiber Composites' three motions in limine on the subject are damages ever mentioned by Andersen. Andersen dropped its DOE *infringement* claim. Consequently, as a matter of fact, Andersen's contention that a dismissal order "must necessarily be limited to claims for damages under the doctrine of equivalents for Fiber Composites'

---

[3] Andersen's current contention that it only sought to drop its damages claim as to the products accused of infringement under DOE is not only baseless insofar as the record is concerned, but it also makes no sense. Andersen's damages expert proposed two alternate bases for damages. One was a lump sum payment covering all infringing sales. The other was the royalty range presented at trial. Thus, the damages case is *exactly the same* for the admittedly infringing products as for the products accused of infringement under DOE. In the latter case, the royalty does not change. Only the dollar amount of sales does.

[4] Andersen's Proposed Order stating that "Andersen's claim for damages relating to the sales of Fiber Composites' products with less than 30% wood-fiber content from January 1, 2001 through the date of final judgment is dismissed" is entirely improper. (*See* Andersen Proposed Order.) The Court's order should dismiss Andersen's DOE claims in

infringing product sales from January 2001 through the date of final judgment" cannot be correct, because that does not reflect the issue that Andersen explicitly abandoned (Andersen Mem. at 5).

Moreover, Andersen's position is unsupported as a matter of law. In its opposition, Andersen cites *Young Engineers, Inc. v. United States International Trade Commission*, 721 F.2d 1305 (Fed. Cir. 1983). *Young* is a res judicata decision holding, inter alia, that claim preclusion of an infringement claim applies to the "specific devices before the court" in the earlier action. *Id.* at 1316. *Young* was not about the scope of an order of dismissal pursuant to Rule 41, as Andersen wrongly suggests. Moreover, *Young* limited the preclusive effect of an earlier judgment of noninfringement to the *products* accused in the earlier suit, not a particular time frame, as Andersen suggests the Court do with its order dismissing Andersen's abandoned DOE claim. *See Young*, 721 F.2d at 1316 ("Adjudication of infringement is a determination that a *thing* is made, used or sold without authority under the claim(s)[] of a valid enforceable patent. Thus, the status of an infringer is derived from the status imposed on the *thing* that is embraced by the asserted patent claims, the *thing* adjudged to be infringing." (emphasis added).). Therefore, even if the Court wished to limit its order dismissing Andersen's DOE claims in accord with *Young*'s res judicata principles, which is not necessary or even desirable, this limitation would be with respect to accused products, not a particular time frame as Andersen proposes. As the Court is aware, in this case those accused products encompass Fiber Composites' products made with up to 29.4% wood fiber content.[5]

Not only does *Young* fail to support Andersen's opposition, but also Andersen fails to distinguish the cases Fiber Composites cited in its moving brief to show that it is

---

their entirety—not just Andersen's claim to *damages* from such alleged DOE infringement.

[5] In effect, Andersen's proposed order would *not* preclude Andersen from suing Fiber Composites for infringement under DOE for exactly the same formulas at issue in this case, if the railing product is made from the old formula after May 12, 2005. This is a ludicrous result in view of Andersen's abandonment of the DOE issue.

common for federal courts to dismiss abandoned claims with prejudice. (*See* Fiber Composites Mem. at 4-5 (citing cases).) Andersen only half-heartedly attempts to do so by pointing out that the cases cited by Fiber Composites do not happen to enter judgment and then claiming, without any support or logical justification, that these cases therefore "indicate that Rule 41 does not permit the Court to enter an affirmative judgment of noninfringement under the doctrine of equivalents with regard to Fiber Composites' products that contain less than 30% wood-fiber weight." (*See* Andersen Mem. at 6-7.) Plainly, by the mere fact of taking one action but not apparently taking another—at least in the same opinion—these cases indicate no such thing.

Therefore, regardless of what else it does, the Court should dismiss all of Andersen's abandoned claims of infringement under the doctrine of equivalents with prejudice. As shown in Fiber Composites' moving brief, there is no question that such action is both necessary and proper. *See In re Piper Aircraft Distribution Sys. Antitrust Litig.*, 551 F.2d 213, 220 (8th Cir. 1977) ("The purpose of Rule 41(a)(1)(i) is to fix the point at which the resources of the court and the defendant are so committed that dismissal without preclusive consequences can no longer be had as of right. This point is now fixed at a relatively early stage of the proceedings: the time when the defendant first answers or files a summary judgment motion.").

**B. Entry of Judgment on Andersen's DOE Claims Is Also Proper Pursuant to Rule 56.**

In addition, entering judgment on these claims is also appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure.

First, Andersen wrongly contends that Fiber Composites may not obtain judgment because it chose not to bring counterclaims. Andersen merely points out that Fiber Composites did not bring counterclaims against Andersen and then contends that Fiber Composites thus "waived any judicial determination on the broad issue of whether product with less than 30% wood-fiber weight infringed under the doctrine of

equivalents" (Andersen Mem. at 3). Andersen provides no authority for its asserted "if-then" conclusion that the lack of a counterclaim precludes an entry of judgment for an issue on which *Andersen* bears the burden and failed to meet it.

Instead, Andersen cites to a Supreme Court case about the jurisdictional issue of mootness with respect to the intertwined issues of infringement and validity in patent cases. *See Cardinal Chem. Co. v. Morton Int'l, Inc*., 508 U.S. 83 (1993); *see also Electrical Fittings Corp. v. Thomas & Betts Co*., 307 U.S. 241 (1939). But *Cardinal Chemical* does not say what Andersen says it does.

*Cardinal Chemical* concerned the Federal Circuit's prior "practice of routinely vacating declaratory judgments regarding patent validity following a determination of noninfringement." *Cardinal Chem*., 508 U.S. at 89. Because the Federal Circuit had concluded that this practice was dictated by earlier Supreme Court precedent, the Supreme Court discussed this precedent in *Cardinal Chemical* in the part of its opinion on which Andersen relies. *See id*. at 93-94. In this part of its opinion, the Supreme Court stated that "[a]n unnecessary ruling on an affirmative defense is not the same as the necessary resolution of a counterclaim for a declaratory judgment" in the context of when a court may rule on both the issues of infringement and validity. *See id.*

That situation is not material, or even analogous, to the situation here. Fiber Composites is not asking for a ruling on its affirmative defense of invalidity to Andersen's charge of infringement—instead, Fiber Composites is asking for a ruling on one of *Andersen's* charges of infringement itself. Unlike an invalidity defense when there is a finding of noninfringement, Andersen's charge of DOE infringement has *not* been mooted by any other ruling in this case. Thus, *Cardinal Chemical*, as well as *Electrical Fittings*, which *Cardinal Chemical* discusses and on which Andersen also relies, are simply inapposite. They do not stand for the proposition that Fiber Composites' request for judgment on Andersen's claims of DOE infringement is improper.

Second, Andersen fails to refute Fiber Composites' argument that entry of judgment of noninfringement is appropriate by considering Fiber Composites' request for renewal of the motion for summary judgment. Indeed, Andersen's response to this argument is essentially a failure to take responsibility for its own actions in this suit. Andersen contends that Fiber Composites' request is improper under the Court's scheduling order, but Fiber Composites timely brought its motion for summary judgment within the schedule set forth by the Court. It is Andersen that improperly opposed Fiber Composites' motion when timely brought. On the eve of trial, when it realized that its "proof" of infringement under DOE, on which it relied to oppose summary judgment, was totally inadequate, Andersen declined to present it at trial.

Andersen also contends that summary judgment would serve no purpose at this point, because the parties—and presumably the Court—already invested in and went forward with trial, but it was solely Andersen's opposition to Fiber Composites' motion for summary judgment and then Andersen's abandonment of its DOE claims that resulted in any wasted effort.[6] One purpose of summary judgment is disposing of claims without trial, and there was no trial on Andersen's DOE claims in this case because of their eleventh-hour abandonment by Andersen.

Further, Andersen does not even attempt to distinguish the cases cited by Fiber Composites in its moving brief to show that courts routinely grant summary judgment to one party on an opposing party's claim when the opposing party has abandoned that claim. *See Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 972 n.3 (E.D. Mich. 2003) ("Defendant has not disputed Plaintiff's contention that Defendant has abandoned the defense of anticipation under 35 U.S.C. § 102. Accordingly, Plaintiff is entitled to summary judgment on this issue."); *In re Dippin' Dots Patent Litig.*, 249 F. Supp. 2d 1346, 1377 (N.D. Ga. 2003) ("Plaintiffs are entitled to summary judgment on any sham

[6] The wasted effort was entirely *Fiber Composites'* in preparing to defend the DOE case at trial, and in making its motions in limine on the subject.

litigation claims, since Defendants have abandoned the claim."). In sum, there is no reason not to grant Fiber Composites' proper request for entry of judgment on Andersen's claims that Fiber Composites' products made with less than 30% wood-fiber content infringe the asserted patents.

## III. CONCLUSION

For the reasons provided above and in its moving brief, Fiber Composites respectfully requests that the Court dismiss Andersen's claims of DOE infringement with prejudice and enter judgment that Fiber Composites' products made with less than 30% wood-fiber content do not infringe the asserted patents under the doctrine of equivalents.

Dated: May 16, 2005

FISH & RICHARDSON P.C.

By: s/Katherine A. Moerke

Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC.

60294678.doc