UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSEN CORPORATION,

Plaintiff,

v.

FIBER COMPOSITES, LLC,

Defendant.

CIV NO. 00-CV-2548 (JNE/JGL)

**DEFENDANT FIBER COMPOSITES, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF ANDERSEN CORPORATION'S MOTION FOR AN ACCOUNTING OF FIBER COMPOSITES' INFRINGING SALES FROM AUGUST 23, 2002 TO MAY 12, 2005**

Andersen has moved for what it calls an "accounting" to "account for any continued literally infringing sales from August 23, 2002, the date Fiber Composites last produced documents, through May 12, 2005, the date of final judgment." (Andersen Mem. at 1.) What Andersen actually seeks, however, is to reopen discovery and attempt to dispute testimony and evidence it did not dispute at trial.

**I. Background**

Andersen sued Fiber Composites on November 16, 2000, alleging infringement of six patents. (Docket Entry No. 1.) Only two patents remained in the case at the time of trial. As a result of Andersen's admitted failure to mark its products covered by any of the patents-in-suit with their patent numbers, the starting date for damages was the filing date of the lawsuit. At that time, Fiber Composites sold only a single railing part (a railing post) made with more than 30% wood fiber. All of Fiber Composites' other railing parts contained less than 30% wood fiber or no wood fiber at all. About six weeks

after suit was filed, Fiber Composites finally reduced the wood fiber content in its railing posts to below 30%. As a result, all of Fiber Composites' railing parts made after January 1, 2001 had less than 30% wood fiber content, and thus none of them infringed the remaining patents-in-suit.[1] While Andersen took extensive discovery of Fiber Composites' post January 1, 2001 formulas and railing products during discovery, the testimony and evidence all was that Fiber Composites had never again produced a railing part after January 1, 2001 with 30% or more wood fiber.

Consistently, at trial, Fiber Composites' testimony and evidence was that after January 1, 2001, Fiber Composites *never* made another railing part with 30% or more wood fiber up to and including the date of the trial. (Trial Trans. 623-25.) This testimony and evidence was entirely *uncontested* and *unrebutted* by Andersen at trial. As a result, both damages experts agreed at trial that the damages period lasted about six weeks, and this prompted Andersen's counsel to repeatedly tell the jury at trial that the case was not about money. Indeed, it was not. The jury awarded Andersen only $46,000 in damages.

Andersen, however, now seeks an "accounting" for Fiber Composites' non-existent infringing sales made after August 23, 2002, which, because of the close of discovery, was the date of Fiber Composites' last production documents. (*See* Andersen Ex. 1.) Andersen, however, after taking the deposition of Fiber Composites' witnesses

[1] The Court ruled on summary judgment that these post-January 1, 2001 parts did not literally infringe any of the asserted claims, and Andersen dropped its infringement claim under the doctrine of equivalents just before trial in view of Fiber Composites' pre-trial attack on this baseless claim.

on the reduction to less than 30% wood fiber never sought any updates on the formulas used by Fiber Composites after August 23, 2002. Nor is there any evidence Andersen attempted to test any of Fiber Composites' railing products sold throughout the United States from January 1, 2001 to the date of trial. Therefore, Andersen's assertion that "the jury was not able to consider infringing sales that occurred after Fiber Composites last produced documents" is, at best, misleading. (*See* Andersen Mem. at 2.) The jury was not able to consider such infringing sales because there were no more infringing sales—a fact proven at trial that Andersen did not choose to contest.

Instead, Andersen now ostensibly seeks to rely on the cases where, unlike here, infringement was admittedly ongoing at the time of trial, and a post-trial "accounting" amounts to no more than a disclosure of the amount of the unaccounted-for infringing sales. However, in reality, Andersen seeks to reopen discovery as to infringement in an attempt to find and present evidence on the subject that it could have and should have produced at trial, if it existed.

## II. Argument

### A. An Accounting Is Not Warranted in This Case Because There Was No Ongoing Infringement.

Although Andersen is correct that an accounting is proper in many patent cases (Andersen Mem. at 2-3), this is not one of them. Simply put, a post-trial accounting often occurs in patent cases when the alleged infringement is *ongoing*. This is true for one reason—that infringing sales proven at trial can obviously extend only to some pre-trial date. Thus, if a patentee prevails *and there was continuing infringement up until trial*, the

patentee may be entitled to a simple post-trial accounting for the additional infringing sales after the arbitrary cut-off date up until an injunction takes effect. But there were no such additional infringing sales here. And the non-precedential district court cases Andersen cites offer no persuasive support for its novel proposition that an "accounting," which involves a significant reopening of discovery, is proper when the undisputed evidence is that accused infringement stopped well before trial. *See generally Itron, Inc. v. Benghiat*, No. Civ.99-501 (JRT/FLN), 2003 WL 22037710 (D. Minn. Aug. 29, 2003); *Maxwell v. J. Baker, Inc.*, 879 F. Supp. 1007 (D. Minn. 1995), *rev'd on other grounds*, 86 F.3d 1098 (Fed. Cir. 1996); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, Nos. CV-S-97-1383, CV-S-98-1462, 2001 U.S. Dist. LEXIS 23416 (D. Nev. Aug. 1, 2001); *Calhoun v. United States*, 354 F.2d 337 (Ct. Cl. 1965); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, 81 F. Supp. 2d 1122 (D. Kan. 2000).

In *Itron*, for example, the patentee sought an accounting following a jury trial "of certain Itron sales that were not specifically described at trial." *Itron*, 2003 WL 22037710, at *15-*16. Unlike here, however, in *Itron*, the "parties do not dispute that [the patentee] is entitled to damages for the [relevant time] period, but they disagree over whether the jury's award took this period into consideration." *Id*. at *15. The *Itron* court noted that "[c]ourts 'routinely grant motions for further accounting' where the jury did not consider certain periods of infringing activity" and thus found that the motion was appropriate in that case. *Id*. (citing *Stryker v. Davol, Inc*., 75 F.Supp.2d 746, 747 (W.D. Mich. 1999); *Maxwell*, 879 F. Supp. at 1011; *Mikohn*, 2001 U.S. Dist. LEXIS 23416, at

*52-54). In contrast to *Itron*, there were no periods of infringing activity not considered by the jury in this case.

In *Maxwell*, as in *Itron*, the court held that the patentee was entitled to an accounting because "[t]he jury's finding and award of damages [were] based on [the defendant's] sales through . . . the date of the most recent data available at the time of the trial." *Maxwell*, 879 F. Supp. at 1011. Again, this is not the situation in this case. Here, damages were based on sales through December 31, 2000, the last date for which Andersen was able to prove there was any infringement, not the date of the most recent data available at the time of trial as in *Maxwell*. Indeed, as Andersen recognizes, Fiber Composites produced documents up until August of 2002. Andersen could have sought more data, but it chose not to do so.

Likewise, the procedural posture of *Mikohn* was very different than that of this case, and the court afforded only minimal treatment to the question of an accounting. In that case, the patentee sought "only to extend th[e] damage award to cover the full period of infringement," and the court agreed that it was necessary for the patentee "to be provided with information to calculate a reasonable royalty for the entire period of infringement." *Mikohn*, 2001 U.S. Dist. Lexis 23416, at *57-*59. The court reasoned as follows:

> *Damages suffered as a result of infringement include those for the entire period of infringement.* The fact that the damages experts employed by both sides were provided with information covering [the defendant's] sales only through June 1999 does not reduce the period for which [the defendant] must compensate [the patentee]. To deny the Motion for an Accounting would be to allow [the defendant] to evade its obligation to pay damages for the remainder of the period of infringement and would

> contradict the patent law's purpose of compensating patent holders for the damage suffered due to infringement.

*Id*. at *63. Here, unlike in *Mikohn*, the entire period of infringement for which Andersen is entitled to damages was already accounted for at trial. Accordingly, the *Mikohn* case does not support Andersen. Indeed, *Mikohn*'s reasoning shows why an "accounting" is improper in this case. *Mikohn* recognized that the purpose of an accounting is adequate compensation for the full period of infringement, not an opportunity to reopen infringement allegations and decide questions of liability, as Andersen attempts now.

Next, the *Calhoun* case simply recognized that, under certain circumstances, "the plaintiff would be entitled to an accounting for any [] use or manufacture that occurs between the filing of the original petition and the expiration of the patent or the entry of final judgment, whichever occurs first." *Calhoun,* 354 F.2d at 340. Once again, those circumstances—ongoing infringement—are not present here. In fact, Andersen dropped all allegations of infringement against Fiber Composites after January 1, 2001 and put on no proof of any additional alleged infringement at trial.

Finally, the district court in *Braintree* actually denied the plaintiff's request for an accounting because it considered "a request for an accounting to be a significant claim for relief and not a mere clerical exercise which would routinely and readily follow from a verdict in plaintiff's favor." *Braintree,* 81 F. Supp. 2d at 1140. Therefore, this case, like all of the others cited by Andersen, lends it no support. Indeed, none of the case law on which Andersen relies supports the conclusion that an "accounting" is proper in this case, where the undisputed evidence at trial was that infringement stopped years ago.

**B. An Accounting Is Improper in This Case Because Andersen May Not Reopen Discovery and Bring New Infringement Allegations Under the Guise of an "Accounting."**

Not only do the cases cited by Andersen fail to show that an accounting is proper in this case, but also other courts have recognized that a so-called "accounting" is improper in analogous situations where what the patentee truly seeks is to reopen discovery and issues of liability. In *Syndia Corp. v. Gillette Co.*, the United States District Court for the Northern District of Illinois denied a patentee's motion for an accounting of infringing sales. No. 01 C 2485, 2002 WL 2012473 (N.D. Ill. Aug. 30, 2002). In so ruling, the court rejected much of the precedent on which Andersen relies and noted that "a post-judgment accounting is not as standard as the court in *Mikohn* concluded." *Id.* at *2 (citing *Lucent Technologies, Inc. v. Newbridge Networks Corp.*, 168 F. Supp. 2d 269, 272 (D. Del. 2001)). The *Syndia* court reviewed *Mikohn* and the cases it cited and determined that the posture of those cases was significantly different than in *Syndia*:

> In those cases, the accounting was granted as a final windup of damages either after or at the same time as the ruling on the post-trial motions. The limited purpose of the accounting was to calculate the sales of the product utilizing the infringing process after the entry of the judgment and before the entry of the permanent injunction.

*Syndia*, 2002 WL 2012473, at *3.

"More significantly," in *Syndia*, the court ascertained that "the purpose of [the patentee's] request for an accounting and its motion to compel discovery is not simply to calculate additional damages on products that admittedly employ a process that has been found to be infringing." *Id.* Instead, the court saw the true purpose of the patentee's

request for an "accounting," which is remarkably similar to Andersen's here, and considered this purpose improper:

> ***It is apparent that what Syndia seeks here is more than just an accounting as traditionally understood, but rather discovery into whether changes Gillette claims to have made in the process of manufacturing certain of its products eliminate the infringement of Syndia's patents.*** Syndia states that "in order to conduct an appropriate accounting of post-3/31/02 sales, this Court must determine if Gillette's 'current' products are indeed made by the same (or a 'different') method." . . . This appears to have the potential for another extended factual and technical dispute.

*Id*. As the *Syndia* court explained,

> ***Nothing in the Mikohn case or any of the precedents cited therein suggests that a post-judgment accounting opens the door for discovery on factual and technical matters.*** Nothing in those cases suggests that an accounting is a substitute for a contempt proceeding following the entry of an injunction or another infringement suit.

Thus, the *Syndia* court concluded, "it seems particularly unwise to engage in discovery under the guise of an 'accounting' to determine whether an allegedly-changed product is infringing." *Id*. at *4.

The *Syndia* court's reasoning and conclusion is equally applicable to this case, although the posture of this case is somewhat different than *Syndia*. In *Syndia*, the magistrate judge's reasoning was influenced by the fact that post-trial motions had not yet been decided by the district court judge. Post-trial motions have not yet been decided here either, but obviously the much more significant fact is that the *undisputed* evidence at trial was Fiber Composites' infringement ceased more than four years ago.[2] Therefore,

[2] Andersen was perfectly free to buy Fiber Composites' railing products being sold from January 1, 2001 to April 5, 2005, test them for wood fiber content, and contest at trial Fiber Composites' testimony that none of its railing parts made after January 1, 2001

just as in *Syndia*, Andersen's request for an "accounting" is not what the name traditionally implies. Andersen is not seeking to apply a royalty rate to acts of continuing infringement that could not be introduced at trial because of issues of timing and discovery. Instead, Andersen is seeking to reopen discovery to determine whether more acts of alleged infringement took place. Andersen has absolutely no right to this, even when it calls what it seeks an "accounting."

Accordingly, Andersen's motion for an accounting should be denied. Moreover, because an accounting is improper in this case, the Court should not order that counsel for the parties discuss a plan for the process, as Andersen requests. (*See* Andersen Mem. at 5.) Finally, because an accounting is improper in this case, the Court should not order that Fiber Composites keep track of its sales from August 23, 2002 through May 15, 2005.[3] (*See* Andersen Mem. at 5-7.)

### C. Andersen's "Very Preliminary Results" Are Specious and Should Be Entitled to Absolutely No Weight.

Finally, the Court should give absolutely no credence to Andersen's purported new "evidence" of Fiber Composites' infringing sales. Out of the blue, Andersen now contends that "*preliminary* testing indicates that Fiber Composites *may* continue to sell literally infringing rail products." (Andersen Mem. at 2 (emphasis added); *see also id*. at 5 ("[T]he *very preliminary results* indicate that Fiber Composites continues to make and

---

contained more than 30% wood fiber content, if the tests showed that. Andersen failed to do so, and it nowhere explains why it failed to do so.

[3] Andersen's reliance on *Maxwell* for this particular request, just as for its motion as a whole, is misplaced because, as explained, in *Maxwell* the infringing sales had been

sell product with a wood-fiber weight of at least 30%." (emphasis added)).) Andersen's carefully worded contention is specious, and notably, Andersen failed to produce any such test results or even establish that the parts allegedly tested were made after January 1, 2001. But this also raises another question. If, as Andersen contends now, it could have proven ongoing infringement by Fiber Composites by using outside testing of the actual products, why did Andersen fail to produce such evidence at trial?

In view of Fiber Composites' testimony to the contrary, if Andersen had any evidence of continued infringement by Fiber Composites, Andersen should have introduced such evidence at trial. The issue was joined at that time. Andersen could also have sought to reopen discovery on this issue prior to trial if its test evidence showed what it now suggests it does. But Andersen did not do so. Instead, Andersen chose to abandon any remaining infringement allegations on the eve of trial and presented no evidence of alleged continued infringement by Fiber Composites at trial. Instead, it left Fiber Composites' evidence to the contrary unchallenged.

Andersen's failure to present any such evidence waives its right to do so now. Andersen may not reopen its abandoned infringement allegations under the guise of an "accounting" by submitting evidence it failed to either locate or produce previously. An "accounting" is simply not a vehicle to reopen questions of liability, and Andersen's attempt to use it this way is improper and should not be sanctioned by the Court.

---

ongoing and the award of damages was based on "the most recent data available at the time of the trial." *Maxwell*, 879 F. Supp. at 1011.

## III. Conclusion

For the reasons provided, Fiber Composites respectfully requests that the Court deny Andersen's motion for an accounting.

Dated: May 31, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke

Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC

21097566.doc