UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ANDERSEN CORPORATION,<br>Plaintiff,<br>v.<br>FIBER COMPOSITES, LLC,<br>Defendant. | CIV NO. 00-CV-2548 (JNE/JGL) |

**DEFENDANT FIBER COMPOSITES, LLC'S MEMORANDUM IN OPPOSITION TO PLAINTIFF ANDERSEN CORPORATION'S MOTION FOR A PERMANENT INJUNCTION PROHIBITING INFRINGEMENT OF U.S. PATENT NO. 5,539,027 AND U.S. PATENT NO. 5,486,553**

Andersen has moved for a permanent injunction relating to Fiber Composites' infringing railing parts, which Fiber Composites ceased selling over four years ago. Given the time that has passed since any infringing products were made and the extreme unlikelihood that infringement would ever resume, Andersen should not be entitled to injunctive relief now, and its motion for such relief should be denied.

Moreover, even if injunctive relief were awarded to Andersen at this late juncture, such relief may, as a matter of law, only prohibit infringement of the asserted claims of the two remaining patents-in-suit by the admittedly infringing products. The scope of the relief sought by Andersen is considerably broader and plainly violates established Federal Circuit precedent on the subject.

## I. Background

As was established at trial, when Fiber Composites began making railing parts in the latter part of 1998, it extruded the parts based on formulas that included 50% wood

fiber. As was also undisputed at trial, these parts failed in the field at an unacceptable rate because of their propensity to absorb water due to their high wood fiber content. Quite simply, the railing parts would absorb water, expand, and often crack open. Fiber Composites undertook a lengthy trial and error process to try to solve this serious problem by reducing, in a series of steps, the wood content in its railing parts. By January of 2000, almost a year before suit was filed, all of Fiber Composites' railing parts, except the railing posts, had wood fiber contents *below* 30%. By January, 2001, the wood fiber content of the railing posts had also been reduced to below 30%. The sole reason for these reductions in wood fiber content, which started long prior to the suit, only had to do with the aforementioned water-absorption problem in the field, which problem was only solved by reducing the wood fiber content below 30%. Fiber Composites' extensive testimony and evidence on this issue was presented at trial, and they were completely *undisputed* by Andersen.[1] It was also undisputed at trial by Andersen that, after January 1, 2001, Fiber Composites never again made any other railing part with more than 30% wood fiber content because of this problem, which occurs in the railing parts with wood fiber content of 30% or more.[2]

[1] At trial, one of Andersen's witnesses testified that Andersen's windows made with the patented technology did not experience this swelling. In response, Fiber Composites testified without contradiction that the railings cannot be entirely sealed from water, unlike the windows.

[2] Andersen claims in its motion for an accounting that Fiber Composites' infringement may be ongoing. It has produced no evidence to support this allegation, but instead seeks essentially to reopen discovery.

Prior to trial, in response to cross motions for summary judgment, Fiber Composites admitted that its railing parts with more than 30% wood fiber (all made before January 1, 2001) met all the limitations of the asserted claims of the two remaining patents-in-suit, U.S. Patent Nos. 5,486,553 and 5,539,027, and thus, literally infringed those asserted claims. The Court entered judgment of infringement based on this admission. (Docket Entry No. 215 at 12.) Contrary to Andersen's broad statements in its Memorandum, this admission did not include all of Fiber Composites' railing parts made and sold before January 1, 2001. Nor did it include all the claims of the patents-in-suit.

When this case went to trial on April 5, 2005, Andersen produced *no* additional evidence of infringement. Instead, Andersen relied solely on the Court's ruling on summary judgment. Consequently, to the extent Andersen is entitled to any injunction, its scope must be limited to the Court's literal infringement ruling relating to some railing parts made before January 1, 2001, which ruling was as the result of Fiber Composites' admission.

## II. Argument

The Court should not grant Andersen's request for a permanent injunction because of both the length of time since infringement stopped and the reason it stopped. But even if the Court were to grant injunctive relief to Andersen, such relief may only be very narrow in scope.

**A. Andersen Should Not Be Awarded Injunctive Relief Because There Is No Threat of Continued Infringement.**

As Andersen recognizes, equitable principles govern a court's award of injunctive relief to a patentee. (Andersen Mem. at 2 (quoting 35 U.S.C. § 283).) Further, as Andersen recognizes, whether or not to grant an injunction is within a trial court's discretion. (Andersen Mem. at 3 (quoting *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1281 (Fed. Cir. 1988).) In particular, the patent statute provides only that a court "*may* grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283 (emphasis added). It does not state that the Court "must" grant such relief.

Indeed, the very precedent relied on by Andersen shows that a permanent injunction is not warranted in this case. The Federal Circuit in *W.L. Gore* stated that "[t]his court has indicated that an injunction should issue once infringement has been established *unless there is a sufficient reason for denying it*." *W.L. Gore*, 842 F.2d at 1281 (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986)) (emphasis added). However, one accepted reason for denying a permanent injunction is that the infringement has already stopped and is unlikely to resume. In fact, Andersen's reference in its Memorandum to *W.L. Gore*'s pronouncement on the significance of this fact is noticeably incomplete. (*See* Andersen Mem. at 3 (citing *W.L. Gore*, 842 F.2d at 1281).) The complete statement which Andersen purports to cite to from *W.L. Gore* is as follows with the key part omitted by Andersen in bold: "The fact that the defendant has

stopped infringing is generally not a reason for denying an injunction against future infringement ***unless the evidence is very persuasive that further infringement will not take place***." *W.L. Gore*, 842 F.2d at 1281-82 (emphasis added).

The omitted language is quite important here, because in this case, unlike in *W.L. Gore*, the evidence is very persuasive that not only did infringement stop, but the evidence is overwhelming that further infringement will not take place. (Trial Transcript at 623-25; Defendant's Trial Exhibit 12.)

In *W.L. Gore*, the only evidence was that the defendant had stopped making and selling the infringing product "at the time of trial." *Id.* at 1282. Further, in *W.L. Gore,* "[n]o reason was given for the cessation." *Id*. Here, infringement stopped some four years before trial, and it stopped for a reason that was not disputed by Andersen. The uncontroverted evidence at trial was that Fiber Composites ceased making the railing parts with more than 30% wood fiber content because of serious problems in the field caused by the fact that the railing parts had more than 30% wood fiber. (Trial Transcript at 602-25.) The problem was created because the product met a key claim limitation.

Finally, in *W.L. Gore*, there was nothing to suggest that the defendant had no intention to resume making the infringing product. *Id.* Here, to the contrary, everything establishes that Fiber Composites has no intention to resume making railing parts with more than 30% wood fiber content, because to do so would re-create the cracking problems that Fiber Composites tried for two years to solve (and only solved by reducing wood fiber content in the railing parts below 30%). (Trial Transcript at 602-24.) In short, Fiber Composites only avoids the severe cracking problem in the field by *avoiding*

infringement. To resume infringement is to re-create the serious cracking problem that almost ruined the company.

Thus, while *W.L. Gore* concluded that "[t]he mere fact that [the defendant] was no longer making or selling the infringing [products] is not a sufficient ground for denying an injunction against future infringement" and that " [n]o other reason appears on this record for denying the requested injunction," *W.L. Gore*, 842 F.2d at 1282, that reasoning is totally inapplicable here. Indeed, it is difficult to conceive of more persuasive evidence than that presented and uncontested at trial as to why Fiber Composites' admitted infringement has stopped and will not resume. Accordingly, injunctive relief should not be awarded in this case.

Consideration of the equitable factors set forth in *Roche Products, Inc. v. Bolar Pharmaceutical Co.*, 733 F.2d 858, 865-66 (Fed. Cir. 1984), *superseded on other grounds*, 35 U.S.C. Section 271(e)(1), and *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577-79 (Fed. Cir. 1983), confirms this conclusion. Contrary to Andersen's claim, consideration of these factors—the adequacy of the legal remedy, irreparable injury, whether the public interest would be served, and hardship on the parties and third parties—all show why the Court should exercise its discretion to not award injunctive relief.

First, this is a patent case where the legal remedy is entirely adequate because the infringement was admitted, only took place for a limited amount of time, and ended years ago. Andersen's argument that "monetary damages alone would reward Fiber Composites for its infringement by forcing Andersen to accept a continuing, compulsory

license" is ludicrous. (*See* Andersen Mem. at 6-7.) The infringement in this case ended in 2000, and it is not continuing. Thus, there is no possibility of a "continuing, compulsory license," absent an injunction.[3]

Second, contrary to its assertion, Andersen could not possibly be irreparably harmed without injunctive relief. (*See* Andersen Mem. at 4.) Indeed, the Federal Circuit in *Smith*, on which Andersen relies, held "that where validity *and continuing infringement* have been clearly established . . . immediate irreparable harm is presumed." *Smith*, 718 F.2d at 1581. As the Court is well aware, no *continuing* infringement was established, clearly or otherwise, in this case. Indeed, unlike all the cases on which Andersen relies to claim that irreparable harm is presumed (*see* Andersen Mem. at 4-5 (citing cases)), there was no showing at all of infringement at trial. In fact, the only infringement was the admitted and limited infringement prior to January 1, 2001 for some railing parts. This is what an injunction should stop—sales of products that Fiber Composites ceased making long ago. Consequently, there is absolutely no harm at all to Andersen in the absence of an injunction, let alone irreparable harm.

Andersen also cites *Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1273 (Fed. Cir, 1985) (Andersen Mem. at 5), to suggest that irreparable harm may exist if the infringement precludes the patentee's ability to license or enter the market. Neither fact

[3] The "proof" of literal infringement and the Court's Order relating to it only pertain to railing parts that were made over four years ago, and any injunctive relief would be limited to them. There is no possibility that Fiber Composites is still selling them. As was made clear at trial, Fiber Composites does not stockpile or store these products. They are made for each current summer season, and the inventory is sold off in that year. Fiber Composites does not have any of these infringing parts it could now sell.

exists here. First, as was undisputed at trial, Andersen has no interest in the railing market. It has never made such a product and it has no plans to do so. Indeed, since Fiber Composites can continue to sell its existing, less than 30% wood fiber railing parts, any injunction does not eliminate Fiber Composites from the railing marketplace should Andersen change its mind.

Secondly, as for licensing, an injunction would not suddenly allow Andersen to license its patents-in-suit to others. It has already done so. In fact, Andersen has already licensed companies that compete with Fiber Composites despite this lawsuit. Obviously, the long-finished infringement, which could be enjoined, would have no impact on the competition between Fiber Composites and Andersen's licensees today. Any impact on that competition is as a result of *Andersen* electing not to proceed with its doctrine of equivalents infringement case against Fiber Composites' *current* railing products made and sold after January 1, 2001, which infringement contention *Andersen* unilaterally dropped against these products right before trial. Consequently, there is no likelihood of irreparable harm here.

Third, the public interest would not be served by granting injunctive relief. As demonstrated, this is a case in which Andersen's legal remedy is entirely adequate. Andersen has been awarded damages in an amount to compensate it for Fiber Composites' admitted but long-finished infringement. Because this infringement ended more than four years ago, and because there is no reason to expect it will resume, it is not in the public interest to award unnecessary relief and incur the costs inherent in granting and policing such relief.

Fourth and finally, balancing the hardships on the parties also shows that an injunction should not be awarded to Andersen. Proving compliance with an injunction will unfairly impose additional burdens and costs on Fiber Composites, as Andersen appears to wish to keep the case alive. As the Court can see from Andersen's motion for an accounting, Andersen does not intend the case to ever end. It has and will constantly look to subject Fiber Composites to further court actions and a pretext could be any injunction that issues here, which could provide a convenient vehicle by which Andersen could return to this Court in the future. This problem is further compounded by the fact that Andersen could, if granted an injunction, announce it to the press or Fiber Composites' customers, without pointing out that the enjoined products had not been sold by Fiber Composites for four years and that the injunction did not apply to the present product line. This could cause enormous problems for Fiber Composites in the marketplace.

In sum, although injunctive relief is often awarded in patent cases, the Court should exercise its discretion not to award such relief in this one, given its unique posture.

### B. Even if Andersen Is Awarded Injunctive Relief, An Injunction May Only Prohibit Infringement by the Products Accused in this Case.

In its motion, Andersen fails to address the proper scope of injunctive relief, instead simply asking "that Fiber Composites be permanently enjoined from further literal infringement of the '027 and '553 patents." (Andersen Mem. at 2.) Likewise, Andersen's proposed order requests an injunction permanently enjoining Fiber

Composites from two things: 1) infringing U.S. Patent No. 5,539,027 and U.S. Patent No. 5,486,553" (Andersen Proposed Order); and 2) making, using, selling or offering for sale the products adjudged to have literally infringed the '553 and '027 patents. It is the first part of this requested relief that is overly broad and entirely improper under established Federal Circuit precedent.[4] The second part is only too broad in that it leaves doubt as to exactly what railing parts were admitted to literally infringe the asserted claims.

As for the first part of Andersen's proposed order, the Federal Circuit recently vacated an injunction which, as with the one proposed by Andersen, did not satisfy Rule 65(d) of the Federal Rules of Civil Procedure or Federal Circuit case law. In *International Rectifier Corp v. IXYS Corp.*, 383 F.3d 1312 (Fed. Cir. 2004), the alleged infringer had modified the design of its accused product within weeks of suit being brought against it and admitted that its earlier design infringed the asserted patent. *Id.* at 1313 ("On the day the patent issued, IR filed a patent infringement suit against IXYS Corporation ('IXYS') in the United States District Court for the Central District of California. Within two weeks IXYS modified the design of its accused semiconductor products. When IR filed a motion for summary judgment of infringement, IXYS did not oppose the motion on the merits because IXYS admitted that its original product design infringed."). But, the trial court granted an injunction that prohibited infringement by any

[4] For this reason, although injunctive relief is not warranted in this case, Fiber Composites also submits a proposed order with the proper scope of injunctive relief, in the event the Court exercises its discretion to award such relief.

device covered by any claims of the asserted patent, and the Federal Circuit held that this was improper. *Id*. at 1316.

Ignoring this precedent, Andersen seeks an injunction that prohibits infringement of the patents-in-suit in general, which is exactly like the injunction the Federal Circuit vacated in *IXYS*. Further, as the Federal Circuit explained in *IXYS*, the court has rejected permanent injunctions that simply prohibit future infringement of a particular patent or patents. *See id.* at 1316 (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc*., 986 F.2d 476, 479-80 (Fed. Cir. 1993)). Instead, the focus should be on an injunction that covers the *adjudged* devices.[5] *See id.* at 1317 ("The rule requires an injunction to prohibit only those acts sought to be restrained, which in this case are infringement of the patent by the devices adjudged to infringe and infringement by devices no more than colorably different therefrom.").[6]

Thus, even if the Court decided to exercise its discretion and award injunctive relief to Andersen, any injunction may be no broader than this precedent allows. In order to be appropriate in scope, the injunction should prohibit Fiber Composites from making, using and selling only the specific railing parts made from the pre-January 1, 2001

[5] The asserted claims at issue contain multiple limitations that must be met for infringement to be found. Fiber Composites admitted these limitations were found in certain of its pre-January 1, 2001 railing parts. That is what was adjudged to be infringing. In reality, Andersen never proved that all the limitations to any asserted claims were met by anything else, particularly anything made after January 1, 2001.

[6] The "colorably different" language does not apply to this case in view of the bright line established at the 30% wood fiber level by Andersen's abandonment of its doctrine of equivalents case.

formulas Fiber Composites admitted literally infringed the asserted claims.[7] In view of Andersen's abandonment of its infringement contentions relating to all of Fiber Composites' railing products with wood fiber content below 30%, such products are by procedural necessity not covered by any injunction.

[7] The Court's Order on summary judgment was limited to the asserted claims only.

## III. Conclusion

For the reasons provided, Fiber Composites respectfully requests that the Court deny Andersen's motion for a permanent injunction. In the alternative, should the Court decide to grant injunctive relief, Fiber Composites requests that such relief be narrowly proscribed in accord with Federal Circuit precedent, as found in Fiber Composites' proposed order submitted herewith.

Dated: May 31, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke
Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC

21097549.doc