# EXHIBIT 5

151

PATENT

9340.333-US-01

#5 [handwritten initials] 12.9.93

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

MAIL ROOM DEC 3 1993 PAT. & TRADEMARK OFF.

Applicant: Michael J. Deaner et al. Examiner: LaVonda Dewitt

Serial No: 07/938,365 Group Art Unit: 1511

Filed : August 31, 1992 Docket: 9340.333-US-01

For : ADVANCED POLYMER/WOOD COMPOSITE STRUCTURAL MEMBER

DATE OF DEPOSIT: 30 Nov 93

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Mark DiPietro
Printed Name

Mark DiPietro
Signature

RECEIVED GROUP 150

DEC 08 1993

AMENDMENT AND RESPONSE

Box NON-FEE AMENDMENT
Honorable Commissioner of Patents
and Trademarks
Washington, D.C. 20231

Dear Sir:

In response to the Office Action of August 31, 1993, the following amendment and remarks are respectfully submitted.

In the Specification

On page 5, line 16, delete "able" after the word "formable".

On page 6, line 21, move the following passage "The structural members of the invention can be used in low strength

a1

applications needing a modulus of about 300,000 to 500,000. We have also produced materials that can be used in medium strength applications needing a modulus of about 500,000 to $1x10^6$. Further, we have made materials that can survive the high strength requirements of window and door manufacture that ranges from $1x10^6$ to $2x10^6$ and greater." to page 7, line 20 following "composite." on line 19.

On page 10, line 5, delete "90,000 ± 50,000" and replace with --40,000 - 140,000--.

On page 10, line 6, delete "85,000 ± 10,000" and replace with --75,000 - 95,000--.

On page 24, line 4, delete "88,000 ± 2,000" and replace with --86,000 - 90,000--.

On page 24, line 16, delete "After" and replace with --In the--.

In the Claims

Please cancel Claim 19 and Claim 25.

Claim 1 (Amended) A polymer wood composite structural member, suitable for use as a replacement for a wood structural member, which composite structural member comprises a composite member with a Youngs modulus of greater than 500,000, and a coefficient of thermal expansion less than $3x10^{-5}$ in/in-°F and which composite member comprises about 35 to 65 wt-% of a polymer comprising vinyl chloride and about 35 to 55 wt-% of wood fiber having an aspect ratio of at least about 2.

a3

Claim 3 (Amended) The composite structural member of claim 1 [wherein the elongated member has] having a rectangular cross-section with a width greater than about 1 cm and a depth greater than about 1 cm.

a4

Claim 5 (Amended) The composite member of claim 1 [wherein the elongated extrudate has] having a length greater than about 30 cm.

Claim 6 (Amended) The composite member of claim 1 [wherein the elongated extrudate has] having a shaped member cross-section.

a5 Sub. D3

Claim 17 (Amended) A polymer wood composite sill, suitable for use as a replacement for a wood [structural member] sill, which composite [structural member] sill comprises an elongated extrudate having a Youngs modulus of greater than 500,000, and a coefficient of thermal expansion between 1.5 and $2.5x10^{-5}$ in/in-°F, and which composite member comprises about 35 to 65 wt-% of a polymer comprising vinyl chloride and about 35 to 55 wt-% of wood fiber having an aspect ratio of at least about 2.

a6 Sub. D4

Claim 20 (Amended) A polymer wood composite stile, suitable for use as a replacement for a wood [structural member] stile, which composite [structural member] stile comprises an elongated extrudate having a Youngs modulus of greater than 500,000, and a coefficient of thermal expansion between 1.5 and $2.5x10^{-5}$ in/in-°F, and which composite member comprises about 35 to 65 wt-% of a polymer comprising vinyl chloride and about 35 to 55 wt-% of wood fiber having an aspect ratio of at least about 2.

In claim 21, line 1, please replace "18" with --20--.

In claim 22, line 1, please replace "18" with --20--.

Claim 23 (Amended) A polymer wood composite jamb, suitable for use as a replacement for a wood [structural member] jamb, which composite [structural member] jamb comprises an elongated extrudate having a Youngs modulus of greater than 500,000, and a coefficient of thermal expansion between 1.5 and $3.0x10^{-5}$ in/in-°F[.] and which composite member comprises about 50 to 70 wt-% of a polymer comprising vinyl chloride and about 30 to 50 wt-% of wood fiber having an aspect ratio of at least about 2.

Claim 26 (Amended) A polymer wood composite rail, suitable for use as a replacement for a wood [structural member] rail, which composite [structural member] rail comprises an elongated extrudate having a Youngs modulus of greater than $7.5x10^{-5}$, and a coefficient of thermal expansion between 1.5 and $3.0x10^{-5}$ in/in-°F and which composite member comprises about 35 to 65 wt-% of a polymer comprising vinyl chloride and about 35 to 55 wt-% of wood fiber having an aspect ratio of at least about 2.

Remarks

Claims 1-26 have been rejected under 35 U.S.C. § 112, second paragraph, as allegedly being indefinite. The Claims have been amended for purposes of clarification. In view of the above amendment and the remarks to follow, the rejection has been obviated.

Thus for example, the modulus in Claims 1, 17, 20, 23, 26 has been clarified by inserting the term "Youngs" which is the modulus intended as noted by the values and the term specifically expressed on page 24 of Applicants' specification.

The word "greater" has been inserted in Claim 3 as an obvious inadvertent omission to the Claim. Support for this is also found in the specification at page 9, line 5.

Claims 19 and 25 have been cancelled.

The term "elongate extrudate" has been removed from Claim 5 and Claim 5 clarified. The same has been done with Claim 3. Claims 3 and 5 now are clearly dependent on Claim 1 and supported by the disclosure at page 8 and Applicants' specification.

Claims 21 and 22 have been amended to change the dependency to its proper dependent Claim 20 rather than 18.

Claims 17, 20, 23 and 26 have been clarified to be specific to the structural member claimed in each of the Claims.

The Examiner has stated that Claims 1-26 are replete with "new matter limitations". The original Claims are always considered part of the specification as filed. Since no amendments have been made, no new matter has been added.

Claims 1-26 have been rejected under 35 U.S.C. § 112, first paragraph, with regard to the recitation of a coefficient of thermal expansion. Applicants respectfully submit that this coefficient of thermal expansion in the Claims is part of the specification since these are original Claims. Applicants would

be happy to amend the specification accordingly and insert such terminology with the Examiner's approval and confirmation that this is not new matter since the original Claims are indeed part of the specification.

With regard to the objection of how the molecular weights of the polymers have been expressed in the specification, Applicants have replaced the use of the ± by ranges, see amendments on pages 10 and 24 of the specifications.

Applicants have also amended the specification to correct obvious inadvertent errors. In addition, the passage on page 6, line 21 has been moved to page 7 at the end of the section entitled "Brief Discussion of the Invention" for purposes of clarification. No new matter has been added.

Reconsideration is respectfully requested of the rejection of Claims 1-6 under 35 U.S.C. § 102(b) as allegedly being anticipated by Beshay, US Patent 5,008,310; Miani, US Patent 4,915,764; Natov et al., US Patent 4,594,372; Fujita et al., US Patent 4,737,532; Hopperdietzel, US Patent 4,851,458; and Goettler, US Patent 4,376,144.

The Examiner alleges that the cited references teach a wood fiber-vinyl chloride polymer composite. The Examiner also notes that although the references do not teach the limitations of Applicants' claimed invention, these properties would be inherent in the prior art materials described. Applicants respectfully disagree and have indicated in the specification that prior to the present invention, previous polyvinyl thermoplastic materials

combined with wood products have not resulted in a sufficient Youngs modulus as claimed in the composite herein, see page 4, lines 18 to page 5, line 9. This is made clearer by Applicants' claims (now amended) which point to an important element of the present invention which is the size of the wood fiber used in the composite having such a large modulus. Support for the amended language is at page 10, line 25 to page 11, line 3.

A careful look at the references cited by the Examiner show clear distinguishable differences in the composites prepared from that of Applicants' invention. Therefore, none of the prior art references would place the presently claimed invention in possession of the public. This is the requirement for anticipation. The mere picking of elements in the prior art references is not enough to anticipate the present claims.

Thus for example, in Beshay, the polymer composite is not solely of wood fiber and polyvinyl chloride. The cellulosic or wood fabric must be grafted with an isocyanate crosslinking or bonding agent prior to mixing with the polymer. In column 2 in the paragraph between lines 51 and 63, Beshay notes that the cellulosic fibers are coated with isocyanates; preferably, the cellulosic fibers are actually grafted with isocyanates by generating a free radical process and by mixing with inorganic fillers whether prebonded or not with bonding agents.

In the Miani composite, the organic filler which can be wood pulp is notably pre-mixed with the liquid polymer and then subsequently more polymer is added. Thus, there appears to be a

prior coating of the wood powder with a plastic material. Furthermore, the composite is directly extruded and kept hot during the entire operation. Post extrusion milling is also required to obtain a final useful shape. This type of composite is not the composite taught in the present invention. In contrast, the presently claimed composite is prepared by mixing the melted polymer and wood pulp, forming pelletized material, cooled, then extruded. This affords a smooth structural member without any evidence of polyvinyl chloride degradation. (See page 9, line 24-25 and page 14, line 21 et seq.).

Natov et al. also does not teach the simple mix or blending of polyvinyl chloride and wood fiber but necessitates the use of other ingredients, lubricants, etc., and especially and necessarily a novolak phenol formaldehyde resin hardened by formalin in the presence of a metallic agent. This is completely outside Applicants' claimed invention.

Fujita teaches a mixture of a polyvinyl chloride and wood flour not a fiber with an aspect ratio as claimed. Applicants noted the hazards of using a wood flour with polymer blends in the specification, see page 5, lines 4-10 of Applicants' specification. Furthermore, the product obtained by Fujita is not extruded but molded and necessarily contains an ABS resin, see Column 2, line 16.

The Hopperdietzel reference teaches the combination of polyvinyl chloride and cellulose fibers where the cellulose fiber must have a certain fiber thickness in length, much smaller than

the wood fibers used in Applicants' invention. The requirement in Hopperdietzel is that the thickness range from a finite thickness to about 40 micrometers and a fiber length to about 400 micrometers. The disadvantage of the small fiber size is as in the use of wood flour or sawdust noted above. In addition, small fiber particles as in Hopperdietzel will not impregnate the polymer efficiently. In contrast, at the bottom of page 10 of Applicants' specification the fibers are commonly at least 1 mm in length and 0.3 mm in thickness and commonly have an aspect ratio of at least about 2, much larger than the Hopperdietzel fibers. Hopperdietzel also teaches the need to chemically clean the cellulose fibers prior to mixing with the polymer.

The Goettler reference also lacks clear anticipation of Applicants' claims by describing that his cellulose fibers are treated with vinyl chloride polymer, a plasticizer, and an isocyanate bonding agent. The particular bonding agent is illustrated in Column 1. This results in a composite which is different from Applicants' claimed invention.

Therefore, on examination of all of the above references, nowhere do they specifically teach Applicants' claimed invention. On this basis, the Examiner's rejection is inappropriate and it should be withdrawn.

Reconsideration is respectfully requested of the rejection of Claims 1-26 under 35 U.S.C. § 103 as allegedly being

unpatentable over the references previously cited in view of Brooks et al., US Patent 5,082,605 and Goforth et al., US Patent 5,088,910.

The primary references have already been discussed above with regard to the anticipation rejection. The Examiner admits that none of these references teach the specific use of the wood fiber and polyvinyl chloride compositions or composites for particular building materials as claimed in Applicants' invention. The Examiner therefore has found Brooks and Goforth which formulate composite materials for various building materials including window sills, sashes and the like. Nevertheless, Brooks and Goforth do not describe the combination of polyvinyl chloride and wood fibers. On the contrary, both Brooks and Goforth are very specific in teaching the type of polymer used to be combined with wood fiber. In both references, the teaching is solely limited to polyethylene and polypropylene. Therefore, there is no suggestion to combine these references with the primary references cited by the Examiner. Absent a suggestion to combine references, such a combination cannot be made to render the Claims obvious.

Assuming that a combination was suggested, the result would not be a vinyl chloride wood fiber composite. The composite would be a polyethylene or polypropylene wood fiber composite. Such composites are inferior in strength having an average Youngs modulus of 250,000 rather than at least 500,000, by the present composites claimed. Attached with this Amendment is a technical

brochure from the manufacturer of such a polyolefin composite noting the Youngs modulus of 225,000/350,000 for the product **MOISTURESHIELD**.

In view of the above, Applicants respectfully submit that the Examiner's rejection is unwarranted; its withdrawal is anticipated.

A prompt and favorable reply is earnestly solicited.

Respectfully submitted,

Michael J. Deaner et al.

By their Attorneys,

30 Nov 93
Date

Mark DiPietro

Mark DiPietro
Reg. No. 28,707
MERCHANT, GOULD, SMITH
EDELL, WELTER & SCHMIDT, P.A.
Suite One Thousand
Norwest Center
55 East Fifth Street
Saint Paul, Minnesota 55101
(612) 298-1055

MAIL ROOM DEC 3 1993 PAT. & TRADEMARK OFF.

Sheet 1 of 1

| Form 1449* | Atty. Docket No. 9340.333-US-01 | Serial No. 07/938,365 |
|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT (Use several sheets if necessary) | Applicant Michael J. Deaner et al. | |
| | Filing Date 8/31/92 | Group 1511 |

## U.S. PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date If Appropriate |
|---|---|---|---|---|---|---|
| | | | | | | |

RECEIVED GROUP 150

DEC 08 1993

RECEIVED

DEC 08 1993

## FOREIGN PATENT DOCUMENTS

| **Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes | Translation No |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## OTHER DOCUMENTS

(Including Author, Title, Date, Pertinent Pages, Etc.)

| **Examiner Initial | |
|---|---|
| LCD | A.E.R.T. (Advanced Environmental Recycling Technologies, Inc.) Technical Brochure. |
| | |
| | |

| Examiner | Date Considered |
|---|---|
| [signature] | December 20, 1993 |

*Substitute Disclosure Statement Form (PTO-1449)
**EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

# A.E.R.T.

Advanced Environmental Recycling Technologies, Inc.

FM 2169
P.O. Box 172
Junction, TX 76849
(915) 446-3430
(915) 446-3864 FAX

950 N. 2nd Street
Rogers, AR 72756
(501) 636-1552
(501) 636-1917 FAX

The following is comparative analytical data compiled during the development of Moistureshield, a revolutionary new building product manufactured by AERT.

| | PONDEROSA PINE | MOISTURESHIELD |
|---|---|---|
| Avg. Screw Strip Out Torque (LBS) | 26 | 27/39 |
| Avg. Screw Holding Force (LBS) | 378 | 383/510 |
| Avg. Nail Holding Force (LBS) | 210 | 398 |
| Moisture Absorption 24 Hrs. - % Weight Increase | 60% | 3%*Machined |
| % Volume Increase | up to 12% | <1% |
| Modulus of Elasticity | 925,000 | 225,000/350,000 |
| Compression Strength Perp to Grain (PSI) | 890/1283 | 1290/1640 |
| Tensile Strength (PSI) | 700/1200 | 1500/1690 |
| Coefficient of Lineal Thermal Expansion, Contraction | * | <2.2 X 10-5 |

Moistureshield - Registered tradename by AERT, composition can be tailored and custom compounded to satisfy customer specifications.

Lab Results......Withdrawal Strengths
Performed by Matt McGinnis, Maze Nails, Peru, IL.

<u>1" Penetration on the 4" face dimension</u>

| | Yellow Pine C.C.A.-Treated SPF | Moistureshield |
|---|---|---|
| Spiral Shank | 270 | 380 |

<u>2-1/2" Penetration on the 1-1/2" side dimension</u>

| | | |
|---|---|---|
| Ring Shank | 960 | 1,150 |

NOTE: Values are shown in pounds of hydraulic pressure needed to withdraw the nails. Noted values are averages of repeated withdrawal tests.

RP/lgb\0724