UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSEN CORPORATION,

Plaintiff,

v.

FIBER COMPOSITES, LLC,

Defendant.

CIV NO. 00-CV-2548 (JNE/JGL)

**FIBER COMPOSITES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A NEW TRIAL**

Fiber Composites' principal invalidity defense at trial was that the asserted claims of Andersen's two patents-in-suit were anticipated under 35 U.S.C. § 102. During discovery, Andersen denied that the anticipatory reference, the *Modern Plastics* article, disclosed all the limitations of the asserted claims. At trial, however, Andersen's own expert admitted on cross-examination that all the limitations of the asserted claims were in fact disclosed in the reference.

The Court allowed Andersen to present evidence at trial that the *Modern Plastics* article was not enabled, despite the fact that Andersen did not disclose this attack on the reference until after the Court-ordered deadline for doing so. Then, in a subsequent pre-trial ruling, the Court refused to allow Fiber Composites' expert to respond. The result was a verdict of no anticipation, which is manifestly unfair. Consequently, if the Court

declines to grant judgment as a matter of law on this issue[1], then the Court should grant Fiber Composites' request for a new trial on the discrete issue of whether the *Modern Plastics* article is enabling prior art, at which Fiber Composite should be allowed to present the excluded evidence on the issue.

## I. Background

### A. Procedural History

Andersen filed this lawsuit in November of 2000. On November 1, 2001, Fiber Composites served a prior art statement in accordance with Magistrate Judge Boylan's scheduling order. (Docket No. 28.) The statement listed and described the universe of prior art that Fiber Composites might use at trial, including the key reference, an article from the 1974 issue of *Modern Plastics* entitled, *Fill Thermoplastics with Wood* ("the *Modern Plastics* article"). Fiber Composites further identified the *Modern Plastics* article as being an anticipatory reference.

The scheduling order next required Andersen to respond to Fiber Composites' prior art statement. Specifically, the order provided that Andersen "shall ***state in detail*** what the prior art relied upon by defendant shows, if its interpretation differs from defendant's and its position on ***why the prior art does not invalidate the patents in suit***." (*Id*. at 3 (emphasis added).) Andersen had to disclose all its attacks on the art at that time. On January 8, 2002, Andersen served its responsive statement. (Ex. 1.) In

[1] Fiber Composites has also moved for judgment as a matter of law on the issues of infringement and validity.

reference to the *Modern Plastics* article, Andersen said very little. This is Andersen's entire response:

> The author of this article reports on the advertised results claimed to have been achieved by a third party. *See* Page 55. This reference is therefore no more than hearsay. Andersen believes actual testing of the material described in the article (which the author did not do) does not yield the results recited. Further, the reference has no teachings on fiber size, and the only disclosure is to use 'wood flour' as a 'filler' as opposed to a reinforcing agent. Page 55.

(*Id*. at 7.) Andersen said *nothing* about any lack of enablement defect with the reference. Consequently, pursuant to the strict and explicit requirements of the Scheduling Order, Andersen had waived the issue as of January 8, 2002.

In response to the statement that Andersen did make, Fiber Composites retained Professor Gardner and The Advanced Engineered Wood Composites Center at the University of Maine to test Andersen's contention that the *Modern Plastics* article reported inaccurate results. Professor Gardner and the Center manufactured material with the approximate formula disclosed in the article and tested its properties. The tests confirmed that the results published in the *Modern Plastics* article were accurate and refuted Andersen's contention to the contrary. (Ex. 2; April 8, 2005 Trans. at 802-08.)

Since Andersen's responsive prior art statement made no mention of enablement, Fiber Composites did not ask Professor Gardner to opine about enablement. Instead, Fiber Composites assumed, fairly, that enablement of the *Modern Plastics* article was undisputed.

Eight months after Andersen served its prior art statement, Andersen argued for the first time that the *Modern Plastics* article was not properly enabled in a final,

responsive expert report. By this time, fact discovery had closed and the parties were done serving expert reports, pursuant to the Court's scheduling order. By concealing its enablement attack for so long, Andersen prevented Fiber Composites from responding during discovery or through expert reports.

In August and September of 2002, the parties submitted summary judgment motions on a variety of issues, including validity of the asserted claims. Fiber Composites argued, and maintains, that the asserted claims are invalid as anticipated by the *Modern Plastics* article as a matter of law. (*See* Docket No. 156; Fiber Composites' Memorandum of Law in Support of Its Motion for Judgment as a Matter of Law on the Issues of Infringement and Validity.) Andersen responded in part with its untimely enablement argument. On July 21, 2003, the Court determined that a question of fact remained as to whether the *Modern Plastics* article is enabled. That Order made the enablement issue triable, when it should not have been. Accordingly, Fiber Composites promptly asked Professor Gardner to opine about the enablement issue that Andersen had only raised after the close of fact discovery. He agreed and Fiber Composites served his supplemental report on September 15, 2003[2], more than a year and a half before trial of this action. Andersen chose to spend the following weeks preparing a motion to strike this supplemental report, rather than simply noticing and taking Professor Gardner's deposition.

---

[2] Fiber Composites notified the Court and Andersen of its intent to serve this supplemental report on August 22, 2003. (Ex. 3.) Andersen did not object until submitting its motion to strike.

Ironically, Andersen asserted that Fiber Composites' enablement response should have been stricken because "Andersen was entitled to rely on Fiber Composites' compliance with this Court's Scheduling Order." (Andersen's Memorandum in Support of its Motion to Strike at 3.) This Court has previously considered and rejected Andersen's position:

> Plaintiff [Andersen] had the burden to come forth with evidence of lack of enablement, or at least put Defendant [Fiber Composites] on notice of the issue, during discovery. ***Because Plaintiff did not, Defendant is entitled to respond after the discovery period to this issue***.

(Order by Chief United States Magistrate Judge Lebedoff, dated November 21, 2002, Docket No. 204, at 5, affirmed by Judge Erickson, January 7, 2003, Docket No. 212 (emphasis added).)[3]

This notwithstanding, the Court *granted* Andersen's request to strike Professor Gardner's expert report. (Docket Nos. 226, 233.) Shortly before trial, Fiber Composites moved *in limine* to prevent Andersen from presenting its late-disclosed expert opinion on enablement at trial. Fiber Composites had considerable authority on its side.[4] The Court

---

[3] Based on this ruling, Fiber Composites was allowed to include outside sources in the Notice to refute Andersen's enablement argument.

[4] Courts generally strike late disclosures because allowing them is prejudicial to the other side, especially in complex patent cases. *See, e.g.*, *Astrazeneca AB v. Mutual Pharmaceutical Co., Inc*., 278 F. Supp. 2d 491, 509-10 (E.D. Pa. 2003) ("Plaintiffs are prejudiced by the new [expert] information because Plaintiffs did not have any opportunity to adequately address this new and complex data and expert testimony."); *American Stock Exchange, LLC v. Mopex, Inc*., 215 F.R.D. 87, 93-95 (S.D.N.Y. 2002) (upholding a magistrate judge's report and recommendation precluding a party from alleging infringement of a late asserted claim); *Texas Instruments, Inc. v. Hyundai Elecs. Indus., Co*., 50 F. Supp. 2d 619, 622-30 (E.D. Tex. 1999) (granting motion to preclude party from relying upon certain prior art as part of its invalidity defense because of its late

denied Fiber Composites' motion and allowed Andersen's expert, Professor John Simonsen, to testify that the *Modern Plastics* article was not enabled. Fiber Composites, in contrast, was not allowed to present any expert opinion in response to Andersen's proffered expert opinion.

**B. Evidence Adduced at Trial**

As made crystal clear at trial, both Andersen's and Fiber Composites' experts agree that the *Modern Plastics* article discloses all of the elements of the asserted patents. Fiber Composites' expert Doctor Mohini Sain testified and illustrated that each claim element was present in the *Modern Plastics* article. (April 7, 2005 Trans. at 736-55). Ultimately Sain concluded as follows:

> Q. But you found all the claim elements present in the Modern Plastics article?
> A. Yes.

(*Id*. at 755.) Andersen's expert agreed. (April 8, 2005 Trans at 900, 910.) Simonsen too found every element of the asserted claims present in *Modern Plastics* article, either

---

disclosure); *SunTiger, Inc. v. Scientific Research Funding Group*, 9 F. Supp. 2d 601, 606-07 (E.D. Va. 1998) (concluding that it was proper to exclude relevant information not disclosed in a timely manner in violation of the discovery rules).

This is because the purpose of discovery rules and deadlines in civil matters is to avoid "surprise" or "trial by ambush." *See, e.g.*, *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1061 (D. Minn. 1999) ("[Rule 26(e)(2)] has a simple but important purpose; namely, to prevent [t]rial by ambush."), *aff'd in relevant part*, 290 F.3d 1364 (Fed. Cir. 2002); *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd*., 911 F. Supp. 76, 79-80 (E.D.N.Y.1996) (explaining that Rule 26(e)(2) is designed to facilitate the objective of the Federal Rules of Civil Procedure by "eliminat[ing] surprise"). As this Court has explained, "patent law litigation is not so very different from other types of complex civil litigation, and scheduling orders must mean something if the parties and the court are ever to achieve some sort of finality." *ADC Telecommunications, Inc. v. Thomas Betts Corp*., No. 98CV2055, 2001 WL 1381098, at *4 (D. Minn. Oct. 18, 2001).

expressly or based upon reasonable assumptions—assumptions that he made. (*Id*.) Initially Simonsen testified as follows:

> Q. I think might be able to cut some of this pretty short. I've got all these claim charts and we can walk through them as we did with Professor Sain this morning; but I gather you're not contesting that the Modern Plastics article discloses the elements that are in those claim charts. Is that right?
>
> A. I think if you make some reasonable assumptions, then yes. That's -- you can get at least some of that. I would have -- we would have to go through each one for me to be sure.

(*Id*. at 200, 201.) Then, counsel for Fiber Composites methodically walked through every asserted claim limitation and Professor Simonsen agreed that each was present either explicitly or based on reasonable assumption in the *Modern Plastics* article. (*Id*. at 736-55.) At the end of the exercise then it was undisputed that the *Modern Plastics* article has all of the claim limitations. In fact, Andersen's counsel agreed. In closing argument he remarked as follows:

> And Fiber Composites' counsel with great flair and drama took a red pen and made check marks on the list saying "everything is disclosed here." And Professor Simonsen said, "in that chart, it's got those words in that chart." Yeah, big flair with check marks.

(April 11, 2005 Trans. at 1053:8-13.) If this were all the evidence on this issue, no reasonable jury could reject Fiber Composites' anticipation defense. Indeed Fiber Composites would be entitled to judgment as a matter of law because a prima facie case of anticipation simply requires a match between the claim elements and the prior art reference. *See* 35 U.S.C. § 102. However, Andersen turned its attention to enablement,

the very issue it concealed from Fiber Composites during the pretrial proceedings until *after* the deadline for disclosing its arguments about the prior art.

## II. Argument

### A. Standard for Granting a New Trial

A motion for a new trial pursuant to Rule 59(a) is discretionary with the trial court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam). A court may exercise this discretion and grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The standard for assessing a motion for a new trial based on the grounds of sufficiency of the evidence is whether the verdict is against the weight of the evidence. *Leichihman v. Pickwick Int'l, Inc.*, 814 F.2d 1263, 1266 (8th Cir. 1987).

This standard with respect to a motion for a new trial pursuant to Rule 59(a) is different than that for a motion for judgment as a matter of law pursuant to Rule 50(a). *See White v. Pence*, 961 F.2d 776, 779 (8th Cir 1992); *see also Cerro Gordo Charity v. Fireman's Fund Ins. Co.*, 623 F. Supp. 877, 879 (D. Minn. 1985) ("The standard governing a motion for a new trial is broader than the JNOV standard in the sense that the court, in evaluating the weight of the evidence, may apply some independent scrutiny to determine whether a miscarriage of justice has occurred."). The Court may weigh the evidence, consider the credibility of witnesses, and grant a new trial "'even where there is substantial evidence to sustain the verdict."' *Id*. at 780 (quoting *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir. 1984)).

Ultimately, a district court should grant a new trial when it is necessary to prevent a fundamental miscarriage of justice. *See Pence*, 961 F.2d at 779; *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186 (8th Cir. 1972); *see also* 11 Wright & Miller, Federal Practice and Procedure § 2805 (2d ed. 1995) ("[A district court has] the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice."). There is will be a miscarriage of justice here without such intervention because of the unfairness of Fiber Composites not being allowed to rebut Andersen's untimely contention that *Modern Plastics* is not enabled.

**B. A New Trial Should Be Granted to Prevent a Miscarriage of Justice.**

The Court should grant Fiber Composites' request for a new trial on the discrete issue of whether the *Modern Plastics* article is enabling prior art.

As demonstrated, the evidence at trial—specifically the testimony of Fiber Composites' expert, Dr. Mohini Sain, as well as that of Andersen's expert, Professor John Simonsen—conclusively showed that all limitations in the '553 and '027 patents are disclosed by the *Modern Plastics* reference. This evidence was uncontroverted by Andersen. Andersen did not even argue to the contrary. Indeed, Andersen's only argument that the '553 and '027 patents are not anticipated was that *Modern Plastics* was not enabled.

It is Fiber Composites' position that, even without being allowed to submit rebuttal expert testimony at trial, enablement was proven at trial by the evidence that was allowed. Thus, Fiber Composites has concurrently moved for judgment as a matter of law that the '553 and '027 patents are anticipated by the *Modern Plastics* article. But, in

the alternative, if the Court declines to so rule as a matter of law, the Court should allow Fiber Composites to rebut Andersen's late enablement argument with expert opinion and grant a new trial on this issue. To do so is a matter of basic fairness.

Andersen was allowed to introduce expert opinion on whether *Modern Plastics* was enabled at trial. Fiber Composites was not allowed to rebut this evidence with any expert opinion of its own. This is true even though it was Andersen that did not comply with the Court's scheduling order by raising the enablement challenge before the deadline. This is fundamentally unfair. Because of the prejudice resulting from this imbalance, Fiber Composites should be allowed to retry this issue, with expert opinion to rebut Andersen's.

Other courts have recognized the prejudicial imbalance that can result from a party being denied the opportunity to present certain expert testimony at trial. *See, e.g., Butera v. District of Columbia*, 235 F.3d 637, 660-62 (D.C. Cir. 2001). In *Butera*, the Court of Appeals for the District of Columbia observed that preclusion of evidence, such as expert testimony, is tantamount to dismissal and an inappropriate discovery sanction when the failure to comply with a court's schedule is not due to willful bad faith or fault. *Id*. at 661. Further, the Court emphasized that "[e]xpert testimony was important in this case, . . . and the absence of an expert witness for [one party] could have rendered the trial imbalanced." *Id*. at 662. Finally, the Court noted that, "[i]n some cases, the preclusion of expert testimony would be tantamount to a default judgment, and thus constitute an abuse of discretion." *Id*. (holding that this was not such a case).

*Butera* concluded that, in that case, expert testimony would not have mitigated the prejudice resulting from the evidence in front of the jury. Here, the conclusion should be just the opposite. Because of the uncontroverted evidence at trial, the only way the jury could have found that *Modern Plastics* did not anticipate the ’553 and ’027 patents would have been if the jury found that *Modern Plastics* was not enabled. The only evidence Andersen offered to support this claim was Professor Simonsen’s testimony, which was far from conclusive on this point. Accordingly, the opportunity to rebut his expert testimony on enablement with expert testimony would likely have resulted in a different conclusion, or at least remedied the unfairness resulting from the imbalance of expert testimony on this issue.

This conclusion is also buttressed by the authority discussed in Fiber Composites’ motion for judgment as a matter of law. As discussed therein, the Federal Circuit has held that an accused infringer is entitled to the presumption that a prior art patent asserted against a plaintiff in support of an invalidity defense is enabled and strongly suggested that the same should be true with respect to prior art printed publications. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1385, 1354-55 (Fed. Cir. 2003).

This precedent shows how important it is that an accused infringer be allowed to challenge the validity of a patent asserted against it, despite an accuser’s claims of lack of enablement. Thus, this case goes to the prejudice suffered by Fiber Composites as a result of being denied the opportunity to rebut Andersen’s evidence by, so to speak, fighting fire with fire.

The Court should remedy this prejudice by allowing Fiber Composites to introduce rebuttal expert evidence showing that the *Modern Plastics* article is enabled in a new trial.

## III. Conclusion

For the reasons shown above, Fiber Composites respectfully requests that the Court grant its motion for a new trial on the issue of enablement of the *Modern Plastics* article pursuant to Rule 59(a) of the Federal Rules of Civil Procedure.

Dated: June 16, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke

Jonathan E. Singer (#283459)
Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC.