# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Andersen Corporation,

Plaintiff,

v.

Fiber Composites, LLC,

Defendant.

CIV. NO. 00-CV-2548 RHK/AJB

**PLAINTIFF ANDERSEN CORPORATION'S RESPONSE TO DEFENDANT FIBER COMPOSITES' PRIOR ART STATEMENT**

## INTRODUCTION

Plaintiff Andersen Corporation ("Andersen") submits this Response to Fiber Composites' Prior Art Statement, as directed in the Court's Amended Pretrial Scheduling Order. The following Response provides Andersen's position on Fiber Composites' statement regarding what the prior art shows. In general, however, Fiber Composites has not provided, as required, a complete and detailed explanation of what the prior art shows, and how that art invalidates any asserted claim. Amended Pretrial Scheduling Order at 3. Nothing in Fiber Composites' Prior Art Statement meets or attempts to meet this last element in particular. For example, Fiber Composites does not identify how each reference cited allegedly invalidates asserted claims individually, under either section 102 or 103 of Title 35; or whether some combination of the cited references invalidates the asserted claims under Section 103; or whether the cited references invalidate some or all of the claims for some other reason. Nor does Fiber Composites identify whether any individual reference or combination of references invalidates some but not all of the asserted claims. Neither Attachment A (describing "the prior art references generally with respect to the state of the art") nor Attachment B (cross-

referencing "representative prior art references with" the asserted claims) substitute for or fulfill these requirements. Further, Attachment B is incomplete to the extent it does not identify all combinations of prior art that allegedly invalidates any of the asserted claims. Although Fiber Composites claims Attachment B "is not meant to limit [its] reliance upon the references" listed in Attachment A, the Amended Pretrial Order specifically directed identification of how the prior art identified invalidates the claims asserted. To the extent Attachment B is Fiber Composites' statement on this requirement, that attachment does in fact limit Fiber Composites to the references used in Attachment B.

Andersen reserves the right to respond further to this Statement, including by amending this Response or though expert reports. Andersen reserves the right to object, however, to any attempt or request by Fiber Composites to amend its Statement, Attachment A, or Attachment B, absent compliance with Paragraph 4, page 3, of the Amended Pretrial Scheduling Order.

**LEGAL STANDARDS**

Certain legal standards govern Fiber Composites' assertion of invalidity defenses, as well as its' use of or reliance upon any of the cited references. Under these legal standards, the vague and conclusory statements made regarding these references demonstrates that Fiber Composites will not prevail on any of its invalidity challenges to the asserted patents.

First, the patents are presumed valid. 35 U.S.C. § 282. Fiber Composites must therefore demonstrate the alleged invalidity of each asserted claim by clear and convincing evidence in light of the grounds for the alleged invalidity. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999); *Kahn v. GMC*, 135 F.3d 1472, 1480 (Fed. Cir. 1998). For example, to demonstrate invalidity by anticipation, 35 U.S.C. § 102, Fiber Composites must show by clear and convincing

evidence that a single reference discloses every element of the alleged invalid claim, and that single reference enables one of skill in the art to make the subject matter of the claim. *Toro Co. v. John Deere & Co.,* 143 F. Supp.2d 1122, 1129 (D. Minn. 2001). No where in its Statement does Fiber Composites allege that this rigorous standard for anticipation has been met by way of any single reference.

To demonstrate invalidity by obviousness, 35 U.S.C. § 103, Fiber Composites must show that Andersen's invention as a whole would have been obvious to a person of ordinary skill at the time the invention was made. *Id.*; *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050-51 (Fed. Cir. 1988). The obviousness inquiry is based on a multi-factor test, none of which Fiber Composites acknowledges when it simplistically summarizes the state of the prior art (F.C. Statement at 2); when it broadly summarizes the disclosures of the cited references while ignoring the specific teachings (F.C. Statement at Attachment A); or when it arbitrarily combines various references (F.C. Statement at Attachment B). Moreover, in the cited references taken as a whole, it is apparent that Fiber Composites has selected these references using a hindsight reconstruction of the invention based on the claims allowed by the Examiner. This approach is improper, since Fiber Composites cannot use Andersen's invention as a guide for selecting prior art. *Ruiz v. AB Chance Co.*, 234 F.3d 654, 663-64 (Fed. Cir. 2000) (cautioning against the "insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher.") (*quoting In Re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999)). Fiber Composites must show that the prior art would lead one of ordinary skill in the art directly to the invention without reference to the claimed invention. *Ecolochem, Inc. v. Southern California Edison Co.,* 227 F.3d 1361, 1371-72 (Fed. Cir. 2000). Fiber Composites' Prior Art Statement is devoid of any analysis showing that the cited references lead materials or

composite manufacturers to compound PVC and wood fiber in a way such that substantial structural properties are obtained. *Uniroyal, Inc.*, 837 F.2d at 1051 (must be some motivation to combine references).

Second, and in addition to these basic legal standards, several of the references were disclosed to and considered by the Patent Office in the prosecution of the patents in suit. The patents in suit were each allowed over these references, and are presumed valid. 35 U.S.C. § 282. Fiber Composites' evidentiary burden is therefore especially heavy given the deference due the patent examiner, who already tested the validity of the patents against these references. *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001) (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)); *see also Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990) ("the burden of showing ... invalidity ... is especially difficult when the prior art was before the PTO examiner."). The simple statement Fiber Composites has provided, identifying selected disclosures from various references, falls far short of this burden.

Third, Fiber Composites relies on several references that do not disclose the use of polyvinyl chloride (PVC); or, make only a brief, generic mention of PVC in the context of identifying polymers generally. From the mere mention of the word "polymer" or "PVC," Fiber Composites concludes it "would be obvious to one of ordinary skill in the art to exchange" the only disclosed or tested polymer (typically a polyolefin) with PVC. This conclusion does not demonstrate obviousness. "Obvious to try," which is all Fiber Composites has alleged, is not the equivalent of obviousness under 35 U.S.C. § 103. *See In Re Deuel*, 51 F.3d 1552, 1559 (Fed. Cir. 1995) ("A general incentive does not make obvious a particular result, nor does the existence of techniques by which those efforts

can be carried out."). Fiber Composites simply ignores the stark differences between PVC and polyolefins in promoting its proposed substitution.

Fourth, many of the references explicitly teach a different technology than that disclosed in the patents in suit. These references teach the use of a coupling agent or pre-treatment of one or more of the components of the composition in order to achieve an improved spectrum of composite properties. The use of coupling agents, cross-linking agents, plasticizers, and other materials in these references produces a different type of material that does not satisfy the elements of Andersen's invention. Further, in many cases in which these agents are used, the structural properties are far below those achieved by practicing the invention of the patents in suit. This element of the prior art — coupling agents and pre-treatment — was discussed repeatedly in the prosecution of the patents in suit, the claimed invention was distinguished over this prior art approach, and the patents in suit were allowed over these references (and others) that followed this approach. Nothing in Fiber Composites' Statement demonstrates, or even acknowledges, why one of skill in the art would ignore the explicit teachings of these references and change the fundamental nature of the material in order to arrive at Andersen's novel composite material. *See, e.g., McGinley,* 262 F.3d at 1354 (as a general rule, references that teach a different invention cannot demonstrate obviousness); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1377 (Fed. Cir. 2001) (reversing district court's order granting infringer new trial on obviousness defense where references taught a different invention).

Fifth, Fiber Composites has not met its burden to demonstrate that some references are even properly considered as prior art. For example, Reference Nos. 30 and 31, identified only as "Excerpts from Book," do not have any identifying information demonstrating that reference can be

considered as prior art under 35 U.S.C. § 102 or 35 U.S.C. § 103. Reference No. 38 has no indication that it was ever publicly available before the date of the invention, and to Andersen's knowledge, it was not. Reference Nos. 39, 40, 43 and 44 are dated after the filing date of the earliest patent application, and therefore do not qualify as prior art. *OddzOn Prods., Inc. v. Just Toys*, 122 F.3d 1396, 1402 (Fed. Cir. 1997) (prior art is typically that which is accessible by or available to the public).

**RESPONSE ON INDIVIDUAL REFERENCES**

Attachments A, B and C are incorporated by reference in this Response. Attachment A identifies the references that have already been considered by the Patent Office in granting allowance of the asserted patents. Attachment B identifies the references that rely on the use of polyolefins, rather than PVC. Attachment C identifies those references that explicitly teach a different invention by teaching the use of coupling agents to achieve a desired effect. The references in these three attachments can be stricken on the basis of any one of these categories.

1. *Process of Producing a Wood-Plastic Agglomerate and Use Thereof*, PCT No. WO 90/08020, issued to Wuorela, et. al. (July 26, 1990). This patent was cited against each of the asserted patents. The Wuorela patent teaches only the mixing of a material that can be used for extrusion or injection molding. This broad and general description does not enable the manufacture of a PVC/wood fiber composite. Nothing in the patent teaches the use of any particular components to achieve desired structural properties, which is the object of the inventions disclosed in the patents in suit.

2. *Extruded Objects and Method of Manufacture*, No. 2042176. No translation of this reference has been provided, and Andersen is therefore unable to confirm Fiber Composites'

statements regarding the disclosures of this reference. However, Andersen believes this reference has been cited against each of the asserted patents. Andersen believes this references teaches only the use of polyolefins. Merely reciting that a polymer and wood fiber can be blended does not teach either the use of PVC, or the attainment of the superior structural properties of Andersen's invention. Andersen reserves the right to respond further regarding this reference once a full translation has ben secured.

3. *Fill Thermoplastics with Wood*, Modern Plastics at 54 (May, 1974). The author of this article reports on the advertised results claimed to have been achieved by a third party. *See* Page 55. This reference is therefore no more than hearsay. Andersen believes actual testing of the material described in the article (which the author did not do) does not yield the results recited. Further, the reference has no teachings on fiber sizes, and the only disclosure is to use "wood flour" as a "filler" as opposed to a reinforcing agent. Page 55.

4. *Performance of Hybrid Reinforcements in PVC Composites: Part I–Use of Surface-Modified Mica and Wood Pulp as Reinforcements*, Maldas & Kokta, American Society for Testing & Materials, Journal of Testing & Evaluation 68 (1993). This references teaches a different invention than the asserted patents by concluding that strength properties are improved by coating or pre-treating the fibers with a cross-linking or coupling agent (e.g., p. 69: "tensile strength improved compared to that of non-treated CTMP-filled composites"). Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference to achieve the strength properties of the Andersen invention when this reference teaches an entirely different technology.

5. *Wood Fibers as Reinforcing Fillers of Polyolefins*, Woodhams, Thomas, & Rodgers, 24 Polymer Engineering & Science 1166 (October, 1984). This reference was cited against all of the asserted patents. The reference teaches the use of polyethylene or polypropylene (a polyolefin). E.G., page 1166 ("In this investigation, an effort was made to use wood pulp as a means of reinforcing polyolefin resins and reducing material costs."). Nothing in this reference teaches the use of PVC, and PVC would not be obvious to try in light of the disclosures of this reference.

6. *Composite Materials from Recycled Multi-Layer Polypropylene Bottles and Wood Fibers*, Simpson & Selke. There is no source or date information for this reference, and nothing in either Fiber Composites' Statement, or in the reference itself supports a conclusion that this reference is properly considered as prior art to any of the asserted patents. The reference should therefore be stricken. In addition, nothing in this reference teaches, discloses, or suggests the use of PVC, and PVC would not be obvious to try in light of the disclosures of this article. The reference discloses only a polyolefin composite, namely polypropylene in the form of recycled ketchup bottles, *see* p. 148 ("Recycled multi-layer pp [polypropylene] ketchup bottles"). Fiber Composites' statement that one of skill in the art who substituted PVC for the only polymer considered and tested (polypropylene) "could obtain a Young's Modulus higher than that disclosed," Appx. A at 4, is speculation. Fiber Composites has not identified any disclosures from this undated article that support this statement.

7. *The Nature of Adhesion in Composites of Modified Cellulose Fibers and Polypropylene*, Felix & Gatenholm, 42 Journal of Applied Polymer Science 609 (1991). This reference teaches a polyolefin composite, namely polypropylene, *see* p. 610 ("The matrix material used for the preparation of composites was commercially available polypropylene"). There are no

teachings, disclosures, or suggestions to use PVC, and PVC would not be obvious to try in light of the disclosures of this references. The reference also teaches pre-treatment of the fibers, Page 610 (describing fiber treatment), and concludes that "mechanical properties . . . were improved when treated instead of untreated fibers were used." *Id.* at 620. There are no disclosures or teachings on fiber sizes. Further, the data shown in Fig. 5 (p. 613) does not disclose the increased strength properties of Andersen's invention. Rather, the achieved properties are lower than those disclosed in the asserted patents, whether treated or untreated fibers are used.

8. *Composites from Compounding Wood Fibers with Recycled High Density Polyethylene*, Yam, Gogoi, Lei, & Selke, 30 Polymer Engineering & Science 693 (Mid-June, 1990). This article was cited against all the patents. The references teaches a polyolefin composite, namely the use of High Density Polyethylene ("HDPE"). Page 693. There are no suggestions, disclosures, or teachings on the use of PVC, and it would not be obvious to try PVC in light of the teachings of this reference. Further, the properties achieved and disclosed in the reference are far less than the strength properties disclosed in the asserted patents. *See* Fig. 3 at 695.

9. *Low Temperature Mechanical Properties of Filled High Density Polyethylene*, Raj & Kokta, 1372 ANTEC '90 (1990). The reference teaches a polyolefin composite, namely the use of HDPE. Page 1372 ("In this paper, the effect of low temperature on mechanical properties of [HDPE] . . . is discussed). There are no disclosures, suggestions, or teachings on the use of PVC, and it would not be obvious to try PVC in light of the disclosures of this reference. Further, the properties reported in the reference are far less than those disclosed in the asserted patents. *See* Fig. 2 at 1373.

10. *Zusatzstoffe fur Kunststoffe* (1977). No translation of this reference has been provided, and Andersen cannot confirm Fiber Composites' statements regarding this reference. Andersen reserves the right to respond further regarding this reference once a full translation has been secured. However, Fiber Composites acknowledges that a "binding material" was used, which suggests a coupling or cross-linking agent that is not part of Andersen's invention. It also appears that the examples in this reference relate only to the use of polyolefins.

11. *Effects of Composition and Polypropylene Melt Flow on Polypropylene–Waste Newspaper Composites*, Myers, Clemons, Balatinecz & Woodhams, 602 ANTEC '92 (1992). The reference is dated 1992, but no other information in the reference indicates that it qualifies as prior art, and Fiber Composites has not demonstrated that the reference pre-dates the filing of the earliest application, nor that it pre-dates the date of the invention as established in discovery. The reference should therefore be stricken. The reference teaches a polyolefin composite, namely the use of polypropylene. Page 602 (report summarizes results of composite using polypropylene). The reference has no teaching, suggestions, or disclosure on the use of PVC, and it would not be obvious to try PVC in light of the disclosures of this reference. Further, the data reported in this reference show properties lower than those in the asserted patents, and the reference does not suggest that improvements in those properties can be achieved through composite manufacture. *See* Table II. Further, the reference teaches that "old newspaper fiber" is preferred over wood fiber for increasing strength properties. *See* page 603 ("Replacing [wood fiber] with [old newspaper fiber] . . . increased flexural strength, tensile strength . . ."). Fiber Composites has not alleged and cannot demonstrate that one of ordinary skill in the art would, in reliance on this reference, reject these explicit teachings in order to further increase strength properties beyond those reported in the reference.

12. *US Patent No. 5,008,310, Polymer Composites Based Cellulose-V*, issued to Beshay, This patent was cited against all of the asserted patents. The '310 Patent teaches the use of coupling and bonding agents to achieve strength properties. C.2, ll. 25-63 (describing use of bonding agents for "the present invention"); C. 3, ll. 4-5; C. 6, ll. 52-57 (Claim 1, including the use of an isocyanate agent with fiber). This patent therefore teaches a different technology than the invention claims in the asserted patents. Further, the patent has no teachings on the resulting strength properties using the claimed process.

13. *US Patent 4,228,116, Process for Producing Remoldable Panels*, issued to Colombo & Ardissone, October 14, 1980. The patent teaches a polyolefin composite, namely the use of polypropylene and polyethylene. C. 2, ll. 26-32 . There are no disclosures, suggestions, or teachings to use PVC, and it would not be obvious to use PVC in light of the disclosures of this patent. Further, the disclosed properties are substantially lower than those disclosed in the asserted patents (C. 6, ll. 16-23), and the patent does not suggest that improvements in those properties can be made through composite manufacture. In addition, the disclosed polyolefin composite panels are apparently made by compression molding and without substantial extrusion processing. E.g., C. 6, ll. 10-28.

14. *US Patent 4,687,793, Thermoplastic Resins Containing Gloxal Heat Treated Cellulosic Fillers*, issued to Motegi, Aoki, & Kimura, August 18, 1987. This patent was cited against all of the asserted patents. The '793 patent teaches the pre-treatment of wood fibers, namely using gloxal, to obtain the disclosed strength properties. *See* C. 1, ll. 40-45 (inventors have found that problems can be solved by "using cellulosic fibers heat-treated with glyoxal."); C. 2, ll. 41-45. The patent therefore teaches a different invention than the invention of the asserted patents, and

would not be used by one of ordinary skill in the art. The reported properties are also lower than those disclosed in the asserted patents. Tables 1,2, 3.

15. *US Patent No. 3,878,143, Method of Preventing Corrosion in Connection with Extrusion of Mixtures Containing Polyvinyl Chloride and wood flour or Similar Cellulosic Material, and Analogous Mixtures Containing Polystyrene or Acrylonitrile-Butadiene-Styrene Resin*, issued to Baumann, Kriisa, & Grahn, April 15, 1975. This patent was cited against all of the asserted patents. The '143 patent is directed to eliminating corrosion of extrusion equipment, not increasing or even achieving strength properties through the manufacture of composite materials. *See, e.g.,* C. 2, ll. 12-22 ("the invention relates to a method of preventing corrosion in connection with the extrusion of a mixture containing [PVC] and wood flour"). There are no teachings on the elements of the invention disclosed in the asserted patents, other than that PVC and wood flour are used. *See, e.g.* C. 4, ll. 29-37 (Claim 1, "A method of preventing corrosion and wear . . . in connection with extrusion of a mixture comprising [PVC] and particulate cellulosic material"). The simple extrusion of a polymer and fiber mixture with a neutralizing agent (which is all the '143 Patent teaches) does not enable the manufacture of a composite material with the superior structural properties claimed in the invention, and Fiber Composites has not identified any teachings or disclosures in the '143 Patent that one of ordinary skill in the art would look to or rely upon to achieve those properties.

16. *US Patent No. 4,594,372, Polyvinyl Chloride Composition*, issued to Natov, Vassileva, Kotchev, Djagarov, & Popov, June 10, 1986. This patent was cited against all of the asserted patents. The '372 patent teaches the use of plasticizers to obtain a product with strength properties considerably lower than those disclosed in the asserted patents. C.1, ll. 31-35 (improved composition of the present invention includes "a plasticizer"); C. 2, ll. 3-12 (describing components

of present invention, including "1-75 parts plasticizer"); C. 3, Table II (reporting tensile strength of, at highest 39.5 (Mpa) where 8 parts plasticizer used). Fiber Composites has not identified any teachings or disclosures in the '372 Patent that one of ordinary skill in the art would look to or rely upon to achieve strength properties higher than those reported. Since the '372 Patent teaches the importance of using plasticizers to achieve its invention, e.g., C. 1, l. 39-C. 2, l. 2 one of skill in the art would not be motivated to remove one of the elements that the inventors teach using to obtain those properties.

17. *US Patent No. 4,851,458, Use of Cellulose Fibers for Structurally Modifying Chloride Articles*, issued to Hopperdietzel, et al., July 25, 1989. This patent was cited against all of the asserted patents. The '458 Patent teaches the simple blending of PVC with various cellulose fibers as "fillers" to limit shrinkage. C. 2, ll. 5-12 ("It is an object of the present invention to provide a filler for [PVC] compositions to be processed into articles, particularly bands and profiles, which limits the shrinkage of such articles . . . without adversely affecting the color, surface characteristics or mechanical characteristics, such as impact strength. . ."); C.5, ll. 55-63 ("particulate fillers such as calcium carbonate, produce merely a slight improvement in shrinkage values. If wood meal is used as the filler, it is possible, in principle, to reduce the shrinkage of polyvinyl chloride bands and profiles, however the notched bar impact tensile strength is reduced considerably."). The examples reported disclose tensile strength considerably lower than those achieved in the Andersen inventions. C. 3-5. Fiber Composites has not identified any teachings or disclosures in the '458 Patent that one of ordinary skill in the art would look to or rely upon to achieve a composite material of the type claimed in the asserted patents, and with strength properties higher than those reported in the '458 Patent.

18. *US Patent No. 5,082,605, Method for Making Composite Material*, issued to Brooks & Goforth, Jan. 21, 1992. The '605 Patent teaches a polyolefin composite, namely using polyethylene in a composite material. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, and it would not be obvious to use PVC in light of the disclosures of this patent. *See* C. 1, l. 65-C. 2, l.2. Nothing disclosed in the '605 Patent suggests how one would achieve the strength properties taught by the Andersen inventions in the asserted patents.

19. *US Patent No. 5,088,910, System for Making Synthetic Wood Products from Recycled Material*, issued to Brooks & Goforth, February 18, 1992. This patent was cited against all of the asserted patents. Fiber Composites has not stated any basis for using this reference as alleged invalidating prior art. Fiber Composites apparently relies on this reference only because it "describes a device and system for making the wood/polymer mixture described above [in Ref. No. 18]." Andersen therefore relies upon and incorporates its response for Ref. No. 18, above.

20. *US Patent No. 4,610,900, Wood-Like Molded Product of Synthetic Resin*, issued to Nishibori, et al., February 18, 1992. This patent was cited against all of the asserted patents. The '900 Patent teaches the use of a thermosetting urea resin, a cross-linking or coupling agent, to achieve the properties of the described material. C. 3, ll. 1-62. The patent therefore teaches a different technology than the invention claimed in the asserted patents. Nothing in the '900 Patent teaches one of ordinary skill in the art how to achieve the improved properties disclosed in the asserted patents.

21. *US Patent No. 4,203,876, Moldable Compositions Based on Thermoplastic Polymers, Synthetic Elastomers and Vegetable Fibrous Materials, and Use of These Compositions for*

*Calendering and Thermoforming*, issued to Dereppe & Leva, May 20, 1980. This patent was cited against all of the asserted patents. The '876 Patent teaches the use of synthetic elastomers in the composition. C. 3, ll. 41-47. In addition, while no strength properties are disclosed in the patent, it is clear the products made from the described material will not have the strength properties taught in the Andersen patents. C. 3, ll. 52-75 (composition can be used to make "cases or crates intended for the storage and transportation of perishable products such as fruits and vegetables."). Nothing in the '876 Patent teaches one of ordinary skill in the art how to achieve the improved properties disclosed in the asserted patents.

22. *US Patent No. 4,505,869, Method for Manufacturing Wood-Like Molded Product*, issued to Nishibori, et al., March 19, 1985. This patent was cited against all of the asserted patents. The '869 Patent teaches the use of a thermosetting urea resin, a cross-linking or coupling agent, to achieve the properties of the described composite materials. C.2, ll. 7-10, 30-37; C.5, ll. 12-30. The patent therefore teaches a different technology than the invention claimed in the asserted patents. Nothing in the '869 Patent teaches one of ordinary skill in the art how to achieve the improved properties disclosed in the asserted patents.

23. *Processing Conditions and Coupling Agent Effects in Polypropylene/Wood Flour Composites*, M. Xanthos, 3 Plastics & Rubber Processing & Applications 223 (1983). The author teaches the use of polypropylene and wood flour, along with a coupling agent, to improve physical properties. Page 223. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, and it would not be obvious to use PVC in light of the teachings in this article. In addition, the authors teach that the use of a coupling agent is beneficial

to attaining certain properties. Page 228. Even with that addition, however, the properties are significantly less than those taught by the invention of the asserted patents. Pages 225, 228.

24. *The Efficiency of Cellulosic Fillers in Common Thermoplastics. Part 1. Filling without Processing Aids or Coupling Agents*, by C. Klason, J. Kubat & H.E. Stromvall, 10 International Journal Polymeric Materials, 159 (March, 1984). This article was cited against all of the asserted patents. The authors teach the use of polyolefin composites, using polyethylene, polypropylene, or polystyrene. Page 160. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, and it would not be obvious to use PVC in light of the teachings in this article. In the absence of a citation to a specific page, Andersen cannot confirm Fiber Composites' statement that this article teaches a composite with "modulus values in the range of 25-40 GPa." F.C. Statement at 10. Rather, the article states modulus values in the range of 25-40 GPa have been reported "for wood fibers." Page 183. However, the authors conclude that cellulosic fibers "do not produce any significant degree of reinforcement," when used as a filler in thermoplastics. Page 183.

25. *A Comparative Study on the Effect of Aging on Mechanical Properties of LDPE-Glass Fiber, Mica, and Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 40 Journal of Applied Polymer Science, 645 (1990). The authors teach the use of polyolefin composites, using polyethylene. Page 645. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, it would not be obvious to use PVC in light of the teachings in this article, and Fiber Composites does not even argue that PVC would be obvious to try in light of the teachings of this article. The authors also disclose the use of a coupling agent. Page 646. The article therefore teaches a different technology than the invention claimed in the

asserted patents. The purpose of the study was to determine the effects of aging on various properties. Page 646. The properties reported are significantly lower than those disclosed in the Andersen inventions of the asserted patents.

26. *Use of Wood Fibers in Thermoplastics VII The Effect of Coupling Agents in Polyetheylene-Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 37 Journal of Applied Polymer Science, 1089 (1989). This article was cited against all of the asserted patents. The authors teach polyolefin composites, namely the use of polyethylene. Page 1090. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, and it would not be obvious to use PVC in light of the teachings in this article. In addition, the authors use cross-linking or coupling agents such as silane. Page 1090. The authors conclude the improved properties are achieved with the cross-linking or coupling agents. Page 1102-03. The article therefore teaches a Fiber different technology than the invention claimed in the asserted patents, and Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference to achieve the strength properties of the Andersen invention.

27. *Polypropylene-Wood Fiber Composites: Effect of Fiber Treatment on Mechanical Properties*, by R. G. Raj, B. V. Kokta, C. Daneault, 12 Inter. J. Polymeric Materials, 239 (1989). The authors teach the use of polyolefin composites, using polypropylene. Page 240. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, it would not be obvious to use PVC in light of the teachings in this article, and Fiber Composites does not even argue that PVC would be obvious to try in light of the teachings of this article. In addition, the authors use cross-linking or coupling agents such as silane. Page 240-41. The authors conclude the improved properties are achieved with pre-treatment of the fibers. Page 250. Fiber

Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

28. *Use of Wood Fiber as a Filler in Polyethylene: Studies on Mechanical Properties*, by Raj, Kokta, & Daneault, 11 Plastics & Rubber Processing & Applications, 215 (1989). The authors teach the use of polyolefin composites, using polyethylene. Page 215. There are no disclosures, suggestions, or teachings that would motivate one of ordinary skill in the art to use PVC, it would not be obvious to use PVC in light of the teachings in this article, and Fiber Composites does not even argue that PVC would be obvious to try in light of the teachings of this article. In addition, the authors use cross-linking or coupling agents such as silane and others. Page 216. The authors attribute improved properties to the coupling agents. Page 217, 220-21. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

29. *US Patent No. 5,008,310, Polymer Composites Based Cellulose-V*, to Beshay, issued April 16, 1991. This is the same reference cited in entry No. 12, above. Andersen therefore incorporates here in its entirety the discussion above regarding Reference No. 12.

30. *Excerpt from Book*, by David B. Todd. No date or other identifying information is provided sufficient to conclude that this reference is prior art to the inventions disclosed in the patents in suit, and Fiber Composites has not demonstrated that the reference pre-dates the filing of the earliest application, nor that it pre-dates the date of the invention as established in discovery. The reference should therefore be stricken. Fiber Composites apparently cites the reference to

demonstrate the conventionality of pelletizing thermoplastic materials. The reference does not teach, disclose, or suggest pelletizing composite materials, nor does it suggest that the composite materials can be manufactured with improved structural properties.

31. *Excerpt from Book*, by Paul G. Anderson. No date or other identifying information is provided sufficient to conclude that this reference is prior art to the inventions disclosed in the patents in suit, and Fiber Composites has not demonstrated that the reference pre-dates the filing of the earliest application, nor that it pre-dates the date of the invention as established in discovery. The reference should therefore be stricken. Fiber Composites apparently cites the reference to demonstrate the conventionality of pelletizing thermoplastic materials. The reference does not teach, disclose, or suggest pelletizing composite materials, nor does it suggest that the composite materials can be manufactured with improved structural properties.

32. *Composites of Poly(Vinyl Chloride) and Wood Fibers. Part II. Effects of Chemical Treatment*, by Kokta, Maldas, Daneault & Beland, 11 Polymer Composites 84 (April, 1990). This article was cited against all of the asserted patents. The article teaches the importance of using coupling agents, graft co-polymerization, or pre-coating the fiber, in order to achieve certain improved properties. Pages 85, 87, 88. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

33. *Composites of Polyvinyl Chloride-Wood Fibers. I. Effects of Isocyanate As A Bonding Agent*, by Kokta, Maldas, Daneault & Beland, 29 Polymer-plast. Tech. & Eng. 87 (1990). This article was cited against all of the asserted patents. The article teaches the importance of using coupling agents. "The only way to overcome this drawback [in poor adhesion between fiber and

polymer] is to select a coupling agent which can react with both fiber and polymer." Page 88. The authors use isocyanates as coupling agents. Page 89. The authors conclude that certain properties "have a general tendency to increase with the concentration of isocyanate." Page 106. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this article to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

34. *Composites of Polyvinyl Chloride-Wood Fibers. III: Effect of Silane as Coupling Agent*, by Kokta, Maldas, Daneault & Beland, 12 Journal of Vinyl Tech. 146 (Sept., 1990). This article was cited against all of the asserted patents. The article teaches the importance of using coupling agents, namely silane, to improve certain properties. Page 146-147. The authors conclude that the "mechanical properties of wood fiber filled thermoplastic (PVC) composites can be improved by silane coupling agents." Page 153. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this article to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

35. *Composites of Polyvinyl Chloride-Wood Fibers. IV: Effect of the Nature of Fibers*, by Kokta, Maldas, Daneault & Beland, 11 Journal of Vinyl Tech. 90 (June, 1989). This article was cited against all of the asserted patents. The article teaches the use of coupling agents, namely isocyanate. Page 91. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this article to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

36. *Reinforcement of Polyvinyl Chloride (PVC) and Polystyrene (PS) with Cellulosic Fibers Treated with Silane*, by Beshay & Hoa, 3 Journal of Thermoplastic Composite Materials 264

(1990). The authors rely on "chemical bonding between coupling agent and the fibers." Page 264. The authors specifically note that "filling the resin with untreated fibers decreases the tensile strength," while using treated fibers increases strength. Page 268. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this article to achieve the strength properties of the Andersen invention when this article teaches an entirely different technology.

37. *Composites of Polyvinyl Chloride-Wood Fibers. I. Effects of Isocyanate As A Bonding Agent*, by Kokta, et al., 29 Polym.-Plast. Tech. Eng. 87 (1990). This article appears to be a duplicate of the article cited at Ref. No. 33, above. Andersen therefore incorporates here in its entirety the Response regarding Ref. No. 33.

38. *The Manufacture of Plastic Lumber from Industrial and Consumer Waste*, Balatinecz, John J. and Woodhams, Raymond T. (Nov. 13, 1991). This reference is designated on its face as a "Proposal." There is no evidence that this Reference was publicly available, such that it would qualify as prior art, and Fiber Composites has not presented any evidence to support its reliance upon this reference as prior art. In addition, there are no teachings or disclosures on the use of PVC, and the authors prefer to use polypropylene. Page 14. The anticipated strength properties are reportedly (not confirmed) 133,000 psi. Page 15. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference to achieve the strength properties of the Andersen invention.

39. *Wood Fiber-Polymer Composites: Fundamental Concepts, Processes, and Material Options*, by Wolcott, Michael P. (Ed) (1993). This publication on its face post-dates the earliest filing date of the patent applications, and therefore does not qualify as prior art. The reference

should be stricken. Each one of the included articles discloses either polyolefin composites, use of coupling agents, or both. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would substitute PVC, nor that such a person would look to this publication, to achieve the strength properties of the Andersen invention when the publication teaches an entirely different technology. Further, Fiber Composites' simple statement that the "properties disclosed by the patents in suit are inherent in the processes that are described in this publication," F.C. Statement at 13, does not suffice under the Amended Pretrial Scheduling Order or the standard of clear and convincing evidence.

40. *Opportunities for Value-Added Bio-Based Composites*, by Rowell, Roger M. Pacific Rim Bio-Based Composites Symposium, Rotorua, New Zealand, November 9-13, 1992. This article on its face post-dates the earliest filing date of the patent applications, and therefore does not qualify as prior art. The reference should be stricken. The citation in the article to other references does not make this article prior art to the asserted patents. The article discusses only the use of thermoplastics. Pages 247-249. The article has no teaching, suggestions, or disclosure on the use of PVC, and it would not be obvious to try PVC in light of the disclosures of this article. The article discusses the "chemical modification" of the fiber. Page 246-47. There are no teachings or disclosures on improved structural or strength properties. The article teaches a different technology than the invention claimed in the asserted patents.

41. *Canada Alberta Forest Resource Development Agreement*, by Karaim, B.W. & Szabo, T. April 1, 1984 - March 31, 1989. Fiber Composites has cited only to the Tingley article, copying a chart from that article that depicts the degree of polymerization. F.C. Statement at 15. The Tingley reference describes "polymers" generally, and has no teachings or disclosure on PVC

composites. The commercial product, WSTIWOOD is made by soaking the monomer into wood and then polymerizing. This is not a composite in the conventional sense. The Tingley article has no teachings on how to achieve improved structural properties such as those taught and disclosed in the asserted patents. The Kokta reference uses polyolefin materials (including polystyrene, polymethyl methacrylate and polyethylene), along with reactive coupling agents. Pages 37-38. The Hsu reference uses various resins in the composite, page 45. In addition, Hsu teaches only the use of compression molding with the composites, and not extrusion of a composite material. Page 46. In sum, Fiber Composites has not demonstrated that one of ordinary skill in the art would look to this publication to achieve the strength properties of the Andersen invention, when this publication teaches an entirely different technology. Further, Fiber Composites' simple statement that the "properties disclosed by the patents in suit are inherent in the processes that are described in this publication," F.C. Statement at 15, does not suffice under the Amended Pretrial Scheduling Order or the standard of clear and convincing evidence.

42. *Properties and Possible Applications of Wood Fiber-Polypropylene Composites*, by Balatinecz, et al., Wood Adhesives at 177 (1990). The article teaches the use of polyolefin composites, namely polypropylene. The article has no teaching, suggestions, or disclosure on the use of PVC, it would not be obvious to try PVC in light of the disclosures of this article, and Fiber Composites does not even argue that it would be obvious to try PVC. The specific fiber taught is recycled newspaper or pulp made from wood for papermaking. Page 179 ("this study was initiated to investigate the suitability of recycled newsprint as a reinforcing filler for polyolefins."). The resulting properties are far below those taught in the Andersen inventions of the asserted patents. Page 177.

43. *Poster Abstracts, Woodfiber-Plastic Composites Conference, The University-Industry Research Program*, May 2-4, 1993. This reference is, on its face, dated 9 months after the earliest filing date of the patent applications at issue. Fiber Composites contends the abstracts collected in this reference "reflect work done in whole or in part before the filing of the patents in suit," but does not point or cite to any evidence to support this statement. The reference should therefore be stricken. In addition, Fiber Composites does not cite to a single abstract in this reference that discloses, teaches, or suggests the use of PVC in a composite material to obtain superior structural properties. The Abstracts can be grouped into one of 3 categories: (1) those that mention only the use of polyolefins (polypropylene, polystyrene, polyethylene), e.g., Abstract Nos. 1, 3, 6, 13-22, 27, 33, 36-37, 39, 43-45, 47, 50-51, 56; (2) those that disclose the use of coupling agents, e.g., Abstract Nos. 2, 3, 23, 35; (3) those that are advertisements or general announcements, e.g., Abstract Nos. 4, 9-10, 12, 23, 25-26, 32, 34, 40, 42, 48, 57. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this reference, either the Abstracts individually or collectively, to achieve the manufacture of a composite material with the strength properties of the Andersen invention, particularly where these Abstracts teach an entirely different technology.

44. *Reinforcing Polypropylene with Natural Fibers,* by Caulfield, D. Rowell, R., & Sanadi A., J. Reinf. Plastic Composites (Apr., 1994). Fiber Composites has included both an article and a grant application, but identifies only the article as the alleged invalidating prior art. On its face, this article was published after the earliest filing date of the Andersen patent applications, and cannot qualify as prior art. Nor has Fiber Composites demonstrated that the grant application qualifies as prior art. The reference should therefore be stricken. The authors teach the use of polypropylene. There are no disclosures, suggestions, or teachings in the article or grant proposal

that would motivate one of ordinary skill in the art to use PVC, and it would not be obvious to use PVC in light of the teachings in this article, or the discussion in the grant proposal.

45. *U.S. 4,323,625, Composites of Grafted Olefin Polymers and Cellulose Fibers*, issued to Coran & Patel, Apr. 6, 1982. This patent was cited against all of the asserted patents. The '625 Patent disclosed certain improved properties in a polyolefin composite material, which are achieved through the use of a grafting agent. C.2, ll. 10-49. There are no disclosures, suggestions, or teachings in the patent that would motivate one of ordinary skill in the art to use PVC, and it would not be obvious to use PVC in light of the teachings in the patent. The composite disclosed in the '625 Patent can include bonding agents, C. 3, plasticizers, C.4, and treated fibers, C. 5. Fiber Composites has not demonstrated or argued that one of ordinary skill in the art would look to this patent to achieve the strength properties of the Andersen invention when the patent teaches an entirely different technology.

**RESPONSE TO FIBER COMPOSITES' APPENDIX B**

In Appendix B, Fiber Composites has "relate[d] references 1 and 3, among others, to the asserted claim elements." Fiber Composites Statement, Attachment A at 1. This statement does not meet the test of obviousness under Section 103, as it is unclear how the method of "relat[ing]" selected excerpts from various references to the asserted claim elements would invalidate any claim. Thus, this Appendix fails to meet the requirements of the Amended Pretrial Scheduling Order, and should be stricken. Further, Andersen opposes any request to supplement or amend this Appendix B. Andersen reserves the right to respond further to this Statement if Fiber Composites is allowed to elaborate at all.

Fiber Composites' proposed relationships between the prior art and the asserted claims depends upon a combination of either Ref. Nos. 1, 3, and 14; or Nos. 1, 3, and 17. Neither combination suffices for purposes of demonstrating the alleged invalidity of any asserted claim for all the reasons stated above: (1) Fiber Composites has not shown that the prior art would lead one of ordinary skill in the art directly to the invention without reference to the claimed invention; its proposed combinations are therefore based upon improper use of hindsight; (2) Fiber Composites has not identified or explained any motivation or suggestion to combine these references as it has done; and, (3) Fiber Composites has not explained why or how one of skill in the art would ignore the teachings of these references by changing the fundamental nature of the material disclosed in order to arrive at Andersen's novel composite material.

## CONCLUSION

Fiber Composites' Prior Art Statement should be stricken for failing to abide by the requirements of the Amended Pretrial Order. If the Statement is not stricken, Fiber Composites should be bound by this Statement, and be precluded from amending its Statement.

Fiber Composites' Prior Art Statement fails to meet its burden of demonstrating the invalidity of any of the patents or asserted claims, particularly by clear and convincing evidence. Fiber Composites has failed to show, without the use of improper hindsight, how references that teach an entirely different technology would lead one of ordinary skill in the art to the novel composite material claimed in Andersen's patents.

Dated: January 8, 2002.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By:
Ronald J. Schutz (#130849)
Rita Coyle DeMeules (#191644)
Becky R. Thorson (#254861)
Nicholas Boebel (#030217X)

800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402-2015
Phone: (612) 349-8500

**ATTORNEYS FOR PLAINTIFF ANDERSEN CORPORATION**

# A

**ANDERSEN CORPORATION v. FIBER COMPOSITES, LLC**
**Civ. No. 00-CV-2548 RHK/AJB**

## ATTACHMENT A

## REFERENCES CONSIDERED BY THE PATENT OFFICE IN GRANTING ALLOWANCE OF THE ASSERTED PATENTS

1. Ref. No. 1, *Process of Producing a Wood-Plastic Agglomerate and Use Thereof*, PCT No. WO 90/08020, issued to Wuorela, et. al. (July 26, 1990).

2. Ref. No. 5, *Wood Fibers as Reinforcing Fillers of Polyolefins*, Woodhams, Thomas & Rodgers, 24 Polymer Engineering & Science 1166 (October, 1984).

3. *Composites from Compounding Wood Fibers with Recycled High Density Polyethylene*, Yam, Gogoi, Lei, & Selke, 30 Polymer Engineering & Science 693 (Mid-June, 1990).

4. Ref. No. 12, *US Patent No. 5,008,3110, Polymer Composites Based Cellulose-V*, to Beshay. Issued April 16, 1991.

5. Ref. No.13, *US Patent 4,228,116 Process for Producing Remoldable Panels*, issued to Colombo & Ardissone, October 14, 1980.

6. Ref. No. 14, *US Patent 4,687,793 Thermoplastic Resins Containing Gloxal Heat Treated Cellulosic Fillers*, Motegi, Aoki, & Kimura, issued August 18, 1987.

7. Ref. No. 15, *US Patent No. 3,878,143 Method of Preventing Corrosion in Connection with Extrusion of Mixtures Containing Polyvinyl Chloride and wood flour or Similar Cellulosic Material, and Analogous Mixtures Containing Polystyrene or Acrylonitrile-Butadiene-Styrene Resin*, Baumann Kriisa, & Grahn, issued April 15, 1975.

8. Ref. No. 16, *US Patent No. 4,594,372 Polyvinyl Chloride Composition*, Natov, Vassileva, Kotchev, Djagarov, & Popov, issued June 10, 1986.

9. Ref. No. 17, *US Patent No. 4,851,458, Use of Cellulose Fibers for Structurally Modifying Chloride Articles*, Hopperdietzel, et al., issued July 25, 1989.

10. Ref. No. 18, *US Patent No. 5,082,605 Method for Making Composite Material*, issued to Brooks & Goforth, Jan. 21, 1992.

11. Ref. No. 19, *US Patent No. 5,088,910 System for Making Synthetic Wood Products from Recycled Material*, issued to Brooks & Goforth, February 18, 1992.

12. Ref. No. 20, *US Patent No. 4,610,900 Wood-Like Molded Product of Synthetic Resin*, issued to Nishibori, et al.

13. Ref. No. 21, *US Patent No. 4,203,876 Moldable Compositions Based on Thermoplastic Polymers, Synthetic Elastomers and Vegetable Fibrous Materials, and Use of These Compositions for Calendering and Thermoforming*, issued to Dereppe & Leva, May 20, 1980.

14. Ref. No. 22, *US Patent No. 4,505,869 Method for Manufacturing Wood-Like Molded Product*, issued to Nishibori, et al., March 19, 1985.

15. Ref. No. 24, *The Efficiency of Cellulosic Fillers in Common Thermoplastics. Part I. Filling without Processing Aids or Coupling Agents,* by C. Klason, J. Kubat, & H.E. Stromvall, 10 International Journal of Polymeric Materials, 159 (March, 1984).

16. Ref. No. 26, *Use of Wood Fibers in Thermoplastics VII The Effect of Coupling Agents in Polyetheylene-Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 37 Journal of Applied Polymer Science, 1089 (1989).

17. Ref. No. 32, *Composites of Poly(Vinyl Chloride) and Wood Fibers. Part II. Effects of Chemical Treatment*, by Kokta, Maldas, Daneault & Beland, 11 Polymer Composites 84 (April, 1990).

18. Ref. No. 33, *Composites of Polyvinyl Chloride-Wood Fibers. I. Effects of Isocyanate As A Bonding Agent*, by Kokta, Maldas, Daneault & Beland, 29 Polymer-plast. Tech. & Eng. 87 (1990).

19. Ref. No. 34, *Composites of Polyvinyl Chloride-Wood Fibers. III: Effect of Silane as Coupling Agent*, by Kokta, Maldas, Daneault & Beland, 12 Journal of Vinyl Tech. 146 (Sept., 1990).

20. Ref. No. 35, *Composites of Polyvinyl Chloride-Wood Fibers. IV: Effect of the Nature of Fibers*, by Kokta, Maldas, Daneault & Beland, 11 Journal of Vinyl Tech. 90 (June, 1989).

21. Ref. No. 37, *Composites of Polyvinyl Chloride-Wood Fibers. I. Effects of Isocyanate As A Bonding Agent*, by Kokta, et al., 29 Polym.-Plast. Tech. Eng. 87 (1990).

22. Ref. No. 45, *U.S. 4,323,625 Composites of Grafted Olefin Polymers and Cellulose Fibers*, issued to Coran & Patel, Apr. 6, 1982.

# B

**ANDERSEN CORPORATION v. FIBER COMPOSITES, LLC**
**Civ. No. 00-CV-2548 RHK/AJB**

**ATTACHMENT B**

**REFERENCES TEACHING ONLY THE USE OF POLYOLEFIN COMPOSITES**

1. Ref. No. 2, *Extruded Objects and Method of Manufacture*, No. 2042176.

2. Ref. No. 5, *Wood Fibers as Reinforcing Fillers of Polyolefins*, Woodhams, Thomas & Rodgers, 24 Polymer Engineering & Science 1166 (October, 1984).

3. Ref. No. 6, *Composite Materials from Recycled Multi-Layer Polypropylene Bottles and Wood Fibers*, Simpson & Selke.

4. Ref. No. 7, *The Nature of Adhesion in Composites of Modified Cellulose Fibers and Polypropylene*, Felix & Gatenholm, 42 Journal of Applied Polymer Science 609 (1991).

5. Ref. No. 8, *Composites from Compounding Wood Fibers with Recycled High Density Polyethylene*, Yam, Gogoi, Lei, & Selke, 30 Polymer Engineering & Science 693 (Mid-June, 1990).

6. Ref. No. 9, *Low Temperature Mechanical Properties of Filled High Density Polyethylene*, Raj & Kokta, 1372 ANTEC '90 (1990).

7. Ref. No. 11, *Effects of Composition and Polypropylene Melt Flow on Polypropylene–Waste Newspaper Composites*, Myers, Clemons, Balatinecz & Woodhams, 602 ANTEC '92 (1992).

8. Ref. No. 13, *US Patent 4,228,116 Process for Producing Remoldable Panels*, issued to Colombo & Ardissone, October 14, 1980.

9. Ref. No. 18, *US Patent No. 5,082,605 Method for Making Composite Material*, issued to Brooks & Goforth, Jan. 21, 1992.

10. Ref. No. 23, *Processing Conditions and Coupling Agent Effects in Polypropylene/Wood Flour Composites*, M. Xanthos, 3 Plastics & Rubber Processing & Applications 223 (1983).

11. Ref. No. 24, *The Efficiency of Cellulosic Fillers in Common Thermoplastics. Part 1. Filling without Processing Aids or Coupling Agents*, by C. Klason, J. Kubat & H.E. Stromvall, 10 International Journal Polymeric Materials, 159 (March, 1984).

12. Ref. No.25, *A Comparative Study on the Effect of Aging on Mechanical Properties of LDPE-Glass Fiber, Mica, and Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 40 Journal of Applied Polymer Science, 645 (1990).

13. Ref. No. 26, *Use of Wood Fibers in Thermoplastics VII The Effect of Coupling Agents in Polyetheylene-Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 37 Journal of Applied Polymer Science, 1089 (1989).

14. Ref. No. 27, *Polypropylene-Wood Fiber Composites: Effect of Fiber Treatment on Mechanical Properties*, by R. G. Raj, B. V. Kokta, C. Daneault, 12 Inter. J. Polymeric Materials, 239 (1989).

15. Ref. No. 28, *Use of Wood Fiber as a Filler in Polyethylene: Studies on Mechanical Properties*, by Raj, Kokta, & Daneault, 11 Plastics & Rubber Processing & Applications, 215 (1989).

16. Ref. No. 38, *The Manufacture of Plastic Lumber from Industrial and Consumer Waste*, Balatinecz, John J. and Woodhams, Raymond T. (Nov. 13, 1991).

17. Ref. No. 39, *Wood Fiber-Polymer Composites: Fundamental Concepts, Processes, and Material Options*, by Wolcott, Michael P. (Ed) (1993).

18. Ref No. 40, *Opportunities for Value-Added Bio-Based Composites*, by Rowell, Roger M. Pacific Rim Bio-Based Composites Symposium, Rotorua, New Zealand, November 9-13, 1992.

19. Ref. No. 41, *Canada Alberta Forest Resource Development Agreement*, by Karaim, B.W. & Szabo, T. April 1, 1984 - March 31, 1989.

20. Ref. No. 42, *Properties and Possible Applications of Wood Fiber-Polypropylene Composites*, by Balatinecz, et al., Wood Adhesives at 177 (1990).

21. Ref. No. 43, *Poster Abstracts, Woodfiber-Plastic Composites Conference, The University-Industry Research Program*, May 2-4, 1993.

22. Ref. No. 44, *Reinforcing Polypropylene with Natural Fibers,* by Caulfield, D. Rowell, R. & Sanadi A., J. Reinf. Plastic Composites (Apr., 1994).

23 Ref. No. 45, *U.S. 4,323,625 Composites of Grafted Olefin Polymers and Cellulose Fibers*, issued to Coran & Patel, Apr. 6, 1982.

# C

**ANDERSEN CORPORATION v. FIBER COMPOSITES, LLC**
**Civ. No. 00-CV-2548 RHK/AJB**

**ATTACHMENT C**

**REFERENCES THAT TEACH THE USE OF COUPLING AGENTS, CROSS-LINKING AGENTS, OR OTHER MATERIALS OF A DIFFERENT TECHNOLOGY, SUCH AS PLASTICIZERS**

1. Ref. No. 4, *Performance of Hybrid Reinforcement in PVC Composites: Part I–Use of Surface-Modified Mica and Wood Pulp as Reinforcements*, Maldas & Kokta, American Society for Testing & Materials, Journal of Testing & Evaluation 68 (1993).

2. Ref. No. 7, *The Nature of Adhesion in Composites of Modified Cellulose Fibers and Polypropylene*, Felix & Gatenholm, 42 Journal of Applied Polymer Science 609 (1991).

3. Ref. No. 10, *Zusatzstoffe fur Kunststoffe*.

4. Ref No. 12, *US Patent No. 5,008,310, Polymer Composites Based Cellulose-V*, to Beshay. Issued April 16, 1991.

5. Ref. No. 14, *US Patent 4,687,793, Thermoplastic Resins Containing Gloxal Heat Treated Cellulosic Fillers*, issued to Motegi, Aoki, & Kimura, August 18, 1987.

6. Ref. No. 16, *US Patent No. 4,594,372, Polyvinyl Chloride Composition*, issued to Natov, Vassileva, Kotchev, Djagarov, & Popov, June 10, 1986.

7. Ref. No. 20, *US Patent No. 4,610,900, Wood-Like Molded Product of Synthetic Resin*, issued to Nishibori, et al., February 18, 1992.

8. Ref. No. 21, *US Patent No. 4,203,876, Moldable Compositions Based on Thermoplastic Polymers, Synthetic Elastomers and Vegetable Fibrous Materials, and Use of These Compositions for Calendering and Thermoforming*, issued to Dereppe & Leva, May 20, 1980.

9. Ref. No. 22, *US Patent No. 4,505,869, Method for Manufacturing Wood-Like Molded Product*, issued to Nishibori, et al., March 19, 1985.

10. Ref. No. 23, *Processing Conditions and Coupling Agent Effects in Polypropylene/Wood Flour Composites*, M. Xanthos, 3 Plastics & Rubber Processing & Applications 223 (1983).

11. Ref. No. 25, *A Comparative Study on the Effect of Aging on Mechanical Properties of LDPE-Glass Fiber, Mica, and Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 40 Journal of Applied Polymer Science, 645 (1990).

12. Ref. No. 26, *Use of Wood Fibers in Thermoplastics VII The Effect of Coupling Agents in Polyetheylene-Wood Fiber Composites*, by R. G. Raj, B. V. Kokta, C. Daneault, 37 Journal of Applied Polymer Science, 1089 (1989).

13. Ref. No. 27, *Polypropylene-Wood Fiber Composites: Effect of Fiber Treatment on Mechanical Properties*, by R. G. Raj, B. V. Kokta, C. Daneault, 12 Inter. J. Polymeric Materials, 239 (1989).

14. Ref. No. 28, *Use of Wood Fiber as a Filler in Polyethylene: Studies on Mechanical Properties*, by Raj, Kokta, & Daneault, 11 Plastics & Rubber Processing & Applications, 215 (1989).

15. Ref. No. 29, *US Patent No. 5,008,310, Polymer Composites Based Cellulose-V*, to Beshay, issued April 16, 1991.

16. Ref. No. 32, *Composites of Poly(Vinyl Chloride) and Wood Fibers. Part II. Effects of Chemical Treatment*, by Kokta, Maldas, Daneault & Beland, 11 Polymer Composites 84 (April, 1990).

17. Ref. No. 33, *Composites of Polyvinyl Chloride-Wood Fibers. I. Effects of Isocyanate As A Bonding Agent*, by Kokta, Maldas, Daneault & Beland, 29 Polymer-plast. Tech. & Eng. 87 (1990).

18. Ref. No. 34, *Composites of Polyvinyl Chloride-Wood Fibers. III: Effect of Silane as Coupling Agent*, by Kokta, Maldas, Daneault & Beland, 12 Journal of Vinyl Tech. 146 (Sept., 1990).

19. Ref. No. 35, *Composites of Polyvinyl Chloride-Wood Fibers. IV: Effect of the Nature of Fibers*, by Kokta, Maldas, Daneault & Beland, 11 Journal of Vinyl Tech. 90 (June, 1989).

20. Ref. No. 36, *Reinforcement of Polyvinyl Chloride (PVC) and Polystyrene (PS) with Cellulosic Fibers Treated with Silane*, by Beshay & Hoa, 3 Journal of Thermoplastic Composite Materials 264 (1990).

21. Ref. No. 37, *Composites of Polyvinyl Chloride-Wood Fibers. I. Effects of Isocyanate As A Bonding Agent*, by Kokta, et al., 29 Polym.-Plast. Tech. Eng. 87 (1990).

22. Ref. No. 39, *Wood Fiber-Polymer Composites: Fundamental Concepts, Processes, and Material Options*, by Wolcott, Michael P. (Ed) (1993).

23. Ref. No. 40, *Opportunities for Value-Added Bio-Based Composites*, by Rowell, Roger M. Pacific Rim Bio-Based Composites Symposium, Rotorua, New Zealand, November 9-13, 1992.

24. Ref. No. 41, *Canada Alberta Forest Resource Development Agreement*, by Karaim, B.W. & Szabo, T. April 1, 1984 - March 31, 1989.

25. Ref. No. 43, *Poster Abstracts, Woodfiber-Plastic Composites Conference, The University-Industry Research Program*, May 2-4, 1993.

26. Ref. No. 45, *U.S. 4,323,625, Composites of Grafted Olefin Polymers and Cellulose Fibers*, issued to Coran & Patel, Apr. 6, 1982.