# EXHIBIT 4

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

Civil No. 00-2548 (JNE/JGL)

Andersen Corporation,

Plaintiff,

vs.

Fiber Composites LLC,

Defendant.

---

PRETRIAL CONFERENCE

The above entitled matter came duly on for hearing before The Honorable Joan N. Ericksen, United States District Court Judge, on March 29, 2005, at the Warren Burger Federal Building, 316 North Robert Street, St. Paul, Minnesota, 55101.

Maria Weinbeck
Official Court Reporter
United States District Court
316 North Robert Street, Suite 646
St. Paul, MN 55101
(651) 848-1224

* * * * *

limine to exclude evidence of alleged inequitable conduct at the jury trial."

I've read what you have to say about that, and I'm granting the motion, except that there are documents that have separate relevance, and that, as I understand it, was Fiber Composites' primary concern. So it's not going to be -- items won't be excluded simply because they would have relevance to the issue of inequitable conduct, but inequitable conduct is not going to be tried. So done.

"Andersen's motion in limine to exclude all evidence and testimony regarding any alleged non-infringing alternative." That motion is denied.

"Andersen's motion in limine to preclude Mohini Sain from testifying on matters not contained in his expert report." This had to do with how much detail kind of was in his report, is how it struck me. And obviously he can't testify about things -- nobody gets to testify about things that they didn't put in their expert report.

How much you get to talk about things in words that you didn't put in your report; you know, you get to have your expert explain consistent with what they said in the report, but not go beyond it.

Now, Sain; I don't think I think I need to say

more about that. So that -- the motion -- I know it seems funny to say that a motion to preclude him from testifying on matters not contained in this expert report is denied, because he wouldn't be allowed to go far beyond it, so it's kind of a grant, but really I'm putting it down as a deny, but you know what I'm talking about there, I think.

Andersen's motion -- Andersen's motion to exclude the testimony of Fiber Composites' expert witnesses with respect to certain Andersen test reports and technical data."

Fiber Composites, you seem to want to use that -- I can't remember. Is this the person who did those tests? Is this the person -- that's somebody different, isn't it?

MR. SKENYON: Well, what the documents actually are, are documents that Andersen's inventors or the people working on the project, the test reports they made. Our experts were not intended to talk about them, but the test reports themselves -- and I don't think the motion is directed to excluding the test reports themselves, just have -- excluding our experts from testifying to them, and we have no objection to that.

THE COURT: All right. If I can read my notes, what I wrote here is, "Fiber Composites wants to

use in cross-examination, and they should be able to."

MR. SKENYON: Yes, that's -- it was not the intent to use it with our expert.

MR. BOEBEL: Right. The motion is directed towards their experts testifying about those test reports affirmatively.

THE COURT: All right. Well, does that go down in the docket as a grant or a deny? I'll put it down as a grant.

MR. SKENYON: You can put it, I think, the same way we did with the other one, as granted; it doesn't affect the use of the underlying exhibits.

THE COURT: All right. So what the docket is going to show is that that motion is granted, but Fiber Composites may use the exhibits in cross-examination. Okay? Done.

"Andersen's motion in limine to exclude documents, exhibits, and testimony related to the Vannelli window."

This seems to be a story about whether this Vannelli window was going to be presented as prior art.

MR. BOEBEL: That's part of it, Your Honor. The other half of it is that Fiber Composites, in their responsive brief, has indicated that they want to use these Vannelli window documents almost as an atmospheric

that that duty has been --

THE COURT: You can argue it to these people.

MR. ZELIGER: Okay.

MR. BOEBEL: That's our view on it as well.

THE COURT: To these ten people.

Okay. "Fiber Composites' motion in limine to limit testimony on the infringement and invalidity experts to matters addressed in their expert reports." "Deny as moot," I've got.

"Fiber Composites' motion in limine to exclude any evidence of testing not produced in its expert reports." Grant, with the consent of plaintiff.

"Fiber Composites' motion in limine to exclude Andersen from introducing any evidence relating to the prior art not specified in Andersen's response of January 8th." That's denied.

My reasoning was that there has to be some orderly way to put these cases together, and if I granted your motion, that would effectively limit what the expert would be able to do.

What I had in mind is letting the experts do whatever they need to do up to the time they do their report and not limiting them to something that had to be submitted at a point earlier because of the Court's need to put order into the case, and that it didn't seem to

me that there was any prejudice in it, because you still have the expert report, you still have all of the discovery opportunities that are available after you get the expert's report.

So it seemed to me most fair to allow the experts to come up with whatever prior art they were going to come up with and not be limited. So that was my reasoning on denying your motion there.

MR. SKENYON: The issue, Your Honor, actually deals with their failure to raise and an enablement question as to that Modern Plastics article.

The Court scheduling order was we were to list all our prior art by November 1st, and we did, including the Modern Plastics article, and if we were not listing those, anything on that, we were going to be precluded from using it ever, including in our expert reports later. That's the reason the Vannelli window is not prior art, because of that.

The Court's scheduling order then required them to come back later -- and it was the January 8th, 2000 report that I'm talking about -- to come back later and include in their response to each of the pieces of prior art we listed exactly the reasons why that the piece of prior art did not invalidate any of the claims.

And on that Modern Plastics article, we made

clear in our original submission it was an anticipatory article for at least the claims we're going to be dealing with in this case.

They came back, and in connection with what they said on that January 8th, 2002 report, they did not question ever whether or not the Modern Plastics article enabled -- was enabling. They never raised that. They raised some other things with it, including wood flour, but they never raised the issue of whether or not it was enabling.

So now, when we get through discovery and it's our turn to produce the expert reports on invalidity, we go first, and we do, and we respond based on how they submitted their January 8th, 2002 response, which is supposed to be complete. We do, and then they come back with Simonsen's report, where the first time in this report Simonsen suggests that the Modern Plastics article is not enabling.

That's the crux of this motion here. It doesn't really deal with the whole scope of the prior art because we're only going to be talking at trial about a very few things. But that's the issue that we're really dealing with with this motion. It's their failure, when they were supposed to, on January 8th, 2002, list every single reason why it wasn't

invalidated, and then they came up with this enablement defense later on, and that's in Simonsen's report.

THE COURT: Okay. And that requirement was pursuant to the Magistrate Judge's order? Is that right?

MR. SKENYON: The scheduling order.

THE COURT: The scheduling order. You don't have that handy, do you?

MR. SKENYON: I know we quoted from it. It's attached to one of our exhibits.

THE COURT: In connection with this motion?

MR. SKENYON: I think so. If you could just give me a second?

THE COURT: Sure. I'll look too.

MR. SKENYON: I have it here, Your Honor. It's -- it is an exhibit to our motion, Your Honor.

THE COURT: Which exhibit is it? A, B, or C?

MR. SKENYON: A, Your Honor.

THE COURT: Where? What --

MR. SKENYON: If you look -- take a look at page 3 --

THE COURT: All right. I'm on page 3.

MR. SKENYON: Discovery relating to the validity of prior art, and paragraph 1 sets forth our duty. It's our duty to serve a list of all the prior

art on which we rely, with a complete and detailed explanation of what it alleges and how that prior art invalidates the claims asserted. That is our duty, and that's what we did. The extended date was November 1st of 2004.

The next paragraph -- thing is paragraph 2, the responsive statement. After the extension of time business here, it says, "The plaintiff's prior art statement shall state in detail its position on what the prior art relied upon by defendant shows, if its interpretation differs from defendant and its position on why the prior art does not invalidate the patents in suit." That's what they were required to do. It says, "shall state in detail," and they did not include on that response that the Modern Plastics article was not enabling. It wasn't included in that, and that's the substance of this motion. We're not really dealing with anything else on this on that January 8, 2002 lift.

MR. SCHUTZ: Your Honor, may I?

THE COURT: The motion is denied.

"Motion to preclude Andersen from asserting at trial that there's a range of equivalence for the 30 to 50 percent" -- I'm denying that as moot. Is that right?

MR. SKENYON: Yes, that's correct.

THE COURT: Okay. "Fiber Composites' motion