UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSEN CORPORATION,

Plaintiff,

v.

FIBER COMPOSITES, LLC,

Defendant.

CIV NO. 00-CV-2548 (JNE/JGL)

**FIBER COMPOSITES, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ANDERSEN CORPORATION'S MOTION FOR JUDGMENT OF WILLFUL INFRINGEMENT AS A MATTER OF LAW PURSUANT TO RULE 50 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## I. Introduction

The jury in this case rejected Andersen's willful infringement allegation, and it had a sound evidentiary basis for doing so. Willful infringement is a highly factual issue. It is measured by the totality of the circumstances that relate to a defendant's conduct and state of mind, and it must be proven by clear and convincing evidence. Given these standards, a jury's finding of no willful infringement is seldom set aside.

There is no reason to do so here. This Court gave the jury a proper instruction on the issue of willfulness, an instruction to which Andersen did not object, and Andersen's "evidence" on the subject was plainly insufficient for the jury to find willfulness based on this instruction. As a result, Andersen's motion for judgment of willful infringement as a matter of law should be denied.

## II. Background

While Andersen recognizes that the issue of willful infringement is determined based on the totality of the circumstances, Andersen's recitation of the facts in support of its motion is very incomplete. Accordingly, a more complete summary follows.

### A. Procedural Background

Andersen originally brought suit on six patents, alleging in its initial complaint that Fiber Composites had willfully infringed each one.[1] In reality, as this Court found on summary judgment, Andersen's infringement contentions (and necessarily its willfulness claims) as to four of the patents were baseless.

As for the remaining two patents, Fiber Composites admitted infringement of certain of its railing parts made with 30% or more wood fiber, which infringement ended on January 1, 2001, about six weeks after the lawsuit was filed. Further, as Andersen always neglects to mention, Fiber Composites' admission of this limited infringement was conditioned upon the patents being valid, which was clearly a very close question at trial.

As for Fiber Composites' railing parts made after January 1, 2001, the Court ruled on summary judgment that none of these literally infringed any of the asserted claims of either of the two remaining patents-in-suit, and Andersen abandoned its hopeless doctrine of equivalents case right before trial. Hence, at trial, the parties were in complete

[1] It is notable that none of the "evidence" on which Andersen relied at trial to support its willfulness allegation was known to Andersen (or ever could have been known to Andersen) when it initially charged Fiber Composites with willful infringement.

agreement that infringement stopped approximately six weeks after suit was filed.[2] As a result, the damages awarded by the jury (and to which any increase due to willful infringement would apply) amounted to less than $50,000.[3]

**B. The Court's Jury Instruction**

The parties discussed the jury instruction as to willfulness at the charge conference, and the jury instruction that resulted was given by the Court to the jury. It was ***not*** objected to by Andersen. It states as follows:

> A patent owner may enforce its rights to exclude others from making, using or selling the patented invention by filing a lawsuit for patent infringement. Patent laws provide that any person or business entity which makes, uses, offers to sell or sell without the patent owner's permission any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires infringes the patent.
>
> You must decide whether or not Andersen has proved by clear and convincing evidence that Fiber Composites' infringement was willful.
>
> ***Willful infringement is established where a plaintiff has proven two things. First, that the defendant was aware of plaintiff's patent; and second, that the defendant made no reasonable good faith basis or had no reasonable good faith basis for concluding that he did not infringe plaintiff's patent.***
>
> ***So, for example, if you find that Andersen has proven that Fiber Composites knew about the '027 and '553 Patents and did not exercise due care to determine whether or not it was infringing those patents, you may find that Fiber Composites' infringement was willful.***

---

[2] In its post-trial motion for an accounting, Andersen now implies that the wood fiber content of some of Fiber Composites' railing products sold after January 1, 2001 exceeded 30%. Andersen produced no such evidence at trial, and in fact, it produced no such evidence with its post-trial motion or its reply relating to it.

[3] Andersen sold windows covered by its patents since about 1996, but it never marked the products with its patent numbers. This failure to mark limited Andersen's damages to the six week period from November 16, 2000 to December 31, 2000. However, the absence of marking also meant that no one would have known of the patents by buying or inspecting these windows either.

> One factor to consider with respect to Fiber Composites' good faith and due care in determining the willfulness at issue is whether Fiber Composites obtained legal advice from an attorney after becoming aware of Andersen's patents.
>
> Another factor in determining whether Andersen has proven Fiber Composites willfully infringed its patents is your assessment of whether or not Fiber Composites copied the product covered by those patents -- and I am talking, of course, about the '027 and '553 Patent claims -- or whether Fiber Composites as a competitor of Andersen tried to match Andersen's product with a functionally competitive product, but did not set out to copy it, even if patent infringement ultimately is found.

(April 11, 2005 Trans. at 1139-40 (emphasis added).)

In view of Andersen's failure to object to the instruction, it is this instruction that governs how the issue is to be decided then and now. At trial, the jury applied the instruction to the facts and found that Andersen had failed to prove willful infringement. The jury was correct because it is clear from the record that Andersen failed to prove either of the two specific things that the Court required in its instruction.

**C. "Notice" of the '027 and '553 Patents**

The first question is whether or not Fiber Composites had notice of the '027 and '553 patents prior to the suit. Under the circumstances in this case, that requirement is entirely proper. Fiber Composites had already been found not to infringe four of the original Andersen patents, and Andersen had a large number of other patents in this area that it did not assert. Hence, the notice requirement was one of specific notice of the '027 and '553 patents, as stated in the instruction.

Contrary to the instruction, however, Andersen failed to prove at trial that Fiber Composites had actual notice of the '027 and '553 patents prior to November 16, 2001 when Andersen filed suit. Indeed, the unrebutted evidence at trial was that Fiber

Composites had ***never*** seen the ’027 patent or the ’553 patent prior to service of the complaint. Fiber Composites surely did not know of them from Andersen, since Andersen provided no advance warning of any infringement problem, and Andersen did not send a cease and desist letter in advance of filing its complaint.

Instead, Andersen glosses over this critical omission and attempts to concoct a “notice” by implication scenario, using general references to Fiber Composites’ knowledge of “Andersen patents.” For example, Andersen alleges that in February, 2000, one of Fiber Composites’ employees, James Przybylinski, had knowledge of the “Andersen patents.” What Andersen actually showed at trial, however, was that an employee of a company called PolyOne reported in an e-mail that James Przybylinski of Fiber Composites was aware of ***one Andersen patent*** and could avoid it by using less than 30% wood fiber. But it was also established that Andersen has over 30 patents in this area, and there was no evidence that Mr. Przybylinski was referring to either the ’027 or ’553 patent.[4]

Andersen also attempted to rely on an equally vague fax from PolyOne in October, 2000, just prior to suit being filed. That fax referred to patents in the Patent Office, including Andersen’s, in the area of polymer and wood fiber extrusion. That fax does not identify either of the remaining patents-in-suit. Thus, there was actually ***no evidence*** that

[4] The only clue as to the patent PolyOne alleges James Przybylinski knew about is a reference to 30% wood fiber reported in the PolyOne e-mail. This excludes the ’553 patent, which refers to a 35% wood fiber lower limit. While the ’027 patent refers to a 30% wood fiber lower limit, this is also true of any number of Andersen’s patents, including several of the patents thrown out of the case earlier.

proved that Fiber Composites had notice of the ’027 and ’553 patents prior to the lawsuit. On this basis alone, the willful infringement allegation must fail. Without such notice, there is no need for anything else.

**D. No Evidence of Absence of Due Care**

As for the second question, the factors listed in the jury instruction, which might demonstrate an absence of due care, all went against Andersen. First, the circumstances as to how the limited infringement occurred are also important in this analysis. The evidence relating to this was unrebutted by Andersen at trial, and it is totally ignored by Andersen now.

Fiber Composites began a project to make and sell extruded decking and railing in about 1996. (April 7, 2005 Trans. at 584-86.) However, Fiber Composites lacked the know-how to do so, and in order to start producing such products, it entered into a license agreement with a company called Strandex. (April 7, 2005 Trans. at 586-88; Def. Trial Ex. 2.) The license included both a license to Strandex’s patent, which covers a method of extruding a composite that is 50% wood fiber (April 7, 2005 Trans. at 592-95; Def. Trial. Ex. 1), and an indemnity provision that required Strandex to defend any patent infringement suit brought against Fiber Composites. (April 7, 2005 Trans. at 595-96.)[5] Strandex also was required to set up the process of making these products for Fiber Composites, which Strandex did. (April 7, 2005 Trans. at 589-91.)

[5] The license with the indemnity provision was cancelled just prior to this suit.

Importantly, the reason that Fiber Composites began this project had nothing to do with Andersen or its patents. There was certainly no copying of any Andersen product because Andersen did not make (and has never made) any railing products, and Andersen's minor attempt at making decking (now abandoned) apparently started well after Fiber Composites' decking products came on the market.

Fiber Composites, however, did not stay with the original Strandex 50% wood fiber formula. The evidence was undisputed at trial that a serious cracking problem developed in the railing parts in the field due to this high wood fiber content. As a result, Fiber Composites was engaged in a two-year project to solve the cracking problem, which ultimately could only be done by reducing the wood content to a point where even Andersen admits there is no infringement. This work was completed as of January 1, 2001. Consequently, rather than use the alleged invention of the patents-in-suit, Fiber Composites had to avoid what these patents supposedly claim in order to produce a product that avoided the cracking problem.

Ignoring all this, Andersen relies on only one thing. It says that "Fiber Composites never sought or received an opinion of counsel that its railing products do not infringe the claims of Andersen's patents or that the patents were invalid." (Andersen Mem. at 6-7.) That, however, grossly overstates what Andersen actually proved at trial. Andersen's only evidence on this issue at trial, which it cites to, was Mr. Mancosh's testimony that ***Mr. Przybylinski himself did not seek legal advice about Andersen's patents***. The key testimony reads:

Q. And to your knowledge did Mr. Przbylinski ever consult a patent attorney to see if the PVC wood composite product that Fiber Composites was making infringed any existing patent?
A. To my knowledge, he did not.

(April 7, 2005 Trans. at 720.)

At trial, Andersen ***failed*** to produce any evidence that no one else at Fiber Composites sought such advice. Andersen had plenty of opportunity to inquire about this at trial. Douglas Mancosh, Fiber Composites' founder and president, testified under examination by Andersen's counsel at length, but he was never asked if he or Fiber Composites sought advice of counsel concerning these or any other patents.[6]

Thus, these factors all went against Andersen, and even the "absence of an opinion of counsel" factor on which Andersen solely attempts to rely is something it forgot to prove at trial. As a result, Andersen's willfulness assertion was properly rejected by the jury.

## III. Argument

### A. The Standard for Judgment as a Matter of Law

The standard of review for granting a motion for judgment as a matter of law pursuant to Rule 50(b) is whether there is sufficient evidence to support the jury's verdict. *See, e.g., Frieze v. Boatmen's Bank*, 950 F.2d 538, 540 (8th Cir. 1991). In assessing the sufficiency of the evidence, the Court must view the evidence in the light

[6] Fiber Composites is not contending now that such an opinion did exist. Instead, it is just a question of proof at trial, and Andersen is in no position to criticize the jury's verdict on this point, when Andersen failed to adduce the evidence that there was no opinion.

most favorable to the prevailing party—here, Fiber Composites. *See, e.g.*, *Voegeli v. Lewis*, 568 F.2d 89, 93 (8th Cir. 1977). As the Supreme Court has said, with respect to a motion for judgment as a matter of law, "the court should review all of the evidence in the record," it "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). The court may set aside the jury's verdict only if the evidence is "susceptible of no reasonable inference" supporting the jury's conclusion. *White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992).

**B. The Law on Willfulness**

Willfulness is a question of fact that is determined from the totality of the circumstances. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge, GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc). The totality of the circumstances shown must "evince the *egregious conduct* that constitutes willful infringement." *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner*, 408 F.3d 1374, 1377 (Fed. Cir. 2005) (citing *Knorr-Bremse*, 383 F.3d at 1342) (emphasis added). No single factor is dispositive. *See, e.g.*, *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1355 (Fed. Cir. 1999) (citing *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993)).

Further, an allegation of willfulness must be proven by clear and convincing evidence, not merely the preponderance of the evidence. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1440 (Fed. Cir. 1988). And after *Knorr-Bremse*, proving willfulness is even more difficult. *Knorr-Bremse*, 383 F.3d at 1346 (holding that "the failure to obtain an exculpatory opinion of counsel shall no longer

provide an adverse inference or presumption that such an opinion would have been unfavorable”).

Moreover, for infringement to be willful, an accused infringer must have actual notice of the patents-in-suit. *See Imonex Services*, 408 F.3d at 1377 (citing *Rolls-Royce Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109 (Fed. Cir. 1986)) (“Actual notice of another’s patent rights triggers an affirmative duty of due care.”); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1379 (Fed. Cir. 2005) (“Jazz had actual notice of the Fuji patents as early as 1995, giving rise to a duty of due care.”); *see also State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (“To willfully infringe a patent, the patent must exist and one must have knowledge of it.”); *Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990) (“Whether an act is ‘willful’ is by definition a question of the actor’s intent, the answer to which must be inferred from all the circumstances. Hence a party cannot be found to have ‘willfully’ infringed a patent of which the party had no knowledge.”).

### C. Andersen Failed to Prove Notice of the ’027 and ’553 Patents

The issue of willful infringement in this case revolves solely around the ’027 and ’553 patents—not any other Andersen patents, including the other four originally in the case. These ’027 and ’553 patents are the only ones infringed, and willfulness is measured based on Fiber Composites’ actions as to these two patents, and these two alone. Thus, the notice requirement ***must*** pertain to the ’027 and ’553 patents, exactly as the Court’s jury instruction explained, and as to which Andersen has now waived any objection.

As noted, the Court's willfulness jury instruction says in relevant part,

> Willful infringement is established where a plaintiff has proven two things. First, that the *defendant was aware of plaintiff's patent*;
>
> * * *
>
> So, for example, *if you find that Andersen has proven that Fiber Composites knew about the '027 and '553 Patents ...*

(April 11, 2005 Trans. at 1139-40.)

Andersen in its motion can point to no evidence that Fiber Composites knew of the '027 patent or '553 patent prior to filing of the suit because there is none. The reason is that, at trial, Andersen simply had no proof that Fiber Composites had actual notice of the '027 or '553 patent before the commencement of this action. Considered closely, and in a light most favorable to Fiber Composites, as is required for a motion for judgment as a matter of law, the evidence that Andersen says proves notice actually shows instead that Fiber Composites understood, at most, that Andersen had "a patent" in the field of PVC and wood fiber composites. No document exists showing that anyone at Fiber Composites knew of the '027 and '553 patents any earlier than November 16, 2000.[7]

The only witness examined at trial on this subject was Mr. Mancosh. He testified that the first time he learned of these particular patents was when Andersen initiated this action:

> Q Did you ever receive a cease and desist letter from Andersen or anyone acting on their behalf?

---

[7] The evidence showed that Mr. Przybylinksi knew only generically about an "Andersen patent." In fact, the principal information that PolyOne attempted to share with Fiber Composites on the subject of Andersen's patents occurred only ***after*** suit was filed. (April 6, 2005 Trans. at 462-63, 477.)

A I never received any cease and desist letter.
Q What was the first time you heard from Andersen in connection with their infringement allegation?
A When they filed suit on November 16th, 2000.
Q How did you learn about it at that time?
A Well, we were served papers in, I believe, North Carolina.
Q For the six patents that you [were] originally sued on, when was the first time you saw any of those six patents?
A When I was served papers for the suit, November 16th, 2000.

(April 7, 2005 Trans. at 631.)

As discussed earlier, the PolyOne documents on which Andersen relies make no mention of the ’027 and ’553 patents. Instead, at best, the first refers to an unspecified “Andersen patent” and the second reports that Andersen has patents in the field of polymer and wood fiber composites. Indeed, Andersen does. At trial, it was established that Andersen had about 34 such patents, of which 32 were not infringed by Fiber Composites at any time. Given this testimony and the Court’s instruction to the jury on this issue, the jury could have reasonably concluded that Fiber Composites did not have actual notice of the ’027 and ’553 patents until November of 2000. Thus, here, just as in *Gustafson*, the jury could have properly found that Fiber Composites “was aware of each of the patents only ‘as of’ the date on which suit was filed on each.”[8] *See Gustafson*, 897 F.2d at 510-11. This precludes any grant of Andersen’s motion for judgment as a matter of law here.

[8] With respect to the testimony of Fiber Composites’ principal and employee, this Court should not disturb the jury’s credibility determinations with respect to willfulness. *See Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1379 (Fed. Cir. 2005) (citing *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1371 (Fed. Cir. 2003)).

**D. Andersen Failed to Prove the Totality of the Circumstances Amounted to the "Egregious Conduct" Required**

In addition to failing to prove Fiber Composites' actual notice of the '027 and '553 patents prior to suit, Andersen also failed to prove that the totality of the circumstances demonstrate anywhere near the degree of culpability required for a finding of willful infringement. Within *six weeks* of Fiber Composites' receipt of Andersen's complaint, Fiber Composites had reformulated its last remaining rail part with more than 30% wood fiber and never again infringed.[9] (*See, e.g.*, April 7, 2005 Trans. at 623-25; Ex. 12.) This fact was not rebutted. And this fact alone gave the jury ample foundation for rejecting Andersen's willful infringement allegation. *See, e.g., WMS Gaming*, 184 F.3d at 1355.

Yet, further facts also support the jury's finding that Fiber Composites' admitted infringement was not willful. Among these are the fact that Fiber Composites had meritorious defenses at trial, including in particular that the asserted claims of the '027 and '553 patents are invalid,[10] which defenses to an allegation of infringement are also defenses to an allegation of willful infringement. *E.g.*, *Gustafson*, 897 F.2d at 511 ("Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit. Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." (internal citation

[9] As Mr. Mancosh testified, Fiber Composites had already been reducing the wood fiber percentage in this and other products before this time. This is why there was only one infringing railing part at the time Andersen brought suit.

omitted)). In addition, there was a complete absence of copying or any attempt by Fiber Composites to produce a competing product to anything sold by Andersen.[11]

Finally, in its moving brief, Andersen also emphasizes that Fiber Composites never sought advice concerning "the Andersen patents." (Andersen Mem. at 7.) Even if this fact were true, however, Andersen never proved it at trial. The only testimony Andersen elicited at trial concerned whether ***Mr. Przybylinski*** himself sought legal advice. (April 7, 2005 Trans. at 720.) Andersen never asked Mr. Mancosh or anyone else if Fiber Composites, the defendant in this action, sought advice of counsel. Thus, Andersen's conclusion that there was no legal advice was simply not proven.

Accordingly, Andersen failed to prove that Fiber Composites had notice of the '027 and '553 patents until November of 2000. Moreover, under the totality of the circumstances, within six weeks of Andersen's filing suit notice, Fiber Composites' infringement unquestionably stopped. Thus, the jury had more than an ample basis to reject Andersen's willful infringement allegation. In short, Fiber Composites' conduct in this suit is far from the "egregious conduct" required for a finding of willfulness. *See Imonex Services*, 408 F.3d at 1377.

It is worth noting that the jury was not alone in reaching this conclusion. The willfulness case failed in the eyes of the Court as well. During the charge conference,

[10] Indeed, Fiber Composites has moved for judgment as a matter of law on its invalidity defenses given the strength of its evidence on this issue. (Docket No. 504.)

[11] Andersen conceded as much with its damages claim. Andersen did not assert any lost profits claim, but rather limited its contention to one for a reasonable royalty due to the total absence, during the time of infringement, of any competing product being sold by Andersen or any of its licensees.

with the trial evidence fresh in mind, the Court expressed its opinion of Andersen's willfulness proof:

> [L]et's just have them answer the willfulness question right up front. I actually think that should be a pretty easy question for them to answer. *I don't see any willfulness*, but I'll give it [the instruction] to them.

(April 8, 2005 Trans. at 1021-22 (emphasis added).) Under these circumstances, Andersen's motion for judgment as a matter of law that Fiber Composites willfully infringed the '027 and '553 patents must fail.

## IV. Conclusion

For these reasons, Fiber Composites respectfully requests that the Court deny Andersen's motion for judgment as a matter of law on its failed willfulness allegation.

Dated: July 6, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke
Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070

Attorneys for Defendant
FIBER COMPOSITES, LLC