**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Andersen Corporation, Case No. 00-CV-2548 JNE/JGL

Plaintiff,

v.

Fiber Composites, LLC,

Defendant.

---

**PLAINTIFF ANDERSEN CORPORATION'S MEMORANDUM OPPOSING FIBER COMPOSITES' MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUES OF INFRINGEMENT AND VALIDITY**

Fiber Composites cannot meet the high legal standard that Federal Rule of Civil Procedure 50 requires; accordingly, its motion for judgment as a matter of law on the issues of infringement and validity should be denied. This Court has properly construed the '553 and '027 patents' claims, Fiber Composites failed to demonstrate error in the Court's construction, and in any event, Fiber Composites waived any claim of error regarding the Court's claim construction. Further, Fiber Composites failed to present any evidence regarding its § 112 defense to the jury, and therefore cannot meet its burden to show that no reasonable jury could have found that Fiber Composites did not prove by clear and convincing evidence that the '553 and '027 patents were invalid. Therefore, this Court's decision regarding claim construction and infringement, and the jury's findings regarding validity, should stand.

## ARGUMENT

### I. Fiber Composites cannot satisfy the high legal standard necessary for judgment as a matter of law.

"Judgment as a matter of law is proper 'only when there is a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party." *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 (8th Cir. 2002) (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997)). "This high standard protects the role and province of the jury to determine which inferences shall be drawn from the evidence presented." *Garcia v. City of Trenton*, 348 F.3d 726, 727 (8th Cir. 2003). Thus, Fiber Composites' motion for judgment as a matter of law should be denied unless the Court finds that there was no legally sufficient evidentiary basis for a reasonable jury to find for Andersen. Fed. R. Civ. P. 50(a)(1). In making its determination, the Court "may not make credibility determinations or weigh the evidence." *Garcia*, 348 F.3d at 727 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Rather, "[t]he Court must assume as proven all facts that [Andersen's] evidence tended to show, give [Andersen] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [Andersen's] favor." *Hathaway*, 132 F.3d at 1220.

Fiber Composites' motion for judgment as a matter of law must fail unless it shows "that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings." *Novartis Pharms. Corp. v. Abbott Labs.*, 375

F.3d 1328, 1332 (Fed. Cir. 2004) (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998)). "Substantial evidence is such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support" the jury's infringement and validity findings. *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984). "This standard posits that a reasonable jury would have assessed the credibility of witnesses, considered and weighed the evidence presented by both sides, and applied the law in accordance with the court's instructions." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1569 (Fed. Cir. 1992).

Moreover, as to Fiber Composites' challenge of the jury's finding that Andersen's patents are not invalid, patents are presumed valid, 35 U.S.C. § 282 (2003), and the jury could have concluded that Andersen's patents "remain[ed] valid *solely* on [Fiber Composites'] failure to convincingly establish the contrary." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1570-71 (Fed. Cir. 1986) (emphasis in original) (lamenting the "erroneous . . . impression that patentees bear a burden of 'proving validity'"). In fact, "[a] patentee need submit *no* evidence in support of a conclusion of validity by a court or a jury." *Id.* Fiber Composites, then, bore the burden to prove by clear and convincing evidence that the '553 and '027 patents are invalid, and the jury had "the right to reject [Fiber Composites'] evidence as insufficient to carry that burden." *Id.* at 1572-73. Thus, Fiber Composites' burden is *not* to show that, under its preferred view of the facts, it proved by clear and convincing evidence that Andersen's patents were invalid. Rather, Fiber Composites must show that based on the trial evidence, no reasonable jury could have found that Fiber Composites did not meet its burden to

present clear and convincing evidence that Andersen's patents are invalid.

## II. Fiber Composites' motion for judgment as a matter of law that the '553 and '027 patents are not infringed should be denied.

### A. The Court's construction of the claims of "composite structural member" is correct and should not be disturbed.

"Composite structural member," as found in claims 1, 2, and 3 of the '553 patent and claims 1, 2, and 3 of the '027 patent, is the only claim term at issue in Fiber Composites' JMOL motion. As construed by the Court, "composite structural member" is not limited to pellets or pelletizing, and contains no limitation for how the member is formed. (Apr. 9, 2002 Order at 23.)

In its challenge of the Court's construction of the claims of "composite structural member," Fiber Composites simply repeats verbatim the arguments made in its initial claim construction brief, which the Court properly rejected. After considering the parties' claim construction proposals and supporting arguments, and holding a Markman hearing, the Court accurately determined that the "term 'composite structural member,' when viewed in light of the claim, language, the specification, and the prosecution history, means a polymer and wood article having load bearing capability, which can be obtained through a direct extrusion process or made from a composite material without a particular form." (Apr. 9, 2002 *Markman* Order at 23.)

In construing "composite structural member," the Court appropriately followed the Federal Circuit's claim construction rules requiring the consideration of the claims, specification, and prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996); (Apr. 9, 2002 Order at 8-11). The Court properly started

with the claim language itself, and determined that "[t]here is no reference to a pellet or linear extrudate in the claim language." (Apr. 9, 2002 Order at 21.) In addition, "[t]he claim-at-issue is not claiming a product made by a specific process; it is claiming the product itself—the structural member. Giving the words their ordinary and accustomed meaning, the words of the claim define the structural member as a product that is a replacement for a wood structural member." *Id.*

The Court then correctly turned to the '553 and '027 patents' common specification, and found that it "defines the term 'structural member' to mean 'a linear member with a regular cross-section or complex cross-section.' ('553, c. 3, ll: 21-23)." (Apr. 9, 2002 Order at 21.) The "specification teaches that the invention covers a structural member with specific structural properties that is used as a wood replacement. It does not teach that the structural member must be made by a certain process." (*Id.* (citing to '553, c. 1, ll: 13-15 and Abstract)). The Court rejected Fiber Composites' argument that the specifications of the '553 and '027 patents limit the claims to pellets or pelletizing because "[t]he specification details the preferred embodiment of the materials <u>used</u> to make the structural member. (See, e.g., '553, c. 5, ll: 64-66 ) (Moerke Decl. Exs. 1 and 2.) It does not, however, limit the claimed invention to that preferred embodiment nor does it claim anything other than a 'structural member' with superior strength, resistance to rot and insect attack, and other structural features." (Apr. 9, 2002 Order at 22.)

The Court then properly turned to the prosecution histories of the '553 and '027 patents, and agreed with Andersen that the prosecution history "reveals that [Andersen]

MP3 20140706.1

received its patent not because it disclaimed or claimed any method or process but rather because its invention had superior structural properties." (*Id.* at 23.) "The prosecution history supports the construction that the subject of the ['553 and '027] patents is the structural member itself, with its superior structural properties, without a limitation for how the member is formed." (*Id.*)

Given its thorough and proper analysis, the Court correctly concluded that the asserted claims of the '553 and '027 patents are not limited to pellets or pelletizing, as Fiber Composites now asks the Court to find.[1] Because the Court's construction of "composite structural member" is correct, and is based on a proper analysis applying the Federal Circuit's claim construction rules, it should not be disturbed.

**B. Fiber Composites waived any challenge to the Court's correct claim construction and thus failed to preserve a claim of error because at trial it failed to object to the jury instruction on claim construction, which included the Court's construction of "composite structural member."**

In its JMOL brief, Fiber Composites argues that the Court's construction of the claims of the '553 and '027 patents is erroneous, and should be limited to material made from pellets. (F.C. JMOL Mem. at 1.) But Fiber Composites waived its challenge to this claim construction by failing to object to the jury instruction on claim construction during trial. Under Federal Rule of Civil Procedure 51(c), "[a] party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected to and the

[1] Andersen contends that none of the originally asserted patents-in-suit (U.S. Patent Nos. 6,015,612; 5,932,334; 5,827,607; 6,015,611; 5,539,027; and 5,486,553) are limited to pellets or pelletizing, and Andersen filed a Notice of Appeal, which provided that Andersen intends to appeal the claim construction order, among other things.

grounds of the objection." As shown below, Fiber Composites did not even object to the Court's claim construction of "composite structural member," much less state distinctly the matter objected to and the grounds of the objection:

> THE COURT: 22, "Limitations of the Claims at Issue." That's what you're talking about. Right?
>
> MR. SKENYON: Yes.
>
> THE COURT: Okay. "I instruct you that composite structural member, as found in claims 1, 2, and 3 of the '553 and 1, 2, 3 of the '027 means a polymer and wood article having load-bearing [capability] which can be obtained through a direct extrusion process or made from a composite material without a particular form."
>
> MR. SKENYON: That's really the Court's order. Right?
>
> MS. NELC: Yes, that directly from - it's exactly Judge Kyle's language from his claim construction order.
>
> MR. SKENYON: *I'm not sure we actually need that, but it's the ones below that we have some issue with.*
>
> THE COURT: Do you think that's right, though? "A polymer and wood article have a load-bearing capability, which can be obtained through a direct extrusion or made from a composite material without a particular form"? Do you think that's right? Well, let's not go - let's see if we have to give that.
>
> MR. SKENYON: Well, I didn't think so at the time.
>
> THE COURT: After hearing all this, it's - the "or" really bothers me. But maybe it doesn't matter.
>
> MR. SKENYON: *I'm not sure that one matters.*

(Tr. at 961-62) (emphasis added) (attached as Ex. 1 to Akinwale Decl.) Further, during the next day of court, Fiber Composites' counsel stated that they wanted to preserve their previously made objections to some of the jury instructions, but that they did not have any new objections to make. (Tr. at 1161-62) ("MS. MOERKE: Your Honor, we wanted to make sure our objections are preserved for the record to some of the instructions. THE

MP3 20140706.1

COURT: The ones that you made before? MS. MOERKE: Yes. THE COURT: You don't have any new ones, do you? MS. MOERKE: We don't have new ones.") (attached as Ex. 1 to Akinwale Decl.) Because Fiber Composites failed to object to the Court's claim construction of "composite structural member" at the Charge Conference, and further failed to object to it even after given the opportunity to do so later, Fiber Composites waived its objection to the Court's claim construction and thus failed to preserve a claim of error under Federal Rule of Civil Procedure 51(d).

An on-point case is *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004). In *Eli Lilly*, Aradigm argued that the jury instructions on inventorship of a claim were error because the description in the instructions of the invention prejudicially paraphrased the actual language of the claim. *Id.* At trial, Aradigm objected to the paraphrasing in this jury instruction, noting that "the jury should be directed to the specific claims . . . rather than these characterizations of the claims," that "a characterization of the claims will confuse the jury," and "that a characterization of the claims simply by pulling words out of them is not a complete description of what is claimed." *Id.* at 1360-61.

Despite Aradigm's detailed objection, the Federal Circuit held that Aradigm could not demonstrate error because its "objection was not sufficiently specific to preserve its prejudicial paraphrasing argument on appeal." *Id.* at 1361. "It is black letter law that objections must state 'distinctly the matter objected to and the grounds of the objection,'" and "'Rule 51 of the Federal Rules of Civil Procedure precludes the assignment of error when no specific objection to an instruction is made.'" *Id.* Even addressing Aradigm's

argument on the merits, the Federal Circuit concluded that the jury instructions were not erroneous as a whole. *Id.*

Here, an even stronger case is made that Fiber Composites cannot demonstrate error because it did not even make an objection. In sharp contrast, Aradigm in *Eli Lilly* made a fairly detailed objection; even still, the Federal Circuit found that the objection was not specific enough to preserve Aradigm's prejudicial paraphrasing argument. *Id.* The same outcome found in *Eli Lilly* should result here, as Fiber Composites cannot demonstrate error based on the claim construction because it failed to even make an objection to the jury instruction on the claim term it now seeks a JMOL ruling on. *See also Eolas Tech. Inc. & Regents of University of Cal. v. Microsoft Corp.*, 399 F.3d 1325, 1338 (Fed. Cir. 2005) (finding that Microsoft waived its right to appeal on a jury instruction on a claim term because Microsoft did not object to it during trial and thus failed to properly preserve the issue for appeal).

**C. Fiber Composites has failed to establish that the Court's construction is in error.**

**1. Fiber Composites miscasts the invention by attempting to force a pellet limitation into the broad claim language.**

Even addressing Fiber Composites' claim construction argument on the merits, the Court's construction of "composite structural member" should not be disturbed because Fiber Composites failed to establish that the Court's construction is in error based on the claim language, specification, and prosecution history of the '553 and '027 patents. The a careful review of the '553 and '027 patents' intrinsic evidence demonstrates that the claims cannot be limited to pellets. The plain, clear, simple, and unambiguous language

of the asserted "composite structural member" claims cannot be rewritten in the manner Fiber Composites advances: by combing through the intrinsic evidence to cherry-pick discrete statements regarding a pellet embodiment while ignoring other statements to the contrary. As a matter of law, the majority of Fiber Composites' argument fails because it imports a process limitation into product claims, which the Court affirmatively rejected. (Apr. 9, 2002 Order at 21) ("The claim-at-issue is not claiming a product made by a specific process; it is claiming the product itself—the structural member."); *see also Zenith Labs, Inc., v. Bristol-Myers Squibb Co.*, 19 F.3d 1418 (Fed. Cir. 1994); *Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000). Further, as already stated in the broad Field of the Invention for the "composite structural member" patents: ". . . the invention relates to an improved structural member that can be used as a direct replacement for wood and metal components and having superior properties. . . ." '553 Patent, c. 1, ll. 13-16; '027 Patent, c. 1, ll. 16-19 (Moerke Decl. Exs. 1 and 2.) Citing to this broad Field of the Invention, the Court recognized the specification's broad teaching "that the invention covers a structural member with specific structural properties that is used as a wood replacement. It does not teach that the structural member must be made by a certain process." (Apr. 9, 2002 Order at 22.)

Despite the clear and unambiguous language of the asserted claims, Fiber Composites urges this Court to ignore that language and ignore the specification disclosures that contradict its narrowing interpretation. The strained and narrow construction Fiber Composites urges should be rejected.

### 2. Fiber Composites' discrete selection from the preferred embodiment does not limit the plain language of the claims.

To promote the argument that the claims are limited to pellets, Fiber Composites repeatedly cites to pellet references that are part of Andersen's discussion of the preferred embodiment. (F.C. JMOL Mem. at 3.) But "the mere repetition in the written description of a preferred aspect of a claimed invention does not limit the scope of an invention that is described in the claims in different and broader terms." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347-48 (Fed. Cir. 1998); *see also Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 992, 990 (Fed. Cir. 1999) ("[I]f we once begin to include elements not mentioned in the claim in order to limit such claim . . . we should never know where to stop.") (citations omitted). Fiber Composites ignores the line of cases which establish that Andersen's claims should not be limited by the preferred pellet embodiment, especially in light of other embodiments of the invention. *Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1293 (Fed. Cir. 2000); *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344-45 (Fed. Cir. 2001); *see also Intermatic, Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1364 (Fed. Cir. 2001), *vacated on other grounds*, 537 U.S. 1016 (2002) (refusing to narrow the claim term, "multiple orientation" to the 90-degree embodiment despite repeated references in the specification to a "90-degree" rotation). As properly found by the Court, "Fiber Composites, however, misapplies what the specification teaches. The specification details the preferred embodiment of the materials <u>used</u> to make the structural member. (*See, e.g.*, '553, cl. 5, ll:64-66) (Moerke Decl. Ex. 1.) It does not, however, limit the claimed invention to that

preferred embodiment nor does it claim anything other than a ‘structural member’ with superior strength, resistance to rot and insect attack, and other structural features.” (Apr. 9, 2002 Order at 22.)

The Court correctly rejected Fiber Composites’ argument that the specifications of the ‘553 and ‘027 patents “limit the claims to pellets or pelletizing,” finding that the specification “does not . . . limit the claimed invention to that preferred embodiment.” (Apr. 9, 2002 Order at 22.)

**3. Fiber Composites’ prosecution history citations do not limit the asserted claims.**

The prosecution history on which Fiber Composites relies does not support its proposed limitation. This evidence must be assessed “based on the totality of the prosecution history,” not select and one-sided “segments.” *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1326 (Fed. Cir. 2002). And the relevant inquiry for construing the claim term “composite structural member” is whether Fiber Composites, as a competitor, could reasonably believe that Andersen’s claims covered only a pellet form or process. The totality of the prosecution history establishes that Andersen discussed many features of its multiple inventions during a lengthy prosecution of a diverse family of patents. No competitor, however, could look to the totality of this record and reasonably believe that Andersen explicitly surrendered all but the pellet form. (*See also* Hr’g Tr. at 14-15, 17) (attached as Ex. 2 to Akinwale Decl.) The only way to reach this conclusion is through an unreasonably selective survey in which unfavorable statements are neglected while preferred statements are elevated as controlling. This approach is plainly not what the

Federal Circuit had in mind in referring to the “reasonable competitor.” *See Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1027 (Fed. Cir. 1997) (“statements in the parent application must be confined to their proper context and properly acknowledge the distinctions between [the] claims”). Further, where the entire prosecution history leads to the conclusion that an Examiner allowed claims, not because of the limitation the infringer proposes, but due to other patentable features, it is inappropriate to narrow the claim through prosecution history statements. *See Vanguard Prods. Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000); *Bell Atlantic Network Serv., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1273 (Fed. Cir. 2001) (“Although the statements of the examiner will not necessarily limit a claim, we observe that the examiner understood that the ‘mode of transfer was a separate and distinct concept than the ‘speed of transfer.’”); *cf. Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 275 F.3d 1371 (Fed. Cir. 2001), *vacated*, 537 U.S. 802 (2002), *aff’d on remand*, 347 F.3d 1355 (Fed. Cir. 2003) (rejecting proposed construction where the patentee distinguished the prior art on several grounds and then amended the claim language to incorporate that distinction)

The Court put the prosecution history in its proper light, agreeing with Andersen that it merely distinguished the prior art cited by the Patent Examiner based upon structural properties of the invention and not any method of processing. (Apr. 9, 2002 Order at 23.) The prosecution history–in context and totality–establishes that Andersen distinguished its claims by citing several differences over the prior art, including particle size, thermosetting agents, low modulus, and at times, a pellet form or step. (Moerke

Decl. Ex. 5). Significantly, Andersen never distinguished the prior art based solely on a pellet form or step.[2] (Hr'g Tr. at 9, 10) (attached as Ex. 2 to Akinwale Decl.) A review of Fiber Composites' exhibits confirms the accuracy of this statement, while it also reveals the consistency with which Andersen spoke of the alternative forms and processes applicable to its invention. *See, e.g., id.*

Last, Fiber Composites exaggerates the significance of the Miani prior art reference in its quest to change the "structural member" claims into process claims. Fiber Composites extracts just one word–"pelletizing"–from Andersen's dialogue with the Patent Office to argue that direct extrusion was explicitly surrendered. (F.C. JMOL Mem. at 5-6.) Andersen, however, distinguished its claims over Miani by citing numerous differences. At most, based upon Miani, Andersen told the Patent Office that its claims did not cover all of these elements: (1) premixed; (2) wood powder; with (3) liquid polymer; (4) add more polymer; (5) to achieve prior coating; and (6) directly extruded to a (7) composite that (8) would not result in a Youngs Modulus of at least 500,000; and that (9) required post-extrusion milling to afford a smooth structural member without any evidence of polyvinyl chloride degradation. (Moerke Decl. Ex. 5). Fiber Composites cannot pluck "directly extruded" from this compound discussion and thereby limit the product claims to a pelletizing process.

In sum, nothing Fiber Composites selectively cites from the prosecution history establishes that Andersen disavowed directly extruded structural members at issue in this

---

[2] Importantly, Andersen does not seek to broaden the scope of claim coverage to encompass the distinguished prior art–any type of extruded material which does not have the requisite strength properties. *See e.g., Scimed Life Sys., Inc.*, 242 F.3d at 1343.

trial. As the Court properly found, "The prosecution history supports the construction that the subject of the ['553 and '027] patents is the structural member itself, with its superior structural properties, without a limitation for how the member is formed." (Apr. 9, 2002 Order at 23.)

Because Fiber Composites failed to establish that the Court's construction is in error based on the claims, specification, and prosecution history of the '553 and '027 patents, the Court should not disturb the construction of "composite structural member."

## III. Substantial evidence supports the jury's verdict that Fiber Composites failed to prove by clear and convincing evidence that the '553 and '027 patents are invalid.

### A. The '553 and '027 patents meet the standards of 35 U.S.C. § 112.

Because each of the § 112 requirements were expressly or implicitly addressed during the course of patent prosecution, Andersen's patents are entitled to "an especially weighty presumption of correctness." *Brooktree*, 977 F.2d at 1574-75; 35 U.S.C. § 282. "A patent is presumed valid, and this presumption is based in part on the expertise of patent examiners presumed to have done their job. This presumption . . . may be viewed as a presumption of administrative correctness . . . ." *Brooktree*, 977 F.2d at 1574-75 (citations omitted) (discussing the presumption in the context of a new matter defense).

Despite this presumption of validity, Fiber Composites did not submit any affirmative expert testimony or other evidence on its § 112 defenses for the jury to consider. At Fiber Composites' request, Fiber Composites' validity expert, Mohini Sain, did not opine on § 112 in his report. (Sain Dep. 142:24-143:10) (attached as Ex. 3 to Akinwale Decl.). Fiber Composites itself moved in limine to limit the invalidity experts'

testimony to matters contained in their expert reports. (Docket No. 302.) At trial, then, having to overcome the presumption in Andersen's favor and prove its § 112 defenses by clear and convincing evidence, Fiber Composites put itself in the position to rely solely on the testimony of one of Andersen's fact witnesses,[3] Michael Deaner.

Fiber Composites now attempts to prove its § 112 case after the fact by piecing together out-of-context snippets of testimony elicited with confusing questions Fiber Composites asked during its cross-examination of Mr. Deaner, one of the inventors of the '553 and '027 patents. It is not the Court's task, however, "to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out . . . . Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper." *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002); *see also Koito Mfg Co. v. Turn-Key-Tech, L.L.C.*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("General and conclusory testimony . . . does not suffice as substantial evidence of invalidity."). Though Andersen objected to any instruction on Fiber Composites' § 112 defense because Fiber Composites did not put a § 112 case into the record, the jury was ultimately permitted to decide the issue. (Tr. 1000:7-12; 1150:7-1152:12) (attached as Ex. 1 to Akinwale Decl.). Under the circumstances it is unsurprising, and reasonable, that the jury found that Fiber Composites failed to meet its burden to prove that the '553 and '027 patents were invalid under § 112.

**1. The '553 and '027 patents' written descriptions meet the**

[3] During trial, Fiber Composites objected to Mr. Deaner's testimony that, to Fiber Composites' counsel, sounded "an awful lot like expert testimony." (Tr. 214:19-25) (attached as Ex. 1 to Akinwale Decl.)

**statutory requirements and Fiber Composites did not prove otherwise at trial.**

Fiber Composites failed to present clear and convincing evidence that the Andersen patent disclosures did not reasonably convey to a person of ordinary skill in the art in 1992 that Andersen's inventors had possession of the claimed subject matter as of the filing date of the '553 and '027 patents (August 31, 1992). *See Eiselstein v. Frank*, 52 F.3d 1035, 1039 (Fed. Cir. 1995). To satisfy the written description requirement, patent specifications must "describe the claimed invention so that one skilled in the art can recognize what is claimed." *Koito*, 381 F.3d at 1154 (quoting *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002)). The standard is that "the patent's 'disclosure must allow one skilled in the art "to visualize or recognize the identity of" the subject matter purportedly described.'" *Id.* (citations omitted). "[W]hether the written description requirement has been satisfied is a question of fact that is reviewed for substantial evidence when resolved by a jury." *See, e.g., Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1213 (2004).

Examining the evidence adduced at trial, there was substantial evidence for the jury to find that Fiber Composites failed in its burden to establish that the '553 and '027 patents did not meet the written description requirement. In its memorandum, Fiber Composites plucks bits and pieces of testimony from the record and erroneously asserts that that testimony was uncontroverted. (F.C. JMOL Mem. at 8-11.) As set forth below, when viewed as a whole, however, the record indicates that there was sufficient evidence for the jury to find that the written description requirement was met.

At trial Mr. Deaner testified repeatedly that a person of ordinary skill in the art would recognize what the '553 and '027 patents claim. For example, with respect to the upper and lower boundaries of the Young's modulus, Mr. Deaner testified that a person skilled in the art would understand that the Young's modulus of the extrudate would be between that of the two components and could not be greater than the highest modulus of either of the components. (Tr. at 288:7-289:24) (attached as Ex. 1 to Akinwale Decl.). Mr. Deaner specifically disagreed with Fiber Composites' assertion that there was no upper boundary, and testified that the Young's modulus would be dependent on the wood fiber used. (Tr. at 317:10-14; 318:13-319:24) (attached as Ex. 1 to Akinwale Decl.). Similarly, the jury could have inferred from Mr. Deaner's testimony that a person of ordinary skill in the art would understand that the lower limits of the coefficient of thermal expansion depend on the direction in which the wood was measured. (Tr. 321:3-14) (attached as Ex. 1 to Akinwale Decl.) Mr. Deaner's testimony relating to the upper boundary of the aspect ratio likewise challenged Fiber Composites' contentions when he stated that a person in his position, i.e., a person of skill in the art, would know the practical limits on the aspect ratio of wood passed through an extruder. (Tr. at 292:2-15) (attached as Ex. 1 to Akinwale Decl.) Thus, though it is not Andersen's burden to rebut Fiber Composites' evidence, but Fiber Composites' burden to introduce clear and convincing evidence to the jury (which it failed to do), Fiber Composites is incorrect when it claims that the evidence it cites in support of its clear and convincing burden was not rebutted. (F.C. JMOL Mem. at 11.)

The jury was entitled to consider all the trial evidence as a whole. Fiber

Composites offered no expert testimony or other affirmative evidence on the subject to carry its heavy burden to prove that Andersen's patents are invalid under § 112. When viewed in the light most favorable to Andersen, at trial there was substantial evidence for the jury to find that Fiber Composites failed to meet its burden to show by clear and convincing evidence that the '553 and '027 patents did not meet the written description requirement under § 112.

**2. Fiber Composites did not prove that the '553 and '027 patents are not enabled, and the evidence that was adduced at trial was more than sufficient to support the jury's finding that Fiber Composites did not prove that the patents were invalid due to lack of enablement.**

Because the '553 and '027 patents enjoy a statutory presumption of validity, and because operation is presumed as prerequisite to patent validity, at trial Fiber Composites had the burden of proving, by clear and convincing evidence, that Andersen's patents were not enabled. 35 U.S.C. §§ 101, 282; *Schumer*, 308 F.3d at 1315; *see also Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 714 (Fed. Cir. 1984) ("[I]ncluded within the presumption of validity is . . . a presumption of utility . . . which must be presumed to have been met.") The specification need not describe "every conceivable and possible future embodiment" of the invention. *Rexnord*, 274 F.3d at 1344. Based on the evidence presented at trial, the jury reasonably found that Fiber Composites did not meets its burden.

As analyzed in the foregoing sections, the specifications of the '553 and '027 patents—which were discussed at length during trial, admitted as exhibits, and available to the jury—as well as Mr. Deaner's testimony, are sufficient evidence for a reasonable

jury to find that Fiber Composites did not carry its burden. The patent specifications provided detailed information that discloses everything one skilled in the art would need to know to make the invention—indeed, the purpose of the pelletizing discussion is to enable by demonstrating the inventors' best mode. (*See* '553, c. 5, l: 62-c. 8, l: 18; '027, c. 5, l: 62-c. 8, l: 20) (Moerke Decl. Exs. 1 and 2.) Additionally, Mr. Deaner testified that the patents' specifications teach how to make the claimed composite structural member, and pointed to the specific parts of the specifications where the teaching appears. (Tr. 367:2-371:1) (attached as Ex. 1 to Akinwale Decl.) The jury was free to accept this evidence to support its conclusion that Fiber Composites did not prove that the '553 and '027 patents are invalid for lack of enablement, particularly in light of Fiber Composites' failure to present any expert testimony or other evidence to carry its burden.

Fiber Composites argues that even if the claims have practical upper and lower limits, the claims would not be enabled because the patents do not show how to make and use the inventions even up to those practical limits. (F.C. JMOL Mem. at 18-19.) This argument fails because even though the highest Young's modulus resulting from Mr. Deaner's testing was about 1.1 to 1.2 million, Mr. Deaner testified that he tested only pine, the Young's modulus of which is 1.5 million, whereas other wood species, such as oak, have a Young's modulus closer to 2 million, and "one skilled in the art would see that if you used a different wood fiber other than pine, you would get something that is different than the 1.1, 1.2 million." (Tr. at 318-19) (attached as Ex. 1 to Akinwale Decl.) Fiber Composites' "practical limits" argument, which is based on its patchwork version of the record that is stripped of the proper context, should be rejected.

### 3. It would have been unreasonable for the jury to find that the '553 and '027 patents were *not* definite.

To make the required showing of indefiniteness, Fiber Composites was required to show by clear and convincing evidence that the claims, when read in light of the specification, did not reasonably apprise a person of ordinary skill in the art in 1992 of the scope of the claimed invention. *S3 Inc. v. Nvidia Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001); *Miles Labs., Inc. v. Shannon Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993). Claims, however, "need not be plain on their face in order to avoid condemnation for indefiniteness; rather, what [this court has] asked is that the claims be amenable to construction . . . ." *Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1340 (Fed. Cir. 2005) (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)). "Only after a thorough attempt to understand the meaning of a claim has failed to resolve material ambiguities can one conclude that the claim is invalid for indefiniteness." *All Dental Prodx, L.L.C. v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 780 (Fed. Cir. 2002).

Perhaps most telling, the '553 and '027 patents' claims were definite enough for Fiber Composites itself to understand the bounds of the claims—Fiber Composites proposed its own construction of the claims, pointed to prior art that it claimed covered the same bounds as Andersen's patents, had an expert that opined to that effect, and admitted that it was infringing the patents. (*See, e.g.*, Def.'s Oct. 25, 2001 *Markman* Br.; F.C. Prior Art Statement (attached as Ex. 4 to Akinwale Decl).; Sain Rep. (attached as Ex. 5 to Akinwale Decl.); F.C. JMOL Mem. at 8.)

Considering the procedural history of this case and the evidence presented at trial, the jury reasonably found that Fiber Composites did not meet its burden to show that the '553 and '027 patents were invalid for indefiniteness. Based on the facts, Fiber Composites' argument that the '553 and '027 patents are invalid for indefiniteness is without merit and the jury would have been unreasonable for finding in Fiber Composites' favor on this issue. As discussed above, Mr. Deaner testified over and over again that a person of ordinary skill in the art would understand the claim limitations relating to the Young's modulus, coefficient of thermal expansion, and aspect ratio. (Tr. at 288:7-289:24; 292:2-15; 317:10-14; 318:13-319:24; 321:3-14) (attached as Ex. 1 to Akinwale Decl.) Fiber Composites did not present any affirmative testimony, much less expert testimony on any of its § 112 defenses. Moreover, the '553 and '027 patents' claims were capable of construction and were in fact construed by this Court. (Apr. 9, 2002 Order.) Accordingly, it makes no sense for Fiber Composites to claim now that the claim limitations are indefinite, and there was ample evidence for the jury to find that Fiber Composites failed to meet its burden to establish indefiniteness by clear and convincing evidence.

**B. At trial, Fiber Composites did not meet its burden to show, by clear and convincing evidence, that the '553 and '027 patents were anticipated.**

Finally, it was reasonable for the jury to find that Fiber Composites did not prove by clear and convincing evidence that the '553 and '027 patents are invalid because Modern Plastics anticipates them. As discussed above, patents enjoy a presumption of validity under 35 U.S.C. § 282 and it was Fiber Composites' burden to persuade the jury,

clearly and convincingly, that Modern Plastics anticipated Andersen's patents. *See, e.g.*, *Apotex USA, Inc. v Merck & Co.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001) ("In order to overcome the presumption of validity, the party challenging the patent must prove facts supporting a determination of invalidity by clear and convincing evidence."). "Typically, testimony concerning anticipation must be testimony from one skilled in the art . . . ." *Schumer*, 308 F.3d at 1315.

For a prior art reference to be anticipatory, it must be enabled. *See, e.g.*, *Elan Pharms., Inc. v. Athena Neurosciences, Inc.*, 346 F.3d 1051, 1054 (Fed. Cir. 2003). To carry its burden to prove evidence that Andersen's patents were anticipated, Fiber Composites had to present clear and convincing evidence that Modern Plastics was actually enabled. *See, e.g.*, *3M v. Chemque, Inc.*, 303 F.3d 1294, 1306 (Fed. Cir. 2002) (reversing a jury verdict of invalidity when evidence of prior art enablement was not in the record). Fiber Composites does not cite to any such evidence introduced at trial. In contrast (and though it was not its burden to do so), Andersen put into the record Dr. Simonsen's expert testimony that Modern Plastics did not teach one of ordinary skill in the art how to make the invention. (Tr. 900:5-10) (attached as Ex. 1 to Akinwale Decl.). It was the jury's province to weigh the evidence both parties presented and, based on the record evidence, the jury found that Fiber Composites failed to carry its heavy burden of proof even though the Court permitted Fiber Composites to draft enablement language for the instruction on anticipation that guided the jury's determination on this issue. (Tr. at 987:7-991:8) (attached as Ex. 1 to Akinwale Decl.) The Court should not now entertain Fiber Composites' flawed legal argument that it should have benefited from a

presumption that Modern Plastics was enabled.

Contrary to Fiber Composites' assertion, and as discussed in Andersen's opposition to Fiber Composites' motion for a new trial, (Andersen Mem. at 10), case law does not entitle Fiber Composites to a presumption that Modern Plastics was enabled. (F.C. JMOL Mem. at 21-22.) In *Amgen*, the Federal Circuit held that a prior art *patent* was presumed enabled. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003). In coming to its conclusion, the *Amgen* court cited cases that recognized that a patent is presumed by statute to be valid, and, therefore, presumed to be enabled because enablement is a prerequisite to validity. The *Amgen* footnote to which Fiber Composites cites, (F.C. JMOL Mem. at 21), is mere dicta, stating simply that the court's reasoning regarding an enablement presumption with respect to prior art patents "*might* also apply to prior art printed publications," but, explicitly declining to actually decide the question. 314 F.3d at 1356 n. 22 (emphasis added). This footnote does not support Fiber Composites' contention that Modern Plastics, a two-page magazine article that has not survived the rigors of PTO scrutiny, should be rewarded with any presumption of enablement afforded an actual patent.

Absent the presumption to which Fiber Composites erroneously claims it is entitled, Fiber Composites does not point to any clear and convincing evidence in the record that would require a reasonable jury to find that Modern Plastics was enabled and therefore anticipated Andersen's patents. The jury was entitled to draw all reasonable inferences from Dr. Simonsen's testimony and, in any event, reasonably found in Andersen's favor on the validity issue by simple virtue of Fiber Composites' failure to

present clear and convincing evidence to the contrary.

## CONCLUSION

For the reasons stated above, Andersen respectfully requests that the Court deny Fiber Composites' motion for judgment as a matter of law on the issues of infringement and validity.

Dated: July 6, 2005. **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: /s/ Busola A. Akinwale
Ronald J. Schutz (#130849)
Becky R. Thorson (#254861)
Misti Nelc (#296090)
Nicholas S. Boebel (#030217X)
Busola A. Akinwale (#0338217)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

**ATTORNEYS FOR PLAINTIFF ANDERSEN CORPORATION**