UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDERSEN CORPORATION,

Plaintiff,

v.

FIBER COMPOSITES, LLC,

Defendant.

CIV NO. 00-CV-2548 (JNE/JGL)

**FIBER COMPOSITES, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUES OF INFRINGEMENT AND VALIDITY**

In its opposition brief, Andersen fails to refute Fiber Composites' showing that it should be granted judgment as a matter of law on the issues of infringement and validity.

## I. Argument

### A. Fiber Composites Should Be Granted Judgment as a Matter of Law that It Does Not Infringe the '553 and '027 Patents.

As an initial matter, Fiber Composites did not waive its objections to the Court's claim construction as Andersen wrongly suggests. Instead, Fiber Composites fully preserved its objections. Unlike the parties in the two cases on which Andersen relies, Fiber Composites does not (and did not) object to the Court's characterization of its claim construction in the jury instructions. In other words, Fiber Composites' objection is with the Court's claim construction itself—not the Court's jury instructions per se. Indeed, Fiber Composites' ongoing objection to the Court's claim construction was clear from the very exchange with the Court that Andersen cites in its brief (*see* Andersen Mem. at 7),

during which exchange Fiber Composites' counsel pointed out Fiber Composites' disagreement with the Court's claim construction.

Moreover, Fiber Composites objected to the Court's claim construction during the *Markman* and summary judgment motion practice in this case. Given the Court's prior claim construction, Fiber Composites' admitted literal infringement by certain parts prior to trial, and Andersen's abandoning any doctrine of equivalents case at trial, infringement was not an issue for the jury. Consequently, Fiber Composites' invalidity contention was based on the Court's claim construction, even though Fiber Composites considered it erroneous, as Fiber Composites has repeatedly made clear to the Court.

But, there is no question that this Court has the power to revisit its claim construction at this juncture. Indeed, a party need not raise claim construction in post-trial motions in order to preserve the issue on appeal. *See, e.g., Inverness Medical Switzerland GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-81 (Fed. Cir. 2002) (rejecting a motion to preclude consideration of a claim construction argument on appeal on the ground that appellants failed to raise the argument before the district court).

As to Andersen's response on the merits to Fiber Composites' motion with respect to noninfringement, Andersen fails to refute Fiber Composites' showing that the claims of the '553 and '027 patents should be construed to require pellets or pelletizing. As it has consistently done in this suit, Andersen substantially ignores the specifications and prosecution history of these patents, which support the claim construction consistently urged by Fiber Composites. And Fiber Composites' approach is precisely the approach

mandated by the Federal Circuit in its very recent *en banc* decision in *Phillips v. AWH Corp.* (App. Nos. 03-1269, 1286; July 12, 2005).[1]

The background specifications of the ’553 and ’027 patents, like those of the other four Andersen patents originally asserted but that Fiber Composites does not infringe, explain that prior to the inventions claimed, polymer and wood composites were extruded into structural parts, but these parts lacked certain physical properties, and the alleged invention supposedly provides the solution:

> Polyvinyl chloride thermoplastic materials have also been combined with wood products to make extruded materials. Prior efforts have failed to manufacture a material that can be directly extruded to form a structural member that is a direct replacement for wooden members. Such prior art composite members fail to have sufficient modulus (typically about 500,000 or greater), compressive strength, coefficient of thermal expansion, coefficient of elasticity, resistance to insect attack and rot or deterioration, combined with ease of working and fastener retention to be a direct wood replacement material. Further, many prior art extruded composites require postextrusion milling to obtain a final useful shape. One class of composite, a polyvinyl chloride wood flour material, poses the added problem that wood dust tends to be explosive, as well as the need to size the wood

(Ex. 1, col. 1, line 64 to col. 13, line 8; Ex. 2, col. 2, lines 1-16.)

In fact, all six patents initially asserted by Andersen in this suit disclose only one way to solve the problems identified in the prior art, and that is by first extruding the composite into a solid linear extrudate, which is then cut into pellets. The pellets are then used to extrude a part that has the acceptable physical characteristics. (Ex. 1, col. 9, lines 44-49, col. 10, lines 29-47, col. 11, lines 27-36; Ex. 2, col. 9, lines 25-46, col. 10, lines 25-43, col. 11, lines 19-22.) Thus, the specifications of all the Group I patents

[1] A copy of this opinion is attached as Ex. 3.

(found not to be infringed by Fiber Composites) expressly state that in terms of the invention, the pellets are required in order to manufacture a successful structural part. (Ex. 4, col. 3, lines 1-13.) As a result, the composite or the structural member made from the composite are only "improved" because of the critical pelletizing process, which produces the key physical attributes for the final product.

Andersen repeatedly represented the invention this way to the Patent Office during prosecution:

> "The invention resides in part in a thermoplastic composite pellet. The invention also resides in a vinyl chloride polymer and wood fiber composite material, with a controlled water content, in the form of a thermoplastic pellet, wherein the wood fiber is intimately contacted and wetted by the thermoplastic polymer."
>
> (Ex. 5 at 3.)
>
> "The recited invention is a resin and fiber composite thermoplastic pellet . . . ."
>
> (Ex. 6 at 8.)
>
> "The invention resides in a material that is a thermoplastic pellet."
>
> (Ex. 7 at 6.)
>
> "The recited invention is a composite thermoplastic pellet."
>
> (Ex. 8 at 3.)
>
> "The recited invention is a composite thermoplastic pellet."
>
> (Ex. 9 at 3.)

> "This type of composite [directly extruded] is not the composite taught in the present invention. In contrast, the presently claimed composite is prepared by . . . forming pelletized material . . . ."
>
> (Ex. 10 at 8.)

These representations are far from a "selective survey," as Andersen wrongly suggests. (*See* Andersen Mem. at 12.) Instead, they show that Andersen consistently represented the inventions this way throughout prosecution, upon numerous occasions and in response to various arguments. Andersen has pointed no instance in which Andersen took a contrary position. Thus, these quotes are a fair sampling of Andersen's representations.

Further, Andersen may not have limited its distinction of the prior art Miani patent to its lack of pelletizing (*see* Andersen Mem. at 14), but Andersen told the Patent Office that the "composite structural member" in the claims did not cover articles that were directly extruded from thermoplastic polymers and wood composite (Ex. 10 at 7-8), and that the term "thermoplastic composite member" in the claim is limited to something formed from a pellet (Ex. 11 at 4). Andersen cites no authority for its claim that these representations were insufficient to limit the claims to the pelletizing construction.

Accordingly, for the reasons provided here and in its moving brief, as well as those previously provided in its *Markman* briefing and argument, Fiber Composites asks that the Court construe the asserted claims of the '553 and '027 patents to require pellets or pelletizing and therefore rule accordingly that Fiber Composites does not infringe the asserted claims of these patents as a matter of law.

### B. Fiber Composites Should Be Granted Judgment as a Matter of Law that the ’553 and ’027 Patents Are Invalid.

#### 1. There Was Not Sufficient Evidence to Support the Jury’s Finding that the Patents Are Not Invalid Pursuant to 35 U.S.C. § 112.

Andersen wrongly claims that “Fiber Composites failed to present any evidence regarding its § 112 defense to the jury.” (*See* Andersen Mem. at 1.) Instead, as demonstrated in Fiber Composites’ moving brief, Fiber Composites’ counsel systematically asked the inventor of the ’553 and ’027 patents, Michael J. Deaner, questions about three limitations in the asserted claims during his cross examination. Mr. Deaner’s answers—coupled with the patents themselves—demonstrate that these patents fail to satisfy several requirements of 35 U.S.C. § 112.

Perhaps because of the strength of this straightforward evidence, Andersen’s entire argument opposing Fiber Composites’ motion that the ’553 and ’027 patents be adjudged invalid is premised on Andersen’s contention that “Fiber Composites did not submit any affirmative expert testimony or other evidence on its § 112 defenses for the jury to consider.” (*See* Andersen Mem. at 15.) Indeed, Andersen repeatedly criticizes Fiber Composites for failing to submit so-called “affirmative evidence” of the fact that the ’553 and ’027 patents fail to satisfy 35 U.S.C. § 112. But there is no such requirement of “affirmative evidence,” and Andersen fails to cite a single case or other authority in support of this argument. Moreover, if Andersen’s complaint is that this evidence was introduced during Andersen’s case-in-chief, this fact is wholly immaterial. Indeed, the

Court specifically ruled that the parties would not held to a "precise" order of proof in the case. (March 29, 2005 Trans. at 14-16.)

In short, evidence is evidence. *United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998) ("Evidence is evidence, whether it comes out on direct or cross-examination."). And there was ample evidence introduced at trial showing that the '553 and '027 patents fail to satisfy 35 U.S.C. § 112 because the claims are overbroad. Mr. Deaner's testimony demonstrated that (1) the Young's modulus in the claims has no upper boundary; (2) the coefficient of thermal expansion in the claims has no lower boundary; and (3) the aspect ratio in the claims has no upper boundary. And, given the legal requirements of Section 112, this testimony also demonstrated that the patents do not teach one of ordinary skill how to make the claimed inventions without undo experimentation, do not contain a complete written description of the invention, and do not particularly point out or distinctly claim the invention.

Therefore, Andersen is grasping at straws when it contends that Fiber Composites' Section 112 proof consisted of "piecing together out-of-context snippets of testimony elicited with confusing questions Fiber Composites asked during its cross-examination of Mr. Deaner." (*See* Andersen Mem. at 16.) Fiber Composites' counsel asked Mr. Deaner a series of straightforward, linking questions. They were not confusing. But more to the point, neither was Mr. Deaner's testimony. Indeed, his testimony shows the fatal Section 112 problems that entitle Fiber Composites to judgment as a matter of law that the '553 and '027 patents are invalid.

First, with respect to the "Young's modulus of greater than 500,000" required by both claim 1 of '553 patent and claim 1 of the '027, Mr. Deaner's testimony confirmed that there is no upper boundary.[2] Then, with respect to the "coefficient of thermal

---

[2] Q. The claim, itself, however, does not put an upper limit on modulus, though?
A. The claim does not.
Q. . . . [A]s a practical matter, if you look through your book, your examples there in your book, I didn't see anything in the examples that were higher than 1.1 million, is that correct? And there is only very few of those.
A. That is correct.
Q. Is that about right?
A. That is correct.
Q. If we go back to the table, that is the modulus table. . . .
Again, you reported some values, here of the modulus values you attained in testing, true?
A. True.
Q. For each of those percentages – and the highest one I see is about 1.1 million, a little over 1.1 million?
A. Yes.
Q. So, in testing for this invention, not much gets above 1.1 million, true?
A. True.
Q. In your claim, it is 500,000 and above?
A. That is what the claim says. . .

***

Q. So, the claim, itself, doesn't say where the upper boundary of the Young's modulus is. Is it 1.5, is it 2? Is this something that gives you 2.1, 2.3?
A. It would be dependent on the wood fiber that you are using.
Q. But, my point is here that in all of your experiments and of all your experiments of people working with you, you didn't actually get to anything that was much above 1.2, correct?
A. That is correct.

(April 6, 2005 Trans. at 316-17, 319.)

expansion less than 3x10-5 in/in-$^{o}$F" set forth by both claim 1 of '553 patent and claim 1 of the '027, Mr. Deaner's testimony confirmed that there is no lower boundary.[3] Third and finally, with respect to the "wood fiber having an aspect ratio of at least about 2" required by claim 1 of the '553 patent, Mr. Deaner's testimony confirmed that the aspect ratio has no upper boundary.[4]

---

[3] Q. . . . If you would go back to Claim 1, again, the '027 Patent. Okay, and let's deal with the coefficient of thermal expansion.

***

Q. But, in terms of what you claimed as your invention, you didn't set a lower limit on it, did you?
A. There is not a lower limit specified in the claim.
Q. And in terms of your investigation and your experimentation and your research, you never got below, I think, about 1 times 10 to the fifth? In fact, I think that has given you some benefit of the doubt, true?
A. True.

(April 6, 2005 Trans. at 320-21.)

[4] Q. One of the other things that is in that claim is aspect ratio of the wood fiber being at least about 2, do you see that?
A. I see it.
Q. And there is no upper limit on that either in the claim?
A. There is no limit in the claim. . .
Q. And in terms of your development of the product here, at least up until the time the application was filed, isn't it true that the biggest aspect ratio you used was maybe about 5 or 10?
A. Probably closer to 10.
Q. So you never used an aspect ratio of wood fiber that was 20 or 25?
A. It's not talked about in the specification. During the first year, we may have.
Q. Do you recall doing that?
A. I can't tell you for sure that we did. At one point during the research we did.

Accordingly, because the ’553 and ’027 patents claim composites that their inventors undisputedly did not invent or possess and because a person of ordinary skill in the pertinent art could not make or use the claimed inventions without undue experimentation, they do not satisfy the patent law’s written description and enablement requirements. *See* 35 U.S.C. § 112, ¶ 1. And because the claims do not apprise those skilled in the art of their boundaries, they are indefinite as well. 35 U.S.C. § 112, ¶ 2.

Moreover, and critically, as shown in Fiber Composites’ moving brief, *even if* the claims were construed to have a *practical* upper limit of the Young’s modulus and a practical lower limit of the coefficient of thermal expansion based on the understanding of one of skill in the art, they are still not enabled.

Andersen’s response to this point is woefully inadequate. (*See* Andersen Mem. at 20.) The patents simply do not teach how to make the invention up to the purported “practical limits,” regardless of the wood species used. As Andersen recognizes, and even points out, Mr. Deaner tested pine, which has a Young’s modulus of 1.5 million, but the highest Young’s modulus that Deaner and his co-inventors actually achieved was about 1.1 to 1.2 million. Thus, even for pine, the patents do not teach how to reach the

---

> Q. Can you recall whether or not there was any successful compounding of this composite material using a wood fiber that had an aspect ratio of 20 or more?
> A. I don’t recall a successful of 20 or more.
> Q. But the claim, as we look at it, covers 2 and up, and perhaps as high as 20 or 30 or even more than that?
> A. Yes.

(April 6, 2005 Trans. at 323-24.)

"practical limit" that Deaner testified was 1.5 million. Andersen does not—and indeed cannot—address this argument. As shown, the claims are not enabled, no matter what.

**2. There Was Not Sufficient Evidence to Support the Jury's Finding that the Patents Were Not Invalid Pursuant to 35 U.S.C. § 102.**

Andersen also fails to refute Fiber Composites' showing that the Court should grant judgment as a matter of law that the '553 and '027 patents are invalid as anticipated by *Modern Plastics*. In its opposition brief, Andersen concedes that its only argument to the contrary at trial was that this prior art reference is not enabled. And, although Fiber Composites was not allowed to introduce its own expert's testimony on the enablement of the *Modern Plastics* reference, the substance of the testimony of Andersen's expert, Professor Simonsen, showed that the *Modern Plastics* article is enabled, as shown in Fiber Composites' moving brief. (April 8, 2005 Trans. at 922-24, 944-45.)

In addition, Andersen is wrong that *Amgen* does not support Fiber Composites' claim. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1385, 1354-55 (Fed. Cir. 2003). Although *Amgen* held that a prior art patent is presumed enabled, as Fiber Composites correctly represented in its moving brief, the Federal Circuit's footnote cited does provide strong support for finding that a prior art article is presumed enabled also. Although this footnote was not the Court's holding, it was a volunteered hint about the direction the appellate court is likely to move when presented with the issue. And even if this Court is not inclined to so rule before the Federal Circuit does so, *Amgen* offers additional support for Fiber Composites' Section 102 argument.

## II. Conclusion

For the reasons provided above and in its moving brief, Fiber Composites respectfully requests that the Court grant its renewed motion for judgment as a matter of law that the ’553 and ’027 patents are not infringed and are invalid.

Dated: July 15, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke

Katherine A. Moerke (#312277)
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 335-5070

John M. Skenyon
Michael E. Zeliger
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Tel.: (617) 542-5070
Fax: (617) 542-8906

Attorneys for Defendant
FIBER COMPOSITES, LLC.

60305395.doc