# EXHIBIT 6

MAIL ROOM JUN 6 1997 PAT. & TRADEMARK OFF.

9340.337USC2

PATENT

#11/C 6-25-97 DSW

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Deaner et al. Examiner: Gray, J.

Serial # : 08/543,959 Group Art Unit: 1317

Filed : March 4, 1997 Docket: 9340.337USC2

Title : ADVANCED ENGINEERING RESIN AND WOOD FIBER COMPOSITE

**AMENDMENT AND RESPONSE**

Assistant Commissioner for Patents
BOX AMENDMENT NO FEE
Washington, D.C. 20231

Dear Sir:

In response to the Action mailed March 4, 1997 Applicants' provide the following amendments and remarks.

In the Abstract

see Amd't A

Please delete page 1, line 28 through page 2, line 21 and insert the Abstract filed with the Response mailed August 15, 1996.

In the Field of the Invention

Please disregard the Amendment requested in the Response mailed August 16, 1996.

In the Detailed Description of the Invention

At page 12, line 8, before "1 to 5 mm" please insert --about--.

At page 12, line 8, before "1 to 10 mm" please insert --about--.

At page 17, line 19, before "2" please insert --about--.

In the Claims

1 31. A composite pellet, capable of formation into a structural member, the pellet comprising a thermoplastic extrudate having a length of about 1 to 10mm:

the thermoplastic consisting essentially of:

(a) about 45 to 70 wt-% of a polymer comprising vinyl chloride;

(b) about 30 to 50 wt-% of wood fiber having a minimum dimension of about 0.1 mm and a minimum aspect ratio of about 1.8; and

(c) less than about 8 wt-% water; and wherein the polymer and wood fiber are mixed at an elevated temperature and pressure such that an intimate admixture is formed in which the wood fiber is dispersed throughout a contiguous polymer phase and



38

wherein the composite has a Young's modulus greater than [about] 600,000 psi.

37. The composition of claim 32 wherein the polymer has a number average molecular weight (Mn) of about 90,000 ± 50,000.

38. The composition of claim 33 wherein the copolymer has a number average molecular weight (Mn) of about 88,000 ± 10,000.

11 42. A polymer and wood fiber composite capable of formation into a structural member, which composite comprises a thermoplastic linear extrudate composition, the thermoplastic consisting essentially of:

(a) about 45 to 70 wt-% of a polymer comprising vinyl chloride;

(b) about 30 to 50 wt-% of wood fiber having a minimum dimension of about 0.3 mm and an aspect ration of about 1.8;

(c) less than about 8 wt-% water; and wherein the polymer and the wood fiber are premixed at an elevated temperature and pressure such that an intimate admixture is formed in which the wood fiber is dispersed throughout a continuous polymer phase and wherein the composite has a Young's modulus greater than [about] 600,000 psi.



39

SUB D2

64

48. The composition of claim 45 wherein the polymer has a number average molecular weight (Mn) of about 95,000 ± 50,000.

49. The composition of claim 44 wherein the copolymer has a number average molecular weight (Mn) of about 88,000 ± 10,000.

21 ~~52~~. A composite composition, capable of extrusion into a dimensionally stable structural member, which composition comprises a thermoplastic material consisting essentially of:

C5

(a) about 40 to 70 wt-% of a polymer comprising vinyl chloride;

(b) about 30 to 50 wt-% of wood fiber having a minimum width of about 0.3 mm and a minimum length of about 0.54 mm and an aspect ration of greater than about 1.8;

(c) about 0.1 to 25 wt-% of an intentionally recycled impurity comprising thermoplastic polymer, an adhesive, a paint, a thermoplastic resin or mixtures thereof; and

(d) less than about 10 wt-% water; wherein the polymer and wood fiber are mixed at an elevated temperature and pressure such that an intimate admixture is formed in which the wood fiber is dispersed throughout a continuous polymer phase and wherein the composite has a Young's modulus greater than [about] 600,000 psi.



40

4B3
D3
CY

57. The composition of claim 53 wherein the polymer has a number average molecular weight (Mn) of about 95,000 ± 50,000.

58. The composition of claim 54 wherein the copolymer has a number average molecular weight (Mn) of about 88,000 ± 10,000.

REMARKS

Applicants' wish to thank you for the time and care taken in examining and acting on this application.

THE FORMAL REJECTIONS

Applicants' have amended the specification at pages 12 and 17, lines 8 and 19, respectively, inserting the term "about". Support for these amendments may be found in claims 1 and 9 as originally filed. Applicants' note that the Examiner has found that the specification is enabling for pellets having a length of 1 to 10mm, a radius of 1 to 5 mm, and an aspect ratio of 2 to 7.

There is no unpredictable difference in property for pellets having these proportions and pellets having the proportions of a length of about 1 to 10mm, a radius of about 1 to 5mm, and an aspect ratio of about 2 to 7.

Accordingly, this specification is enabling for the recited ranges.

Claims 31-40 and 42-60 have been amended to overcome the Examiner's concerns with regard to indefiniteness.

Favorable reconsideration is respectfully is requested.

Specifically, the term "about" has been deleted before the number "600,000".

Additionally, 37-38, 48-49, and 57-58 have been amended to recite that the molecular weights are number average molecular weight (Mn). Applicants' note that this limitation was already in these claims and are somewhat puzzled by the Examiner's objection given his clear understanding of the meaning of Mn as indicated in paragraph 1 the action to which this paper is responsive.

Favorable reconsideration is requested.

With regard to new matter, Applicants' note that the Geon Bulletin is evidence that the inventors had number average molecular weight (Mn) in mind when this patent application was filed. That the Geon publication lists both number average molecular weights and weight average molecular weights is irrelevant. That the Geon publication does report number average molecular weights is proof that the inventors knew the molecular

weights were number average molecular weights (Mn) when the application was filed.

Favorable reconsideration is respectfully requested.

THE ART REJECTION

Claims 31-40 and 42-60 have been rejected under 35 U.S.C. § 103(a) as unpatentable over Nishibori in view of Maldas or Sean.

Nishibori teaches a composition that comprises a thermoplastic resin such as polyvinyl chloride and a wood filler.

However, the Examiner's reliance on Nishibori overlooks Nishibori's use of a thermosetting resin such as a urea resin (See Nishibori at Col. 2, lines 7-14).

Nishibori teaches two methods of formulating an aggregate. In the first method, Nishibori forms a hardened aggregate with urea and wood chips or wood powder which is then ground into small particles prior to mixing with the thermoplastic.

The composite material described by Nishibori is not simply a composite of wood fiber and a thermoplastic. Rather Nishibori is a composite that consists of one phase which is a wood fiber/thermoset resin aggregate and a second phase which is a thermoplastic resin.

The second method disclosed by Nishibori includes pulverizing wood to a particle size of 100 mesh or more coating the "powder" with urea. The system is then combined with a thermoplastic.

In at least the second case, the wood "powder" is not a fiber. More importantly, in both cases, Nishibori coats the wood particle with a thermoset before mixing with a thermoplastic.

In contrast, the composites of the invention are wholly thermoplastic.

The recited invention is a resin and fiber composite thermoplastic pellet, a vinyl-styrene thermoplastic extrudate of specific width and length.

The extrudate has a continuous phase of thermoplastic engineering resin and wood fiber of specific dimension under conditions which provide an "intimate admixture" between the wood fibers and the continuous thermoplastic phase.

This intimate admixture between the thermoplastic and the wood fiber cannot be formed in the Nishibori composite because the thermosetting resin is combined with the wood prior to the combination of the resulting hardened aggregate with the thermoplastic. (See, for example, Nishibori at Col. 4, lines 61-

65; in heating and hardening the urea resin directly mixed with wood chips, the undiluted resin is to be sprayed on the wood chips of sufficiently fine particles).

Nishibori intends this heating and hardening process to provide an aggregate having extremely low surface resistance. (See Nishibori at Col. 3, lines 24-30). Nishibori produces the aggregate this way to improve the mixture uniformity and the affinity of the resinous material to mixing.

Nishibori uses a thermoset resin and Maldas does not focus on Young's modulus.

The Examiner apparently asserts that the use of "consisting essentially of" language does not distinguish the claimed invention from the prior art as Applicants' have not established the "basic and novel" characteristics of the invention.

The basic and novel characteristics of the invention are thermoplastic character and high structural strength; (See page 12 of the Response mailed August 15, 1996). One of skill in the art, having read Applicants' specification, would know and understand the meaning of thermoplastic character. Applicants' specification contains an extended discussion of the recited pellet material which includes explanation of the importance of

the thermoplastic character. For example page 9, lines 12-20 of the Specification discusses the flow of the polymer over the wood fiber.

Further, the Specification also has a substantial amount of data showing the physical properties of pellets covered by Applicants' claims; (See pages 24 through 30 and the discussion of Maldas).

Accordingly, Applicants' have shown the basic and novel characteristics of the invention which support the phrase consisting essentially of and distinguished the prior art.

The Examiner has also asserted that the Seethamraju Declaration has certain insufficiencies. Applicants' note that Tables 1 and 2 of this Declaration set forth back-to-back comparisons of the cited art. Nishibori, for example, mentions PVC resin at col. 1, lines 60-68, aggregate and concentration at col. and lines 16-20, and hardener and concentration at col. 3, lines 65-68. Sample preparation was conducted according to Nishibori; (See footnote 3 at page 10 of the Declaration).

The Examiner apparently relies upon Maldas and Sean as teaching that the physical and mechanical properties of similar composited may be optimized by varying the average fiber length.

The Examiner asserts that it would have been obvious to remove the plasticizer from Maldas.

Applicants' respectfully traverse the Examiner's contention. Maldas does nothing more than Nishibori. Specifically, Maldas formulates various wood fibers with polyvinyl chloride and a thermosetting coupler. The coupler is used to adhere the polyvinyl chloride to the wood fiber. There is no teaching in Maldas of applying polyvinyl chloride to wood fibers to form an intimate admixture.

The Examiner further states that it would have been obvious to remover the plasticizer to enhance mechanical strength. However, there is absolutely no objective teaching on the record which supports the Examiner's contention.

The Examiner uses Sean in a similar fashion. However, Sean uses polystyrene and not the recited copolymer. Sean tests the effect of aspect ration and fiber concentration on the physical properties of composites made of wood fiber and polystyrene. That Sean sorted the wood according to particle size provides no suggestion that any one particular size or aspect ratio would provide improved structural properties. Indeed, the conclusion of the Sean study is that <u>fiber aspect ratio has no strong effect</u>

on the tensile modulus of composites. (See, Sean at line 9 of the Abstract). Accordingly, Sean teaches against any specific preference of a given aspect ratio.

In view of these explicit statements, one cannot say that the Sean reference either alone or in combination with the other cited reference would lead one to the use of wood fibers having the particular dimensions specified in the claim.

Further, when compositions of Nishibori and Maldas (See the Seethamraju Declaration) were formulated in comparison to the recited invention, neither prior art teaching provided a system having comparable modulus, maximum load on strain, or maximum load on stress capabilities. All these properties need to be considered.

As a result, it is not apparent why one of skill in the art would be motivated to use the non-thermoplastic material of Maldas to formulate Applicants' recited thermoplastic resin-fiber composite in view of Nishibori and Maldas.

Further, the Examiner has not explained how these references provide any expectation that the thermoplastic materials of the claims would be useful as a successful structural material when

the prior art requires the addition of components that render the materials non-thermoplastic to obtain structural properties.

Favorable reconsideration is requested.

For all of the above reasons, the claimed pellets, composites, and compositions are not obvious over Nishibori, Maldas, and Sean alone or in any combination. The obviousness refection should be withdrawn.

Conclusion

Reconsideration and favorable action are respectfully requested. If any issues remain that the undersigned can help the Examiner resolve, he is invited to contact him at the telephone number listed below.

Respectfully submitted,

ANDERSEN CORPORATION

By Its Attorneys

6/4/97
Date

John J. Gresens
Reg. No. 33,112
MERCHANT, GOULD, SMITH, EDELL, WELTER & SCHMIDT, P.A.
1000 Norwest Center
55 East Fifth Street
St. Paul, Minnesota 55101-2701
Telephone: (612) 298-1055

MAIL ROOM
JUN 16 1997
U.S. PAT. & TRADEMARK OFF.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Deaner et al. | Examiner: | Gray, J. |
| Serial No.: | 08/543,959 | Group Art Unit: | 1317 |
| Filed: | March 4, 1997 | Docket: | 9340.337USC2 |
| Notice of Allow. Date: | | Batch No.: | |
| Due Date: | June 4, 1997 | | |
| Title: | ADVANCED ENGINEERING RESIN AND WOOD FIBER COMPOSITE | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this Transmittal Letter and the paper, as described hereinabove, are being deposited in the United States Postal Service, as first class mail, in an envelope addressed to: BOX NON FEE AMENDMENT Assistant Commissioner for Patents, Washington, D.C. 20231, on June 4, 1997.

By: John J. Gresens

BOX NON FEE AMENDMENT
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

We are transmitting herewith the attached:

- ☒ Transmittal Sheet in duplicate containing Certificate of Mailing
- ☒ Amendment
- ☒ Return postcard

Please consider this a PETITION FOR EXTENSION OF TIME for a sufficient number of months to enter these papers, if appropriate. Please charge any additional fees or credit overpayment to Deposit Account No. 13-2725. A duplicate of this sheet is enclosed.

MERCHANT, GOULD, SMITH, EDELL,
WELTER & SCHMIDT
3100 Norwest Center, Minneapolis, MN 55402
(612) 332-5300

By:
Name: John J. Gresens
Reg. No.: 33,112
JJG/jac