# EXHIBIT 7

MAIL ROOM
JUN 30 1995
PAT. & TRADEMARK OFF.

S/N 08/326,481 PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#7/C

Applicant: Michael J. Deaner et al. Examiner: P. Delaney

Serial # : ~~08/326,481~~ 08/587,828 Group Art Unit: 1513 7-27-95

Filed : October 20, 1994 Docket: 9340.337US02

Title : ADVANCED POLYMER WOOD COMPOSITE

RECEIVED JUL 22 1995

AMENDMENT AND RESPONSE

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

Please amend the application as follows:

In The Claims

31. (Once Amended) A composite thermoplastic pellet, capable of formation into a structural member, which pellet comprises a cylindrical extrudate having a radius of about 1 to 5 mm, a length of about 1 to 10 mm;

the thermoplastic pellet composition comprising:

(a) a continuous phase comprising a polymer comprising vinyl chloride;

(b) an effective amount of wood fiber having a minimum thickness of 0.1 mm [1 μm] and a minimum length of 1 mm [3 μm] and a minimum aspect ratio of about 1.8 to provide structural properties to the structural member; and

(c) less than about 8 wt-% water; and

wherein the wood fiber is dispersed throughout a continuous thermoplastic polymer phase, the pellet is a recyclable thermoplastic and the composite has a Young's modulus of at least 500,000 psi.

---

42. (Once Amended) A polymer and wood fiber thermoplastic composite capable of formation into a structural member, which composite comprises a cylindrical linear extrudate having a radius of about 1 to 5 mm; the linear thermoplastic extrudate composition comprising:

(a) a continuous phase comprising a [polymer comprising] polyvinyl chloride;

(b) an effective amount of wood fiber having a minimum thickness of 0.1[1] mm and a minimum length of 1 [3] mm and an aspect ratio of about 1.8 effective to provide structural properties to a composite;

(c) less than about 8 wt-% water; and

wherein the wood fiber is dispersed throughout a continuous thermoplastic polymer phase, the pellet is a recyclable thermoplastic and the composite has a Young's modulus of at least 500,000 psi.

---

52. (Once Amended) A thermoplastic composite composition, capable of extrusion into a dimensionally stable structural member, which thermoplastic composition comprises:

(a) a continuous phase comprising a polymer comprising vinyl chloride;

(b) an effective amount of wood fiber having a minimum width of 0.3 mm and a minimum length of 1 mm and an aspect ratio of greater than about 1.8 to provide structural properties to the composite;

(c) about 0.01 to 25 wt-% of an intentionally recycled impurity comprising thermoplastic polymer, an adhesive, a paint, a thermoplastic resin or mixtures thereof; and

(d) less than about 10 wt-% water;

wherein the wood fiber is dispersed throughout the continuous thermoplastic polymer phase, the pellet is a recyclable thermoplastic and the composite has a Young's modulus of at least 500,000 psi.

Remarks

The Examiner questions the particle size recited in the claims. Applicants apologize for the confusion. Applicants point out that the claims have been amended to conform to the specification. The correct fiber dimensions are shown in the specification on page 17, lines 10-19. No new matter is added by the amendment.

The Examiner questions the terms "alloy" or "cladding" of PVC. Polymer alloys are well known compositions containing two or more polymers that form a single phase composition. An alloy is more than a mere mixture and is a uniform composite. Typical mixtures contain a dispersion of one polymer in a continuous phase of another wherein the polymer materials maintain separate identities. In an alloy, the entire material has a consistent property and individual regions of polymer cannot be identified as belonging to one or the other materials in the alloy. Alloy technology is well understood and certain alloys of polyvinyl chloride are well characterized.

Regarding the term "cladding", in the preparation of, for example, PERMASHIELD® brand windows manufactured using the Zanini technology in U.S. Patent Nos. 2,926,729 and 3,432,885 (see IDS for copies), a polyvinyl chloride cladding is formed around a wood window member. The cladding is an extruded hollow envelope surrounding and containing the wood member for window manufacture. Claim 41, for example, recites that the polyvinyl chloride is in part waste derived from members with a polyvinyl chloride cladding. Another type of cladding is known. Hartley et al., U.S. Patent No. 5,284,710 and Grunewalder et al., U.S. Patent No. 5,322,899 each teach forming a capstock layer on an extruded profile (copies of Hartley et al. and Grunewalder et al. are attached). Such an extruded capstock layer can also be considered a cladding material.

Returning now to the Examiner's Action, the Examiner objected to the amendment filed February 9, 1995 and rejected claims under 35 U.S.C. § 112 arguing that the characterization of the molecular weight as a number average molecular weight ($M_n$) is not supported. Applicants respectfully traverse the rejection.

The Examiner's attention is directed to the product literature relating to the GEON® polyvinyl chloride resin material. In the product brochure, the materials used in the disclosure are shown. The molecular weights disclosed for the material are characterized as number average molecular weights. Applicants assert that this material is known to have the appropriate number average molecular weights disclosed in the application. Clear support for the amendment is found in this publication.

The Examiner has rejected claims 31-60 under 35 U.S.C. § 103 over Nishibori, U.S. Patent No. 4,505,869, alone or in view of Maldas (The Journal of Vinyl Technology) or Sean, Chemical Abstract No. 118:193873. Applicants respectfully traverse the rejection.

The particle size in both Nishibori and Maldas are substantially below the particle size claimed. The Nishibori particle size is less than 0.15 mm (100 mesh)[1] preferably less than 0.1 mm (150 mesh). The Maldas particle size is less than about 0.3 mm (50 mesh). The particle size is a critical aspect

---

[1] Please note as Mesh Number increases, the particle size decreases.

of the invention. The particle size and aspect ratio provide, in combination with the PVC polymer, substantial mechanical strength to the material. Modifying Maldas and Nishibori to obtain high mechanical properties from the particle size is not obvious. Both Maldas and Nishibori look to other aspects of composite technology to obtain high structural properties.

The claims have been amended to clearly distinguish Nishibori and Maldas from the claimed invention. The invention resides in a material that is a thermoplastic pellet. The thermoplastic pellet can be used to make structural members for, for example, windows or door manufacture. The claimed pellet is thermoplastic and can be introduced into an extruder to manufacture such structural members. Further, the structural member after extrusion is also recyclable. Scrap generated during window or door manufacture can be immediately recycled. The windows after removal at the end of their useful life can be disassembled and recycled.

Both Nishibori and Maldas teach a very different technology. Depending on the proportion of urea-formaldehyde or isocyanate material used, the Nishibori and Maldas materials are likely to be substantially thermosetting. Such thermosetting materials have little or no utility in recycle technology where the material must remain thermoplastic to be melt processed into new structures. Further, Nishibori and Maldas appear to obtain substantial properties from the presence of the isocyanate or urea formaldehyde materials. Any reduction in the use of urea

formaldehyde or isocyanate crosslinking agent (or their complete avoidance) is not obvious in view of the clear teachings on Nishibori and Maldas.

Sean is irrelevant because it teaches a polystyrene fiber composite that cannot contain a substantial water content. Polystyrene processes very poorly with water in the mix.

Lastly, none of this prior art teaches the manufacture of a pellet intermediate between mixing the polyvinyl chloride and wood fiber and the final manufacture of a finished composite member. The manufacture of the pellet intermediate in this process, provides the opportunity to obtain an intimate mixing of a thermoplastic and fiber. The manufacture of the pellet is important in obtaining the final structural properties of the composite member. The work introduced into the material causes in part the conditions of temperature and pressure during mixing prior to pellet extrusion results in the introduction of the polymer material into the internal volume of the cells of the fiber. Accordingly, the elements of the claim cooperate to provide an engineering material having substantially improved structural properties over the prior art. Based on this prior art, the skilled artisan would:

(1) select a particle size substantially smaller than selected by the Applicant;

(2) use some proportion of a thermosetting agent to crosslink the material;

(3) avoid manufacture of a pellet intermediate material; and

(4) would obtain a relatively low modulus, typically less than about 300,000.

The skilled artisan would not select Applicants claimed elements. The Examiner admits that there are differences between Nishibori, Maldas and the invention. The Examiner argues that the invention still appears obvious. Even though Applicants are claiming ranges not disclosed and not preferred by either Maldas or Nishibori, the Examiner appears to argue that the claimed invention is obvious without surprising results.

Applicants assert that the modulus obtained for the material is surprising. Applicants assert that modulus obtained in the prior art is likely to be less than 300,000 psi. Applicants assert that the combination of the selection of polyvinyl chloride, the critical selection of particle size and aspect ratio, the water content and preparation of the pellet by ensuring that the polymer wets and penetrates the fiber and the fiber pores, results in a structural material with mechanical properties significantly superior to the prior art materials. Applicants assert that surprising results are demonstrated in the case.

Applicants assert that the amendments to the claims in combination with the discussion of the differences between the invention and the prior art clearly demonstrate the non-obviousness of the invention. Applicants respectfully request the Examiner to pass these claims to allowance. Both Nishibori and Maldas teach a very different technology.

Applicants assert that the amendments to the claims in combination with the discussion of the differences between the invention and the prior art clearly demonstrate the non-obviousness of the invention. Applicants respectfully request the Examiner to pass these claims to allowance.

Respectfully submitted,

27 Jun 95
Date

Mark DiPietro

Mark DiPietro
Reg. No. 28,707
MERCHANT, GOULD, SMITH, EDELL,
WELTER & SCHMIDT, P.A.
1000 Norwest Center
St. Paul, Minnesota 55101-2701
Telephone: (612) 298-1055

Attachment: The GEON Company Product Literature
Hartley et al., U.S. Patent No. 5,284,710
Grunewalder et al., U.S. Patent No. 5,322,899