# EXHIBIT 8

OIPE 70932 AUG 1 1997 PATENT & TRADEMARK OFFICE

9340.337USF1 PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#21 D.G.J. 9/17/97 (NE)

| | | | |
|---|---|---|---|
| Applicant: | Deaner et al. | Examiner: | P. Delaney |
| Serial No.: | 08/587,828 | Group Art Unit: | 1811 |
| Filed: | January 11, 1996 | Docket No.: | 9340.337USF1 |
| Title: | ADVANCED WOOD POLYMER COMPOSITE | | |

**AMENDMENT AND RESPONSE**

Assistant Commissioner for Patents
BOX AMENDMENT NO FEE
Washington, D.C. 20231

Dear Sir:

In response to the Action mailed May 13, 1997 Applicants' provide the following and remarks. With this response Applicant's enclose a Notice of Appeal from the Examiner's Final Rejection and a copy of the Maldas article, pages 90-99.

REMARKS

Applicants' wish to thank the Examiner for the time and care taken in examining and acting on this application. Applicants' wish to also thank the Examiner for withdrawing the formal rejection under 35 U.S.C. § 112, second paragraph.

The Examiner has apparently maintained the rejection of claims 31 through 40 and 42 through 60 under 35 U.S.C. § 103 as being unpatentable over either Nishibori alone, or in view of Maldas or Sean. Applicants' respectfully traverse this rejection to the extent that it is maintained.

The Examiner has also apparently maintained rejection of claims 31 through 40 and 42 through 60 under 35 U.S.C. § 103 as being unpatentable over either Maldas alone or Nishibori or Sean, taken further in view of Hawley's Chemical Dictionary defining "plasticizer". Applicants' respectfully traverse this rejection to the extent that it is maintained.

The Examiner has also apparently maintained the rejection of claims 31 through 40 and 42 through 60 under 35 U.S.C. § 103 as being patentable over either Sean alone or in view of Nishibori or Maldas taken further in view of Hawley's Chemical Dictionary defining "polystyrene" and "polyvinyl chloride". Applicants' respectfully traverse this rejection to the extent that it is maintained.

Favorable consideration of the claims is respectfully request.

<u>THE ART REJECTIONS</u>

The rejections will now be entertained in turn.

<u>A. The rejection based upon Nishibori/Maldas/Sean</u>.

Applicant's have traversed the Examiner's rejection of the claims over Nishibori alone, or in view of Maldas or Sean. The Examiner asserts that the claimed invention is prima facie obvious based upon the disclosure of the cited publications. Applicant's respectfully traverse this assertion. In summary, the basis for this traversal is Nishibori's required use of a thermosetting resin, (as well as the manner in which it is used), and the failure of Maldas and Sean to cure this deficiency in teaching. Simply put, the references do not teach the invention.

Nishibori teaches a composition that comprises a thermoplastic resin such as polyvinyl chloride and a wood filler. However, the Examiner's reliance on Nishibori overlooks Nishibori's use of <u>a thermosetting resin</u> such as a urea resin (See Nishibori at Col. 2, lines 7-14).

Nishibori teaches a composition that comprises a thermoplastic resin such as polyvinyl chloride and a wood filler. However, the Examiner's reliance on Nishibori overlooks Nishibori's use of a thermosetting resin such as a urea resin (See Nishibori at Col. 2, lines 7-14).

Nishibori teaches two methods of formulating an aggregate. In the first method, Nishibori forms a hardened aggregate with urea and wood chips or wood powder which is then ground into small particles prior to mixing with the thermoplastic.

The composite material described by Nishibori is not simply a composite of wood fiber and a thermoplastic. Rather Nishibori is a composite that consists of one phase which is a wood fiber/thermoset resin aggregate and a second phase which is a thermoplastic resin.

The second method disclosed by Nishibori includes pulverizing wood to a particle size of 100 mesh or more coating the "powder" with urea. The system is then combined with a thermoplastic.

In at least the second case, the wood "powder" is not a fiber. More importantly, in both cases, Nishibori coats the wood particle with a thermoset before mixing with a thermoplastic.

In contrast, the claimed composites of the invention are wholly thermoplastic.

The recited invention is a composite thermoplastic pellet.

The pellet has a continuous phase of thermoplastic vinyl chloride and wood fiber of specific dimension under conditions which provide an "intimate admixture" between the wood fibers and the continuous thermoplastic phase.

This intimate admixture between the thermoplastic and the wood fiber cannot be formed in the Nishibori composite because the thermosetting resin is combined with the wood prior to the combination of the resulting hardened aggregate with the thermoplastic. (See, for example,

Nishibori at Col. 4. lines 61-65; in heating and hardening the urea resin directly mixed with wood chips, the undiluted resin is to be sprayed on the wood chips of sufficiently fine particles).

Nishibori intends this heating and hardening process to provide an aggregate having extremely low surface resistance. (See Nishibori at Col. 3, lines 24-30). Nishibori produces the aggregate this way to improve the moisture uniformity and the affinity of the resinous material to mixing. Simply put, Nishibori does not teach the claimed invention.

The Examiner apparently relies upon Maldas and Sean as teaching that the physical and mechanical properties of similar composited may be optimized by varying the average fiber length.

The Examiner has asserted that Maldas is not limited to plasticizer systems. However, the Examiner has provided no support for this contention.

Maldas does nothing more than Nishibori. Specifically, Maldas formulates various wood fibers with polyvinyl chloride and a thermosetting coupler. The coupler is used to adhere the polyvinyl chloride to the wood fiber. There is no teaching in Maldas of applying polyvinyl chloride to wood fibers to form an intimate admixture.

The Examiner further states that Maldas is not limited to compositions which include a plasticizer. However, the Examiner provides no support for his contention.

The Examiner uses Sean in a similar fashion. However, Sean uses polystyrene and not the recited vinyl chloride. The Examiner apparently asserts that Nishibori teaches substitution of polystyrene and vinyl chloride, (Office Action of 5/13/97 at page 4). However, Applicant's fail to find any support for this contention. Rather, Applicant's note Nishibori's preference of vinyl chloride and use of a <u>thermoset</u> resin which Sean does not speak to.

system having comparable modulus, maximum load on strain, or maximum load on stress capabilities. All these properties need to be considered.

As a result, it is not apparent why one of skill in the art would be motivated to use the non-thermoplastic material of Maldas to formulate Applicants' recited thermoplastic resin-fiber composite in view of Nishibori and Maldas.

Further, the Examiner has not explained how these references provide any expectation that the thermoplastic materials of the claims would be useful as a successful structural material when the prior art requires the addition of components that render the materials non-thermoplastic to obtain structural properties.

The Examiner apparently asserts that the use of "consisting essentially of" language does not distinguish the claimed invention from the prior art as Applicants' have not established the "basic and novel" characteristics of the invention are thermoplastic character and high structural strength; (See page 4 of the Response mailed May 13, 1997). One of skill in the art, having read Applicants' specification, would know and understand the meaning of thermoplastic character. Applicants' specification contains an extended discussion of the recited pellet material which includes explanation of the importance of the thermoplastic character. For example page 9, lines 12-20 of the Specification discusses the flow of the polymer over the wood fiber.

The Specification also has a substantial amount of data showing the physical properties of pellets covered by Applicants' claims; (See pages 24-30 and the discussion of Maldas).

Accordingly, Applicants' have shown the basic and novel characteristics of the invention which support the phrase "consisting essentially of" and distinguished the prior art.

Accordingly, Applicants' have shown the basic and novel characteristics of the invention which support the phrase "consisting essentially of" and distinguished the prior art.

The Examiner has also asserted that the Seethamraju Declaration has certain insufficiencies. Applicants' note that Tables 1 and 2 of this Declaration set forth back-to-back comparisons of the cited art. Nishibori, for example, mentions PVC resin at Col. 1, lines 60-68, aggregate and concentration at Col. and lines 16-20, and hardener and concentration at Col. 3, lines 65-68. Sample preparation was conducted according to Nishibori; (See footnote 3 at page 10 of the Declaration).

Favorable reconsideration is requested.

For all of the above reasons, the claimed pellets, composites, and compositions are not obvious over Nishibori, Maldas, and Sean alone or taken in any combination. The obviousness rejection should be withdrawn.

B. The Rejection Based Upon Maldus/Nishibori/Sean and Hawley's (Plasticizer)

Each of Maldas, Nishibori and Sean have been distinguished above. Hawley's Chemical dictionary is cited as defining the term "plasticizer". The Examiner states that Hawley's discloses the known function of plasticizers as additives to facilitate processing and to increase the flexibility and toughness of the final product on page 4 of the final office action mailed May 13, 1997. Applicants' traverse this assertion.

Granted Hawley's provides a definition of the term "plasticizer". However, Hawley's adds nothing to the rejection as it does not teach the amount, type or quality of plasticizer which may be used in making the composite of the invention.

In fact, the definition relied on by the Examiner and Hawley's is devoid of any teaching other than the "known function of plasticizers" as the Examiner has asserted.

Accordingly, the Examiner has not added anything to the rejection by the citation of Hawley.

Favorable reconsideration is respectfully requested.

C. The Rejection Based Upon Sean/Nishibori/Maldus/Hawley polystyrene and polyvinylchloride

Similarly, the Examiner has not added anything to the rejection by this additional citation of Hawley's definition of "polystyrene" and "polyvinychloride". Hereagain, the definition of these two terms does not provide for a teaching of amounts of types of plasticizers.

In fact, the definitions relied on by the Examiner are devoid of these terms.

Accordingly, favorable reconsideration is respectfully requested.

Conclusion

Reconsideration and favorable action are respectfully requested. If any issues remain that

the undersigned can help the Examiner resolve, he is invited to contact him at the telephone number listed below.

Respectfully submitted,

ANDERSEN CORPORATION

By Its Attorneys

Date: August 8, 1997

John J. Giesens
Reg. No. 33,112
MERCHANT, GOULD, SMITH, EDELL,
WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402-4131
(612) 332-5300