# EXHIBIT 9

#28/Response
09/04/98

IPE JC57 AUG 25 1998 PATENT & TRADEMARK OFFICE

9340.337USF2

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Deaner et al. | Examiner: | P. Delaney |
| Serial No.: | 08/969,686 | Group Art Unit: | 1654 |
| Filed: | November 13, 1997 | Docket No.: | 9340.337USF2 |
| Title: | ADVANCED WOOD POLYMER COMPOSITE | | |

CERTIFICATE UNDER 37 CFR 1.8: The undersigned hereby certifies that this correspondence is being deposited in the United States Postal Service, as first class mail, with sufficient postage, in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on August 20, 1998.

By: [signature]
Name: John J. Gresens

**RESPONSE**

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

In response to the Action mailed February 24, 1998, Applicants provide the following remarks.

**REMARKS**

Applicants wish to thank the Examiner for the time and care taken in examining and acting on this application.

The Examiner has apparently maintained the rejection of claims 31 through 40 and 42 through 60 under 35 U.S.C. § 103 as being unpatentable over either Nishibori alone, or in view of Maldas or Sean. Applicants' respectfully traverse this rejection.

The Examiner has also apparently maintained rejection of claims 31 through 40 and 42 through 60 under 35 U.S.C. § 103 as being unpatentable over either Maldas alone or Nishibori or

Sean, taken further in view of Hawley's Chemical Dictionary defining "plasticizer". Applicants' respectfully traverse this rejection.

The Examiner has also apparently maintained the rejection of claims 31 through 40 and 42 through 60 under 35 U.S.C. § 103 as being patentable over either Sean alone or in view of Nishibori or Maldas taken further in view of Hawley's Chemical Dictionary defining "polystyrene" and "polyvinyl chloride". Applicants' respectfully traverse this rejection.

Favorable consideration of the claims is respectfully request.

THE ART REJECTIONS

The rejections will be entertained in turn.

**A. The rejection based upon Nishibori/Maldas/Sean**

Applicant's have traversed the Examiner's rejection of the claims over Nishibori alone, or in view of Maldas or Sean. The Examiner asserts that the claimed invention is prima facie obvious based upon the disclosure of the cited publications. Applicant's respectfully traverse this assertion. In summary, the basis for this traversal is Nishibori's required use of a thermosetting resin, (as well as the manner in which it is used), and the failure of Maldas and Sean to cure this deficiency in teaching. Simply put, the references do not teach the invention.

Nishibori teaches a composition that comprises a thermoplastic resin such as polyvinyl chloride and an aggregate of wood filler and thermosetting resin. The Examiner's reliance on Nishibori overlooks Nishibori's use of a thermosetting resin such as a urea resin (See Nishibori at Col. 2, lines 7-14). The inclusion of the thermosetting resin materially affects the basic and novel characteristics of the claimed composition.

Nishibori teaches two methods of formulating the aggregate. In the first method, Nishibori forms a hardened aggregate with urea and wood chips or wood powder which is then ground into small particles prior to mixing with the thermoplastic.

The composite material described by Nishibori is not simply a composite of wood fiber and a thermoplastic. Rather Nishibori is a composite that consists of one phase which is a wood fiber/thermoset resin aggregate and a second phase which is a thermoplastic resin.

The second method disclosed by Nishibori includes pulverizing wood to a particle size of 100 mesh or smaller, and coating the "powder" with urea. The system is then combined with a thermoplastic.

In at least the second case, the wood "powder" is not a fiber. More importantly, in both cases, Nishibori coats the wood particle with a thermoset before mixing with a thermoplastic.

In contrast, the claimed composites of the invention are wholly thermoplastic. The recited invention is a composite thermoplastic pellet. The pellet has a continuous phase of thermoplastic vinyl chloride and wood fiber of specific dimension under conditions which provide an "intimate admixture" between the wood fibers and the continuous thermoplastic phase. The intimate admixture between thermoplastic and wood fiber required by the instant claims cannot be attained be following the teachings of Nishibori.

This intimate admixture between the thermoplastic and the wood fiber cannot be formed in the Nishibori composite because the thermosetting resin is combined with the wood prior to the combination of the resulting hardened aggregate with the thermoplastic. (See, for example, Nishibori at Col. 4, lines 61-65; in heating and hardening the urea resin directly mixed with wood chips, the undiluted resin is to be sprayed on the wood chips of sufficiently fine particles).

Nishibori intends this heating and hardening process to provide an aggregate having extremely low surface resistance. (See Nishibori at Col. 3, lines 24-30). Nishibori produces the aggregate this way to improve the moisture uniformity and the affinity of the resinous material to mixing.

Further, Nishibori discloses wood fiber no larger than 100 mesh. In contrast, the invention claims wood fiber no smaller than 50 mesh. Simply put, Nishibori does not teach the claimed invention.

The Examiner apparently relies upon Maldas and Sean as teaching that the physical and mechanical properties of similar composites may be optimized by varying the average fiber length.

Maldas does nothing more than Nishibori. Specifically, Maldas formulates various wood fibers with polyvinyl chloride, a plasticizer and a thermosetting coupler. The coupler is used to adhere the polyvinyl chloride to the wood fiber. There is no teaching in Maldas of applying only polyvinyl chloride to wood fibers to form an intimate admixture.

Maldas contains at least 20 % plasticizer. Plasticizers are know to have detrimental effects on the structural properties of any composite materials as is stated in paragraph 7 of the Seethamraju Declaration. The Examiner asserts that Maldas is not limited to plasticizer systems. However, the Examiner has provided no support for this contention.

The Examiner uses Sean in a similar fashion. However, Sean uses polystyrene and not the recited copolymer. Sean tests the effect of aspect ratio and fiber concentration on the physical properties of composites made of wood fiber and polystyrene. That Sean sorted the wood according to particle size provides no suggestion that any one particular size or aspect ratio would provide improved structural properties. Indeed, the conclusion of the Sean study is that

fiber aspect ratio has no strong effect on the tensile modulus of composites. (See, Sean at line 9 of the Abstract). Accordingly, Sean teaches against any specific preference of a given aspect ratio.

In view of these explicit statements, one cannot say that the Sean reference either alone or in combination with the other cited reference would lead one to the use of wood fibers having the particular dimensions specified in the claim.

Further, when compositions of Nishibori and Maldas (See the Seethamraju Declaration) were formulated in comparison to the recited invention, neither prior art teaching provided a system having comparable modulus, maximum load on strain, or maximum load on stress capabilities. All these properties need to be considered.

As a result, it is not apparent why one of skill in the art would be motivated to use the non-thermoplastic material of Maldas to formulate Applicants' recited thermoplastic resin-fiber composite in view of Nishibori and Maldas.

Further, the Examiner has not explained how these references provide any expectation that the thermoplastic materials of the claims would be useful as a successful structural material when the prior art requires the addition of components that render the materials <u>non-thermoplastic</u> to obtain structural properties.

The Examiner apparently asserts that the use of "consisting essentially of" language does not distinguish the claimed invention from the prior art as Applicants' have not established the "basic and novel" characteristics of the invention are thermoplastic character and high structural strength; (See page 6 of the Response mailed February 24, 1998). One of skill in the art, having read Applicants' specification, would know and understand the meaning of thermoplastic character. Applicants' specification contains an extended discussion of the recited pellet material

which includes explanation of the importance of the thermoplastic character. For example page 9, lines 12-20 of the Specification discusses the flow of the polymer over the wood fiber.

The Specification also has a substantial amount of data showing the physical properties of pellets covered by Applicants' claims; (See pages 24-30 and the discussion of Maldas).

Accordingly, Applicants' have shown the basic and novel characteristics of the invention which support the phrase "consisting essentially of" and distinguished the prior art.

The Examiner asserts that the Seethamraju Declaration has certain insufficiencies. The Examiner states that there is no reasonable basis for the amounts of thermoset urea and hardener used in the comparative examples. The Examiner asserts that a reasonable amount of less than 1% should be assumed according to the Maldas reference. However, the Maldas composition contains over 20% plasticizer. In the meantime, the Maldas composition is quite different than Nishibori. The Examiner's speculation has no reasonable basis and is further evidence of the lack of combinability of the references and the unobviousness of the invention.

The Examiner's criticisms of this Declaration are not well taken. Contrary to the statement in the second paragraph on page 7 of the Office Action, Nishibori explicitly teaches that encapsulation of the wood fibers with urea is done prior to mixing with the matrix PVC. Further, there is basis for the amounts of thermoset urea hardener used in the representative Nishibori compositions. The reference teaches that the amount must be sufficient to harden the wood and provide a hard aggregate. The amounts used in the declaration are sufficient to do that. Nothing requires applicants to make a showing using proportions for different materials disclosed by Maldas. Such a combination is not taught by either reference, and applicants are not obliged to make a showing against embodiments that are not taught in the prior art. The fact that the claimed compositions, which are thermoplastic composites, have properties that are superior

to those in either of the referenced composites, which have been given thermosetting properties in order to improve their structural properties, is unexpected. The Examiner's refusal to consider the showing of evidence of unobviousness is in error.

Applicants' note that Tables 1 and 2 of this Declaration set forth back-to-back comparisons of the cited art. Nishibori, for example, mentions PVC resin at Col. 1, lines 66-68, aggregate concentration at Col. 4, lines 16-20, and hardener concentration at Col. 3, lines 65-68. Sample preparation was conducted according to Nishibori; (See footnote 3 at page 10 of the Declaration).

Favorable reconsideration is requested.

For all of the above reasons, the claimed pellets, composites, and compositions are not obvious over Nishibori, Maldas, and Sean alone or taken in any combination. The obviousness rejection should be withdrawn.

**B. The Rejection Based Upon Maldus/Nishibori/Sean and Hawley's (Plasticizer)**

Each of Maldas, Nishibori and Sean have been distinguished above. Hawley's Chemical dictionary is cited as defining the term "plasticizer". The Examiner states that Hawley's discloses the known function of plasticizers as additives to facilitate processing and to increase the flexibility and toughness of the final product on page 5 of the office action mailed February 24, 1998. Applicants' traverse this assertion.

Hawley's provides a definition of the term "plasticizer". However, Hawley's adds nothing to the rejection as it does not teach the amount, type or quality of plasticizer which may be used in making the composite of the invention.

The definition relied on by the Examiner and Hawley's is devoid of any teaching other than the "known function of plasticizers" as the Examiner has asserted. In fact, the Examiner's

statements regarding plasticizers support unobviousness. The Examiner states "[t]o achieve such results [flexibility and toughness] other properties [modulus] must be sacrificed." Modulus is the claimed basic and novel characteristic of the invention. The invention is a structural member. As shown by the Examiner's own statements, the addition of a plasticizer results in the basic and novel characteristic of the invention being "sacrificed".

Accordingly, the Examiner has not added anything to the rejection and actually strengthened the invention's unobviousness by the citation of Hawley.

Favorable reconsideration is respectfully requested.

**C. The Rejection Based Upon Sean/Nishibori/Maldus/Hawley polystyrene and polyvinylchloride**

Similarly, the Examiner has not added anything to the rejection by this additional citation of Hawley's definition of "polystyrene" and "polyvinychloride". Here again, the definition of these two terms does not provide for a teaching of amounts of types of plasticizers.

In fact, the definitions relied on by the Examiner are devoid of these terms.

Accordingly, favorable reconsideration is respectfully requested.

**Conclusion**

Reconsideration and favorable action are respectfully requested. If any issues remain that the undersigned can help the Examiner resolve, he is invited to contact him at the telephone number listed below.

Respectfully submitted,

ANDERSEN CORPORATION

By Its Attorneys

Date: Aug. 20, 1998

John J. Gresens
Reg. No. 33,112
MERCHANT, GOULD, SMITH, EDELL,
WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402-4131
(612) 332-5300

# MERCHANT & GOULD

3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402-4131

FAX RECEIVED
NOV 0 6 1998
GROUP 1600

**FAX TRANSMISSION**

Time:

TO: Assistant Commissioner for Patents
Attn: Examiner P. Delaney
Patent Examining Corps
Facsimile Center
Washington, D.C. 20231

FROM: John J. Gresens

OUR REF: 9340.337USF2
TELEPHONE: (703) 308-4324

Total pages, including cover letter: 6

**PTO FAX NUMBER** 1-703-308-4556

If you do NOT receive all of the pages, please telephone us at 612/371-5265, or fax us at 612/332-9081.

Title of Document Transmitted: PRELIMINARY AMENDMENT

| | |
|---|---|
| Applicant: | Deaner et al. |
| Serial No.: | 08/969,686 |
| Filed: | November 13, 1997 |
| Group Art Unit: | 1654 |
| Our Ref. No.: | 9340.337USF2 |

Please charge any additional fees or credit overpayment to Deposit Account No. 13-2725.

By: [signature]
Name: John J. Gresens
Reg. No.: 33,112

I hereby certify that this paper is being transmitted by facsimile to the U.S. Patent and Trademark Office on the date shown below.

November 5, 1998

[signature]
Signature

Nov. 5, 1998
Date

GEN033.DOT

FROM MERCHANT & GOULD MPLS 612 332 71 (THU)11. 5'98 15:55/ST. 54/NO. 4261404944 P 2
FAX RECEIVED
NOV 0 6 1998
GROUP 1600

9340.337USF2

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant: | Deaner et al. | Examiner: | P. Delaney |
| Serial No.: | 08/969,686 | Group Art Unit: | 1654 |
| Filed: | November 13, 1997 | Docket No.: | 9340.337USF2 |
| Title: | ADVANCED WOOD POLYMER COMPOSITE | | |

**SUPPLEMENTAL AMENDMENT**

Assistant Commissioner for Patents
Washington, D.C. 20231

Dear Sir:

In view of the interview with Examiner Patrick Delaney on November 5, 1998, Applicants provide the folowing amendments and remarks.

**Amendments**

Please cancel claims 32 and 43 without prejudice.

Please amend the claims as follows:

31. (Once amended) A composite thermoplastic pellet, capable of formation into a structural member, which pellet consists essentially of a thermoplastic cylindrical extrudate having a width of about 1 to 5 mm, a length of about 1 to 10 mm;

the thermoplastic pellet composition consisting essentially of:

(a) a continuous phase comprising a polyvinyl chloride homopolymer [comprising vinyl chloride];

(b) an effective amount of wood fiber having a minimum thickness of 0.1 mm and a minimum aspect ratio of about 1.8 to provide structural properties to the structural member; and

(c) less than about 8 wt-% water; and

wherein the polyvinyl chloride homopolymer and wood fiber are mixed at elevated temperature and pressure such that an intimate admixture is formed and the wood fiber is dispersed throughout a continuous polyvinyl chloride homopolymer phase and the composite has a Young's modulus of at least about 600,000 psi.

33. (Once amended) The pellet of claim 31 wherein the polyvinyl chloride homopolymer additionally comprises a polyvinyl chloride polymer alloy.

37. (Once amended) The pellet of claim [32] 31 wherein the polyvinyl chloride homopolymer has a molecular weight of about 90,000 ± 50,000.

38. (Once amended) The pellet of claim [32] 31 wherein the polyvinyl chloride homopolymer comprises a copolymer having a molecular weight of about 88,000 ± 10,000.

42. (Once amended) A polymer and wood fiber thermoplastic composite capable of formation into a structural member, which composite consists essentially of a thermoplastic cylindrical linear extrudate having a radius of about 1 to 5 mm; the linear thermoplastic extrudate composition consisting essentially of:

(a) a continuous phase comprising a polyvinyl chloride homopolymer;

(b) an effective amount of wood fiber having a minimum thickness of 0.1 mm and an aspect ratio of about 1.8 to provide structural properties to a composite;

(c) less than about 8 wt-% water; and

wherein the polyvinyl chloride homopolymer and wood fiber are mixed at elevated temperature and pressure such that an intimate admixture is formed and the wood fiber is dispersed throughout a continuous phase and the composite has a Young's modulus of at least about 600,000 psi.

44. (Once amended) The composite of claim 42 wherein the polyvinyl chloride homopolymer additionally comprises a polyvinyl chloride polymer alloy.

48. (Once amended) The composite of claim 42 wherein the polyvinyl chloride homopolymer has a molecular weight of about 95,000 ± 50,000.

49. (Once amended) The composite of claim 42 wherein the polyvinyl chloride homopolymer comprises a copolymer has a molecular weight of about 88,000 ± 10,000.

52. (Once Amended) A thermoplastic composite composition, capable of extrusion into a dimensionally stable structural member, which consists essentially of a thermoplastic composition which comprises:

(a) a continuous phase comprising a polyvinyl chloride homopolymer [comprising vinyl chloride];

(b) an effective amount of wood fiber having a minimum width of 0.1 mm and an aspect ratio of greater than about 1.8 to provide structural properties to the composite;

(c) about 0.01 to 25 wt-% of an intentionally recycled impurity comprising thermoplastic polymer, an adhesive, a paint, a thermoplastic resin or mixtures thereof; and

(d) less than about 10 wt-% water;

wherein the polyvinyl chloride homopolymer and wood fiber are mixed at elevated temperature and pressure such that an intimate admixture is formed and the wood fiber is dispersed throughout the continuous thermoplastic polyvinyl chloride homopolymer phase and the composite has a Young's modulus of at least about 600,000 psi.

*Serial No. 08/969,686* ***Response***

**Conclusion**

Applicants wish to thank Examiner Patrick Delaney for the time and consideration given in interviewing the above-referenced continuation application with Applicants' representatives, John Gresens and Brian Whipps on November 5, 1998. During the interview the art rejections and references were discussed. Mr. Delaney concluded the interview by stating that the claims may be allowable if the phrase -- polyvinyl chloride homopolymer -- were added to the primary claims as now found herein. In a subsequent telephone conference with Mr. Gresens on November 5, 1998, Mr. Delaney and Mr. Gresens agreed to the suggested amendment -- polyvinyl chloride homopolymer -- and Mr. Delaney agreed that the claims were now allowable.

Favorable consideration is requested.

Respectfully submitted,

ANDERSEN CORPORATION

By Its Attorneys

Date: Nov 5, 1998

John J. Gresens
Reg. No. 33,112
MERCHANT, GOULD, SMITH, EDELL, WELTER & SCHMIDT, P.A.
3100 Norwest Center
90 South Seventh Street
Minneapolis, MN 55402-4131
(612) 332-5300